

NELSON MULLINS RILEY & SCARBOROUGH LLP
ATTORNEYS AND COUNSELORS AT LAW

Samuel Rosenthal
T 202.689.2915
sam.rosenthal@nelsonmullins.com

101 Constitution Avenue, NW | Suite 900
Washington, DC 20001
T 202.689.2800  F 202.689.2860
nelsonmullins.com

September 18, 2018

***VIA E-FILING TO CM/ECF***

The Honorable Jacqueline Corley, United States Magistrate
Courtroom F – 15th Floor, 450 Golden Gate Avenue
San Francisco, CA 94102

Re:   *Planet Aid, Inc. v. Center for Investigative Reporting,* Case No. 17-cv-03695

Dear Magistrate Judge Corley:

Addressed herein is Defendants' assertion of privilege relating both to (l) unnamed and (2) confidential sources.   A majority of the filings in this case by Defendants, including their anti-SLAPP Motion and their statements in this letter, stress the extensive investigation and/or detailed fact-checking that accompanied their Publications.  But when it comes to discovery, Defendants have withheld all information other than what they "relied upon," which they further narrow to include only "human sources" quoted or referred to in the Publications; notes of interviews with human sources where recordings do not exist; and certain documentary evidence. ECF Dkt. No. 146, Ex. C, Obj. 22.  Of the hundreds of interviews allegedly conducted by Defendants in connection with the stories, they limit disclosure to 36 individuals, despite the fact that their Initial Disclosures list almost double that number as likely to appear at trial. Further, the majority of the interviews which they agree to disclose relate to issues irrelevant to this action, such as their relentless efforts to smear the Teachers Group as a cult.

As to those interviews which are relevant, Defendants agree to disclose all interviews of individuals "relied upon" including any referenced in their Publications.  If so, Defendants can avoid one area of dispute by stipulating to the identities of sources referenced throughout Defendants' Publications to, for example,  DAPP Malawi's "own accountants and project managers;" "Internal Planet Aid files and former staff," and "insiders" who they claim made allegations of fraudulent conduct at DAPP Malawi.  *see, e.g., id.* 78-3, at 25, those who told reporters that they were forced to contribute "20 to 100% of their salaries, everything they earned" to the Teachers Group. ECF Dkt. No. 78-17, at 21, or to whom they were referring when telling Plaintiff: "Your own people. The people in charge of your money said you're stealing money."  *Id.,* at 25.  Defendants contend that they have already disclosed the identity, and will produce discovery as to *all* such individuals,  and that Plaintiffs therefore have no need for confidential or anonymous sources.  If so, Defendants should have no reason to object to:  (l) the stipulation attached as Exhibit A, which simply confirms those representations, and (2) an Order

1

Hon. Jacqueline Corley
October 18, 2018
(a) precluding Defendants in their anti-SLAPP Motion and at trial from arguing that they had any additional sources in publishing statements referenced in that Exhibit, and (b) requiring disclosure of all document pertaining to, inter alia, sources identified in Exhibit A.

That would reduce this particular discovery dispute to two issues.  First, contrary to their representations, they have not produced discovery as to all sources referenced in the Publications. One anonymous source was quoted by Defendants. *See* Ex. C (Dkt 78-17 at 22 (stating that the organization got $350, but she was getting only $100 in salary"); Dkt 78-22 (same woman describing working at DAPP like "slavery")). See Rosenthal Dec. Ex. K. Defendants cannot seriously argue that they are not relying on her statements, which were actually published, and are therefore entitled to less protection.   Unless they are willing to disclose what she actually told Defendants, it is impossible for them to satisfy even the most rudimentary burden, namely that they accurately reported what she told them, and that they had no reason to doubt what she had said.   See  *Khawar v. Globe*, 19 Cal. 4th 254, 275 (1998).  If confidentiality is even needed, Defendants could simply redact her name from the interview recording.  *Warnell v. Ford Motor Co.*, 183 F.R.D. 624, 626 (N.D. Ill. 1998) (ordering production of interview while redacting voice to prevent identification).  Having used her voice in the Podcast, there is no reason to withhold the remainder of the interview, together with relevant documents.  Similarly, Defendants should have no reason to withhold the identity of the "former staff," Dkt. 78-3 at 15, or those who accused Plaintiff Thomsen of stealing.[1]

