

**NELSON MULLINS**

NELSON MULLINS RILEY & SCARBOROUGH LLP
ATTORNEYS AND COUNSELORS AT LAW

101 Constitution Avenue, NW | Suite 900
Washington, DC 20001
T 202.689.2800  F 202.689.2860
nelsonmullins.com

Samuel Rosenthal
T 202.689.2915
sam.rosenthal@nelsonmullins.com

October 22, 2018

*VIA E-FILING TO CM/ECF*

The Honorable Jacqueline Corley, United States Magistrate
450 Golden Gate Avenue
San Francisco, CA 94102

Re:   *Planet Aid, Inc. v. Center for Investigative Reporting,* Case No. 17-cv-03695

Dear Magistrate Judge Corley:

**PLAINTIFFS' POSITION**

This letter is written pursuant to your Honor's ruling on September 13, 2018, directing the parties to address Defendants' assertion of attorney-client privilege. Plaintiffs respectfully submit that they are entitled to disclosure of communications with counsel based on the fact that Defendants themselves placed those communications in question by: (l) affirmatively relying on review by legal counsel in their anti-SLAPP motion to show how thorough and careful they were in reviewing articles prior to publication; (2) alleging that they "scrupulously followed" Defendant CIR's policy regarding undercover recording and use of hidden microphones, which required approval by legal counsel; and (3) alleging that the Executive Editor of CIR had no involvement in any of the Planet Aid stories after returning to Maryland after June 1, 2016.[1]

As a preliminary matter, the Ninth Circuit has recently held that a Plaintiff is entitled to discovery where, as here, the Defendant mounts a factual challenge to a defamation case. *See Planned Parenthood Fed'n of America, Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018). The Court (Hon. Maxine Chesney, U.S.D.J.), denied Defendants' motion to delay discovery pending a resolution of their anti-SLAPP Motion.

---

[1] Although we have referenced this third issue in this letter, we anticipate discussing that issue more fully in connection with the upcoming letter addressed to production relating to Ms. Reber. Executive Editor Susanne Reber was involved both before and after June 1, 2016, notwithstanding the fact Defendants submitted a declaration from her, representing that she had no involvement in stories after returning to Maryland, and Judge Chesney expressly relied on that representation in holding that jurisdiction in Maryland was lacking. ECF 75 at 4-5. Defendants have redacted a large number of documents involving communications involving Ms. Reber, in an apparent effort to preclude any assessment of her involvement.

**I.     Disclosure is Appropriate as to the Legal Review Alleged by Defendants to Support their anti-SLAPP Motion.**

Request Number 10 specifically referred to the "documents or communications concerning any meetings with legal counsel, to which Kevin Sullivan referred in paragraph 4 of his Declaration, as well as the 'final legal review' to which Amy Pyle referred in her Declaration in paragraph 20 of her Declaration."  As set forth below, both declarations claimed that this legal review was part of the careful, diligent process of editing, fact checking and approving the Publications. Notwithstanding that Defendants themselves opened the door to this issue, they refuse to produce communications.  Clearly, Defendants were relying on communications with counsel in order to show how careful and diligent they were in connection with the Publications, an assertion that implies that legal counsel approved the publications, even after a request for retraction.

For instance, the Editor-in-Chief went to great lengths to show how careful she and others at Defendant CIR were in connection with the entire process.  In paragraph 20, Ms. Pyle explains how she was deeply involved in the process to ensure the accuracy and fairness of the reporting. *See* Dkt. No. 110, ¶ 20.  In the context of explaining how she read and edited drafts, conferred with others, and attended meetings regarding the publications, she represented that there were multiple levels of legal review. She stated that she was the one that "took it through its ***final legal review*** alongside Rosey [a member of the Board], Matt [Smith, a defendants in the case] and Amy W[alters], another Defendant in the case] [emphasis added]." *Id.*  Following that review, the publications needed additional edits, and fact-checking, according to Ms. Pyle. *Id.*

Ms. Pyle also reiterated the importance of legal review later in her declaration, where she declared: "I reviewed all key documents and discussed all key findings multiple times with the reporters and with our legal team." *Id.*, ¶ 28.  She made clear to the Court in her declaration that the legal review was integral to their decision to proceed with the Publications, stating in the sentence both preceding and following her statement about legal review, that the article was believed to be accurate and that Defendants had erred on the side of being conservative. *Id.*  The declaration was obviously intended to show that Pyle had reached those conclusions based on the legal review.

