February 15, 2019

Honorable Jacqueline Scott Corley
United States District Court
Northern District of California
450 Golden Gate Avenue, 15th Floor
San Francisco, CA 94102

      Re:    *Planet Aid v. Center for Investigative Reporting*
            Civil No. CV 17-03695

      The parties to the above-captioned case submit this letter brief per the Court's January 17, 2019 order.  Dkt. 194.  This letter brief addresses Defendants' redaction of certain material from an interview produced to Plaintiffs during discovery.

**Defendants' Letter Brief on Unpublished Editorial Materials**

      Plaintiffs ask the Court to compel production of portions of interviews that Defendants withheld under the qualified privilege applicable to reporters' work product that is unpublished and unrelated to any of the allegedly defamatory statements (the "UE privilege," a shorthand reference to "unpublished or unrelated editorial privilege").  For the following reasons, the Court should decline Plaintiffs' request.  If needed, Defendants are willing to provide the unredacted materials to the Court for in camera review.

      ***Background.***  In discovery, Defendants have produced redacted versions of reporters' interviews with Harrison Longwe, a former controller at DAPP Malawi.  Portions of those interviews concern facts supporting the allegedly defamatory statements in the articles challenged by Plaintiffs' First Amended Complaint ("FAC")—namely, facts showing that Plaintiffs defrauded and misled various government agencies, such as the USDA.  Defendants have produced those portions of the interviews to Plaintiffs.  Other portions, however, relate to stories *separate and distinct from those that are referenced in and which are the basis for the FAC*, which Defendants were investigating or considering investigating but never published ("the UE material").  Smith Decl. ¶ 6.  Defendants redacted this material from the produced version of the interviews, citing the UE privilege.  Forrest Decl. Ex. A (Jan. 9, 2019 email from Forrest to Rosenthal).[1]

      Under established Ninth Circuit precedent, a qualified privilege attaches to journalists' UE material because "routine court-compelled disclosure of research materials poses a serious threat to the vitality of the newsgathering process."  *Shoen v. Shoen*, 48 F.3d 412, 416 (9th Cir.

---

[1] Plaintiffs contend that Defendants' refusal to describe the specific nature of the information they are withholding negates their claim of privilege.  This makes no more sense than requiring a party asserting the attorney-client privilege to describe the advice at issue.  Doing so would subvert the purpose of the privilege and could risk waiver—Defendants need only provide enough specificity for the Court to rule on whether privilege attaches to a document.  *See Clarke v. Am. Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992).  The Court always has the discretion to view the specific redacted material in camera, without disclosing it to Plaintiffs.  *Id.*

1995).  Specifically, these threats include "[t]he threat of administrative and judicial intrusion into the newsgathering and editorial process; the disadvantage of a journalist appearing to be an investigative arm of the judicial system or a research tool of government or of a private party; the disincentive to compile and preserve non-broadcast material; and the burden on journalists' time and resources in responding to subpoenas."  *Id.* (internal citations and quotations omitted).

To decide whether a party may pierce a reporter's privilege claim, the Ninth Circuit has articulated a three-factor test.  Plaintiffs must show that the information they seek is (1) "clearly relevant to an important issue in the case," (2) "unavailable despite exhaustion of all reasonable alternative sources," *and* (3) "noncumulative."  *Id.* at 416.  "The test [for piercing the reporter's privilege] must therefore ensure that compelled disclosure is the exception, not the rule."  *Id.* Plaintiffs have come nowhere close to satisfying any factor of this test, let alone all of them.[2]

**UE material is irrelevant to this case.**  First, the UE material is not relevant to any issue in this case because none of it concerns the statements Plaintiffs claim are defamatory.  *See* Dkt. 78 (Third Amended Complaint) ¶¶ 187–244.  As such, the material has no bearing on Plaintiffs' claims or Defendants' defenses even if it pertains to Plaintiffs or issues related to Plaintiffs.

