**Pages 1 - 14**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Maxine M. Chesney, Judge

| | |
|---|---|
| PLANET AID, INC., a )<br>Massachusetts Corporation which)<br>has its principal place of )<br>business in Howard County, )<br>Maryland; et al., )<br>                       )<br>      Plaintiffs, )<br>                       )<br>  VS.                  )<br>                       )<br>REVEAL, CENTER FOR )<br>INVESTIGATIVE REPORTING; et )<br>al., )<br>                       )<br>      Defendants. )<br>                       ) | **NO. C 17-03695 MMC** |

San Francisco, California
Friday, September 6, 2019

**TRANSCRIPT OF PROCEEDINGS**

**APPEARANCES**:

For Plaintiffs:
        NELSON MULLINS
        280 Park Avenue - 15th Floor
        New York, New York  10017
    **BY: SAMUEL ROSENTHAL, ATTORNEY AT LAW**

For Defendants:
        COVINGTON & BURLING LLP
        415 Mission Street
        San Francisco, California  94105
    **BY: ETHAN FORREST, ATTORNEY AT LAW**

      **(APPEARANCES CONTINUED ON FOLLOWING PAGE)**

REPORTED BY:  Jo Ann Bryce, CSR No. 3321, RMR, CRR, FCRR
             Official Reporter

```
 1   APPEARANCES:   (CONTINUED)

 2   For Defendants:
                              DAVIS WRIGHT TREMAINE LLP
 3                            505 Montgomery Street - Suite 800
                              San Francisco, California  94111
 4                      BY:   THOMAS R. BURKE, ATTORNEY AT LAW

 5

 6

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1   Friday - September 6, 2019                           9:02 a.m.
 2                        P R O C E E D I N G S
 3                             ---oOo---
 4        THE CLERK:  Calling Civil Case Number 17-3695,
 5   Planet Aid versus Reveal.
 6      Will counsel please step forward and state your
 7   appearances for the record.
 8        THE COURT:  Let's start with plaintiffs' counsel.
 9        MR. ROSENTHAL:  Samuel Rosenthal from Nelson Mullins
10   representing the two plaintiffs.
11        THE COURT:  Thank you.
12        MR. FORREST:  Ethan Forrest, Covington & Burling, for
13   the defense.
14        MR. BURKE:  Thomas Burke of Davis Wright Tremaine also
15   for the defense.
16        THE COURT:  Okay.
17        MR. BURKE:  Good morning, Your Honor.
18        THE COURT:  Good morning.
19      You're back here on this question of so-called
20   clarification.  I'll take it as a motion for clarification.
21   I'm not going to find it's a, you know, disguised motion for
22   reconsideration.  It may be the motivation in part but, all
23   right, they have a vehicle and it does seek clarification.  And
24   I suppose one could say there's some ambiguity in the order,
25   although I don't think there actually is.
```

1   Also, as pointed out, if one is going to move for
2   sanctions, it's supposed to be in a separately filed document.
3   So both of you are relying on procedural deficiencies to make
4   your various positions:  One that should have been a motion for
5   reconsideration and no leave was granted; and the other, well,
6   if you're seeking sanctions, you have to file a separate
7   motion.  So you're both relying on the local rules and there we
8   are.
9        All right.  So I'm going to look at the merits of this,
10  and just to clarify it, this remark that I made was essentially
11  something I might say in any case.  If the case is going
12  forward anyway, usually it's because it's going forward against
13  some other party.  This is a weird case.  We have jurisdiction
14  here.
15       Ordinarily when someone is trying to do discovery to
16  determine whether or not they can make out a case for personal
17  jurisdiction, it's because someone has said there's no
18  jurisdiction in the court in which the case is filed.  That's
19  not what happened here.
20       There is no problem with the case going forward in this
21  district.  It's that the plaintiff for some obscure reason
22  wants to go back to Maryland.  Frankly, I don't think the
23  anti-SLAPP law is all that much less restrictive in Maryland.
24  The main point of anti-SLAPP, frankly, is not to do discovery
25  and the federal courts, at least the Ninth Circuit, has said,

"No, no.  That's procedural."  And so in federal court you get discovery and the whole benefit of the anti-SLAPP that was designed for state court went down the drain.

