

**NELSON MULLINS**

NELSON MULLINS RILEY & SCARBOROUGH LLP
ATTORNEYS AND COUNSELORS AT LAW

101 Constitution Avenue | NW Suite 900
Washington, District of Columbia
T 202.689.2800 F 202.689.2860
nelsonmullins.com

Samuel Rosenthal
T 202.689.2915
sam.rosenthal@nelsonmullins.com

October 24, 2019

***VIA E-FILING TO CM/ECF***
The Honorable Jacqueline Corley, United States Magistrate Judge
Courtroom F – 15th Floor, 450 Golden Gate Avenue
San Francisco, CA 94102

Re:   *Planet Aid, Inc. v. Center for Investigative Reporting*, Case No. 17-cv-03695

Dear Magistrate Judge Corley:

Pursuant to your Honor's ruling requiring joint discovery letters, we are addressing herein our request for the Court to compel Defendants to submit to depositions and to produce previously requested documents. Defendants' refusal to appear for depositions and produce documents was previously predicated on a "tit-for-tat" philosophy that numerous courts, including those within this District, flatly reject. As explained below, faced with clear authority rejecting such tactics, Defendants have now resorted to a new justification for their refusal to proceed with depositions, namely some feigned confusion over the scope of the issues in this case.

The history of this dispute is as follows: Plaintiffs previously tried to obtain mutually convenient dates for the depositions for key parties and Defendants' employees. After initially agreeing to dates, Defendants changed their mind, and contended that they would not produce *any* witnesses unless there are mutually agreeable dates for depositions of Plaintiff Planet Aid's employees. See Rosenthal Dec., Ex. A-3. Defendants subsequently reversed course, refusing to schedule depositions on the ground that they cannot be forced to proceed with *any* depositions until all document production from Planet Aid was complete. *Id.* While Defendants now claim that they never took any such position, they left no doubt as to their position, telling Plaintiffs' counsel: "I explained to you that we view discovery as a two-way street, and think it is premature to proceed with one side's depositions when there are disputes about whether the other side will fulfill its own obligations." Ex.-A-7. Defendants also refused to narrow or withdraw even a single one of their overly broad requests, again frustrating the discovery process. See Ex. A-3. The end result was a coordinated strategy to block both key depositions, which they continue to do while now relying on a different justification: that they cannot proceed with depositions because there is confusion over the issues in the case.

I.   <u>**Defendants' excuse for non-compliance with deposition notices is meritless.**</u>

Although Defendants are no longer relying on their "two-way street" argument, it is

1

axiomatic that a party cannot refuse to cooperate in discovery on the ground that an adversary has failed to live up to its own obligations. This Court expressly rejected Defendants' approach in *Zamora v. D'Arrigo Bros. Co. of Cal.*, No. C04-00047 JW (HRL), 2006 WL 931728, at *5 (N.D. Cal. Apr. 11, 2006) (Lloyd, M.J.), where it held:

> [Rule 26(d)] states that 'methods of discovery may be used in any sequence, and the fact that a party is conducting discovery, whether by deposition or otherwise, does not operate to delay any other party's discovery.' . . . [I]t is improper for plaintiffs to refuse to attend depositions until after plaintiffs' discovery is complete.

See also *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 298 F.R.D. 145, 148-49 (S.D.N.Y. 2014) (holding that "it is well-established a party cannot unilaterally refuse to fulfill its discovery obligations as retaliation for another party's discovery violations" and holding further that discovery cannot be denied based solely on a defendant's "separate discovery disputes with plaintiffs"); *Moore v. Zurich Am. Ins. Co.*, No. CV 16-2466-AB (PLAx), 2016 WL 10987386, at *4 (C.D. Cal. Dec. 1, 2016) (holding that a defendant had the "absolute right" to take a plaintiff's deposition, and the actions of plaintiff's counsel, which consisted of ignoring the requests for the deposition, were not warranted even though they were "motivated in large part by perceived discovery abuses" by the defendant); *Lumbermens Mut. Cas. Ins. Co. v. Maffei*, No. 3:03-cv-262 JWS, 2006 WL 2709835, at *5 n.21 (D. Alaska Sept. 20, 2006) ("The rules do not authorize one party to withhold discoverable material in retaliation for the opposing party's withholding of discoverable material.").

