**COVINGTON**

BEIJING   BRUSSELS   DUBAI   FRANKFURT   JOHANNESBURG
LONDON   LOS ANGELES   NEW YORK   PALO ALTO
SAN FRANCISCO   SEOUL   SHANGHAI   WASHINGTON

Ethan Forrest

Covington & Burling LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
T  +1 415 591 7008
eforrest@cov.com

**By Electronic Service**                                      October 24, 2019

Hon. Jacqueline Scott Corley
U.S. District Court for the Northern District of California
450 Golden Gate Ave.
15th Floor
San Francisco, CA 94102

 Re:  Planet Aid, Inc. v. Reveal, No. 3:17-cv-03695-MMC

Dear Hon. Corley:

 The parties to the above-captioned case submit this letter brief per the Court's October 9, 2019 order.  Dkt. 234.  This letter brief addresses three proposals Defendants have offered to Plaintiffs, in an effort to focus and expedite discovery for the parties and for the Court.  Plaintiffs have rejected all three, so Defendants respectfully request that the Court assist the parties to resolve these matters, including entering appropriate orders.

 As a threshold point, as the Court will recall, discovery in this case at this posture is limited to what is necessary to resolve Defendants' anti-SLAPP motion (Dkt. 107).  *See* Nov. 9, 2018 Hr'g Tr. at 8:8–9:21.  Defendants have in turn served targeted discovery on Plaintiffs, in January of this year, focusing on issues raised in Defendants' anti-SLAPP motion.  Forrest Decl. ¶ 2.  So far, Plaintiffs have produced only (a) what appears to be documents that Plaintiffs or someone else obtained by submitting a FOIA request to the U.S. Department of Agriculture, and (b) PDF copies of Planet Aid's website.  *Id.* ¶ 6.  Defendants reserve rights to challenge the adequacy of Plaintiffs' discovery responses, so the requests below are designed to focus the issues for both sides, as opposed to nitpicking through Plaintiffs' discovery to date.  *Cf.* Jan. 18, 2019 Hr'g. Tr. at 39:15–18 (in which Judge Chesney states, "Nevertheless, your whole point, [Plaintiffs' counsel], is everything ought to be a two-way street, except when it's up to something that you don't want to go both ways.  And I'm not sure that's fair either.").  Defendants believe their requests will expedite this litigation by focusing on the core issues, which the Court has repeatedly stressed the parties should do.

 As another threshold point, Defendants object to Plaintiffs' claim that Defendants are trying to delay discovery to avoid having Mr. Smith and Ms. Walters' depositions taken.  Defendants have always maintained that those witnesses' depositions would be both likely and appropriate in this case—Defendants are not afraid of having their witnesses deposed.  But Plaintiffs should not be allowed to take depositions while simultaneously contending that their claims are narrower than their complaint alleges.  Defendants also submit that, per Judge Chesney's suggestion and discussed further below, focusing on Plaintiffs' public figure status would substantially narrow the issues for all.

COVINGTON

Hon. Jacqueline Scott Corley
October 24, 2019
Page 2

     **1. Plaintiffs' public figure status.** Defendants ask for the Court, in consultation with Judge Chesney, to order briefing as to what standard applies to Plaintiffs' defamation claim with respect to Defendants' actions. *See* Dkt. 107 at 11–19 (discussing this issue). Determining which standard applies depends on whether Plaintiffs are limited purpose public figures or not. Specifically, if Plaintiffs are limited purpose public figures, then in order to prevail on their defamation claims, they must show that Defendants acted with actual malice in reporting about Plaintiffs—*i.e.*, that Defendants knew the statements they were making were false when the statements were made, or that Defendants acted with reckless disregard of those statements' truth or falsity. *Reader's Digest Ass'n v. Super. Ct.*, 37 Cal. 3d 244, 256 (1983). If Plaintiffs are private figures, they must prove only that Defendants acted negligently. *See New York Times v. Sullivan*, 376 U.S. 254, 287–88 (1964). Given these different burdens, a ruling as to whether Plaintiffs are limited purpose public figures will significantly focus the scope of the ultimate dispute as well as the scope of discovery, especially as the parties focus on depositions.

