# COVINGTON

BEIJING   BRUSSELS   DUBAI   FRANKFURT   JOHANNESBURG
LONDON   LOS ANGELES   NEW YORK   PALO ALTO
SAN FRANCISCO   SEOUL   SHANGHAI   WASHINGTON

Ethan Forrest

Covington & Burling LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
T +1 415 591 7008
eforrest@cov.com

**By Electronic Service**                                         November 19, 2019

Hon. Jacqueline Scott Corley
U.S. District Court for the Northern District of California
450 Golden Gate Ave.
15th Floor
San Francisco, CA 94102

       **Re: Planet Aid, Inc. v. Reveal, No. 3:17-cv-03695-MMC**

Dear Judge Corley:

       Defendants submit this letter in response to the Court's October 28, 2019 Discovery Order, Dkt. 241, which states that each party may submit a letter brief regarding remaining discovery disputes. Pursuant to that Order, Defendants provided Plaintiffs a set of narrowed discovery requests. Forrest Decl. Exs. A–B ("Requests"). Defendants have exchanged responses with Plaintiffs and conferred with them during calls on two separate occasions, but Plaintiffs have refused to agree to provide the majority of information in Defendants' Requests. Defendants outline these disputes below, and then provide a brief note about the requests Plaintiffs raised after the Court's October 28 Order.

       ***Defendants request documents bearing on Plaintiffs' public figure status.***
Defendants' Requests 2 through 5 seek documents, things, and communications bearing on whether Planet Aid or DAPP Malawi are public figures. The following factors, among others, are relevant to determine Plaintiffs' public figure status: (1) Plaintiffs' general fame or notoriety in the community, (2) Plaintiffs' involvement in the affairs of society, (3) whether a public controversy involving Plaintiffs existed when Defendants' statements were made, and (4) whether Plaintiffs voluntarily injected themselves into the controversy for the purpose of influencing the controversy's resolution. *Makaeff v. Trump University LLC*, 715 F.3d 254, 265-66 (9th Cir. 2013). Defendants' discovery Requests 2 through 5 seek documents Planet Aid and DAPP have shared with the public; communications with media and public relations officers; documents regarding the public perception of both companies; and communications relating to inherently public activities such as lobbying, advertising, fundraising, and so forth.

       Plaintiffs incorrectly contend that this information is not essential to the anti-SLAPP motion. Forrest Decl. Ex. C. This contention is frivolous, based on Plaintiffs' own representations in this case. Plaintiffs previously took the position before Judge Chesney that their public figure status was so important that the Court ought to order limited discovery and early briefing on the subject. *Id.* Ex. D (Jan. 18, 2019 Hr'g Tr. at 30:18–31:17, in which

COVINGTON

Hon. Jacqueline Scott Corley
November 19, 2019
Page 2

Plaintiffs' counsel describes the significance of Plaintiffs' public figure status).  The Court should not credit Plaintiffs' argument on this point.

Plaintiffs' position is also contrary to law.  On the anti-SLAPP motion, it is Plaintiffs' burden to establish a reasonable probability that they will prevail on their claims.  Cal. Civ. Proc. Code § 425.16(b)(1); *Makaeff*, 715 F.3d at 261.  Their public figure status is critical to this point.  If Plaintiffs are public figures, they must show that Defendants made the allegedly defamatory statements with "actual malice," defined as "with knowledge of [the statements'] falsity or with reckless disregard for the truth."  *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 349 (1974).  If Plaintiffs are not public figures, Plaintiffs must show Defendants were negligent in publishing false statements.  *Obsidian Finance Group, LLC v. Cox*, 740 F.3d 1284, 1289 (9th Cir. 2014) (quoting *Gertz*, 418 U.S. at 350).  Indeed, the Ninth Circuit in *Makaeff* first decided the public figure issue as relevant to defendant's anti-SLAPP motion before remanding the case to the lower court to determine whether plaintiffs had a reasonable probability of prevailing on their claim.  715 F.3d at 256.  Deciding whether malice applies therefore matters a great deal to Plaintiffs' burden.

