UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PLANET AID, INC., et al., | Case No. 17-cv-03695-MMC (JSC) |
| Plaintiffs, | |
| v. | **ORDER RE: OUTSTANDING DISCOVERY DISPUTES** |
| REVEAL, CENTER FOR INVESTIGATIVE REPORTING, et al., | Re: Dkt. Nos. 267, 270, 274, 275, 276, 277, 278, 279, 280, 281 |
| Defendants. | |

On October 28, 2019, and in an attempt to bring the anti-SLAPP motion discovery to a close, the Court ordered

> the parties to appear in person at 9:00 a.m. on Thursday, November 21, 2019. The parties must be represented by counsel with authority to (1) agree to deposition dates, (2) agree to stipulations, and (3) agree to written discovery with deadlines. At that hearing the Court intends to order the parties to immediately meet and confer in person on *all* of their discovery disputes. Once they have done so, the Court will reconvene the hearing to place any agreements on the record and to hear argument on any remaining disputes.

(Dkt. No. 241 at 1 (emphasis in original).) In advance of the hearing the Court ordered the parties to do several things, including the following:

> If Plaintiffs contend that they need more discovery to respond to Defendants' antiSLAPP motion than Defendants have already produced (other than the identified depositions), by November 5, 2019 Plaintiffs must identify to Defendants the additional discovery with specificity and the reasons they need the discovery.

(*Id*. at 2.) Plaintiffs complied with the Order and identified the additional discovery they contended they needed. (Dkt. No. 246.) The Court then held a hearing on November 21, 2019 to resolve *any* remaining disputes. (Dkt. Nos. 247, 250.) This Order refers to this process as the "November discovery proceedings."

Since the November discovery proceedings the parties have filed a number of joint discovery dispute letters. This Order addresses what the Court believes to be the outstanding disputes.

**A.    Dkt. Nos. 267, 274, 278**

Plaintiffs' request for additional production as to 15 key sources who submitted declarations or were named in stories is DENIED. Plaintiffs did not raise the issue in connection with the November discovery proceedings notwithstanding the Court's admonishment that Plaintiffs identify any additional discovery needed to respond to Defendants' pending motion. Plaintiffs' insistence that they believed Defendants had produced documents related to all 15 sources is belied by the parties' email correspondence. That correspondence demonstrates that the parties were prioritizing production related to the 15 sources based on Plaintiffs' preference. For example, on March 5, 2019, Defendants asked Plaintiffs what their priority was after Reber; Plaintiffs responded "Ngwira." (Dkt. No. 278-3, Ex. B at 2.) By April, Defendants asked Plaintiffs what their next priority was, and, if they did not have any, suggested that they would continue with the list of 15 sources. Plaintiffs responded by asking for "Alonge" and other documents unrelated to the 15 sources. (Dkt. No. 278-4, Ex. C at 2.) Plaintiffs do not identify any correspondence in 2019 where they asked for Chiku Malabwe—the source their discovery dispute letter specifically calls out. (*See* Dkt. No. 267 at 1.) Indeed, Plaintiffs never asked Defendants for the remainder of the 15 sources even when in October 2019 Defendants asked Plaintiffs: "What other documents, if any, are essential for Plaintiffs in order to respond to our anti-SLAPP motion?" (Dkt. No. 267-2, Ex. 3 at 11.)

The Court agrees with Plaintiffs that they did not waive their right to discovery related to these sources and that they in fact requested it in 2018. The issue, however, is not whether Plaintiffs are entitled to the discovery in this lawsuit; instead, it is whether in connection with their anti-SLAPP motion opposition they are entitled to additional discovery now, as opposed to after the motion is resolved (assuming the case continues). As Plaintiffs did not raise the issue in connection with the November discovery proceedings, and the record reflects that Plaintiffs should have done so if they believed such material was important to their opposition, the Court will not

compel it at this time.  To hold otherwise would defeat the entire purpose of the November discovery proceedings: to move the anti-SLAPP motion discovery to an end.  In any event, even apart from their failure to request this outstanding discovery in October 2019, Plaintiffs have not persuasively explained why it is important to their anti-SLAPP opposition.  Again, the issue is not what discovery Plaintiffs are entitled to in the case; it is what additional discovery is necessary to their opposition to the motion.