The only issue left to resolve, then, is whether allegedly confidential or non-confidential sources would reveal that Defendants: (l) used improper tactics in conducting their "investigation, and/or (2) were in possession of information that would have led them to question their reports.  There is no question that such evidence is highly probative.  Also, there is no way to obtain such information other than from Defendants, unless sources voluntarily come forward, as occurred with two sources. See Phiri Decl.; Musizikwa Decl.

Plaintiffs have more than amply demonstrated a basis for seeking such information, and that it goes to the heart of the dispute.  One declaration submitted in support of this motion attests to the fact that the declarant was offered a bribe for providing information and told that others also been offered money by Defendants' employee and agent in Malawi, Kandani Ngwira (who had been convicted of extortion).  See Phiri Decl.  Plaintiffs can proffer that discovery will reveal other sources offered money or other inducements.  See Rosenthal Dec., ¶ 11. Sources are unlikely to come forward and admit having accepted money or other benefits, particularly after being told by Defendant Smith that they are not "obligated to speak" with Plaintiffs. *Id*., Ex. C.

Similarly, there is substantial support for allegations in the FAC that Defendants misrepresented themselves to sources, which is directly relevant to the Plaintiffs' case.  *See* Dkt. 78, ¶ 79, 127.  Discovery to date unquestionably confirms that Defendants falsely denied using such tactics, as shown by Defendant Smith's comment on tape that they had the "perfect pretext" for questioning an unsuspecting individual.  See K. Smith Dec., Ex. A at 4.   There is also the passage in which

---

[1] Defendants also represented that they had obtained a source whose identity Reveal has agreed to protect."   See 78-3 at 13.  Plaintiffs agree to defer at this time seeking a ruling as to such source.

Hon. Jacqueline Corley
October 18, 2018

Defendants tell a source that Smith and Walters are in Malawi to open a computer shop, and inquiring about investments in land, which Smith calls their "highly specific backstory about [him] being a merchant." *Id.* Ex. B at 2. In addition to lying about their identities, another passage has Walters taking Smith aside and whispering to him that his shirt is "glowing," referring to the microphone showing through his shirt. *Id.*, Ex. B at 3. At another point, Defendants are heard saying how those involved need to stand close to Defendant Smith's hidden microphone. *See id.* Ex. A at 2.  See also Musizikwa Decl. (confirming Defendants' use of hidden microphones and lying about their identities). This does not even include use of hidden microphones in Denmark, when telling a source they were just "in the neighborhood" "visiting friends."  See CIR 0020407.

 The need for discovery is made even stronger by virtue of the fact that Defendants falsely disavowed ever "misrepresent[ng themselves] to sources," particularly in Malawi. See Walters Decl. (Dkt. 114) ¶ 31; Smith Decl. (Dkt. No. 125, ¶ 36 ("I and my colleagues felt this was important for people we spoke to clearly understood what we were doing because not only is it CIR's policy, which we take seriously, to always identify ourselves properly, we found in Malawi that people would open up noticeably, and even become enthusiastic about our investigation the more they learned about how we were journalists doing news reports about Malawi aid and DAPP.").[2]  Defendants' false declarations allow Plaintiffs to rely on "the maxim [false in one, false in all] . . . based on the logic that . . . if a person testifies falsely, willfully, and materially on one matter, then his 'oath' or word is not 'worth anything' and he is likely to be lying in other respects."  *Enying Li v. Holder*, 738 F.3d 1160, 1168 (9th Cir. 2013).

As to non-confidential sources, Defendants' only basis for withholding discovery is that it would be too burdensome to produce such materials.  But they ignore the fact that Plaintiffs are seeking documents relevant only to the claims at issue in this case, and that the majority of their interviews and "investigation," deals with irrelevant matters, such as their bogus claim that the Teachers Group was a mind altering cult that told people that they were not allowed to have families (a message obviously never received by Plaintiff Thomsen who is happily married with two daughters).  Once again, Defendants contend that discovery is not proportional to the needs of the case, without providing a hit list using search terms, which could be used to reduce any burden shown to exist.