Ms. Pyle was not alone in relying on legal review in determining that the story was not defamatory. *See* ECF No. 112, Dec. of Kevin Sullivan, ¶4.  Mr. Sullivan was even more emphatic about the integral role that legal played in the decision by Plaintiffs to publish the stories, and addressing any "legal concerns."   He also made clear that this legal review was not simply "pre-publication review, but also related to their 'post-publication" review as well.   Mr. Sullivan's declaration stated that "***along with the rest of the team, [he] met with CIR's lawyers to review any legal concerns.***" *Id., ¶ 4*; emphasis added.

Any effort to make affirmative use of those consultations constitutes a waiver of any privilege. *See Rhone-Poulenc Rover Inc. v. Home Indemnity Co.*, 32 F.3d 851, 863 (3d Cir. 1994 (citing *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156 (9th Cir.1992). Defendant's main response is to argue that because they did not actually cite in in their Memorandum of Law to the legal counsel review mentioned in their declarations, no waiver could have occurred.  *See infra* at 7.  But that

Magistrate Judge Jacqueline Corley
October 22, 2018
Page 3

argument would mean that any of the hundreds of pages of material offered in declarations in support of the Motion was not relied upon by them, and should similarly be ignored. They also argue, erroneously, that any plaintiff could force a waiver of the attorney-client privilege by simply asking a reporter whether he or she had consulted with legal counsel. Here, Plaintiffs did not ask that question and invited no statement seeking advice of counsel; Defendants volunteered that fact in support of their Motion. Defendants ignore the fact that they expressly admitted that they consulted legal counsel "to review any legal concerns," s*ee supra,* obviously representing that that they were satisfied that they had satisfactorily addressed those concerns.

A party waives any claim based on the attorney-client privilege and/or work product doctrine by trying to use communications with legal counsel as a sword against an adversary while hiding behind the shield of confidentiality in order to test those assertions. *See*, *e.g.*, *Columbia Pictures Television, Inc. v. Krypton Broadcasting of Birmingham, Inc.*, 259 F.3d 1186, 1196 (9th Cir. 2001) ("Where a party raises a claim which in fairness requires disclosure of the protected communication, the privilege may be implicitly waived"; *Id.* at 1196 (quoting *Chevron Corp. v. Pennzoil Co*., 974 F.2d 1156, 1162 (9th Cir.1992) (citing *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir.1991)). *See also Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003) (citing Christopher B. Mueller & Laird C. Kirkpatrick, Evidence: Practice Under the Rules § 5.30, at 549 (2d ed. 1999) (holding that even firmly held privileges may be "impliedly waived where the client asserts a claim or defense that places at issue the nature of the privileged material."). *See also In re: Lott*, 424 F.3d 446, 454 (6th Cir. 2005) (quoting *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir.1991) ("To be sure, litigants cannot hide behind the privilege if they are relying upon privileged communications to make their case. [T]he attorney-client privilege cannot at once be used as a shield and a sword.").

The fact that Defendants themselves have affirmatively tried to use their review by counsel makes this case distinguishable from cases cited by them, where disclosure was sought based solely on the fact that a party's state of mind was relevant. *See infra* at 6. For instance, in *Aboudara v. City of Santa Rosa*, 2018 WL 748968, at *1 (N.D. Cal. Jan. 22, 2018) (Corley, J.) this Court noted that the party expressly disavowed relying on counsel's review, and held that the result "might be different if Defendant had followed up on its affirmative defense with reliance on the fact that it sought advice of counsel in its discovery responses"). Here, Defendants continue to claim that it "sought advice of counsel," which was integral to the pre-publication review process.