Courts have declined to compel production of UE material on the theory that it might be relevant to issues other than the truth or falsity of published statements.  *See Shoen*, 48 F.3d at 416 (party seeking to overcome qualified privilege must show "actual relevance; a showing of potential relevance will not suffice").  In a context much like this one, a defamation plaintiff claimed it needed UE material because it could have been relevant to defendants' state of mind for showing negligence or malice.  *Tavoulareas v. Piro*, 93 F.R.D. 35, 43 (D.D.C. 1981).  After weighing the parties' interests, the court declined plaintiffs' request, explaining, "After all, this lawsuit, as with all libel suits, is about information [defendant] chose to publish, not information defendants elected to leave, for whatever editorial reasons, within the confines of the newsroom."  *Id.*; *see also, e.g.*, *Porter v. Dauthier*, 2014 WL 6674468, at *5-6 (M.D. La. Nov. 25, 2014) (refusing to compel non-party reporter to produce notes of conversations with libel defendant, even though plaintiff claimed material would show defendant selectively chose what to tell reporter).

The same is true in this case: Plaintiffs' lawsuit is based on what Defendants published, not what they left in the newsroom.  The UE material is not relevant to Plaintiffs' case, and

---

[2] Plaintiffs claim that *Shoen* does not or should not apply here because the reporters asserting the privilege are parties to the case.  Plaintiffs are wrong, as a judge of this Court held very recently in applying *Shoen* to evaluate party-journalists' assertion of the reporters' privilege.  *See Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 2018 WL 2441518, at *13 (N.D. Cal. May 31, 2018).  Plaintiffs also contend that the Supreme Court's decision in *Herbert v. Lando*, 441 U.S. 153 (1979), suggests that the Court either (a) should not apply *Shoen*, or (b) should adopt other, narrower, approaches from other jurisdictions.  *Infra* at 2.  Plaintiffs are wrong again.  The Ninth Circuit cited *Herbert* each time it considered the *Shoen* cases.  48 F.3d at 414 (*Shoen II*, decided in 1995); 5 F.3d 1289, 1292 (9th Cir. 1993) (*Shoen I*).  If the Ninth Circuit believed *Herbert* required a more narrow approach than the one the Ninth Circuit used—*twice*— it would have said so.  It did not.

Plaintiffs' speculation about what the UE material *might* reveal is not sufficient to carry their burden.

Plaintiffs contend that the material at issue is relevant for two reasons: (1) it could explain why Mr. Longwe agreed to submit declarations in support of Defendants' anti-SLAPP motion, and (2) Mr. Longwe was a key source. *Infra* at 1–2. Neither argument is apposite.

*First*, Mr. Longwe agreeing to submit declarations has nothing at all to do with whether Defendants are liable for any of the statements at issue in this case. Also, Plaintiffs' suggestion that the redacted material involves Defendants persuading Mr. Longwe to do anything is nothing but speculation—particularly because at all relevant times when Defendants spoke with Mr. Longwe, including after Plaintiffs filed their complaint, Defendants were investigating stories. In ruling on privilege and in camera review as to a different privilege, the Supreme Court decried these types of speculative demands for privileged material, explaining, "There is no reason to permit opponents of the privilege to engage in groundless fishing expeditions, with the district courts as their unwitting (and perhaps unwilling) agents." *United States v. Zolin*, 491 U.S. 554, 571 (1989).

In any event, Plaintiffs' speculation and innuendo about Defendants' conduct toward sources amount to a sideshow. The Ninth Circuit has ruled that argument about investigative reporters' tactics is irrelevant to whether those reporters are liable for what they publish. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 982 (9th Cir. 2002) (holding that if published story "does not contain actionable defamation, the 'target has no legal remedy even if the investigatory tactics used by the network are surreptitious, confrontational, unscrupulous, and ungentlemanly.'") (quoting *Desnick v. ABC*, 44 F.3d 1345, 1355 (7th Cir. 1995)). Defendants stand behind their reporting conduct, which was proper, but it is irrelevant to this case.