So I don't even know why people really bother that much with it.  It's just kind of an early summary judgment motion.  But, anyway, leaving all that aside, this is a weird situation because the case is clearly going forward on everything.

But let's say it wasn't, the odd situation is we just had a regular case and you have maybe a couple of defendants.  No problem, personal jurisdiction.  One defendant, maybe there's a problem but has more money.  Whatever, the plaintiff wants him here.  And there's a jurisdictional issue raised, and I might say, "Okay.  The case is going forward against these other people.  If something crops up during the course of that discovery and it helps you with jurisdiction, come on back if you can and make that point."

That's all I was saying here.  When jurisdictional discovery was requested, the plaintiff didn't come in and say, "Just give us discovery," and then leave it essentially to the magistrate judge or whoever it was overseeing discovery to figure out whether any particular inquiry being made was relevant.

Here the plaintiff came in and said, "This is what we want:  A, B, C, and D."

I said, "Okay.  B, C, and D are no good.  You can do A."

1  All right.  You did A.  And then I said, "Okay.  That didn't
2  help you."
3       I hate to see you getting into a fight about, in the
4  course of discovery, what box a particular inquiry goes into
5  where somebody starts arguing, as apparently the defendants
6  were here at some point, "You can't ask that question.  It only
7  goes to jurisdiction."
8       I don't know, think creatively while you're going through
9  all this and maybe you'll come up with something, but thus far
10 even what you've essentially tried to put me -- you know, put
11 before me as really a new motion doesn't really seem to cut it.
12      I'll just ask you this question because if you were going
13 to come back and say you've got more stuff and you want to
14 actually reconsider, we may as well look at it quickly right
15 now.
16      You seem to be focusing now on this NBC broadcast; is that
17 right?
18           **MR. ROSENTHAL:**  Well, there are two things,
19 Your Honor.  One is there's an executive director named Susanne
20 Reber.  When Your Honor ruled denying retransfer, there was a
21 declaration that she didn't have anything to do with articles
22 after she moved back to Maryland.  We believe that's not true.
23 She is important.  But the NBC is, we think, critically
24 important as well.
25           **THE COURT:**  All right.  Well, just because somebody

1  is, you know, in Maryland -- I mean, the judge in Maryland --
2  and, of course, they're looking at it under Maryland law, which
3  may be a little different than here in some respects, but
4  generally what the judge was saying is just because somebody
5  happens to be in Maryland when you interview them, just because
6  somebody happens to be in Maryland and works for the company,
7  it's not really enough.
8      And what you're trying to do is say to me, the whole thing
9  is so artificial, what you're saying to me is I ought to put
10 myself in the shoes of the Maryland judge and decide whether
11 there's enough cause for me to reconsider my order transferring
12 the case here, and I'm supposed to figure out what that guy was
13 thinking when he referred the case to us out of Maryland.
14      Frankly, they seemed to be very happy to get rid of you
15 and, frankly, I'd be just as happy to send you back.  I have no
16 personal interest in keeping this case here, no proprietary
17 interest in your litigation despite all the time we've put into
18 it.  If I could find a good reason to ship you back 3,000 miles
19 across the country, I might do it, but so far you haven't given
20 me anything that's really -- it's not probative.
21      And even on NBC -- let me ask you about NBC because you
22 keep trying to say "We have no more information about how they
23 were really involved in the broadcast."  As pointed out by the
24 defendants, they're listed as co-producers or authors or
25 whatever they were.  Even the person who did the broadcast, if