Defendants have not disputed, and cannot dispute, the above authority. Instead, Defendants have now abandoned their previously stated reason for refusing to proceed with depositions.[1] Defendants now argue below that depositions cannot proceed because they are confused as to what allegations remain in the case. See *infra* note 6. This argument is based on a completely misleading statement of the anti-SLAPP motion, as well as discussions between the parties.

First, Plaintiffs have consistently taken the position that allegations of theft and misuse of donor funds in the First Amended Complaint ("FAC") relate solely to the USDA Program. See Nov. 9, 2018 Hr'g Tr. at 22:24–23:1 (Plaintiffs' counsel, "this [case] is about stealing money from the USDA project . . . ."). As explained in contemporaneous letters to the Court, the only references to other donor programs in the FAC related to the fact that other donors, such as UNICEF and DifD, ceased funding programs based specifically on Defendants' publications, supporting claims of tortious interference. Contrary to any notion that Plaintiffs are claiming that statements by Defendants relating to UNICEF, DifD or any other donor are false, Defendants themselves conceded that the FAC was correct in that other donors, including DifD and UNICEF, had in fact withdrawn funding based on

---

[1] Defendants nevertheless cannot resist criticizing Plaintiffs' production, arguing that Plaintiffs have failed to make any meaningful production. See *infra* p. 9. First, and as shown above, Plaintiffs' production is irrelevant to the issues presented to the Court. Second, and equally important, Plaintiffs have produced thousands of pages of material and are continuing production, which was halted upon the mutual agreement of the parties when they were pursuing settlement negotiations. Defendants are flat wrong in alleging that no documents have been produced from Planet Aid's internal files. And finally, the biggest obstacle standing in the way of production is Defendants' adamant refusal to narrow or withdraw even one of their requests, see A-2, A-3, necessitating Plaintiffs' request for a protective order.

2

Defendants' publications. *Id.*[2]

Second, Defendants' reference to the FAC is misplaced. As Defendants themselves concede, their discovery is only appropriate if "essential" in responding **to the anti-SLAPP motion**. See *infra* pp. 7-8. Allegations in the FAC are simply irrelevant unless they form the bases for the anti-SLAPP motion. Recognizing that they do not dispute that they caused UNICEF and DifD to withdraw funding, see Dkt. No. 78-5 at 2, Defendants themselves failed even once to mention donors other than the USDA in their anti-SLAPP motion. Even more concerning, Defendants refused to produce documents relating to either of two articles addressing specifically DifD and UNICEF, see Dkt. No. 78-5 ("UNICEF cuts off funding to nonprofit linked to alleged cult") and Dkt. No. Dkt. No. 78-6, at 4 ("Immediately following the broadcast [in which Reveal acted as a partner], the United Kingdom's Department for International Development also suspended funding . . . and announced it would investigate the allegations."). Additionally, when it came time to search for documents in response to Plaintiffs' discovery demands in connection with the initial complaint, Defendants compiled a list of search terms which failed to include any of the donor programs now claimed to be critical to their own discovery needs. See Ex. A-8.[3] Accordingly, it is insincere for Defendants to contend that they need to know whether allegations about UNICEF and DifD are at issue before allowing Mr. Smith and Ms. Walters to be deposed.

Third, it is completely false for Defendants to represent that Plaintiffs have been resistant to clarifying that the FAC relates to allegations of theft and abuse of donor funds from the USDA. Defendants' description of the exchange between the parties is simply false. Plaintiffs sent Defendants a revised FAC, again making clear that the FAC is premised upon allegations relating to theft of donor funds related specifically to USDA Programs. In response, Defendants took the position that while they were willing to consent to the filing of an amended complaint in some form, they would not agree to withdraw or narrow their discovery requests. Their justification was simple, and directly conflicts with their current representations to the Court. Instead of arguing that they needed such discovery because the FAC was confusing as to which donor programs were at issue, Defendants contended that discovery was needed based on the theory that if Plaintiffs could be shown to have abused donor funds anywhere in the world and at any time in Planet Aid's existence, it would make it more likely that Defendants could show fraud and abuse in the USDA Program. See A-7 (email sent Oct. 8, 2019 at 5:55 p.m.). It was that reason, not some intransigence on the part of Plaintiffs, which led to the breakdown of efforts to streamline the FAC.