     Judge Chesney recognized the importance of Plaintiffs' limited purpose public figure status in January of this year, suggesting that the parties might focus the case by engaging in some limited discovery on Plaintiffs' limited purpose public figure status, and then making cross motions for summary judgment on that issue. *See* Jan. 18, 2019 Hr'g Tr. at 33:20–34:5; 35:7–36:25. As Judge Chesney noted, "Mightn't it shorten things up if it would—if, for example, I rule on [such a motion] and find that actual malice doesn't have to be shown, it would save you a lot of discovery. It would put this case in a much different posture." *Id.* at 33:1–4.

     Defendants agree with Judge Chesney. Plaintiffs, however, refuse to engage on this topic. Defendants propose that the parties file cross motions for a determination as to whether Plaintiffs are limited purpose public figures, and as a corollary, what standard applies to the defamation claims. In response, Plaintiffs contend that Defendants are only trying to delay the case and avoid depositions; that Defendants' argument is weak on this issue; and that resolving the public figure issue is immaterial. None is true.

     *First*, as noted above, depositions are not appropriate while the scope of Plaintiffs' complaint remains unclear. Plaintiffs cannot be allowed to sandbag Defendants on this issue.

     *Second*, although these arguments would be clearer with discovery, it is indisputable that before Defendants' reporting, there was a public controversy surrounding Plaintiffs—of their own making—into which Plaintiffs had voluntarily thrust themselves. *See Reader's Digest Ass'n v. Super. Ct.*, 37 Cal. 3d 244, 256 (1984).

     Also, contrary to Plaintiffs' letter, Defendants' argument on the limited purpose public figure issue is not that Plaintiffs are limited purpose public figures merely because they receive government grants. *Cf. Hutchinson v. Proxmire*, 443 U.S. 111, 135 (1979) (rejecting argument that scientist's pursuit of public grants rendered him a public figure as to statements about those grants). Rather, Defendants' argument—as set out in their anti-SLAPP motion—is that Planet Aid not only seeks government grants, but publicizes its grant-related work, and Ms. Thomsen frequently appears in the media (assisted by public relations professionals) as the public face of DAPP Malawi. Dkt. 107 at 12–13; *see also, e.g., Resolute Forest Prod., Inc. v. Greenpeace Int'l*, 302 F. Supp. 3d 1005, 1016-17 (N.D. Cal. 2017) (holding non-profit limited purpose public figure because of statements about its world-wide reach and influence, and its work being public); *Art*

COVINGTON

Hon. Jacqueline Scott Corley
October 24, 2019
Page 3

*of Living Found. v. Does*, No. 10-CV-05022, 2011 WL 2441898, at *9 (N.D. Cal. June 15, 2011) (Koh, J.) ("Plaintiff [non-profit corporation] is likely a limited public figure because it is part of a relatively well-known international organization and voluntarily solicits media attention."). Indeed, Thomson only challenges CIR's reporting regarding her activities on behalf of DAPP Malawi and Planet Aid.

Before Reveal's investigation, many other news outlets have also investigated Planet Aid's use of government funds and connections to the international fugitive Mogens Amdi Petersen and his purported cult, Tvind or The Teachers Group. Forrest Decl. Exs. G–M. These articles show that for *more than a decade* before Defendants published their own reporting, media outlets ranging from The Boston Globe (which gave Planet Aid front-page billing), The Chicago Tribune, and The Guardian—as well as smaller papers such as The Berkshire Eagle, The Scranton Times Tribune, and The Philadelphia Daily News—had questioned Planet Aid's public actions. *Id.* As such, Plaintiffs can hardly contend they were not in the spotlight before Defendants' reporting. They have been for many years, and they put themselves there.

Defendants' own stories and incorporated material, published well into a decades-long controversy about Planet Aid, detail how public attention has been focused on Planet Aid's use of government funds for decades—as in a 2001 FBI memo stating that Planet Aid, DAPP Malawi, and other related entities had used bogus invoices to send public money to private offshore accounts: "In each of these organizations [including Planet Aid and DAPP Malawi] the funds are ultimately controlled by captioned [*sic*] subjects who divert the money for personal use. Little, to no money goes to the charities." *E.g.*, Dkt. 78-3 at p.9. Defendants' reporting focuses mainly on Planet Aid, and on Ms. Thomsen only to the extent that she was voluntarily and consistently the public face of DAPP Malawi. *See, e.g.*, *Harkonen v. Fleming*, 880 F. Supp. 2d 1071, 1080-81 (N.D. Cal. 2012) (holding CEO of biotechnology company limited purpose public figure because of of his publicity of the company's activities).