It is absurd for Plaintiffs to refuse to cooperate with basic discovery into whether they are public figures or not.  Defendants are asking for a simple set of documents that would show how Plaintiffs have injected themselves into the public discourse about their use of government funds.  Newspapers have reported on this issue for nearly 20 years already.  Dkts. 237-8 – 237-14 (providing examples of newspapers from around the country reporting on Planet Aid and its use of government funds).  And it is not disputed in this case that Plaintiffs have spent substantial time and resources trying to obtain funding for their work from the USDA and other governmental entities from around the world.

Plaintiffs have documents that are important to their public figure status, and they should produce them.  The Court should order Plaintiffs to comply with Defendants' requests on this topic.

***Defendants request documents bearing on the truth of the factual issues Plaintiffs allege in their complaint.***  The key claim in this case is Plaintiffs' allegation of defamation.  Dkt. 78 ¶ 193.  Falsity is an element of a defamation claim—truth is an absolute defense.  *See Price v. Stossel*, 620 F.3d 992, 998 (9th Cir. 2010); *Masson v. New Yorker, Inc.*, 501 U.S. 496, 516-17 (1991).  As such, Defendants seek documents concerning Plaintiffs' position at the anti-SLAPP stage that Defendants' statements about Plaintiffs' relationship with the USDA were false.  At Plaintiffs' request, Defendants also narrowed these documents to make clear they only seek documents concerning USDA-related statements that Plaintiffs have specifically put at issue in this case.  Forrest Decl. Ex. B.

Plaintiffs allege that Defendants made defamatory statements with regard to (among other topics): funding that Plaintiffs received from the USDA (Dkt. 78 ¶¶ 197-200); Plaintiffs' provision of livestock, agricultural inputs, and water pumps to farmers in Malawi pursuant to a USDA grant  (i*d.* ¶¶ 201, 202); Plaintiffs' financial information (*id.* ¶¶ 197-200, 203); and compensation paid to Plaintiffs' employees and agents  (*id.* ¶¶ 203, 204).  Defendants' Requests 6–13 seek documents bearing on the truth of these facts that Plaintiffs have put at issue in their

COVINGTON

Hon. Jacqueline Scott Corley
November 19, 2019
Page 3

complaint, as well as DAPP Malawi financial documents that former accountant Harrison Longwe reviewed.

Plaintiffs stated on November 15, 2019 that they are concerned that Defendants seek these documents to retroactively prove the truth of their statements. This is a red herring. Because truth is a defense in this case, it is entirely appropriate for Defendants to investigate these topics. Further, Defendants reject Plaintiffs' implication that Defendants seek this discovery because they doubt or cannot rely on the material they used during their investigation and publication. The materials Defendants have produced and relied upon in this case—alongside all of the material Defendants made available with their reporting—supports the conclusion that Defendants' stories were accurate as reported.

To the extent that Plaintiffs challenge the truth of Defendants' reporting based on any documents in their possession, custody, or control, Plaintiffs must produce these documents. Defendants ask the Court to order Plaintiffs to comply with these requests, which all concern material Plaintiffs have directly put at issue in their lawsuit.

***Defendants request documents within Plaintiffs' possession, custody, or control irrespective of whether Defendants possess or have access to a subset of such documents.*** Plaintiffs state numerous times that they will not search for and produce documents in their possession that may already be in Defendants' possession or are otherwise accessible to Defendants. Forrest Decl. Ex. C. As stated in Defendants' October 24 Letter to the court, Plaintiffs' position is inconsistent with their obligation to provide relevant documents in their "possession, custody, or control." Fed. R. Civ. Proc. 34(a)(1)(A); *see also e.g.*, *Turner v. Craig*, No. C 09–03652 SI, 2010 WL 4975555, at *1 (N.D. Cal. Dec. 2, 2010) (rejecting defendant's argument that he need not produce discovery materials that plaintiff can purchase online); *Regal Elecs., Inc. v. Pulse Eng'g, Inc.*, No. 5:03-CV-1296-JW(RS), 2005 WL 3078983, at *3 (N.D. Cal. Nov. 16, 2005) (rejecting the argument that a party with responsive documents in its possession or control does not need to provide them solely because the requesting party may be able to otherwise access them).

Plaintiffs are the only party in the position to identify the full scope of responsive, non-privileged documents to each of Defendants' discovery requests. These documents are pertinent to the anti-SLAPP motion for the reasons described in this letter, and Plaintiffs may not skirt their obligation to provide relevant discovery because they believe Defendants may or may not have certain materials. Regardless of whether Defendants might possess or be able to access some subset of Plaintiffs' documents, Plaintiffs must produce all responsive, non-privileged documents in their possession, custody, or control. *E.g.*, *Regal Elecs.*, 2005 WL 3078983, at *3.