**B.      Dkt. Nos. 270, 276, 277**

In support of their anti-SLAPP motion Defendants submitted a declaration from Mwiza Nkhata.  (Dkt. No. 123.)  Mr. Nkhata, an attorney, attests that he met with Harrison Longwe, a witness who also submitted a declaration in support of Defendants' anti-SLAPP motion.  Mr. Nkhata attests that he met with Mr. Longwe over multiple days in the process of preparing Mr. Longwe's declaration and that Mr. Longwe "read his declaration line by line, reviewed each exhibit in detail, made changes, and supplemented the declaration in his own words."  (Dkt. No. 123 at ¶ 5.)  During the November discovery proceedings, Plaintiffs sought Mr. Nkhata's communications with Mr. Longwe, as Mr. Nkhata is not and was not Mr. Longwe's attorney.  The Court indicated that Defendants had put Mr. Nkhata's communications with Mr. Longwe at issue and that they should be produced.  (Dkt. No. 250 at 16-22.)  Following submission of a further joint discovery dispute letter on this issue, the Court specifically ordered Defendants to "search for and obtain any communications their attorney Mr. Nkhata had with Mr. Longwe."  (Dkt. No. 273 at 1.)  The Court noted that it was not sufficient "for Defendants to rely on documents/communications in their own possession; instead, they must contact Mr. Nkhata to comply with the Court's order and Plaintiffs' request."  (*Id.*)  The Court ordered the parties to provide a written update on Defendants' production by March 16, 2020.  (*Id.*)

Defendants' update states that they "have confirmed with Mr. Nkhata that he has no emails or other correspondence exchanged with Mr. Longwe" and that they "are still exploring whether there are draft declarations that would be produced" and that they intend to produce such drafts by March 20, 2020.  (Dkt. No. 277 at 1.)  The parties have filed nothing more on this issue so the Court considers it resolved.  Any argument that Mr. Nkhata's declaration should be disregarded

3

should be made to the district court in connection with the anti-SLAPP motion.

## C.    Dkt. No. 275

Defendants produced a transcript in which Matt Smith states to a colleague:

> I told you we have the files from inside the computers of Planet Aid and looking at every last document again and again there's plenty of strategizing on how to network with, say, the Clinton Foundation or other outfits to induce government agencies to give them money. . . . this documentation of the activities to get the money, but there's no smoking gun as to what they're doing with the money.

(*See* Dkt. No. 275-1, Ex. A at 5 (176:17-177:4).)

At the November 21, 2019 hearing, Plaintiffs raised the issue of Matt Smith's statement: "We have asked [Defendants] to give us information or documents that would indicate what he is talking about.  Is he talking about having copied the hard drive?  Is he talking about a few pages?  Is he talking about file drawers, banker's boxes?"  (Dkt. No. 250 at 11:19-23.)  The Court responded that Plaintiffs could ask Mr. Smith those questions at his deposition and if it turned out that Defendants had not previously produced all the documents that Mr. Smith was referring to (as they maintain they have done), then Plaintiffs could get those documents and retake the deposition.  (*Id.* at 12:17-22.)  Plaintiffs responded that they were looking for documents that describe what Mr. Smith obtained from Planet Aid's computer, the quantity of the documents, and also that Plaintiffs just wanted to know how much material Mr. Smith received.  (*Id.* at 13:12-18.)  The Court again responded that Plaintiffs should ask Mr. Smith at his deposition.  Plaintiffs confirmed: "As long as, your Honor, I can come back to you if he won't answer the question.  If he will, I'm satisfied."  (*Id.* at 15:9-11.)

Plaintiffs subsequently deposed Mr. Smith about his statement, and, in particular, the volume of the material Mr. Smith had reviewed when he said the material did not reveal any "smoking guns."  Mr. Smith answered: "I don't know, but it was something on the order of between—like, a few thousand pages, Couple thousand—few thousand pages."  (Dkt. No. 275-1, Ex. A at 6 (178:9-15).)  Plaintiffs then asked: "Did this come from a laptop or a hard drive—or a main frame?"  (*Id.* (178:16-17).)  Mr. Smith answered: "I don't know."  (*Id.* (178:16-18).)