---

[2] Declarations submitted by Defendants have proven false on issues other than journalism tactics as well. These include Defendants Smith and Walters leading the Maryland court to conclude that the NBC I-Team had done its own "independent investigation," Dkt 21 at 5, while Smith was saying privately that they were in fact doing a "full blown collaboration/partnership" with the NBC I-Team, and telling the source that he was providing the NBC I-Team with the documents for the show, Rosenthal Dec. Ex. L; or by the Editor in Chief, who told the Maryland Court that "none" of CIR's employees lived in Maryland, and then told this Court that only Deborah George lived there, and then submitted a declaration falsely stating that Executive Editor Reber was uninvolved in the Planet Aid stories after moving back to Maryland.  See Discovery Letter dated Oct. 12, 2018.

Hon. Jacqueline Corley
October 18, 2018
As to confidential sources, the Court should determine at this point whether Defendants' sources are truly even confidential. If that question is answered in the affirmative as to any sources, we reiterate that this issue can be avoided at this point by the stipulation that has been suggested by Plaintiffs, revisiting the issue of confidential sources if necessary at a later point. [3]

Concerns over confidentiality designations are based on several facts. We are particularly sensitized to this issue after Defendants previously redacted information relating to Maryland contacts when trying to show that jurisdiction and venue in Maryland were improper. See Rosenthal Dec. Ex. J at (CIR-DG-139 (redacting name of Maryland resident Pam Fritzler). Defendants also redacted names on a trip agenda, which listed the names of individuals they intended to meet in 2015 during their trip to Malawi. See *id*, Ex. G J. It would be a gross abuse if Defendants had redacted, for instance, Emmanuel Phiri's name knowing that he had rejected offers by Ngwira to pay him bribes. Because Mr. Phiri was contacted during that same period reflected in the trip agenda, *id.*, Defendants should confirm that his name was not among those redacted.[4] Similarly, other names may well have been redacted even though the individuals have denied any need for confidentiality. These include individuals whose names appear on tape recordings, namely Kimbukani and Matiki, who were also contacted during that same visit.

Another source, Patrick Goteka, tries to avoid discovery by contending that he is in fear for his life, and has moved his family into hiding. Dkt 126, ¶ 61. Goteka's fear is based on the following: (l) while visiting Malawi  and working with journalists he noticed a car following them, which belonged to a former co-worker; (2) Goteka was asked by someone at a bus stop if he had been in Malawi with some journalists; (3) Goteka saw the same person at another bus stop, but had no contact with him; and (4) at some other time, a car passed by his house slowly, but Goteka has no idea who was in the car or why he was on Goteka's street. *Id.* Whether Mr.

---

[3] Defendants argue that disclosure of confidential sources is appropriate only if Plaintiffs make a prima facie showing. While no such showing is required, any such requirement is more than satisfied by the declarations of Chrispin Ngunde, Jackson Mtimbuka (dated August, 2017), Emmanuel Phiri, and Madzeka Musizikwa and Klema Hau, and the fact that Defendants have been shown to have falsely denied using unprofessional tactics in their declarations submitted to the Court. If the Court rejects the stipulation proposed by Plaintiffs, and determines that further evidence of a prima facie showing is required, Plaintiffs request an opportunity to provide additional materials after review of the non-confidential materials produced in discovery.

[4] The statements by both declarants are evidently designed to explain away Defendants' conduct in emailing sources and telling them that they were not "obligated" to talk with Plaintiffs' counsel. See Rosenthal Dec., Ex. C.  Neither declarant is believable.  One declarant claims that he told Plaintiffs' counsel when interviewed the same thing he had reported to Defendants, namely that farmers had not received promised agricultural supplies.  His declaration submitted under penalty of perjury flatly refutes any such allegation.  See Mtimbuka Decl. dated Aug., 2017.  *See also* Hau Decl. ¶ 7. Mtimbuka also stated that he believed that Defendants had taken his comments "out of context," and flatly denied other statements attributed to him by Defendants in their Publications.  *Id.* ¶ 8. The other source, Harrison Longwe, claims that he refused to make any statements.  Not only did he agree to an interview, he stated that he was unaware of anything he could call "fraud per se," contrary to what Defendants reported. Ngunde Dec., ¶ 6.  His declaration fails to deny making the latter statement.

4

Hon. Jacqueline Corley
October 18, 2018
Goteka's paranoia is feigned or real is of no moment.   Neither he nor anyone else has any real basis for claiming that Plaintiffs are "stalking them," burning down their houses, breaking in and stealing computer equipment, or any of the other frivolous claims made in anti-SLAPP papers.

 Further,  the extensive use of anonymous, confidential or unnamed sources violates many codes of ethics governing journalism, even without showing that such sources provided false information.[5]  See Society of Professional Journalists, SPJ Ethics Committee Position Papers: Anonymous Sources, (noting that they may be appropriate on occasion, but that "sometimes, anonymous sources are the road to the ethical swamp"), available at https://www.spj.org/ethics-papers-anonymity.asp; NPR Guideline, Anonymous Sourcing, ("it is unfair to air a source's opinion on a subject of coverage when the source's identity and motives are shielded from scrutiny"), available at http://ethics.npr.org/tag/anonymity/.  Rather than dispute the existence of such authorities, Defendants instead argue that they were careful to ensure that such sources did not provide misleading information, and that there was a factual basis for treating them as anonymous or confidential.  See, e.g., ECF No. 113, ¶5 (noting that CIR had extensive discussions over the use of confidential sources.).  Plaintiffs are entitled to test that assertion, particularly when it can be done without divulging the identities of such sources.  Plaintiffs are entitled to know the number of such sources, and what precautions were taken to make sure that these sources were credible, as Defendants' editors allege, see, e.g., Dkt 110, ¶ 15 ("I had extensive conversations with both Matt and Amy W. about individual confidential sources"), but which Defendants now refuse to corroborate.

Finally, there is no reason why a privilege log should not be produced  (which should at least disclose dates of contacts, third-parties present during the interview, and subject of communications, and other information that would not divulge identities).  *See Miller v. Pancucci*, 141 F.R.D. 292, 302 (C.D.Cal.1992) (stating that to properly claim privilege, the claimant must specifically designate and describe the documents claimed to be within the scope of the privilege and to be reasonably precise in stating the reasons for preserving their confidentiality) (citing *United States v. Osborn*, 561 F.2d 1334, 1339 (9th Cir.1977). Also, boilerplate objections based on privilege are improper.  M*arti v. Bai res*, No. 1:08–cv–00653–A W I–SKO (PC), 2012 WL 2029720, *5–6 (E.D. Cal. 2012) (reliance on boilerplate objections is an abuse of the discovery process).  Here, Defendants refuse to disclose anything other than a redacted copy of a document or recording, failing to disclose anything that would allow Plaintiffs to challenge the assertion of privilege.  Unlike disclosure of attorney-client communications, there is no reason why, when it comes to confidential information, Defendants could not disclose the substance of the communications, while redacting the identity of the declarant in transcripts.

---

[5]  Defendants should be the last ones to assert a need to respect the confidentiality of third parties. Without so much as advance notice to any of those individuals, Defendants filed in the public record payroll information for over 700 employees of DAPP Malawi containing the salaries, tax, insurance, overtime and housing allowance data for those employees.  See ECF No. 116, Ex. G.  Similarly, one of their sources, who refuses to disclose even his own whereabouts had little hesitation disclosing salary information, as well as personal data relating to six former employees.  See ECF No. 126, Ex. Q.

Hon. Jacqueline Corley
October 18, 2018
**DEFENDANTS' POSITION**

Plaintiffs Planet Aid, Inc. and Lisbeth Thomsen allege that Reveal defamed them by reporting on their gross misuse of U.S. government funds—ostensibly for aid to farmers in Malawi. First Am. Compl. (Dkt. 78) ("FAC"). Reveal's reporting was based on public records and firsthand accounts from witnesses in the United States, Malawi, and Denmark. Reveal estimates it has more than 500 audio recordings from interviews, and more than 150,000 documents relating to its investigation. Nurrenbern Decl. ¶ 3.

Before the Court are a series of disputes concerning the appropriate scope of discovery needed for Plaintiffs to respond to Reveal's special motion to strike the FAC under California's anti-SLAPP statute, Cal. Code. Civ. P. 425.16. Dkt. 107. That motion argues that the allegedly defamatory statements are not provably false and are absolutely privileged; and in any event, Reveal did not act with actual malice, i.e., it did not know any of the statements were false nor act with reckless disregard to their falsity. The motion does not rely on confidential sources, or on the several dozen sources that were not mentioned in the publications. Instead, it relies on declarations from ten non-confidential sources. Dkts. 108, 116-17, 119-23, 126-27. Reveal has agreed to produce discovery (including recordings and notes of interviews) concerning these sources and any other sources quoted or referred to in the publications.

Plaintiffs now ask the Court to compel Reveal to produce discovery concerning *all* of its sources. But they make no effort to (nor could they) satisfy the applicable standards—which require showing that the information sought is relevant to a key issue in the case and unavailable from alternative sources. Information about other sources cannot possibly be relevant to a key issue in the case because Reveal's SLAPP motion does not rely on those sources. Further, as discovery has just begun, Plaintiffs cannot claim they have exhausted other sources. The discovery Plaintiffs seek is privileged, burdensome, disproportional to the needs of this case, and anathema to settled state law and First Amendment principles.

**Background**

Reveal spent eighteen months investigating the Danish group Tvind's diversion of government funds from programs run by Planet Aid and the Development Aid from People to People Malawi ("DAPP"), the gist of which reporting was expressed in a March 19, 2016 radio report and podcast titled "Alleged Cult Leader Plays Shell Game With US Foreign Aid," FAC Ex. P (Dkt. 78-17), and a follow-up May 23, 2016 text article titled "US taxpayers are financing alleged cult through African aid charities," FAC Ex. B (Dkt. 78-3) (together, the "Initial Reports").[6]

Reporters conducted more than 200 interviews in Denmark, the United States, Malawi, and elsewhere, and quoted or referred to several key on-the-record sources. Those sources included

---

[6] Plaintiffs challenge at least eighteen other later publications, but those articles either repeat the earlier reported facts or are protected by legal defenses for which no discovery is necessary; although Plaintiffs disagree, that dispute is the subject of a different letter that will be forthcoming.

Hon. Jacqueline Corley
October 18, 2018
the Danish lead police investigator and prosecutor responsible for prosecuting Tvind leaders for tax fraud and embezzlement; former Tvind members; Patrick Goteka, a former DAPP employee and Tvind member who worked with its leader, Mogens Amdi Petersen; Harrison Longwe, DAPP's former controller; Jackson Mtimbuka, a leader of DAPP Farmers' Clubs; four Farmers' Club members; two former DAPP procurement officers; an individual responsible for collecting coerced "contributions" from African employees of DAPP Malawi; and a dozen Tvind members who made such contributions.  Reveal has committed to provide discovery on *all* these sources.

However, Reveal promised to protect the identities of several sources who requested anonymity because they feared retaliation from Tvind.  Indeed, one Malawi reporter's materials were stolen from his home, Ngwira Decl. ¶ 14; and the BBC, Reveal's reporting partner, placed Mr. Goteka in hiding, Goteka Decl. (Dkt. 126) ¶¶ 52, 61.[7]  Again, Reveal did not rely solely on these sources for material or quotes in the stories, and did not rely on them at all in its SLAPP motion.

Reveal's SLAPP motion seeks dismissal on four bases, but only one of them could possibly require discovery: whether Reveal acted with "actual malice," i.e., knowing or recklessly disregarding the falsity of any statements.  Dkt. 107 at 11-19.[8]  To that end, Reveal promised to provide recordings of interviews with sources quoted or mentioned in the Initial Reports (or, where there are no recordings, any notes), as well as draft scripts—exactly what Plaintiffs need to discover Reveal's state of mind.  Plaintiffs have pushed for far more, and to try to avoid a dispute before this Court, Reveal agreed to produce (1) correspondence about outlines, drafts, or scripts, (2) documents on which Reveal relied for its reporting, (3) photographs and video recordings in connection with trips taken for the reporting, (4) documents concerning the hiring of Malawi journalist Kandani Ngwira, whose credibility Plaintiffs challenge (5) documents sufficient to show the reasons Reveal focused on Planet Aid, (6) documents concerning retraction demands, (7) communications with specified government entities, and (8) documents created in preparation for the reporters' October 2015 trip to Denmark and Malawi.

Since the filing of this lawsuit, more key sources have expressed concerns for their safety.  *See* Supp. Mtimbuka Decl.; Supp. Longwe Decl.; Supplemental Theu Decl.

### *The Court Should Refuse to Compel Reveal to Disclose Confidential Sources*

"Compelled disclosure of confidential sources unquestionably threatens … freedom of the press and the public's need to be informed" by thwarting "a journalist's ability to secure information that is made available to him only on a confidential basis."  *Mitchell v. Superior Court*, 37 Cal.

---

[7] Plaintiffs call Mr. Goteka's claim "frivolous."  *Supra* at 5.  But they omit (and do not dispute) key facts, namely that he was followed by a car owned by a project leader for a DAPP Malawi project, and that a stranger approached him on his bus journey home, claiming he had talked to the "BBC people."  Goteka Decl. (Dkt. 126) ¶¶ 57-60.

[8] Discovery is unnecessary to decide Reveal's remaining defenses, i.e., that the statements about Plaintiffs are not provably false (evidence Plaintiffs would have themselves), that the fair and true report privilege protects many statements (a question of law), and that Plaintiffs have failed to show special damages (again, information within their own possession).  *See* Dkt. 107 at 19-24.

Hon. Jacqueline Corley
October 18, 2018

3d 268, 275, 690 P.2d 625 (1984) (citation & internal quotation marks omitted).  Consequently, a "reporter, editor, or publisher has a qualified privileged to withhold the disclosure of the identity of confidential sources and of unpublished information supplied by such sources." *Id.* at 279. To overcome the privilege, a party must satisfy four requirements.  First, it must show it has exhausted all alternative sources of the information.  If it does, the Court considers (1) the nature of the litigation and whether the reporter is a party; (2) whether the information goes "to the heart of the plaintiff's claim"; (3) the importance of protecting confidentiality, such as to prevent retaliation against sources who reveal information of public concern; and (4) whether the party has made a prima facie showing the statements are false.  *Id.* at 279-83.

Plaintiffs make no effort to satisfy these standards, nor could they.  The Court need look no further than the second factor to reach this conclusion.  Where, as here, a news organization does not rely on confidential sources to defend itself, those sources' identities are irrelevant.  *See, e.g.*, *Cervantes v. Time, Inc.*, 464 F.2d 986, 992, 994-95 (8th Cir. 1972) (plaintiff not entitled to confidential sources when evidence—including lengthy period of reporting, "countless hours" of corroboration, hundreds of documents, and multiple depositions—showed defendants were entitled to judgment as a matter of law; record contained sufficient evidence to resolve question of malice); *Dowd v. Calabrese*, 577 F. Supp. 238, 241-42 (D.D.C. 1983) (denying motion to compel disclosure of sources "who furnished no material actually relied or reported on," as they "would provide no information concerning the truth or falsity of the information contained in the articles, nor would it be material to the question of defendants' actual malice"); *Dallas Morning News Co. v. Garcia*, 822 S.W.2d 675, 684-85 (Tex. App. 1991) (requiring plaintiff to attempt to "establish a case for actual malice based on the 48 disclosed but undeposed sources, or on the other information provided by relators during discovery.… before disclosure of confidential sources will be compelled").

Plaintiffs apparently do not dispute this, but assert that Reveal relies on confidential sources to support its SLAPP motion.  *Supra* at 3-5.  In fact, the SLAPP motion does not mention confidential sources (expressly or otherwise), and instead relies on documents and information from named sources, all of which Reveal has committed to produce.  *See* Dkt. 107.  To argue otherwise, Plaintiffs quote a statement by CIR's then editor-in-chief Amy Pyle that confidential sources "provided crucial background information," *supra* at 4 (quoting Dkt. 115 ¶ 10).  This selective quotation is misleading.  Ms. Pyle said, in full, that "[w]hile some confidential sources provided crucial background information, ***in every case we found other human and/or document sources of information to back up what they told us***.  ***In the end, none of the findings in Reveal's publications challenged by Plaintiffs were based solely on confidential sources***."  Pyle Decl. (Dkt. 110) ¶ 15 (emphasis added).  *See also, e.g.*, *supra* at 4 (claiming one declarant said he "discussed… confidential or anonymous sources in deciding whether to proceed with the Publications"; declarant actually said "I was also involved in internal discussions within the newsroom about confidential sources for the Planet Aid investigation," Rosenthal Decl. (Dkt. 113) ¶ 5).[9]  There is no interest—let alone a compelling one—in revealing

---

[9] Plaintiffs' portion of this letter is replete with similar other misrepresentations.  *See supra* at 2 (claiming Reveal did not contact "actual accountants for DAPP Malawi," omitting Plaintiffs' repeated refusal of interview requests, Dkt. 107 at 7-8); *supra* at 2-3 (asserting, without any basis, there were "made-up" and "non-existent" sources); *id.* at 5 (asserting, without support, Reveal tried to bribe and misrepresented

Hon. Jacqueline Corley
October 18, 2018
Reveal's confidential sources, who have legitimate concerns about their personal safety and the security of their families.

Even if these sources' identities were relevant, Plaintiffs cannot make the remaining showing to overcome the privilege.  To begin with, Plaintiffs have failed to satisfy the threshold requirement that they exhaust alternative sources, as they do not appear to have approached any such sources.  *Condit v. Nat'l Enquirer, Inc*., 289 F. Supp. 2d 1175, 1180-81 (E.D. Cal. 2003) (refusing to compel disclosure where plaintiff had failed to exhaust alternative sources); *Rogers v. Home Shopping Network*, Inc., 73 F. Supp. 2d 1140, 1145 (C.D. Cal. 1999) (plaintiff failed to exhaust alternative sources even after taking ten depositions; "Even when the information is crucial to a litigant's case, reporters should be compelled to disclose their sources only after the litigant has shown that he has exhausted every reasonable alternative source of information.").  Further, the third factor weighs against disclosure, as confidentiality is needed to protect sources from retaliation, given credible evidence, that Plaintiffs have approached witnesses who have provided declarations to support Reveal, apparently to discourage them from staying involved in the case or pressure them to change their statements.  Supp. Mtimbuka Decl.; Supp. Longwe Decl.; Supp. Theu Decl.  Finally, the fourth factor weighs against disclosure because Plaintiffs cannot make a prima facie showing that Reveal's statements are false.  *See* Dkt. 107 at 19-24.

### The Court Should Not Compel Reveal to Disclose the Remaining Sources

Plaintiffs also ask the Court to compel Reveal to produce discovery concerning dozens of sources not mentioned or quoted in Reveal's reports, and not relied on in Reveal's SLAPP motion.  A similar privilege applies to non-confidential sources.  *Shoen v. Shoen*, 48 F.3d 412, 416 (9th Cir. 1995).  To overcome the privilege, the plaintiff must show the information sought is "(1) unavailable despite exhaustion of all reasonable alternative sources; (2) noncumulative; and (3) clearly relevant to an important issue in the case."  *Id.*  For the same reasons Plaintiffs cannot satisfy the standard under *Mitchell*, they cannot satisfy the standard in *Shoen*: Information about non-confidential sources on which Reveal's SLAPP motion does not rely is not "clearly relevant to an important issue"; Plaintiffs have failed to exhaust alternative sources; and the information would be cumulative to what Reveal has voluntarily agreed to produce.

Even setting aside the privilege, discovery must be proportional to the needs of a case.  Fed. R. Civ. P. 26(b)(1).  This requirement applies with special force in the free speech context, where litigation is often aimed at punishing speakers even if those speakers ultimately prevail in litigation—chilling speech, contravening the First Amendment, and subverting the purpose of California's SLAPP law to provide an immunity from the burdens of litigating meritless lawsuits.  *See* Advisory Committee notes to 1983 Amendment to Rule 26 ("many cases in public policy spheres, such as employment practices, ***free speech***, and other matters, may have importance far beyond the monetary amount involved" (emphasis added)); *see also* The Sedona Conference, *Commentary on Proportionality in Electronic Discovery*, 18 Sedona Conf. J. 141, 168-70 (comment § 5(b)) (2017) ("nonmonetary factors may weigh in favor of limiting discovery, such as when the discovery… is used to wage a war of attrition, [or] … coerce a

---

itself to sources even though Reveal's reporters have disavowed this, Smith Decl. (Dkt. 125) ¶ 42; Walters Decl. (Dkt. 114) ¶ 31.

Hon. Jacqueline Corley
October 18, 2018
party.").  Accordingly, although the SLAPP law's automatic stay of discovery is not binding in federal courts, courts have nonetheless ordered stays of discovery while a SLAPP motion is pending.  *Mireskandari v. Daily Mail & Gen. Tr. PLC*, 2013 WL 12129944, at *5 (C.D. Cal. Jan. 14, 2013) (public "has an interest in maintaining the protection of free expression" that intrusive discovery would chill; staying all discovery pending SLAPP motion decision ); *Makaeff v. Trump Univ., LLC*, 2011 U.S. Dist. LEXIS 13603, at *5-6 (S.D. Cal. Feb. 11, 2011).

Here, the discovery Plaintiffs demand is immensely disproportional.  Reveal has already agreed to provide voluminous discovery—materials concerning nearly forty sources, including all the sources quoted or referred to in the Initial Reports.  Requiring it to do more is unnecessary and burdensome.  Even assuming that each of the 500 recordings in Reveal's possession is just thirty minutes long, this would require Reveal to review *250* hours' worth of recordings. *See* Nurrenbern Decl. ¶ 3.  Plaintiffs offer no justification for their request, except their unsupported speculation that Reveal tried to bribe sources—a claim Reveal and its reporters have denied repeatedly and steadfastly, including under oath.  Smith Decl. (Dkt. 125) ¶ 42.  Particularly given the First Amendment interests at stake, the Court should not impose this burden on Reveal.

Finally, Plaintiffs' requests for discovery concerning "sources which are described generically," *supra* at 2, should also be denied because they are moot or unnecessary.  Plaintiffs seek the identities of the "dozen African members of the Teacher's Group," *id.* at 3, yet admit Reveal has provided those names.  Referring the statement that DAPP Malawi's "own accountants and project managers" said invoices were "fabricated," *supra* at 2, Plaintiffs claim Reveal has identified only one accountant.  In fact, Reveal is providing discovery about two accountants— Mr. Longwe and Farai Nyamuranga—and seven project managers—Chiku Malabwe, Mr. Goteka, Mbachi Munthali, Donnex Maquemba, Derrick Ndamyo Mpeta, Mr. Mtimbuka, and Yona Banda.  Finally, Plaintiffs point to the statement that "insiders" who asserted less than half the money designated for humanitarian aid were used for that purpose, *supra* at 2-3—but again, Reveal is providing discovery about six individuals who supported this statement—Mr. Longwe, Donnex Maquemba, Mr. Goteka, Innocent Chitosi, Britta Junge, and Rikke Viholm.  The remaining sources are either confidential or not relied upon by Reveal for its defenses here.

For these reasons, Reveal respectfully asks the Court to deny Plaintiffs' request.

Respectfully submitted,

NELSON MULLINS LLP
/s/
Cory Manning

Attorney for Plaintiffs
PLANET AID, INC. and LISBETH THOMSEN