## II. Defendants Cannot Withhold Documents that Would Demonstrate the Falsity of Declarations Submitted to this Court.

Documents relating to involvement by counsel is relevant for another reason, although this issue can possibly be resolved through the stipulation discussed below. Defendants have alleged that they abided by the Ethics Policy at the Center for Investigative Reporting by refraining from engaging in any use of hidden microphones, or lying to sources about their true identities. In denying the use of "undercover recording," Defendant Walters declared:

Magistrate Judge Jacqueline Corley
October 22, 2018
Page 4

> For every interview that we did in Malawi, Matt and I traveled together carrying recording equipment to make our audio recordings. The vast majority of the time I had my recording equipment dangling from a neck, large black headphones either on my ears or around my neck and a big microphone with a bigger furrier windscreen either in my hand to record or placed in my bag in a way that was obvious. My recorder is the size of a tissue box. It is not a small device and it would be obvious to anyone looking at me. Matt wore similar attire and kept his camera strapped around his neck to take photographs. It was fairly obvious we were members of the media – and at the very least, not aid workers or government bureaucrats

ECF Dkt. 114, ¶ 20.

Defendant Smith was even more firm in his denials that they had used hidden microphones or any ruse, and emphasized that they scrupulously followed CIR's ethics policy. *See, e.g.*, Smith Decl. (Dkt. No. 125, ¶ 36 (emphasis added) ("I and my colleagues felt this was important for people we spoke to clearly understood what we were doing because not only is it ***CIR's policy, which we take seriously, to always identify ourselves properly***, we found in Malawi that people would open up noticeably, and even become enthusiastic about our investigation the more they learned about how we were journalists doing news reports about Malawi aid and DAPP.").

Notwithstanding their vehement denials that they secretly tape recorded sources, or lied about their identities, discovery has now established that they did just that, misrepresenting their identities **<u>and</u>** using hidden recording devices. Faced with incontrovertible proof that such tactics were used, and that their declarations were false, Defendants make the astonishing claim that this is all mere suspicion on Plaintiffs' part. As shown in the previous discovery letter submitted to the Court dealing with confidential sources, it is hardly a matter of "suspicion," when Smith admitted on the tape that he was using a "highly specific backstory" about being a merchant in Malawi and concealing a recording device that was seen by someone being interviewed when it started "glowing." *See* letter Madzeka Decl. Similarly, Defendants misled sources in Denmark that they were "just in the neighborhood," while concealing their tape recorders. *See* CIR 0020407. The fact that Smith and Walters falsely denied that they engaged in such conduct makes discovery all the more appropriate as it is apparent that the Court (and Plaintiffs) cannot reasonably rely on their declarations, which were submitted under penalty of perjury.

The policy referenced above by Mr. Smith expressly required approval by counsel if reporters were going to secretly record sources and misrepresent their identities. CIR's Ethics Policy states:

> CIR/Reveal reporters/producers cannot use hidden cameras or microphones or secretly record phone conversations without prior approval of the editor in chief and, for use in video or audio, the executive producer. ***Legal counsel review must also be sought in these instances. The standard for the decision must be made only at the highest level of reporting in the public interest, when there is no other way to document behavior.***

Magistrate Judge Jacqueline Corley
October 22, 2018
Page 5

*See* CIR Ethics Guide, revealnews.org., available at https://www.revealnews.org/ethics-guide/ (emphasis added).

As with assertions that there were multiple legal reviews, this issue was injected into the case by Defendants themselves when they submitted declaration by Smith and Walters, falsely stating that they never used undercover reporting, and that they took CIR's policy regarding such tactics "seriously." By falsely stating that such tactics were not used, Defendants themselves opened the door to any facts relating to such tactics. Further, the failure to follow CIR's own Ethics Gide would be relevant not only to whether they acted negligently, but whether they acted with "malice," which Defendants incorrectly argue is the standard to be applied in judging their conduct.[2] A "plaintiff may rely on circumstantial evidence," to establish "malice" or negligence and such evidence may include "evidence of motive and failure to adhere to professional standards." *Khawar v. Globe*, 19 Cal. 4th 254, 275; 965 P.2d 696, 709; 79 Cal. Rptr. 2d 178; *see also Reader's Digest Assn. v. Superior Court*, 37 Cal. 3d 244, 257-258, 208 Cal. Rptr. 137 (1948).

One way to resolve this issue, however, would be if Defendants are willing to stipulate that they failed to consult with counsel regarding the subject of "undercover" interviews, which would moot the issue, as there would be no need for disclosure of any advice given by counsel.

### III. Defendants Have Waived Any Right to Refuse Production.

Defendants have waived any right to complain about disclosure of privileged documents for two reasons. First, Defendants err in asserting that we admit that the documents are covered by privilege. No privilege log has been produced as to most discovery, and certainly no long showing that privilege is being asserted only as to "informed legal advice-which might not have been made absent the privilege." *See In re Grand Jury Investigation,* 974 F.2d 1068, 1070 (9th Cir.1992).[3] Defendants seemingly take the position that legal counsel was opining whether the stories were truthful or not, *see infra* at 7-8, which would involve a factual, not a legal analysis. Second, Defendants have objected in boilerplate fashion on the ground that all requests call for production of material covered by the attorney-client privilege and the attorney work product doctrine. These boilerplate objections fail to satisfy the requirements of Fed. R. Civ. P. 26(b)(5) and Rule 34 *See St. Paul Reinsurance Co. v. Commercial Fin. Corp.,* 198 F.R.D. 508, 513 (N.D. Iowa 2000); *Pham v. Hartford Fire Ins. Co.*, 193 F.R.D. 659, 662 (D. Colo. 2000); *see also MMAR Group Inc. v. Dow Jones & Co. Inc.*, 187 F.R.D. 282, 292 n. 6 (S.D. Tex. 1999) (describing the assertion of attorney-client privilege and work product doctrine as boilerplate objections); *Athridge v. Aetna Casualty & Surety Co.*, 184 F.R.D. 181, 190 (D. D.C. 1998) (stating that such general objections such as

---

[2] Defendants repeatedly assume in their discovery letters the use of a "malice" standard, although neither Plaintiff is a public figure.

[3] Where a privilege log has been produced, it fails to identify sufficient information to ascertain whether the communication was for the purpose of seeking legal advice, and simply states the identity of the sender and recipients, the privilege asserted, date, and form of the document, such as whether an "email." *See Sia Chue Yang v. Schwarzenegger*, No. C 09-2306 CW (JL), 2010 WL 11587074 (N.D. Cal. May 12, 2010) (log must provide sufficient detail to permit a judgment as to whether the document is privileged.

attorney-client privilege and work product privilege are disfavored); *Miller v. Pancucci*, 141 F.R.D. 292, 302 (C.D.Cal.1992) (stating that to properly claim attorney-client privilege, the claimant must specifically designate and describe the documents claimed to be within the scope of the privilege and to be reasonably precise in stating the reasons for preserving their confidentiality) (citing *United States v. Osborn*, 561 F.2d 1334, 1339 (9th Cir.1977).

Accordingly, the Court should order discovery as to communications at issue relating (l) to legal review referenced in the anti-SLAPP Motion, and (2) any undercover reporting. Assertions of privilege as to Reber production will be addressed separately.

**DEFENDANTS' POSITION**

Plaintiffs correctly admit that the types of documents they seek—communications between Reveal and its attorneys seeking and providing legal advice—are protected by the attorney-client privilege. *See, e.g.*, *Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287, 1302 (D.C. Cir. 1988) ("Pre-publication discussions between libel counsel and editors or reporters would seem to come squarely within the scope of the privilege . . . ."); *Tyne v. Time Warner Entm't Co.*, 212 F.R.D. 596, 600 (M.D. Fla. 2002) (pre-production communications between co-defendants and legal department were privileged). But they claim Reveal has waived the privilege—by allegedly relying on legal advice to defend itself, because its reporters allegedly breached the organization's ethics policy by using hidden cameras and failing to clearly identify themselves as journalists, and because Reveal asserted boilerplate objections. Plaintiffs are wrong, and the Court should deny their extraordinary request for privileged material.

*The Basics of this Discovery Dispute*

To support their anti-SLAPP motion, Defendants provided declarations detailing the measures they (and other investigative journalists) take, and took in this instance, to ensure their reporting was accurate. This included describing the process Reveal use to vet stories, such as by having multiple editors review each draft, carefully discussing the language, and the like. One aspect of this process—again, for this and all of Reveal's investigative reports—included a legal review, something two declarants briefly mention. Kevin Sullivan, Reveal's executive producer for radio and podcast, says that leading up to the March 2016 podcast, he "along with the rest of the team, met with CIR's lawyers to review any legal concerns." Dkt. 112 ¶ 4. Similarly, then editor-in-chief Amy Pyle says she took the podcast "through its final legal review alongside" the reporters as well as Robert Rosenthal, a board member and former executive director. Dkt. 110 ¶ 20; *see also id.* ¶ 27 (stating she and Rosenthal "reviewed all key documents and discussed all key findings multiple times with the reporters and with our legal team").

Reveal's anti-SLAPP motion does not discuss this legal review, and does not ask for dismissal on the basis that Reveal followed its attorneys' advice. Dkt. 107 at 8. Rather, the motion explains, in relevant part, that (a) Plaintiffs have not alleged and cannot provide "clear and convincing evidence" that Reveal published its statements with actual malice, i.e., that it knew or recklessly disregarded whether its statements were false, and (b) Plaintiffs will be unable to

prove that Reveal's statements are false. *Id.* at 11-24. With respect to actual malice, the anti-SLAPP motion does not argue that Reveal relied on legal advice to determine the truthfulness of any particular statement—again, the motion does not mention the legal review at all.

Despite this, Plaintiffs seek "all documents or communications concerning any meetings with legal counsel, to which Kevin Sullivan referred in paragraph 4 of his Declaration, as well as the 'final legal review' to which Amy Pyle referred in her Declaration in paragraph 20 of her Declaration." Dkt. 146 at 12. The Court should reject this request.

### *The Entire Category of Documents Responsive to Plaintiffs' Request Is Privileged.*

Plaintiffs suggest that Ninth Circuit law affords them whatever discovery they wish, including the privileged discovery they now seek. But nothing in *Planned Parenthood Federation of America, Inc. v. Center for Medical Progress*, 890 F.3d 828, 834 (9th Cir. 2018), or in Plaintiffs' other authority, says a party opposing an anti-SLAPP motion is not bound by Rules 26 and 56, much less the protections of the attorney-client privilege or work-product doctrine. Otherwise, the case will have swallowed the attorney-client privilege whole, undermining the vital interests the privilege serves. Indeed, in *Planned Parenthood* on remand, this Court stated that Rule 26, and any privileges claimed under it, control when an anti-SLAPP motion involves factual disputes. *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 2018 WL 2441518, at *4, *7, *14 (N.D. Cal. May 31, 2018). *Planned Parenthood* does not give Plaintiffs plenary discovery—it allows discovery within the bounds of the law.

Thus, the ordinary rules of privilege apply here. Under those rules, parties may waive attorney-client privilege in two main ways: (1) disclosing privileged communications to third parties, or (2) asserting a claim or defense that relies on privileged materials as its basis. *Resilient Floor Covering Pension Fund v. Michael's Floor Covering, Inc.*, 2012 WL 3062294, at *4-5 (N.D. Cal. July 26, 2012).[4] Plaintiffs do not claim Reveal disclosed any privileged communications to third parties. Instead, they say Reveal waived the privilege because its defense is somehow based on privileged materials, its ethics policy required legal review of techniques its reporters used, and Reveal's objections are "boilerplate." Plaintiffs are wrong about every point.

### *Reveal's Anti-SLAPP Motion Does Not Rely on Privileged or Protected Materials.*

Plaintiffs claim Reveal based its anti-SLAPP motion partly on legal advice. Tellingly, however, they do not cite any part of the motion that relies on legal review to support Reveal's defenses—because there is none. Instead, Plaintiffs rely on statements in declarations from Mr. Sullivan and Ms. Pyle that Reveal's lawyers reviewed the publications to address "legal concerns," and explained that the legal review was "final." *Supra* at 1, 3. But Mr. Sullivan and Ms. Pyle merely

---

[4] Plaintiffs mention work-product protection, which can only be waived by voluntary disclosure or use of the protected material as evidence at trial. *Hernandez v. Tanninen*, 604 F.3d 1095, 1100-01 (9th Cir. 2010). To the extent Plaintiffs seek material protected by the work-product doctrine, the Court should decline, as Plaintiffs do not allege (nor could they show) that Reveal has voluntarily disclosed any work product-protected matter. *Id.*

say that the legal review was one component of Reveal's vetting process. Dkt. 112 (Sullivan Decl.) ¶¶ 4, 6; Dkt. 110 (Pyle Decl.) ¶¶ 27, 29. They do **not** say that they relied on the legal review to determine the truth or falsity of any statement—meaning that Reveal does not rely on the substance of the legal advice to support its actual malice defense.

Merely asserting that one consulted with counsel does not waive privilege. Otherwise, parties would waive privilege every time they disclosed the fact of a communication with counsel. For instance, reporters would waive privilege any time they answered the otherwise-acceptable deposition question or interrogatory, "Did you discuss this publication with counsel?" That cannot be and is not the law. Instead, this Court and others have explicitly held that when a defendant discusses an issue with counsel and proceeds because the defendant believes the facts in question are correct—which is Reveal's position—the defendant does not waive privilege.

For example, in *Aetna Casualty & Surety Co. v. Superior Court*, 200 Cal. Rptr. 471 (Cal. Ct. App. 1984), the California Court of Appeal rejected the plaintiff's attempt to pierce the privilege by claiming the plaintiff was relying on an "advice of counsel" defense. The court reasoned that the defendant "claims it acted as it did not because it was advised to do so, but because the advice was, in its view, correct; and it is prepared to defend itself on the basis of that asserted correctness rather than the mere fact of the advice. *Such a defense does not waive the attorney-client privilege*." *Id.* at 475 (emphasis added)[5]; *see also, e.g.*, *S. Cal. Gas Co. v. Pub. Utils. Comm'n*, 50 Cal. 3d 31, 44-45 (1990) (public utility did not waive attorney-client privilege by asserting that legal staff had concurred with reasonableness of its proposal where utility disclaimed reliance on legal opinion to show reasonableness; "Privileged communications do not become discoverable simply because they are related to issues raised in the litigation.") (citatino and internal quotation marks omitted); *Aboudara v. City of Santa Rosa,* 2018 WL 748968, at *1 (N.D. Cal. Jan. 22, 2018) (Corley, J.) (defendant did not waive privilege by raising good faith defense, where defendant disclaimed reliance on advice of counsel defense; applying federal privilege law to federal cause of action).

The cases Plaintiffs cite do not state otherwise (nor do they apply California law). For example, Plaintiffs cite *Rhone-Poulenc Rorer Inc. v. Home Indemnity Co.*, 32 F.3d 851, 860-62 (3d Cir. 1994), but that case supports Reveal's position. There, the Third Circuit noted that bringing claims such as malpractice or relying on defenses such as advice of counsel would waive privilege by affirmatively putting the lawyer's advice at issue. But the court concluded that if the objecting party has not done so, the party does not waive privilege even if its state of mind as to the lawyer's advice is relevant: "A party does not lose the privilege to protect attorney client communications from disclosure in discovery when his or her state of mind is put in issue in the action. While the attorney's advice may be relevant to the matters in issue, the privilege applies

---

[5] Because this Court has diversity jurisdiction over this matter, California state law privilege applies. *See* Fed. R. Evid. 501 ("[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision.").

as the interests it is intended to protect are still served by confidentiality." *Id.* at 864.[6]

The remaining cases Plaintiffs cites are inapposite. They concern circumstances in which the party asserting privilege *admitted* it was relying on its counsel's advice for its defense, or, in one instance, a criminal defendant asserted that his counsel was ineffective. *See, e.g.*, *Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham*, Inc., 259 F.3d 1186, 1196 (9th Cir. 2001) (party "sought to argue that he continued his infringing activities based on the advice of his attorney, while at the same time refusing to answer questions regarding relevant communications with counsel until the 'eleventh hour'"); *Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003) (ineffective assistance of counsel); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992) (party asserted its statements were not misleading because its position was "'reasonable' according to advice given by tax counsel'"); *Khawar v. Globe Int'l, Inc.*, 19 Cal. 4th 254, 275 (1998) (does not address privilege); *Reader's Digest Ass'n v. Superior Ct.*, 37 Cal. 3d 244, 257-58 (1984) (does not address privilege).

As this authority demonstrates, Reveal has not waived privilege by referring to legal review in declarations supporting its anti-SLAPP motion. Reveal is not asserting that its conduct is justified because of the legal advice it received. Instead, like the defendants in *Aboudara* and *Aetna*, Reveal discussed its conduct with counsel, and concluded that it could proceed based on the facts before it. *Aboudara*, 2018 WL 748968, at *1; *Aetna*, 200 Cal. Rptr. at 475; *see also Rhone-Poulenc Rorer*, 32 F.3d at 860-62. This does not waive privilege as a matter of law.

### *Plaintiffs' Suspicions that Reveal Violated Its Ethics Policy Do Not Constitute Waiver*

The Court should also reject Plaintiffs' claim that they are entitled to "documents relating to involvement by counsel" because Plaintiffs believe Reveal's reporters violated the organization's ethics policy by using hidden cameras and misrepresenting their identities without first consulting an attorney. *Supra* at 4. This, in turn, they say, is "relevant not only to whether they acted negligently, but whether they acted with 'malice' which Defendants incorrectly argue is the standard to be applied in judging their conduct." *Id.* at 5. Plaintiffs are wrong again.

First, this discovery would not be relevant to malice. Malice concerns a person's knowledge about a published statement's truthfulness. *E.g.*, *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964); *McGarry v. Univ. of San Diego*, 154 Cal. App. 4th 97, 114 (2007) (evidence of actual malice "must be of such a character 'as to command the unhesitating assent of every reasonable mind'") (citation and internal quotation marks omitted). Whether Defendants abided by Reveal's ethics policy has no bearing on whether Defendants believed the statements they published are true.

---

[6] To the extent *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991), suggests that raising state of mind may itself constitute waiver, this Court has rejected this out-of-circuit view, noting that "[t]he Ninth Circuit has never held that merely asserting good faith waives the attorney-client privilege as to communications with counsel regarding the topic at issue. This Court, too, declines to do so." *Aboudara*, 2018 WL 748968, at *1.

Second, even if the discovery sought would be relevant, the privilege "is absolute and disclosure may not be ordered, *without regard to relevance, necessity, or any particular circumstances peculiar to the case*." *Costco Wholesale Corp. v. Superior Ct.*, 47 Cal. 4th 725, 732 (1997) (quoting *Gordon v. Superior Ct.*, 55 Cal. App. 4th 1546, 1557 (2009)); *see also Rhone-Poulenc Rorer*, 32 F.3d at 864 ("While the attorney's advice may be relevant to the matters in issue, the privilege applies as the interests it is intended to protect are still served by confidentiality.").

The Court should refuse to compel production of privileged communications concerning compliance with Reveal's ethics policy.

### *Reveal Did Not Waive Privilege by Asserting "Boilerplate" Objections*

Finally, Plaintiffs argue that Reveal waived attorney-client privilege and work-product protection because Reveal raised its objections' "in boilerplate fashion." *Supra* at 1. This, too, is wrong.

To begin with, Reveal's objection was not "boilerplate." Reveal objected to the request "on the grounds that it seeks information protected by the attorney-client privilege and/or the attorney work product doctrine." Dkt. 146 at 12. To support this objection, it cited *Liberty Lobby*, 838 F.2d at 1302, which holds that pre-publication communications between libel counsel and editors or reporters are privileged. To the extent Plaintiffs fault Reveal for failing to provide a privilege log, there was no need for such a log because the request was for an entire category of documents that Plaintiffs *admit* are privileged (and for which claims Reveal waived the privilege). Dkt. 146 at 12. Requiring a log in such circumstances is unnecessary and burdensome. *See* Fed. R. Civ. P. 26, advisory committee's note to 1993 amendment (discussing privilege, "[d]etails concerning time, persons, general subject matter, etc., may be appropriate if only a few items are withheld, but may be *unduly burdensome when voluminous documents are claimed to be privileged or protected, particularly if the items can be described by categories*") (emphasis added).

In any event, Plaintiffs cite no authority holding that a boilerplate objection would waive attorney-client privilege. Nor could they, as the Ninth Circuit has held the opposite. *Lofton v. Verizon Wireless (VAW), LLC*, 308 F.R.D. 276, 282 (N.D. Cal. 2015) (citing *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Ct.*, 408 F.3d 1142, 1149 (9th Cir. 2005)). Thus, in *Lofton,* this Court noted that "timely boilerplate objections" are insufficient to waive privilege unless other factors, outside the objection's form, favor finding waiver. *Id.* Even if Reveal's objection were "boilerplate," this is insufficient to waive the attorney-client privilege.

For all these reasons, the documents Plaintiffs seek are privileged, and the Court must deny the motion to compel.

Magistrate Judge Jacqueline Corley
October 22, 2018
Page 11

                Respectfully submitted,

                NELSON MULLINS LLP
                /s/
                Cory Manning

                Attorney for Plaintiffs
                PLANET AID, INC. and LISBETH THOMSEN

cc:  counsel for Defendants