*Second*, the fact that Mr. Longwe is a key source for the published stories does not make his every statement relevant to this case. He was a source for other reporting that Defendants did not publish. Smith Decl. ¶ 6. His statements about those unpublished stories are not relevant to the stories Defendants published, which are the only ones at issue here. *See Tavoularas*, 93 F.R.D. at 43.

Separately, Plaintiffs argue that the evidentiary rule of completeness mandates disclosure of the remaining sections of the recording. *Infra* at 3; Fed. R. Evid. 106. The rule of completeness is meant to avert "misunderstanding or distortion" created when a party introduces just part of a document, potentially depriving it of relevant context. *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 172 (1988). The rule does not compel disclosure here. For one reason, as noted above, the redacted material here is not related to Defendants' published stories—so there is no way it could deprive the unredacted material of pertinent context. *See United States v. Vallejos*, 742 F.3d 902, 905 (9th Cir. 2014) (holding that rule of completeness does not apply if redacted segment of document does not take the unredacted segments out of context). For another reason, Plaintiffs' argument would completely gut all privileges, not just UE, by compelling disclosure of redacted material just because some parts of a document were unredacted. Plaintiffs cite nothing to suggest that the rule of completeness obviates evidentiary privileges.

Similarly, Plaintiffs assert that the "fairness doctrine" requires disclosure of the UE material here—*i.e.*, that Defendants "raise[] a claim which in fairness requires disclosure of the protected communication." *Infra* at 3; *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992). Defendants have not done so. None of the redacted material relates to Plaintiffs' claims about Defendants' reporting, and Defendants are not relying on any redacted material for their defenses. Plaintiffs speculate, again, that Defendants have put the redacted communications at issue because Defendants claim to have acted appropriately toward sources. *Infra* at 3–4. But again, this speculation is legally irrelevant because investigatory tactics do not bear on liability for published reporting. *Van Buskirk*, 284 F.3d at 982.

**Plaintiffs' request is premature.** Second, although Plaintiffs' failure to show relevance alone is dispositive, Plaintiffs' request also fails because Plaintiffs have not exhausted all reasonable alternative sources. *Shoen*, 48 F.3d at 417. Anti-SLAPP discovery is ongoing, including discovery about Mr. Longwe. Defendants are working diligently to respond to Plaintiffs' various requests. But much remains to be reviewed and produced. Further, Plaintiffs have not served a subpoena on Mr. Longwe, taken his deposition, or asked anyone else for materials relating to him—all of which they must do to exhaust alternative resources. *E.g., Rogers v. Home Shopping Network, Inc.*, 73 F. Supp. 2d 1140, 1145 (C.D. Cal. 1999) (denying motion to compel disclosure of confidential source information because requester failed to exhaust alternative sources, even though requester had taken nine depositions).

As the Court has explained, the point of discovery right now is to get Plaintiffs what is essential for Plaintiffs to respond to Defendants' anti-SLAPP motion. Nov. 9, 2018 Hr'g Tr. at 8–23. The Court has recognized the difficulty of Plaintiffs piercing any qualified privileges at this stage, telling Plaintiffs, "I don't know how you can make your showing before you get all the other stuff that you actually needed." *Id.* at 90:12–14. Until further discovery is complete, and even assuming the UE material is relevant, it is impossible for Plaintiffs to show they are entitled to obtain privileged material.

**Plaintiffs cannot show non-cumulativeness.** Third, Plaintiffs cannot show non-cumulativeness. As explained above, the UE material in question is irrelevant to this case, so it logically cannot be either cumulative or non-cumulative of relevant evidence. And even if the UE material were relevant, it is impossible at this early stage for Plaintiffs to make *any* showing of non-cumulativeness because discovery is far from complete. *See id.* (noting prematurity of requests to pierce qualified privilege without more complete discovery). This Court has denied discovery requests from parties where discovery was not relevant and even possibly cumulative. *Vietnam Veterans of Am. v. CIA*, 2011 WL 4635139, at *4 (N.D. Cal. Oct. 5, 2011) (Corley, J.); *see also, e.g.*, *Oculu, LLC v. Oculus VR, Inc.*, 2015 WL 1926646, at *2 (N.D. Cal. Apr. 28, 2015). It should do so again here.

**Protecting Defendants' UE material is uniquely important here.** As an additional concern, Defendants fear that being forced to produce this UE material will undermine their stated mission as investigative journalists: to "hold the powerful accountable and reveal government fraud and waste of taxpayer funds." Reveal – About Us, at https://www.revealnews.org/about-us/ (last accessed Jan. 21, 2019).

4

As the Ninth Circuit has explained, forcing Defendants to disclose this UE material to Plaintiffs—without Plaintiffs having satisfied every element of the *Shoen* test—would threaten the First Amendment values underpinning Defendants' work. *Shoen*, 48 F.3d at 416; *accord, e.g.*, *von Bulow by Auersperg v. von Bulow*, 811 F.2d 136, 142 (1st Cir. 1987) ("[The journalist's qualified First Amendment privilege] emanates from the strong public policy supporting the unfettered communication of information by the journalist to the public."). Consequences of not fully protecting journalists like Defendants could, for example, permit litigants to use discovery of UE material to interfere with investigations of unpublished stories—including threatening or discouraging sources from providing information. *See Shoen*, 48 F.3d at 416.

***The proper test for in camera review.*** As the Supreme Court set out in *Zolin*, 491 U.S. at 565, 572, and the Ninth Circuit reiterated in *In re Grand Jury Investigation*, 974 F.2d 1068 (9th Cir. 1992), in the context of an attempt to pierce attorney-client privilege, in camera review is only appropriate where the party seeking to pierce the privilege makes an initial showing that the privilege may not apply. "[T]he party opposing the privilege" must put forth "a factual basis sufficient to support a reasonable, good faith belief that *in camera* inspection may reveal evidence that information in the materials is not privileged." *In re Grand Jury Investigation*, 974 F.2d at 1075. "If the party makes such a showing, the decision whether to conduct the review rests within the discretion of the district court." *Id.*

Here, in camera review is not warranted because Plaintiffs have not made the requisite showing. Plaintiffs, however, urge the Court to reverse the burden of production and offer an entirely new and different test for the Court to apply during in camera review. *Infra* at 5. Under Plaintiffs' proposal—crafted without citing any case law—the Court would undertake in camera review only after finding that Plaintiffs have failed to establish a basis for piercing Defendants' privilege. *Id.* At that point, according to Plaintiffs, the Court would balance multiple factors unrelated to the redacted material itself and untethered to any case law. *Id.* Then, presumably— as Plaintiffs do not say what the point of their test is—the Court could reconsider its predicate ruling about Plaintiffs' failure to carry their burden.

Plaintiffs' proposed test makes no sense, and it is not the law. If Plaintiffs cannot meet their initial burden of putting forth "a factual basis sufficient to support a reasonable, good faith belief that *in camera* inspection may reveal evidence that information in the materials is not privileged," in camera review is not appropriate, and the material should not be disclosed. *In re Grant Jury Investigation*, 974 F.2d at 1075. In camera review of privileged material is not an opportunity for Plaintiffs to get another shot at obtaining privileged material.

\*        \*        \*

Plaintiffs' request for privileged UE material is improper under every element of the *Shoen* test. The Court should deny it.

5

**Plaintiffs' Letter Brief on Unpublished Editorial Materials**

Defendants have the burden of establishing that they are entitled to withhold information based on a claim of privilege. See, e.g. Tr, at 9 (hearing on Jan. 17, 2019, in which counsel answered in the affirmative in response to the statement: "it's your burden, in any event, isn't it, Mr. Forrest, to show that the privilege applies."). Instead of satisfying that burden, Defendants try to shift the burden to the Plaintiffs by simply characterizing redacted material as "unpublished editorial" information without any further details or factual basis. As explained below, (1) Defendants have not even established that the material related to "editorial information" or "newsgathering; and (2) even if Defendants had made such a showing, under the balancing discussed below, disclosure should be ordered.

***Background***: By way of background, one of the key sources alleged by Defendants to support their reporting about Planet Aid and Lisbeth Thomsen is Harrison Longwe. Attached as Exhibit A-C is are excerpt from three publications identifying Longwe as a primary sources.

Longwe had resigned from DAPP Malawi in early 2015, prior to the publications. He had been interviewed multiple times by Defendants in 2015, prior to publication of the articles about Planet Aid and the USDA Program. He repeatedly complained about having been contacted by Defendants, by reporters from the BBC, and by Plaintiffs' counsel. Even before the initial publications appeared in March, 2016, Longwe complained to Defendant Smith: "I really appreciate if you also gave me space for my privacy. I have given you guys a lot of information, even some of the questions you are asking me now I already gave you answers to. I have asked you time and again how you can protect my privacy you have not come clear on this." Rosenthal Decl. Ex. E at CIR 39247. When the story was released, Longwe became "rather spooked" tht his name had been made public. *Id.*, Ex. F at CIR 43539. Longwe also complained that another reporter was "belittling" him in her questioning. *See id.*, Ex. L at CIR 46479.

Based on Longwe's prior statements, it was perfectly natural that Smith would be concerned once Longwe heard that a lawsuit had been filed in August, 2016. Smith called Longwe on October 20, 2016. Obviously intent on putting Longwe's mind at ease about the lawsuit, Smith advied him, inter alia, that "we've been sued and . . . the attorneys feel pretty comfortable about it." See Rosenthal Decl. Ex. D, at 1. That statement was followed by over a minute of conversation, which was redacted, as was another seven minutes later on, *id.*, at 2, which redactions are at issue in this dispute. Defendants have refused to state anything about the subject matter of the redactions, other than that they qualify as "unpublished editorial information." They even refuse to state that the information redacted from the tape relates to some subject other than Plaintiffs or the USDA Program. See Rosenthal Decl., Ex. H.

***Defendants fail to sustain their burden of showing that the information is even privileged as unpublished editorial information or essential to the "newsgathering" function.***
As explained above, the burden of establishing a privilege is on the Defendants. *See von Bulow by Auersperg v. von Bulow, 811 F.2d 136, 144 (2d Cir. 1987)* (" the individual claiming the privilege must demonstrate, through competent evidence, the intent to use material—sought, gathered or received—to disseminate information to the public and that such intent existed at the inception of the newsgathering process. This requires an intent-based factual inquiry to be made by the district court."). Significantly, a broad privilege protecting editorial processes was

1

rejected by the Supreme Court in *Herbert v. Lando*, 441 U.S. 153 (1979)  ("it is plain enough that the suggested privilege for the editorial process would constitute a substantial interference with the ability of a defamation plaintiff to establish the ingredients of malice as required by *New York Times."*). While some courts following *Herbert* have allowed a qualified privilege, they have done so in the context of a claim for discovery other than from journalists who are parties to the suit.  The court in *Solarex Corp. v. Arco Solar, Inc.* 121 F.R.D. 163, 172, 73 (E.D.N.Y. 1988), summarized these cases in holding that "[i]n the decade since *Herbert*, . . . courts have distinguished that context from circumstances in which litigants have sought from *non*-party journals or journalists discovery that intrudes upon the editorial process."  *Id.* (emphasis in original).  Cases cited by Defendants in support of the application of the privilege confirm the correctness of the *Solarex* court's conclusion.  For instance, *Shoen v. Shoen*, 5 F.3d 1289 (9th Cir. 1993) (cited by Defendants) involved a suit by a father against two sons for defamation, which resulted in a subpoena to a non-party journalist, Ronald Watkins).  See also *Porter v. Dauthier*, 2014 WL 6674468, at *5-6  (M.D.La. Nov. 25, 2014) (also cited by Defendants) (subpoena to non-party reporter); *von Bulow*, *supra*.

In the one case cited by them involving a request for discovery from a journalist defendant, *Tavoulareas v. Piro*, 93 F.R.D. 35 (D.C. 1981), the record established that the disclosure related to planned or proposed articles that never reached fruition, contrary to the situation here, where the record offers no basis for any indication that there was either a planned or proposed article involving Longwe).  Here, there is reason to doubt that the redacted information is even "unpublished editorial information" under the most liberal standard. *See Tovoulareas, supra.* (citing authority for the proposition that the "lawsuit, as with all libel suits, is about information [defendant] chose to publish, not information defendants elected to leave, ***for whatever editorial reasons, within the confines of the newsroom***." (emphasis added).   No case has been cited where there was absolutely no showing that any editorial decision or process was at work regarding material which was the subject of a claim of privilege, and where the Defendants do not dispute that the material related to the same subject as those discussed in the publications at issue, namely Plaintiffs and/or the USDA program.

Defendants will no doubt argue that Longwe's status as a source was sufficient.  But that is true only if the particular call was made to Longwe in order to obtain information from him which Smith intended to make public in a future article.  See *von Bulow by Auersperg v. von Bulow*, at 143 (privilege only applies to persons "with an intent to disseminate information to the public").  No such showing has been made here.  In fact, it is clear from the remainder of the tape recording that the "newsgathering function" had ended when the publications were issued.  The particular call in question occurred six months after the mention of Longwe in the Podcast or May 23, 2017 article, and two months after the lawsuit was filed, in August, 2016.  It is apparent from the context of the call that Smith was calling Longwe because Smith knew that Longwe had been "spooked" by having his name associated with the article, but  was nevertheless going to be critical to the defense of the lawsuit, and second, Smith knew that Longwe had a propensity to complain and might well end up refusing to assist in the defense, or even worse, turn on Defendants.  That explains why Smith went out of his way to tell Longwe that CIR lawyers believed that Defendants had a strong case, and that a prosecutor in Brazil had commented about a third party, supposedly supported their reporting.  See Ex. D at 1.

Because no showing has been made that the communications with Longwe related to any future article or to the editorial process, Defendants have failed to sustain their burden.

***Defendants fail to offer a balancing of factors.*** Defendants have misstated the appropriate test even if a qualified privilege were shown to exist. While Defendants claim that a failure to show any of the factors set forth in their letter militates in favor of non-disclosure, courts apply a balancing test regarding each of the factors set forth in the Defendants' letter.

***Defendants role in the lawsuit as a party is entitled to great weight***. Even in the rare case allowing the privilege to reach journalists who are parties to a lawsuit, the qualified journalists' privilege is entitled to less protection. The court in the very case cited by Defendants, *Tavoulareas v. Piro*, 93 F.R.D. 35 (D.D.C. 1981), observed:

> Although other decisions indicate that a journalist's first amendment interests are entitled to weight in ruling upon a litigant's motion to compel, the decisions that have afforded the most extensive protection to the editorial or newsgathering processes are non-libel actions in which the journalist or newspaper protesting discovery has not been a litigant.

93 F.R.D. at 41. The court in *Tavoulareas* added: "In the context of civil discovery between a libel plaintiff and a media defendant, however, the protection afforded a journalist's editorial or newsgathering activities has not been nearly as extensive." *Id. Here, of course, discovery is not sought from a non-party journalist; discovery is being sought from a party which has injected the material in question into the case by claiming that Longwe was one of their most important sources, and by offering repeated declarations from Longwe.*.

***Relevance:*** Defendants next argue that no showing has been made that the material is even relevant. While claiming that Plaintiffs have not made the required showing, Defendants themselves made communications with Longwe relevant by representing that they relied upon him in publishing a story about Plaintiffs and the USDA Program, and now refusing to deny that the redactions relate to the same subjects. See Rosenthal Decl. Ex. H.

Under the rule of completeness disclosure should be ordered. See Fed.R.Evid. 106 ("[i]f a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part — or any other writing or recorded statement — that in fairness ought to be considered at the same time."). *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 171-72 (1988). Defendants have no right to engage in massive surgery on one of the conversations, redacting almost nine minutes out of a fifteen minute recording. See Rosenthal Decl., Ex. D. Even if a qualified privilege had been shown to exist, such massive redactions are inappropriate under the fairness doctrine. *See, e.g.*, *Columbia Pictures Television, Inc. v. Krypton Broadcasting of Birmingham, Inc.*, 259 F.3d 1186, 1196 (9th Cir. 2001) ("Where a party raises a claim which in fairness requires disclosure of the protected communication, the privilege may be implicitly waived"; *Id*. at 1196 (quoting *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir.1992) (citing *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir.1991)). *See also Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003) (citing Christopher B. Mueller & Laird C. Kirkpatrick, Evidence: Practice Under the Rules § 5.30, at 549 (2d ed.

1999) (holding that even firmly held privileges may be "impliedly waived where the client asserts a claim or defense that places at issue the nature of the privileged material.").

Defendants themselves have placed their contacts with sources in issue by emphasizing over and over again how completely fair, open and transparent they were in dealing with witnesses, and further, how in none of those communications did they ever say or do anything that could be construed as unfairly trying to persuade sources to cooperate with them. See, e.g., ECF 125 (Smith Decl.) ¶¶ 22, 28., 44 (explaining contact, in particular with Longwe); ECF 123 (Decl. of Mwiza Nkata ¶¶ 5-7 (explaining his interaction with Longwe).  Particularly in light of Longwe's repeated reticence to talk with Defendants, other journalists working with Defendants or Plaintiffs, Defendants are entitled to know what transpired between Smith and Longwe which ultimately led to Longwe submitting two declarations in this case. See, e.g, Dkt. No. 116; Longwe Supp. Decl. (attached as Exh. I To Rosenthal Decl.).  The second declaration makes the conversation in October, 2016 particularly relevant for three reasons.  First, having just informed plaintiffs' counsel in August that he was unaware of anything that was "fraud per se," see Ngunde Decl., the conversation with Longwe was particularly relevant in assessing what made him change his mind and agree to submit two declarations in support of the anti-SLAPP motion. The Court has already heard evidence that Defendants or their agent brought up the False Claims Act with witnesses, telling one witness to "come on strong" to share in any recovery.  Plaintiffs also anticipate obtaining additional evidence in discovery supporting Phiri's declaration about individuals having been offered cash or other inducements.   Any communications with Longwe are critical to an understanding what was motivating Longwe to provide two declarations in support of the anti-SLAPP motion, particularly after complaining about having become involved.

Finally, Defendants view as to "relevance" is grossly distorted.   For instance, they determined that Innocent Chitosi was relevant, and turned over a tape recording of his interview even though they never identified him in any publication, he had never worked for Planet Aid, he had nothing to do with the USDA program (particularly since he left DAPP Malawi six years prior to the start of the USDA Program) and he had not even been a member of the Teachers Group.  It is hard to imagine how Defendants can reasonably argue that communications with someone who they concede to be one of their key sources, who was identified both in text and by photograph in the publications is irrelevant when they allege that he provided information about all three subjects:  Planet Aid, the USDA and the Teachers Group, and Defendants refuse to state that the disclosure does not relate to these same subjects.

***The request is ripe and discovery cannot be obtained elsewhere.***  Defendants next argue that the request is premature because we have not tried to obtain the information from sources other than Defendants.  But Defendants refuse to identify anyone who was present at the conversation other than Defendant Smith and Harrison Longwe, preventing Plaintiffs from pursuing alternate sources for the information.  Longwe has refused to even communicate with plaintiffs or their counsel after Defendants sent out a mass mailing advising witnesses that they do not have to talk with Plaintiffs or their counsel. See *id.*, Ex. J, K.

Defendants also argue that we have not tried to subpoena the information.   But they know full well that this Court's subpoena authority does not extend to Malawi.   In fact, Malawi is not even a signatory to the Hague convention on obtaining evidence abroad.   See https://www.hcch.net/en/instruments/conventions/status-table/?cid=82.  While we will pursue

compulsion for Longwe to answer questions, that process is likely to result in substantial delay. In short, there is no other avenue for obtaining the information in a timely fashion.

***Non-cumulativeness.*** Defendants next argue that there has been no showing that the redacted information is non-cumulative. *See supra.* Defendants argue that the information is neither cumulative nor non-cumulative. Any such position takes sophistry to a new level: if the information is cumulative of other information previously disclosed by Defendants, then there has been a waiver, and no need basis for asserting privilege. By contrast, if the information was not the subject of any prior disclosures, then that would satisfy any possible burden of showing that it is non-cumulative.

***Defendants self-serving statements about its important role.*** Defendants final argument is that its role is too important to allow disclosure of the redacted material. Defendants argue that the fear of disclosure will "undermine their stated mission as investigative journalists: to 'hold the powerful accountable.'" Defendants fail to offer any clue as to why this statement is true, or why disclosure would interfere with that mission.

In fact, the contrary is true: disclosure will ensure accountability. If disclosure helps demonstrate that Defendants engaged in misconduct, it would assist this process in their being held accountable. If, as Plaintiffs allege, they were responsible for misreporting the facts, they would not deny that they should be held accountable both for jeopardizing the reputations of the Plaintiffs but also the valuable work of the USDA.

Even more directly, disclosure would ensure that Defendants live up to their stated goal of ensuring "transparency." *See* https://www.revealnews.org/ethics-guide/. Defendants explicitly tell readers that in the name of "transparency" they "provide raw data and documentation for public consumption." Here, we are not even requiring disclosure for public consumption, but would accept disclosure under an existing protective order.

***In camera inspection should be a last resort.*** At oral argument the Court inquired whether an in camera inspection is appropriate. We believe that in camera review is appropriate only if the Court determines that disclosure is inappropriate under the above analysis. If the Court decides to listen to the recording, we would ask the Court to balance the following factors: (l) Defendant Smith is both a party to conversation and to the instant lawsuit; (2) Longwe is identified as a key source by Defendants, and Defendants expressly claimed that they relied on him in publishing the articles and publications; (3) Longwe himself has submitted two declarations in this case; (4) Defendants have failed to offer any basis for concluding that the communication with Longwe relates to anything other than the Plaintiffs, the USDA Program and/or the Teachers Group, all of which constitute the subjects of the publications at issue; (5) the massive nature of the redactions render it unfair to allow Defendants to rely on Longwe; (6) Defendants have discouraged sources, evidently including Longwe, from cooperating with Plaintiffs through written communications; and (7) there is no way to obtain the information from any other source, with the exception of Longwe, who is beyond the Court's subpoena power and who can be required to answer questions only through Letters Rogatory. Finally, any communications between Defendants and any source, including Longwe, are particularly relevant as there has already been evidence that Defendants or their agent, Ngwira, raised the prospect of the False Claims Act with sources and told one witness to "come on strong," and

5

Defendants anticipate introducing additional evidence that witnesses were paid money or offered other inducements to obtain their assistance.

Consequently, disclosure should be ordered.

*       *       *

Respectfully submitted,

*/s/ Ethan Forrest*
Ethan Forrest


Attorney for Defendants
REVEAL FROM THE CENTER FOR
INVESTIGATIVE REPORTING;
MATT SMITH; and AMY WALTERS