1  she was making slanderous statements, it sounds like the judge
2  in Maryland was saying just because she's broadcasting near to
3  Maryland doesn't mean that they were focused on Maryland.
4      If she doesn't have enough contact, how can they being her
5  abettors be in any worse shape?
6          **MR. ROSENTHAL:** Your Honor, first of all, we're not
7  arguing here today that retransfer would be appropriate.  In
8  fact, we didn't put in the papers --
9          **THE COURT:** I know.  You'd like me to think about
10 that, though, and so you talked about it at considerable
11 length, about all of the discovery that you really have, you
12 know, come up with and want to go in to more, and that's all in
13 the context of this, you know, clarification.
14         **MR. ROSENTHAL:** So let me address why, for example, we
15 think we have a good faith reason why we should get that, and
16 let me do it in that context understanding that I'm not here
17 arguing retransfer.  We haven't even taken --
18         **THE COURT:** Yeah, I'm trying to stop you from filing
19 the motion.
20         **MR. ROSENTHAL:** I understand, Your Honor.
21         **THE COURT:** Okay.
22         **MR. ROSENTHAL:** And I understand your position.
23     But here's what happened.  The person who did the NBC
24 program was a Maryland resident.
25         **THE COURT:** Right.

1    **MR. ROSENTHAL:**  She went to Maryland, not to D.C. or
2 California or anywhere else, she went to Maryland and she
3 filmed someone named Meredith Crocker who was the sole source
4 who appeared on the story who was found by Matt Smith who was
5 located and referred to her by Matt Smith.
6    So it's a program filmed in Maryland involving a Maryland
7 source by a Maryland host that aired in Maryland.  But then,
8 Your Honor, if I may --
9    **THE COURT:**  I'm sorry.  It was aired in -- I thought
10 it was broadcast from Washington, D. C.
11    **MR. ROSENTHAL:**  It was broadcast from
12 Washington, D. C., but there are also stations in Maryland.  So
13 it's not --
14    **THE COURT:**  Well, just a moment.  But they ran it from
15 Washington, D. C., and it went all over the place; right?  Not
16 just Maryland.
17    **MR. ROSENTHAL:**  Oh, given airwaves, that would be
18 impossible to do because airwaves don't stop at the border, but
19 you're correct.
20    **THE COURT:**  That seems to be what your judge that you
21 want to go back to found wasn't enough.
22    **MR. ROSENTHAL:**  So let me also express this.  The
23 host, Tisha Thompson, also had a campaign where she was
24 e-mailing people to locate bins in Maryland, and we have in the
25 record the e-mails with Maryland people and saying "Locate bins

1  so we can get them removed so we can have a campaign to
2  basically drive these bins off of Maryland property."
3       So when Matt Smith says "We were involved in a full-blown
4  collaboration" and we end up with e-mails going to Maryland
5  residents, I'm entitled to ask:  Was part of your full-blown
6  collaboration trying to get those Maryland bins off Maryland
7  property?  That would be directed at Maryland, nowhere else
8  because the bins -- the bins -- the person making the e-mail,
9  the person having the bins, the person responding, everybody is
10 in Maryland.
11      **THE COURT:**  Look, they interviewed people from all
12 over the world.  Do you want to say there's jurisdiction in
13 Malawi?  There's jurisdiction in whatever little town the guy
14 didn't get the cow in lives in?
15      I mean, let's face it, this was a story that was
16 international in scope.  The slanderous remarks that are
17 alleged, if they are slanderous, are international in their
18 subject matter.  The people who were interviewed were
19 interviewed where the company was, where the so-called
20 recipients of this charity were, wherever all -- wherever they
21 could find people, they went and they talked to them and then
22 there were broadcasts, there were podcasts, and there was this
23 NBC program; and what it looks like the judge in Maryland found
24 was that the focus of all of that activity was essentially
25 national.  It wasn't directed at Maryland.

1       And just because your client happens to have their primary
2  office that they do in Maryland, they also have stuff all over
3  the country and I think also in other countries as well, but
4  even if their main office is in Maryland, that that wasn't
5  enough.
6       So, first of all, if you think you have enough already, I
7  can't stop you from moving for reconsideration, but I'm not
8  likely, from at least that I know thus far, to find that this
9  is going to be enough to say that it would have swayed the
10 judge's mind who sent you to us, and that's Judge Russell.  So
11 that's one point.
12      The other is I just want to make it very clear that
13 Judge Corley is correct in interpreting my order.  I didn't
14 give you specific direction that, yes, you can interview this
15 person about jurisdiction.  Yes, you can interview that person.
16      The case is here.  You're doing discovery.  If you can
17 figure out ways to ask things, if you want to impeach somebody
18 who you can inquire into generally, maybe you can ask them
19 questions that impeach their credibility, I don't know, but I
20 leave that to you.
21      The point is I'm not here to decide whether or not you've
22 got enough, one, to go back to Maryland; or, two, to do more
23 discovery on specific points so that you can get back to
24 Maryland.
25      All I was asked to do is say:  What did you mean?  And I'm

1  telling you what I meant was, while your case is going forward,
2  if something comes up, fine.  You learned it, great.  Come back
3  if at that point you think you have something.
4      But I don't know why you're knocking yourself out to such
5  a great degree.  Your case is going forward.  It's going
6  forward here.  The issue, as I gather, that is the focus of the
7  current discovery is whether or not the defendants had
8  reasonable grounds to believe that the information that they
9  published is correct because you have this sort of public
10 entity defendant.
11     And, you know, you have a cast of characters that focuses
12 on Smith and Walters.  You have these sort of -- I don't know,
13 if it was a TV show, they'd probably say "With Debra Georgia
14 and Susanne Reber."  They're not the stars and there you go.
15     So I leave it to you.  I've ruled Judge Corley was
16 correct.  She never told you to come back here to get
17 clarification.  What she said is "I'm not giving you
18 jurisdictional discovery.  If you want to get it, go back to
19 Judge Chesney."  She didn't say go back to me to clarify, which
20 is what you're implying she said.  No.  She read the order just
21 like it was.
22         **MR. ROSENTHAL:**  I accept that, Your Honor.
23     Your Honor, you said sort of public entity parties.  I
24 hope Your Honor is not making a ruling on whether they are
25 public or not.

1   **THE COURT:**  Well, I understood that that was kind of
2   not disputed.  If it's disputed, fine.
3       **MR. ROSENTHAL:**  Vigorously disputed.
4       **THE COURT:**  Oh, fine.  Well, then, your discovery can
5   be even broader maybe than what somebody described you're
6   doing.  It won't even be limited to somebody's state of mind.
7   It will go all over the place; and if you can't figure out
8   anything new after you explored all that, then, I'm sorry, you
9   know.  That's up to you.
10      **MR. ROSENTHAL:**  And, Your Honor, just one last thing.
11  We will obviously continue with discovery.  There are some
12  areas, which depending on how you caption them, would be
13  considered jurisdictional or would go to the merits.  Can we
14  understand that Judge Corley would have discretion to decide is
15  it purely jurisdictional or is there another ground, or do we
16  have to -- I'm assuming when Your Honor referred discovery
17  matters, it was all discovery matters.  Your hands aren't tied
18  to make those kind of rulings.
19      **THE COURT:**  Well, if you ask -- it depends.  If it's
20  at some deposition and they object, you're still probably going
21  to have to go forward and have the witness answer anyway.  I
22  don't think they can just stop the deposition by saying "This
23  isn't the right subject."
24      Depending on whatever is posed by way -- I don't know if
25  it's going to be a request for admission, an interrogatory.  If

somebody wants to object at that point, yeah, Judge Corley is in charge of discovery.

        **MR. ROSENTHAL:** Okay.

        **THE COURT:** She understands the case and what my ruling was.

Okay. So the clarification is as stated. Go forward with your case and if anything comes up in the ordinary course of discovery that bears on jurisdiction, you can bring it back to me.

        **MR. ROSENTHAL:** Thank you, Your Honor.

        **MR. BURKE:** Thank you, Your Honor.

        **THE COURT:** That's it.

Okay. Good-bye.

        **MR. FORREST:** Thank you, Your Honor.

        (Proceedings adjourned at 9:18 a.m.)

        ---oOo---

## CERTIFICATE OF REPORTER

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

DATE:    Monday, September 9, 2019


_____

Jo Ann Bryce, CSR No. 3321, RMR, CRR, FCRR
U.S. Court Reporter