Finally, Defendants complain that they cannot proceed with depositions of their own witnesses because they are unsure whether allegations about DifD, UNICEF or other donors are pertinent to the case. Because Defendants already conceded that it was true that those donors withdrew funding

---

[2] Defendants argue below that because Plaintiffs requested information about DifD, UNICEF and/or the Clinton Foundation, see *infra*, they must be appropriate subjects of discovery from Plaintiffs. The only issue in the case is whether Defendants took actions that caused those organizations to cease funding. We have asked Defendants to explain what documents could possibly be in Plaintiffs' possession describing actions taken by Defendants regarding those programs, particularly since Defendants admit that they were the ones to cause those organizations to cease funding programs.

because of Defendants' publications, there is nothing more that Plaintiffs need to ask the deponents, Matt Smith or Any Walters, about those programs.

### II. Defendants discovery requests to Plaintiffs cannot be used as a way of blocking depositions for the additional reason that they are untimely and designed to frustrate the anti-SLAPP statute's purpose of allowing an "early resolution" of the motion.

In our opening letter, Plaintiffs demonstrated that an alternate basis for rejecting Defendants' obstructionist tactics is that the discovery they sought is improper. That claim was supported by a separate letter seeking a protective order based on the overbroad nature of Defendants' discovery requests. Instead of disputing that the requests are overbroad and that a protective order should issue, Defendants have not even chosen to address such relief, and chose not to respond to the letter.[4]

While failing to object to a protective order based on the overbroad nature of their discovery requests, Defendants have nevertheless taken issue with Plaintiffs' complaint that the discovery served on them is untimely. See *infra* pp. 9-10. This issue is now mooted by the fact that Defendants have chosen not to dispute that a protective order should issue. See *Martin v. Flores*, No. 1:11-cv-01461 AWI DLB PC, 2014 WL 4698457, at *1-2 (E.D. Cal. Sept. 19, 2014) (granting a motion for a protective order when a plaintiff "did not oppose the motion"); *Rawcare Grp., LLC v. Grace Med., Inc.*, C/A No. 13cv1105-H (BLM), 2013 WL 12076572, at *8 (S.D. Cal. Dec. 16, 2013) (granting a motion for a protective order, with modification, when "Defendants did not oppose or otherwise acknowledge th[e] motion"); *Grasshopper House, LLC v. Accelerated Recover Ctrs.*, No. CV 09-8128-DMG (PLAx), 2010 WL 11549374, at *1, *6 (C.D. Cal. Aug. 27, 2010) (granting a motion for a protective order when a party "did not oppose" the motion for a protective order). Nevertheless, we should point out that Plaintiffs' complaint was not directed solely to the fact that the discovery requests were not served until 1 ½ years after the anti-SLAPP motion was filed. The anti-SLAPP statute must be harmonized also with Fed.R.Civ.P. 56, which forbids a party from seeking to forestall the ruling on its own motion by relying on the need for discovery which it failed to seek in a timely fashion. *Conkle v. Jeong*, 73 F.3d 909, 914 (9th Cir. 1995) ("Moreover, '[t]he district court does not abuse its discretion by denying further discovery if the movant has failed diligently to pursue discovery in the past.'"); *Landmark Dev. Corp. v. Chambers Corp.*, 752 F.2d 369, 372-73 (9th Cir. 1985) (holding

---

[4] Defendants make the curious remark that "[b]ecause it will bear on Defendants' response to Plaintiffs' improper motion for a protective order, Defendants seek to clarify Plaintiffs' distortion of the record." See *infra* p. 9. In fact, Defendants have chosen not to respond to the request for a protective order. Defense counsel had earlier advised Plaintiffs that they were unaware that Plaintiffs intended to challenge their discovery as overbroad and had no time to respond. Defendants were not only offered an extension of the schedule for exchanging letters, but they had ample notice of this issue when first discussing an exchange of letters. By email to Defense counsel, Plaintiffs' counsel advised that if Defendants were not going to withdraw or narrow the discovery requests, we "anticipate raising that with the Court." See A-3, (email sent Jan. 10, 2019 at 6:27 p.m.) Then in a letter to both Ms. Means and Defense counsel, Plaintiffs outlined the issues to be raised in our letter. At that time, in addition to raising whether Plaintiffs were entitled to proceed with depositions, we again advised that a separate and distinct issue related to Plaintiffs' "position that the requests are not proportional to the needs of the case," and that a letter would be sent by Plaintiffs addressing that issue. See email to Mr. Forrest et al., and Ms. Means on Oct. 8, 2019 at 10:37 a.m.

that a court did not abuse its discretion by denying an opportunity for a party to conduct discovery when the discovery issue was a result of that party's own delay).

The objection to using discovery demands as a basis for withholding depositions was also based on the abusive nature of the discovery being propounded by Defendants, which would call for the review and production of millions of pages of material. Both state and federal precedent make clear that the anti-SLAPP statute is intended only as a way of obtaining "an early resolution" of frivolous cases, while minimizing the cost. See, e.g., *Equilon Enters., LLC v. Consumer Cause, Inc.*, 52 P.3d 685, 693 (Cal. 2002) ("Such early resolution is consistent with the statutory design 'to prevent SLAPPs by ending them early and without great cost to the SLAPP target,' a purpose reflected in the statute's short time frame for anti-SLAPP filings and hearings." (internal citations omitted)); *Baral v. Schnitt*, 376 P.3d 604, 608 n.5 (Cal. 2016) ("Anti-SLAAP motions differ from summary judgment motions in that they are brought at an *early stage of the litigation*.") (citation omitted)); *Gardner v. Martino*, 563 F.3d 981, 986 (9th Cir. 2009) ("Anti-SLAPP statutes are designed to allow the early dismissal of meritless lawsuits aimed at chilling expression through costly, time-consuming litigation." (citing *Verizon Del., Inc. v. Covad Commc'ns Co.*, 377 F.3d 1081, 1090 (9th Cir. 2004)).

Clearly, Defendants' tactics are designed to delay the anti-SLAPP motion indefinitely, making it impossible to obtain an early resolution of the case. Accordingly, either discovery sought by Defendants should be denied entirely, or the Court should find that Defendants have waived their right to pursue the anti-SLAPP motion and proceed to full discovery. In any event, Defendants should not be allowed to delay discovery needed for resolving their anti-SLAPP motion.

### III.     *Based on Defendants' responsive letter addressing the status of their own discovery, the Court can defer addressing any deficiencies in their production.*

In our opening letter sent to Defendants, we asked that they produce any remaining documents, or advise whether they have produced all responsive documents. Defendants have now answered that request by stating that document production is complete. This startling declaration comes after asking Plaintiffs to advise as to their next priority for the remaining production. In any event, we will review the production and identify, in any future joint letters, areas believed to be incomplete.

Based on the foregoing, the Court should order Mr. Smith and Ms. Walters to attend depositions.

**DEFENDANTS' POSITION**

**I. The parties' impasse on depositions arose because Plaintiffs refuse to formalize their position on what claims are at issue in this case.**

Defendants agree with Plaintiffs that discovery rules prohibit one side from refusing to cooperate in discovery because of the other side's discovery deficiencies. But Plaintiffs are wrong that this sort of tit-for-tat accounts for the impasse on the two depositions of Amy Walters and Matt Smith unilaterally noticed by Plaintiffs.

The root of this problem, as discussed in Defendants' separate letter and as repeatedly stated in Plaintiffs' Exhibit A-3, is that Plaintiffs have repeatedly refused to memorialize their position that their case is only about statements concerning the USDA. To reiterate, Plaintiffs' counsel has repeatedly stated in Court and in discussions with Defendants' counsel that Plaintiffs believe this case is only about Defendants' statements concerning the USDA, not their statements about other funders of Planet Aid and related entities, such as USAID, UNICEF, or any other organizations. *See* Nov. 9, 2018 Hr'g Tr. at 22:24–23:1 (Plaintiffs' counsel states, "Your Honor, one qualification, and that is we're not really asking for everything, and that this is about stealing money from the USDA project . . . ."); *see also* Forrest Decl. ¶ 2.

Contrary to Plaintiffs' statements, the operative 65-page complaint (with 22 exhibits) includes allegations about statements by Plaintiffs concerning third-party organizations that funded Plaintiffs, such as UNICEF, USAID, and the Clinton Global Foundation. Dkt. 78 ¶¶ 55, 65, 67, 73–74, 186, 196–97, 210, 234. Defendants have produced documents concerning such entities, in response to Plaintiffs' requests made under the Court's order that the parties would proceed with "essential" document production. *See* Nov. 9, 2018 Hr'g Tr. at 8:14–18.

Defendants have worked to resolve this dispute for nearly a year now, from December 2018 up to the present. Again, the Court suggested in a November 9, 2018 hearing that Plaintiffs could amend their complaint to reflect their apparent position (or otherwise formalize their position), and Defendants could agree not to seek fees on the withdrawn statements. Nov. 9, 2018 Hr'g Tr. at 77:7–78:18. Defendants proposed redlines to this effect on December 31, 2018, but to date Plaintiffs have rejected this and every later overture to narrow their case—despite maintaining their vague position on the USDA[5]—and have agreed only to edit their complaint's introduction, without altering the rest of the complaint. Forrest Decl. ¶ 2. In other words, Plaintiffs refuse to narrow the areas that control the scope of this case.

---

[5] Defendants cannot square Plaintiffs' statements about the case's limitation to the USDA with the operative complaint or Plaintiffs' actions regarding non-USDA entities. It appears that Plaintiffs have concluded they cannot or should not pursue claims about other entities, including those that have terminated their relationships with Planet Aid's affiliates. E.g., Press Release, Hon. Betty McCollum, McCollum Urges USDA, GAO to Investigate Government Contracts with Planet Aid, Affiliated Organizations (Aug. 17, 2016), available at https://mccollum.house.gov/press-release/mccollum-urges-usda-gao-investigate-government-contracts-planet-aid-affiliated (stating that in light of Defendants' reporting, "the United Kingdom's Department for International Development and UNICEF, the United Nations Children's Fund, both suspended funding to a Planet Aid affiliate.")

Defendants maintain that this problem is one of the central holdups in the case. As Defendants' counsel wrote on October 14, shown in Plaintiffs' Exhibit A-3:

> If Plaintiffs can clarify precisely what statements they assert are actionable in this case—e.g., by amending the complaint or entering a stipulation, as opposed to simply stating that this case is only about the USDA, without specifically nailing down what that means in terms of the case's scope—we think setting deposition dates would be more reasonable. . . . [I]t is unfair and inefficient for Plaintiffs to equivocate on the scope of their claims and their own discovery obligations, while at the same time seeking depositions and apparently reserving rights as to their claims' scope and their discovery obligations. . . . Our proposals are meant to clarify these issues and let the parties move forward in a productive, fair, and efficient way.

Even after the parties exchanged letters in this dispute on October 16, Defendants have continued to explain to Plaintiffs that the fundamental problem in this impasse is Plaintiffs' refusal to clarify the scope of their case. Forrest Decl. Ex. D (Oct. 17, 2019 email thread between E. Forrest and S. Rosenthal). Plaintiffs have offered nothing in response.

Plaintiffs' equivocation prejudices Defendants, especially at the deposition stage. If Plaintiffs refuse to formalize their representations, then Defendants cannot fairly prepare for depositions. This problem is entirely of Plaintiffs' making, and they have steadfastly refused every overture from Defendants—including Defendants' redlining and proposing amendments to Plaintiffs' own complaint—to fix it.

Further, as raised in Defendants' letter, Defendants believe it would further streamline discovery in particular, Ms. Walters' and Mr. Smith's depositions, were the Court to rule on whether Plaintiffs should be treated as limited purpose public figures for the purposes of the statements they challenge in Defendants' reporting. The difference between statements about a limited purpose public figure versus a private figure dictate the mental state Plaintiffs must show in a defamation case. *New York Times v. Sullivan*, 376 U.S. 254, 287–88 (1964); *Reader's Digest Ass'n v. Super. Ct.*, 37 Cal. 3d 244, 256 (1983). So, if the Court ruled on this issue, the scope of all depositions would be narrowed significantly.

To be sure, Defendants are displeased with Plaintiffs' unwillingness to engage in the narrow discovery requested of them, and to attempt to unilaterally seek depositions of Defendants. But Plaintiffs are wrong that Defendants are withholding our witnesses until Plaintiffs comply with their discovery obligations. Rather, Defendants have tried to work with Plaintiffs to ensure that *both sides* comply with their obligations simultaneously and efficiently, as shown in a May 30, 2019 email thread between Defendants' and Plaintiffs' counsel.[6] Indeed, in that message, Plaintiffs'

---

[6] In cases like this, despite the parties' freedom to phase their own discovery how they wish, including sequencing depositions the Court has authority to direct the sequence of discovery under Federal Rule of Civil Procedure 26(d)(3), and has wide discretion in controlling discovery in general. *E.g.*, *Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 862 (9th Cir. 2014).

7

counsel wrote: "With regard to deposition scheduling, we reiterate that we will work out a *mutually convenient schedule with you.*" Forrest Decl. Ex. B. That has not happened, and Plaintiffs have reversed course to make discovery unilateral.

## II. There are no outstanding document requests at this posture.

Plaintiffs disagree that Defendants are entitled to any additional documents at this time. Plaintiffs misstate the record by saying that Defendants acknowledge their own production is incomplete, and that Defendants refuse to either disclose what remains or produce anything until Plaintiffs comply with their discovery obligations.[7] That is not true. Plaintiffs' Exhibit A-3 shows this, as Defendants explained in their October 14 message:

> The Court has made clear that in terms of Plaintiffs' discovery, we're focusing on what is essential for Plaintiffs to file their opposition. See the November 9, 2018 hearing transcript at pages 8–9. As we've stated, Plaintiffs have not identified what they view as essential beyond what has already been produced, depositions aside. We have worked with Plaintiffs to produce documents Plaintiffs viewed as essential, and reached impasse on your last requests (of the requests deemed essential) related to other news organizations' documents. What other documents, if any, are essential for Plaintiffs in order to respond to our anti-SLAPP motion?

Plaintiffs never responded to that question. Again, this framework of proceeding through requests for essential documents instead of doing "full-blown" discovery was proposed by the Court and agreed to by Plaintiffs. *See* Nov. 9, 2018 Hr'g Tr. at 8:8–23. This process has worked well, with Defendants producing around 90,000 pages of documents to Plaintiffs, in response to requests Plaintiffs identified as "essential." (A small handful of video files remain to be reviewed and produced if responsive and non-privileged.)

Defendants have not deviated from their commitment to the Court's instructions on how they are to produce documents to Plaintiffs. Defendants have trouble envisioning what "essential" documents would remain at this point. As stated above and frequently reiterated to Plaintiffs, if Plaintiffs think there are deficiencies, Defendants would appreciate Plaintiffs' identifying them. Defendants are more than willing to hear Plaintiffs out if they would only talk.

## III. Defendants do not intend to delay discovery in this case.

Plaintiffs contend that despite Defendants' filing an anti-SLAPP motion—which Defendants agree provides for early resolution of frivolous cases like this one—Defendants for some reason

---

[7] In summary, Defendants have produced documents including scripts, drafts, and outlines of stories (from drafting, to editing, to publication); recordings of witnesses interviewed for reporting; internal correspondence among Defendants concerning the reporting; correspondence between Defendants and their Malawi-based stringer Kandani Ngwira; correspondence with or concerning certain non-confidential sources specified by Plaintiffs; Defendants financial records concerning expenditures related to the reporting; certain communications with other news outlets; and media gathered during the reporting, including photos and videos. This production totals roughly 79 hours of audio-visual recordings (including videos and audio recordings), and 87,809 pages of documents.

8

intend to "delay discovery from them[selves] indefinitely, making it impossible to obtain an early resolution of the case." *Supra*.

This makes no sense. Defendants filed an anti-SLAPP motion obtain an early resolution, and have spent most of this case's lifespan either challenging Plaintiffs' repeated attempts to move this case to Maryland, or producing documents to Plaintiffs (while Defendants' own requests sat pending). *See* Dkts. 32–75 (case filings dating from July 11, 2017 to March 8, 2018, essentially all concerning Plaintiffs' efforts to transfer this case from California to Maryland); *see also* Forrest Decl. ¶¶ 9–10 (explaining document production timeline after Nov. 9, 2018 hearing).

Indeed, Defendants are trying to seek ways to further narrow the scope of discovery needed by either party, to expedite the resolution of Defendants' anti-SLAPP motion, and have made numerous proposals for expediting or narrowing discovery on both sides. Plaintiffs have refused on each count. Again, discovery and, in particular, depositions would proceed smoothly if Plaintiffs formalized their position on what claims are at issue in the case and if the parties could resolve whether Plaintiffs are limited purpose public figures. And by producing documents on Planet Aid's relationship with DAPP Malawi, Plaintiffs could narrow and focus their own obligations. But Plaintiffs have declined all these offers, prompting Defendants to seek help from the Court.

**IV. Plaintiffs agreed to produce documents and have reneged, and Defendants' service of discovery was not untimely or otherwise inappropriate.**

As explained above, the root cause of Defendants' unwillingness to agree to the unilaterally proposed dates for deposition for Amy Walters and Matt Smith is not Plaintiffs' failure to comply with discovery, but their failure to conform the complaint to what they state is the scope of this case. Plaintiffs' attempt to minimize the importance of the outstanding discovery served on them is a red herring.

Because it will bear on Defendants' response to Plaintiffs' improper motion for a protective order, Defendants seek to clarify Plaintiffs' distortion of the record. Plaintiffs now contend that they need not comply with Defendants' discovery because it was served too late. But, months ago, Plaintiffs agreed to produce documents (though they have not done so, beyond documents already in the public domain), and Defendants did not delay in serving discovery.

***Plaintiffs agreed months ago to produce documents to Defendants.*** Plaintiffs never argued—until now—that Defendants' discovery was somehow untimely or inappropriate in itself. Indeed, between January 29, 2019 and October 3, 2019, Plaintiffs sent multiple items of correspondence. Forrest Decl. ¶¶ 3–5 & Exs. A–C. Indeed, Plaintiffs *answered* the proffered discovery (however deficiently). Forrest Decl. ¶ 3 & Ex. A. But Plaintiffs never contended that Defendants' discovery was untimely or prohibited. Rather, on October 3, 2019, Plaintiffs wrote, "[I]t remains our position that the best means to resolve these [discovery] issues is a meaningful conversation, devoid of gamesmanship, in which you truly explain what you need (and why) and we will work together with you in an attempt to provide it." Forrest Decl. ¶ 5 & Ex. C. at p.2.

Three weeks after making that statement, Plaintiffs now contend they should not have to provide any discovery. This position, and the contention Defendants have somehow waived their anti-SLAPP motion—a conclusion with zero supporting authority—is inconsistent with Plaintiffs'

9

own statements to date. It suggests that Plaintiffs either (a) have participated in discovery in bad faith, never meaning to comply with their promises or obligations, or (b) have suddenly reversed course completely and for unexplained reasons, while also representing that this case is somehow narrower than the one they pled. Neither possibility is acceptable, and Plaintiffs have offered no alternative explanation.

***Defendants' discovery was not served too late.*** Given the procedural posture of this case, Defendants' discovery was timely served. Defendants filed their anti-SLAPP motion on July 2, 2018. Dkt. 107. Between then and November 2018, the parties filed numerous discovery letter briefs, which the Court heard and decided on November 9, 2018. *See* Dkt. 153. Between then and January 2018—a time period that included Thanksgiving, Christmas, and New Year's holidays—Defendants produced documents to Plaintiffs. Forrest Decl. ¶¶ 9–10.

Defendants stated in January 2019 that it would serve their own discovery. Jan. 17, 2019 Hr'g Tr. at 15:4–11; Jan. 18, 2019 Hr'g Tr. at 12:21–13:1. At the January 18 hearing, Plaintiffs' counsel suggested Defendants might not be entitled to take discovery, prompting Judge Chesney to state, "[Y]our whole point, [counsel], is everything ought to be a two-way street, except when it's up to something that you don't want to go both ways. And I'm not sure that's fair, either." Jan. 18, 2019 Hr'g Tr. at 39:15–18. Shortly afterward, on January 29, 2019 Defendants served their initial requests for production and interrogatories on Plaintiffs.

Excluding weekends and holidays, only about five months elapsed between Defendants' filing their anti-SLAPP motion and serving discovery. (Even including weekends and holidays, the gap is only roughly seven months.) Further, leaving aside that this is hardly inexcusable delay, the parties agreed that briefing deadlines for the anti-SLAPP motion would be tolled "until the parties' various discovery disputes are resolved"—so the case remains stayed pending *both sides'* discovery disputes' resolution.

                                                                Respectfully submitted,

                                                                NELSON MULLINS LLP
/s/
Cory Manning

Attorney for Plaintiffs
PLANET AID, INC. and LISBETH THOMSEN