*Third*, and finally, Plaintiffs make the nonsensical argument that focusing on this limited purpose public figure issue would not narrow discovery, since the parties will ultimately have to litigate state of mind regardless (whether malice or negligence). *Infra.* That misses the point: determining what standard applies, up front, will focus what the parties still need to investigate and streamline this litigation, as Judge Chesney earlier recognized.

Defendants submit that such a focused discovery and motion process could be resolved efficiently, and would greatly narrow the issues for the parties and for the Court. To that end, Defendants propose that the Court enter an order pausing discovery except for what is necessary to investigate Plaintiffs' limited purpose public figure status—the scope of which Defendants submit would be relatively minimal, and limited to what efforts Plaintiffs undertook to publicize their use of public funds for charitable causes. *See* Dkt. 107 at 12. Defendants further request that the Court, with Judge Chesney's approval, order the efficient briefing of this issue.

**2. Plaintiffs' refusal to memorialize their position on what claims are at issue.** Defendants ask for the Court's assistance in crystallizing the scope of the statements about which Plaintiffs are allegedly seeking relief. Plaintiffs have repeatedly stated, in hearings and in correspondence—and in their letter below—that this case is now *only* about statements concerning the USDA. That is, Plaintiffs have stated that they are only seeking to impose

**COVINGTON**

Hon. Jacqueline Scott Corley
October 24, 2019
Page 4

liability on Defendants for statements related to the USDA, and they have sought to use this position as a basis for narrowing the discovery Defendants can take of them.

Nevertheless, Plaintiffs have repeatedly refused to amend their complaint or enter into a formal stipulation confirming this position. This is problematic, as the operative 65-page complaint (with 22 exhibits) includes allegations about statements by Plaintiffs concerning third-party funders, such as UNICEF, USAID, and the Clinton Global Foundation. Dkt. 78 ¶¶ 55, 65, 67, 73–74, 186, 196–97, 210, 234. Defendants have produced documents concerning such entities, in response to Plaintiffs' requests made under the Court's order that the parties would proceed with "essential" document production. *See* Nov. 9, 2018 Hr'g Tr. at 8:14–18. In short, Plaintiffs are seeking to use their statements about their case's scope as a basis for limiting the discovery Defendants can take, but Plaintiffs refuse to formalize any limits.

Plaintiffs' vacillation prejudices Defendants. It is impractical for Plaintiffs to state in correspondence and at hearings that the case is limited to statements about the USDA, while refusing to amend their complaint or otherwise formalize their position. Plaintiffs leave Defendants in the untenable position of not knowing the scope of the complaint, the scope of appropriate discovery, or how to prepare deponents. Nor do Defendants have any guarantee that Plaintiffs will later assert that statements about other entities are fair game after all.

The Court has already proposed a solution to this issue. During the November 2018 hearing, in response to comments by Plaintiffs that this case was solely about the USDA-related statements, the Court suggested that Plaintiffs could amend their complaint again or otherwise find a way to memorialize their position that their claims only concern the USDA, and Defendants could agree not to seek fees for unrelated claims. *Id.* at 77:7–78:18. In an effort to facilitate this result, on December 31, 2018, Defendants submitted to Plaintiffs a proposed amended complaint and stipulation memorializing this offer to narrow the complaint. To date, Plaintiffs only have proposed amending the introduction to the complaint, while leaving the actual allegations and counts untouched. They have not responded to further requests to formalize the supposed limitations on their claims.

Plaintiffs' response includes three points on this topic, none of which alters the bottom line discussed above. *First*, Plaintiffs claim that their complaint's references to non-USDA entities are not keyed to their defamation claim, but rather to their tortious interference claim. That contention is news to Defendants—and is another reason why they need to amend and clarify their complaint. Plaintiffs lump all of Defendants' publications together—including those discussing UNICEF and the Clinton Foundation, for example (*e.g.*, Dkt. 78 Exs. D, I, U)—and allege them to be defamatory. Dkt. 78 at ¶¶ 192–214. Indeed, Plaintiffs' defamation count specifically and repeatedly asserts that Defendants' publications harmed Plaintiffs' reputations with possible funders, "including the USDA and/or UNICEF." *Id.* ¶¶ 196, 210. In any event, Defendants' anti-SLAPP motion specifically targets Plaintiffs' tortious interference and other non-defamation claims, which fail for the same reasons as its defamation claim does. Dkt. 107 at 25. So Plaintiffs' arguments as to which claim involves non-USDA entities are immaterial.

*Second*, Plaintiffs are wrong that Defendants' anti-SLAPP motion itself is only about statements concerning the USDA. In terms of the anti-SLAPP motion's focus on articles specifically about the USDA, Defendants' position has always been consistent that the two main

COVINGTON

Hon. Jacqueline Scott Corley
October 24, 2019
Page 5

publications—Exhibits A and B to Plaintiffs' complaint—include the facts underpinning the rest of the publications.  *See* Dkt. 107 at 23; *see also* Nov. 9, 2018 Hr'g Tr. at 55:15–22 (noting one example of Defendants' position that the first two publications include all necessary facts to decide Defendants' motion as to other publications in the complaint).  For instance, Defendants' statements about UNICEF and the Clinton Foundation arise from and in relation to Defendants' publications about Plaintiffs' purported misuse of USDA funds.  *See* Dkt. 78 Exs. D, I, U.

*Finally*, Plaintiffs' "agreement" to submit a revised introduction to their complaint does nothing but exacerbate confusion, as Defendants have told Plaintiffs.  Even if the introduction says that every paragraph following the introduction relates to the USDA program, Defendants would still not be able to determine how Plaintiffs intend to approach the allegations concerning non-USDA entities, which would all remain in the complaint according to Plaintiffs' edits.

It isn't unusual, after discovery has progressed, for a party to decide to limit its claims based on the facts.  But it is very unusual for a party to represent that limitation is warranted—and refuse to do anything about it.  If Plaintiffs truly seek to limit the complaint (and therefore discovery) solely to issues concerning the USDA, Defendants ask that the Court order Plaintiffs to submit a formalized pleading that amends and narrows their complaint to focus on the USDA, or, as the Court sees fit, to provide other formal assurances as to the scope of issues Plaintiffs intend to pursue.  Doing so would focus and narrow the issues substantially.  It would also help to resolve the parties' impasse as to depositions, discussed in a separate joint letter.

**3.  Plaintiffs' inconsistent positions on DAPP Malawi.**  Defendants also ask that the Court compel discovery from Plaintiffs for information and documents held by DAPP Malawi, or otherwise compel Plaintiffs to amend their complaint to exclude statements about DAPP Malawi.  Plaintiffs refuse to provide *any* discovery from DAPP Malawi on the grounds that DAPP Malawi is an "independent contractor" and that "Planet Aid does not exert control over DAPP Malawi *for discovery purposes*."  Forrest Decl. ¶ 5 & Ex. F.  (emphasis added).

This position is flatly inconsistent with the positions Plaintiffs have previously taken.  Indeed, Plaintiffs' complaint repeatedly refers to Ms. Thomsen's employer DAPP Malawi as a "subcontractor" for Planet Aid.  Dkt. 78 ¶¶ 2, 16–18, 27, 62, 77, 79, 198.  Plaintiffs have also affirmed to the Court that DAPP Malawi is a subcontractor for Planet Aid.  *See, e.g.*, Jan. 18, 2019 Hr'g Tr. at 21:2–22:16.  And Planet Aid's website calls DAPP Malawi its "sister organization."  Planet Aid, Countries – Malawi, https://www.planetaid.org/countries/malawi.

Further, Plaintiffs' complaint specifically asserts that Defendants are liable *to the named Plaintiffs* for statements *concerning DAPP Malawi*—which is not a party to this case.  For example, Section F of the complaint is titled, "Defendants Falsely Accused Planet Aid/DAPP Malawi of Having 'Siphoned Off 50–70% of USDA Funds' through Employee Salaries."  Dkt. 78 at p.31.  As another example, Plaintiffs cite a specific statement from one of Defendants' stories concerning DAPP Malawi, as support for Plaintiffs' theory that Defendants are liable to them for defamation.  *Id.* ¶ 202.  And as to all of Plaintiffs' claims, they allege that Defendants distributed purportedly false information with "potential partners or entities with whom Planet Aid and/or DAPP Malawi had either existing or prospective business dealings."  *Id.* ¶ 190.  Both Planet Aid and Ms. Thomsen have put their relationships with DAPP Malawi directly at issue in their claims against Defendants, which are subject to Defendants' pending anti-SLAPP motion.

COVINGTON

Hon. Jacqueline Scott Corley
October 24, 2019
Page 6

      At a minimum, given Planet Aid's representations, they should at least provide discovery about Plaintiffs' relationship with DAPP Malawi, including any contracts between the organizations. After all, if Plaintiffs represent that Planet Aid does not control DAPP Malawi "for discovery purposes," Defendants should be able to investigate and understand exactly what Planet Aid means by that. *Cf. In re Citric Acid Litig.*, 191 F.3d 1090, 1107-1108 (9th Cir. 1999) ("Control is defined as the legal right to obtain documents upon demand.").

      Plaintiffs' counter-arguments about DAPP Malawi are non-sequiturs at best, and undermine Plaintiffs' arguments at worst. Defendants' argument is that Plaintiffs have put their relationships with DAPP Malawi at issue in the complaint, but have been inconsistent about what information about DAPP Malawi they must turn over, and have made the bizarre statement that Planet Aid does not control DAPP Malawi "for discovery purposes" (without explaining what that means or the extent of Planet Aid's control over DAPP Malawi as its subcontractor). As to Plaintiffs' statement that they are entitled to claim that statements about Ms. Thomsen are really about DAPP Malawi, that is a big part of Defendants' argument about why Ms. Thomsen is a limited purpose public figure—she is the face of DAPP Malawi.

      The parties are available at the Court's convenience to discuss any of the above issues in greater depth.

# COVINGTON

BEIJING   BRUSSELS   DUBAI   FRANKFURT   JOHANNESBURG
LONDON   LOS ANGELES   NEW YORK   PALO ALTO
SAN FRANCISCO   SEOUL   SHANGHAI   WASHINGTON

**Ethan Forrest**

Covington & Burling LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
T  +1 415 591 7008
eforrest@cov.com

**PLAINTIFFS' POSITION**

Defendants' proposed options for going forward are part of a coordinated strategy to delay, not expedite, this case. Defendants propounded substantially overbroad discovery requests, and then refused to negotiate, narrow or tailor any of those requests. See Protec. Order Ltr. Even a cursory review of these requests makes clear that Defendants' primary purpose was not to obtain responses to any question needed to resolve the pending anti-SLAPP motion, which as Defendants concede is the only basis for discovery at this juncture. *See supra* at p. 1 ("discovery in this case at this posture is limited to what is necessary to resolve Defendants' anti-SLAPP motion (Dkt. 107)"). Rather, Defendants have attempted to employ and leverage this onerous and disproportional discovery to preclude Plaintiffs from deposing Defendants Matt Smith and Amy Walters. When faced with overwhelming caselaw holding that Defendants lacked a valid basis for unilaterally refusing to comply with those deposition notices, *see* Plaintiffs' letter addressing Defendants' refusal to attend depositions (cases collected), Defendants shifted course, and now argue for a stay of all discovery and briefing other than that supporting *their case* under the guise of narrowing the issues. We address below why the suggested approach is a recipe for delay.

I.      **The Bifurcated Approach**

In January, 2019, Plaintiffs raised the issue of a possible bifurcated approach in which the parties would brief whether either Plaintiff was a public figure. At that time, the case had been pending for over 2 ½ years, and Defendants were refusing to provide any indication as to when they would complete document production, which itself had been going on for 1 ½ years since Plaintiffs had first served their requests. As Defendants note, Judge Chesney thought that this might be a logical approach for the parties to consider.

But in the ten-month period since Judge Chesney offered that approach for consideration, Defendants ignored it entirely. Instead, Defendants dragged their feet on discovery, even now refusing to say whether they have completed all production. *See* Ltr. addressed to depositions and discovery. Only now, when document production from Defendants is coming to an end and they face depositions of two key Defendants, Matt Smith and Amy Walters, do Defendants seek to resurrect the bifurcated approach, all the while claiming that they should be allowed to proceed with their own abusive discovery.

   A.   **Given the Lack of Allegations that Would Allow Defendants to Sustain Their Burden of Showing that Either Plaintiff is a Limited Public Figure, It Is Particularly Inappropriate to Stay Discovery from Defendants.**

As a threshold matter, the Court may wish to consider whether the weak showing made by Defendants as to either Plaintiffs' status as limited public figures even warrants staying further discovery from Defendants. As for Planet Aid, the mere fact that it has applied for, and received, public funding is insufficient to make it a limited public figure. *See Hutchinson v. Proxmire*, 443

COVINGTON

Hon. Jacqueline Scott Corley
October 24, 2019
Page 8

U.S. 111, 135 (1979). Lisbeth Thomsen's status as a limited public figure is even more dubious. Even if Defendants could identify a "public controversy," "[m]erely doing business with parties to a public controversy does not elevate one to public figure status." *Vegod Corp. v. Am. Broad. Companies, Inc.*, 603 P.2d 14, 17 (Cal. 1979).

Even under their own analysis, Defendants concede that in order to show that either party is a limited public figure they must show, first, that "there is a public controversy, i.e., where the issue was being debated publicly [prior to the defamatory statements] and . . . had foreseeable and substantial ramifications for nonparticipants," Dkt. No. 107, at 11. Second, Plaintiffs must have voluntarily injected or thrust themselves into that public controversy, and, third, "the alleged defamation was 'germane to the plaintiff's participation in the controversy,'" all of which elements Defendants concede must be shown. See *id.*, at 12 (internal citations omitted). When it comes to identifying the public controversy, the closest that Defendants come to that requirement is that a controversy existed about "use of public funds for charitable purposes," see *id.*, at 12. That vague description is almost exactly what has been found inadequate to trigger a malice standard. *Hutchinson*, 443 U.S. at 135 ("[A]t most, they point to concern about general public expenditures. But that concern is shared by most and relates to most public expenditures; it is not sufficient to make Hutchinson a public figure. If it were, everyone who received or benefitted from the myriad of public grants for research could be classified as a public figure—a conclusion that our previous opinions have rejected.").

And when it comes to showing that either Plaintiff "voluntarily injected" themselves into that "public controversy," Defendants are even more vague, relying on anything that either Plaintiff has done to promote their work, even work that has nothing to do with the USDA program or the sole charitable program identified in the anti-SLAPP motion, namely, the Food for Progress Program. See, e.g., Dkt. No. 107, at 12 (referring to the fact that Planet Aid has received 6,000 "likes" on its Twitter page). Not surprisingly, having been unable to focus on a single public statement by either Plaintiff which shows that they "voluntarily injected" or "thrust" themselves into some articulate "public controversy," Defendants have now propounded discovery requests seeking every public statement ever made by Planet Aid in trying to find one that would qualify. See Protec. Order Ltr.

B. **The Bifurcated Approach Will Not Avoid Discovery Disputes Raised in Plaintiffs' Motion for a Protective Order, But Rather, Is Intended as an Excuse for Refusing to Produce Matt Smith and Amy Walters for Depositions.**

Defendants also err in arguing that bifurcation would expedite the case by focusing on whether either Plaintiff is a limited public figure and halting all discovery other than that served on Plaintiffs. Defendants' real motive in this one-sided approach, however, is not to expedite the case, but to avoid depositions of two key Defendants. Defendants have not even explained why a stay of depositions of those key Defendants is required even if the Court were to entertain an early resolution of this discrete issue.

When bifurcation was first raised ten months ago, the bulk of discovery was still forthcoming from Defendants; at that time, it made sense to try and explore ways to expedite the

COVINGTON

Hon. Jacqueline Scott Corley
October 24, 2019
Page 9

case, an opportunity which Defendants chose to ignore.  Now that the parties are approaching the tail end of Defendants' document production, and starting depositions, Defendants are looking for every roadblock available to forestall such depositions.  Based on their approach, even if the Court were to adopt a bifurcated approach, and unless Defendants withdraw their discovery requests, the Court would have to address what can only be described as an abusive set of discovery demands that would call for the production of documents disproportionate to the needs of the case, including:  (l) all documents relating to hundreds of charitable programs in which Planet Aid has ever been involved over a 13-year period, despite the fact that the anti-SLAPP motion does not even make mention any program other than the USDA Program in Malawi; (2) every donor with whom Planet Aid has ever dealt, despite the fact that the only donor mentioned in the anti-SLAPP motion is the USDA;  (3) every property owner who allowed any of the 15,000 recycle bins used by Planet Aid to be placed on their property, despite the fact that this has no bearing on any issue raised in the anti-SLAPP motion; (4) every public appearance, newsletter, press release, lobbying effort or other public involvement over a 13-year period, despite the fact that all information to which an objection has been lodged is (1) already available to Defendants and/or (2) irrelevant to whether either Defendant is a public figure, as discussed below.

Accordingly, given the completely disproportionate and burdensome nature of all discovery sought by Defendants, the Court will still be required to address a significant number of discovery disputes.  Particularly in light of Defendants' stated refusal to narrow or withdraw any of their overbroad and disproportionate requests, see Protec. Order Ltr., Ex. A-2, A-3, it is apparent that the bifurcated approach suggested by Defendants will not significantly narrow any of the discovery disputes, but is simply offered to avoid depositions of key Defendants.

### C. **The Bifurcated Approach Would Likely Delay, Not Expedite, a Decision on The Anti-SLAPP Motion.**

Moreover, it is also a false hope that bifurcation of the issues will make it easier for the parties to brief, and for the Court to decide, whether Plaintiffs have established a *prima facie* case concerning Defendants' conduct.  Defendants entire approach assumes that under a malice standard, Plaintiffs will be unable to show that Defendants knew what they were reporting was incorrect, or at a bare minimum, acted recklessly as to what was being reported.  *See supra*, citing *Readers Digest*.  Contrary to the notion that reliance on a malice standard would end or curtail the case, it will do neither.  If the Court agrees with Plaintiffs that they are not limited public figures, the parties will have to litigate the case under a negligence standard; if, on the other hand, it agrees with Defendants, the parties will still have to litigate the remainder of the case under a malice standard.

Defendants' bifurcated approach also ignores the possibility that the Court may not even have to reach the issue of whether either Plaintiff is a limited public figure.  Defendants fail to consider the fact that in response to the anti-SLAPP motion, Plaintiffs will be offering substantial evidence of malice, a slice of which is set forth in the letter requesting a protective order. See Ltr. Protec. Order.  That evidence consists of statements by Defendants' own sources disavowing, one after another, what was reported, or alternatively, stating how they were misled into making false statements, as well as evidence, inter alia, that bribes and other inducements were used to

COVINGTON

Hon. Jacqueline Scott Corley
October 24, 2019
Page 10

manufacture evidence, and that Defendants themselves questioned what was being reported. Accordingly, the Court may ultimately decide that it does not even have to reach the issue of whether either Plaintiff is a limited public figure since there is sufficient evidence at the anti-SLAPP stage to find that Defendants acted knowingly or recklessly.

## II.     Plaintiffs Have Consistently Taken the Position that This Case is About False and Defamatory Allegations that Over $130 Million was Stolen From the USDA Programs.

Defendants next argue that Plaintiffs have waffled over whether this case is about the theft of funds from the USDA or whether it relates to some other donors, such as DifD, UNICEF, etc. There is no confusion.

The FAC makes clear that it focuses on defamatory statements alleging that Plaintiffs stole, diverted or siphoned away funds was ***from the USDA programs.*** Every single paragraph framing the statements alleged to be defamatory relate to the alleged theft of funds from the USDA – not some other donor.  See, e.g., Dkt. No. 78, at ¶ 197 ("False and defamatory statements by Defendants included reports that Plaintiffs had engaged in fraud, money laundering, and other criminal conduct that included diverting, siphoning away or stealing funds ***from USDA funded projects***");  *id.*, at ¶ *198* (statements that money was stolen "***from the USDA Programs***"); *id.*, ¶ 199 (statements about the amount obtained "***from the USDA***"); *id.*, ¶ 200 (statements about diversion of money "intended for ***the USDA Programs***"); *id.*, at ¶ 201 (statements about farmers "***in the USDA Program***"); *id.*, at ¶ 202 (statements about equipment to have been provided "***under the USDA Programs***"); *id.*, at ¶¶ 203-04 (statements about employee kickbacks and that Plaintiffs had ***lied to the USDA*** about employee salaries); *id.*, at ¶ 205 (statements about what "***the USDA*** did.");  *id.*, at ¶¶ 206, 207 (statements about involvement by a "cult leader" in "***the USDA Programs***")(emphasis added in above quotations).

Defendants, by contrast, have tried to create confusion by claiming that the FAC refers also to the UK DifD, Clinton Fundation and UNICEF.  See *supra* at pp. 2-3.  The cited paragraphs, however, are not offered by Plaintiffs in the FAC to show that Defendants made any false or defamatory statements regarding those donors.  Quite the contrary.  To the extent that Defendants issued publications boasting that their articles caused those donors to withdraw funding, see, e.g., Planet Aid believes that those statements are actually truthful, and that donors did in fact withdraw from programs based on Defendants' publications. Compare, e.g., Dkt. No. 78, at ¶¶ 73-74 (alleging that following publication of Defendants' articles, UNICEF terminated the program), with Dkt. No. 78-5, at 2 (Defendants publication stating "UNICEF has cut its ties with an organization that coordinates U.S. humanitarian programs in Malawi, following an investigation . . . by Reveal").  Accordingly, Plaintiffs are not alleging that any statement regarding those donor programs are defamatory, but rather, are offered solely as evidence of Defendants' use of its reporting to tortiously interfere with business opportunities.

Of course, none of this comes as a surprise to Defendants.  As reflected in their anti-SLAPP motion, Defendants failed to refer even once to DifD, UNICEF or Clinton Foundation.  Obviously, Defendants were fully aware that Plaintiffs were not claiming that Defendants defamed Plaintiffs

COVINGTON

Hon. Jacqueline Scott Corley
October 24, 2019
Page 11

regarding those programs, but only that Defendants were responsible for those donors withdrawing funding.

In any event, Plaintiffs have agreed to clear up any feigned confusion. Defendants have consented to a revised introduction that would be filed stating that all the the "paragraphs that follow" relate to the USDA Program.

### III. Plaintiffs Have Taken Consistent Positions Regarding DAPP Malawi.

Defendants next argue that Defendants have taken inconsistent positions regarding DAPP Malawi. Any such position is meritless.

Further, this argument underscores the completely arbitrary nature of the discovery limitations and disputes raised by Defendants. Planet Aid's contractual relationship with DAPP Malawi cannot establish that either party is a limited public figure. See *Masson v. New Yorker Magazine, Inc.*, 832 F. Supp. 1350, 1370 (N.D. Cal. 1993) ("The Court finds that general agency rules do not apply in the constitutional context."); *Murray v. Bailey*, 613 F. Supp. 1276, 1281 (N.D. Cal. 1985) ("The stringent standards required by the First Amendment make application of an agency theory inappropriate."). Similarly, and as explained above, even if DAPP Malawi were a full-fledged subcontractor today to the USDA itself, which it is not, that hardly shows that DAPP Malawi or Ms. Thomsen are limited public figures. *See supra.*

As far as any confusion over whether DAPP Malawi is seeking damages based on Defendants' conduct, the answer should be clear: Plaintiffs are not alleging that DAPP Malawi is entitled to recover for any defamatory statements. Defendants themselves correctly point out above that DAPP Malawi is not a party to this action. It remains a non-party. It is an entirely different, matter, however, to argue that a reasonable jury could not construe defamatory statements about alleged fraud at DAPP Malawi as intending to refer to Ms. Thomsen specifically. In fact, Defendants themselves made sure to provide that linkage when they reported in the same breath that "your organization is scheming US government funds" and that "[t]he people in charge of your money said you're stealing money," together with her reply: "I'm definitely not stealing any money." Dkt. No. 78-17, at 25-26. And if it were not enough to actually use the word "stealing" when addressing Thomsen and her role, Defendants immediately went on in the next sentence to tie their allegation about Thomsen stealing money to the massive fraud reported throughout the story. *Id.* Thomsen has every right to have the jury determine whether statements throughout all the publications about fraud at DAPP Malawi were actually targeting her.

Finally, Plaintiffs previously pointed out that Defendants have repeatedly sought discovery which is already in their possession. See, e.g., Protec. Order. Ltr. That is the situation confronting Plaintiffs when it comes to Defendants' complaint that it cannot proceed without a copy of Planet Aid's contract with DAPP Malawi regarding the USDA Program. Defendants already had in their possession a draft of that contract. See CIR 39512. While we have no objection to working cooperatively with Defendants if there are other documents reasonably needed by them, their absolute refusal to even narrow or withdraw a single request makes any such process impossible. See Protec. Order Ltr., Ex. A-2, 3.

**COVINGTON**

Hon. Jacqueline Scott Corley
October 24, 2019
Page 12

Consequently, the Court should reject the bifurcated approach suggested by Defendants.

*   *   *

I submit this joint letter brief on behalf of both Plaintiffs and Defendants.

Sincerely,

<em>/s/Ethan Forrest</em><br>
Ethan Forrest