The Court should order Plaintiffs to comply with the limited discovery requests Defendants have raised at this point.

***Defendants request documents relating to Plaintiffs' destruction of documents before they sued Defendants.*** Plaintiffs agree to provide documents in response to Defendants' Request 15—regarding documents evidencing the destruction of materials—from the date this lawsuit was filed onward.

COVINGTON

Hon. Jacqueline Scott Corley
November 19, 2019
Page 4

Defendants are very concerned about Plaintiffs' time limitation as to this Request. To state it plainly: Defendants have contemporaneous evidence from confidential sources stating that, after Planet Aid and DAPP Malawi became aware of the scope of Defendants' reporting, they began destroying and falsifying documents concerning the Teachers Group and USDA records. Defendants will provide this evidence to the Court, in camera, upon request. As this Court is aware from prior disputes between the parties, Defendants are obliged to protect the identities of confidential sources, particularly when there is a risk of retribution for the sources having disclosed sensitive information.

Further, Plaintiffs were under a duty to preserve evidence not just at the time they filed suit, but at the time they "had some notice that the documents were potentially relevant to litigation." *U.S. v. Kitsap Phys. Serv.*, 314 F.3d 995, 1001 (9th Cir. 2002); *see also Azad v. Goodyear Tire & Rubber Co.*, No. 2:11-CV-00290-KJD, 2013 WL 593913, at *4 (D. Nev. Feb. 14, 2013) ("Litigants owe an uncompromising duty to preserve what they know or should know will be relevant evidence in a lawsuit even though no discovery requests have been made and no order to preserve evidence has been entered.").

Of course, Plaintiffs anticipated litigation before filing the complaint—that is obvious from the bare fact that they challenged Defendants' reporting and then sued them. *See Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Sec.*, LLC, 685 F. Supp. 2d. 456, 466 (S.D.N.Y. 2010) ("A plaintiff's duty is more often triggered before litigation commences, in large part because plaintiffs control the timing of litigation."). It would be nonsensical and prejudicial for Plaintiffs to be allowed to destroy pertinent documents before filing their lawsuit, but after they were aware they might be initiating litigation.

Defendants request that the Court order Plaintiffs to search for and produce documents referencing or evidencing the destruction or modification of responsive materials from any time between (a) when Plaintiffs learned of Defendants' reporting and (b) when Plaintiffs sued Defendants. Plaintiffs should also designate a witness who can testify about any destruction or modification of documents that may have occurred.

\*     \*     \*

Separately, Defendants note that because the parties are not submitting joint letters as to pending disputes, Defendants do not know precisely what disputes Plaintiffs intend to raise with the Court. So Defendants will not attempt to predict and respond to everything Plaintiffs might argue at this point.

That said, Defendants note that any pending requests Plaintiffs have are untimely and contrary to the Court's specific guidance after the November 9, 2018 hearing on discovery. Specifically, at that hearing, the Court instructed the parties not to engage in "full-blown" discovery, but instead to focus on what Plaintiffs identified as "essential" to their opposition to Defendants' anti-SLAPP motion. Nov. 9, 2018 Hr'g Tr. at 8:8–23. This process proceeded smoothly for months, with Defendants producing around 90,000 pages of documents and roughly 79 hours of audiovisual material. Dkt. 235 at 8 & n.7. Indeed, by the time the parties submitted their October 24, 2019 joint dispute letters to the Court, Plaintiffs had—for months—

COVINGTON

Hon. Jacqueline Scott Corley
November 19, 2019
Page 5

not identified what remaining categories of documents they believed were essential to their opposition.  *Id.*  & Dkt. 235-1 at 68.

  As such, Defendants question whether Plaintiffs' pending requests, served November 5, 2019, are genuinely essential—as opposed to mere speculation and fishing.  Nonetheless, as Defendants have told Plaintiffs, Defendants are working to review and produce a subset of documents to which they have no objections, and to identify whether any other responsive and non-privileged documents exist.

  Defendants are happy to discuss these issues in further detail with the Court at the Court's convenience.

               Sincerely,

               */s/ Ethan Forrest*

               Ethan Forrest