While it is not entirely clear what Plaintiffs seek in the joint discovery dispute letter, they

maintain that at his deposition "Mr. Smith was asked to identify the documents he had reviewed" and that he "[h]e refused to say which files he had obtained and reviewed, where they had come from, or any other information that would likely show not only that he had found no smoking gun, but also that what he had actually reviewed affirmatively disproved published reports that . . . $60-90 million had been stolen or diverted from USDA programs." (Dkt. No. 275 at 2.) Significantly, Plaintiffs' portion of the letter brief does not cite to the deposition transcript to support their assertion as to what Mr. Smith refused to say. The Court's own review of the transcript excerpts provided by Plaintiffs does not support their assertion. Plaintiffs did not ask Mr. Smith to identify the documents he reviewed. He was not asked what files he had obtained and thus did not refuse to identify what files he obtained, and he did not refuse to answer where the files had come from. Instead, when asked whether it was a laptop or hard drive he said he did not know. He did refuse, or could not answer, whether the files came from Maryland or Massachusetts, or whether the person who gave them to Mr. Smith had the authority to do so, (Dkt. No. 275-1 at 6 (178:19-180:18)), but those questions go to the source of the Planet Aid files not what documents Mr. Smith was referring to in his statement. At the November 21 hearing, however, Plaintiffs disclaimed wanting to know the source (which Defendants maintain is confidential). (*See* Dkt. No. 250 at 14:10-11.)

Accordingly, the motion to compel is DENIED.

### D. Dkt. Nos. 279, 280, 281

During the November discovery proceedings Plaintiffs sought materials relating to former NBC I-Team reporter Trish Thompson. Plaintiffs alleged that

> [Defendants'] malice can be shown through evidence that in addition to publishing articles falsely describing alleged fraud and theft in the USDA programs, Defendants tortiously interfered with Planet Aid's operations involving recycled clothing. Evidence relating to Thompson and the NBC-I Team will show that Defendants collaborated with Thompson to urge the public to stop using Planet Aid bins.

(Dkt. No. 246 at 4.) The Court ordered Defendants to determine the volume of documents sought by Plaintiffs and let Plaintiffs know, what, if any, documents Defendants are willing to produce. (Dkt. No. 250 at 34-35.)

5

Defendants advised Plaintiffs that there are 365 documents that consist of emails among Matt Smith, Amy Walters, and Tisha Thompson, as well as attachments. (Dkt. No. 279-2, Ex. D at 19.) Defendants further advised that they were standing on their objections, and not producing any documents. A joint discovery dispute letter followed. (Dkt. No. 279.)

Communications among Defendants and Ms. Thompson regarding Planet Aid donation bins and stores are potentially relevant to malice. Encouraging the public to stop supporting a subject of a reporter's investigation goes beyond reporting and Plaintiffs are entitled to explore that evidence and make an argument that such conduct is part of Defendants' reckless approach to the story. The question is not admissibility, but what can be discovered.

Defendants' and NBC's assertion that such communications are protected by the reporters' privilege is unpersuasive.[1] The reporters' privilege is "a qualified privilege for journalists against compelled disclosure of information gathered in the course of their work." *Shoen v. Shoen*, 48 F.3d 412, 414 (9th Cir. 1995); *see also Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993) (*Shoen I*) ("[W]hen facts acquired by a journalist in the course of gathering the news become the target of discovery, a qualified privilege against compelled disclosure comes into play."). Plaintiffs' request—as articulated in its written filing in connection with the November discovery proceedings (Dkt. No. 246)—does not seek information gathered in the course of NBC or Defendants' work; rather, they seek communications regarding efforts to encourage the public to not make donations to Planet Aid. Neither Defendants nor NBC cite any case that suggests communications reflecting such conduct are protected by the privilege; not everything a journalist does in connection with a story is privileged.

Accordingly, Defendants shall produce any communications between Defendants and Ms. Thompson that discuss/refer to donations to Planet Aid. To the extent other information related to the information-gathering process is included in the communications, it may be redacted. Such

---

[1] The Court overrules Plaintiffs' objection to the Court's consideration of NBC's letter in opposition to Plaintiffs' request. Plaintiffs originally sought documents from NBC, but dropped the request after NBC objected. Further, during the November discovery proceedings the Court specifically noted that NBC could object to the request. (*See* Dkt. No. 250 at 25:24-25.) As the Court is ordering documents produced, no further submission from Plaintiffs is needed.

information is not relevant to Plaintiffs' claimed need for the information—using Defendants' efforts to stop the public from donating to Planet Aid as evidence of malice. Such documents shall be produced within two weeks of this Order.

**IT IS SO ORDERED.**

Dated: April 8, 2020

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge