Pages 1 - 29

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

Before The Honorable Maxine M. Chesney, Judge

PLANET AID, INC, et al.,          )
                                  )
          Plaintiffs,             )
                                  )
   VS.                            )   **NO. C 17-3659 MMC**
                                  )
REVEAL, CENTER FOR                )
INVESTIGATIVE REPORTING, et       )
al.,                              )
                                  )
          Defendants.             )
_____)

                         San Francisco, California
                         Friday, August 21, 2020

           **TRANSCRIPT OF REMOTE TELEPHONIC PROCEEDINGS**

**APPEARANCES**:

For Plaintiffs:
                    NELSON MULLINS RILEY & SCARBOROUGH, LLP
                    101 Constitution Avenue NW, Suite 900
                    Washington, D.C. 20001
            **BY:  SAMUEL ROSENTHAL, ESQ.**

For Defendants:
                    COVINGTON & BURLING LLP
                    415 Mission Street, Suite 5400
                    San Francisco, California 94105
            **BY:  ETHAN C. FORREST, ESQ.**

                    DAVIS WRIGHT TREMAINE LLP
                    505 Montgomery Street - Suite 800
                    San Francisco, California  94111
            **BY:  THOMAS R. BURKE, ESQ.**


Reported By:  Ruth Levine Ekhaus, RDR, FCRR
              Official Reporter, CSR No. 12219

PROCEEDINGS

```
 1    Friday - August 21, 2020                          9:00 a.m.

 2                        P R O C E E D I N G S

 3                             ---oOo---

 4         THE COURT:  Good morning, counsel.  This is

 5    Judge Chesney.  We're proceeding in the matter of Planet Aid

 6    versus Center for Investigative Reporting.

 7         I want to make sure I have everyone on the phone and you

 8    can hear me.

 9         Who is appearing for plaintiff this morning?

10         MR. ROSENTHAL:  Good morning, Your Honor.  Sam

11    Rosenthal representing the plaintiffs.

12         THE COURT:  Thank you.  For the defendant?

13         MR. BURKE:  Good morning, Your Honor.  Thomas -- go

14    ahead, Ethan.

15         MR. FORREST:  Sorry, Tom.

16         This is Ethan Forrest for Covington & Burling for the

17    defendants.

18         Mr. Burke, go ahead.

19         MR. BURKE:  And Thomas Burke of Davis Wright Tremaine,

20    also for the defendants.

21         THE COURT:  Thank you.  Of the two of you, is it going

22    to be Mr. Forrest or Mr. Burke who is responding primarily

23    today?  Of course, it's lot of questions and whatever

24    presentation you want to make --

25         MR. FORREST:  This is Mr. Forrest.  I'll be
```

**PROCEEDINGS**

1  responding.

2       **THE COURT:**  Okay.  Fine.  Thank you.

3    Also, we do have a court reporter on the line.

4  Ordinarily, I would treat this more as just a telephonic

5  conference, but because the conference was noted actually for a

6  hearing, I decided to advance the hearing.

7    And so I believe we do have a court reporter on the line

8  as well, and could you just confirm that, please.

9           (Court reporter states appearance.)

10      **THE COURT:**  And also our courtroom deputy clerk,

11  Ms. Geiger, are you there?

12      **THE CLERK:**  Present, Your Honor.

13      **THE COURT:**  Very good.  Thank you.

14    All right.  Ordinarily, on a motion of this nature, I

15  would have considered it more like an administrative motion

16  without any kind of hearing, really, and no rule applied

17  either.

18    Both of you used the time frame that was more consistent

19  with administrative motions, but it was actually noticed on a

20  35(a) briefing schedule.

21    I have some questions.  That's why I decided to get you on

22  the phone.  Otherwise, I don't know if I have ever really had a

23  phone conference on page extensions, or a hearing.

24    But just talking about this, Mr. Rosenthal, the motion

25  that you filed went, in the Court's view, as far, far beyond

**PROCEEDINGS**

1  whatever you would have to do under the anti-strike --

2  anti-SLAPP statute.  In other words, as I understand it, the

3  movant's burden is just to show there is a covered claim there,

4  that somebody is bringing an action against you on a claim that

5  is a matter that's covered by the statute.

6      And once you do that, my understanding is you, just sit

7  down.  And at that point it's up to the plaintiff to

8  essentially put in their case.  And that, frankly, although

9  some of the procedural standards are perhaps similar to a

10 motion for summary judgment, the burden is a lot higher in

11 these motions, it can't just be some weak, feeble case driving

12 itself to the finish line.  It has to be a pretty good case.

13     With all those things considered, I thought I would have

14 this hearing, because what I wanted to tell defendants' counsel

15 is that it really doesn't matter whether their sources are

16 reliable or not if there is no lie.  You're going to have to

17 put on a case as you would if you went in front of a jury and

18 proved up all that these statements are lies.  And there is a

19 million of them that you're relying on and they aren't all that

20 clear from the complaint, so I wanted to see how you planned to

21 structure your opposition.

22          **MR. ROSENTHAL:**  Well, we do intend to structure it

23 with sort of two arguments, factual arguments supported by law.

24 One is that the statements are false.  We do intend to show --

25 and I think the standard, Your Honor, is not that we have a

**PROCEEDINGS**

1  pretty good case, but I think just a minimal case, as to

2  falsehoods.

3       **THE COURT:**  No, I don't think so, but I'll

4  double-check that.  I think it's stronger than that, but we'll

5  see.

6       **MR. ROSENTHAL:**  Okay.  So the first issue is, yes, we

7  do intend to show falsity.  We do intend to show as to each and

8  every one of the statements that they are false.  And we think

9  we meet those with declarations that we intend to put in.

10      The other thing that we intend to address is malice.  They

11  have not challenged that we could have a case, a prima facie

12  case based on negligence.  It's simply based on malice.  We

13  don't think that standard applies.  So we intend to brief two

14  things.

15      One:  Is the malice standard even applicable?  We think

16  not because our clients are not public figures or even limited

17  public figures.  And then we intend to introduce evidence as to

18  why the statements would constitute malice even if that

19  standard were applied.  So it's quite a bit to address and

20  that's the reason why the extension of the page limit.

21      **THE COURT:**  I think it's only a lot to address if it

22  is because of the volume of what you want to challenge in their

23  reporting.  How do you plan to do that, by the way?

24      I think we've got a look at pretty much in most, you know,

25  libel or defamation cases somebody is actually quoting what the

**PROCEEDINGS**

1   person said, not paraphrasing it.

2       You have these whole broadcasts with a bunch of

3   statements, I guess in each one.  Maybe you can package it up

4   that somebody said essentially the same thing, or just rely on

5   exemplars of some sort, but they should be specific, because if

6   it's the case that you're just use oozing out all over the

7   case, it looks like a piece of protoplasm.  And, frankly, I'm

8   trying to get some type of, you know, trying to get some kind

9   of -- I don't know -- borders on it.

10       So do you have any thoughts here on how you might handle

11   that given the volume of publication?

12       **MR. ROSENTHAL:**  Well, one thing that the defendants

13   argued successfully in discovery is that many of the statements

14   are of the same caliber or even the same in many of the

15   articles as in the podcast which was broadcast in March and

16   print articles that were published in May.  And so the

17   magistrate judge denied discovery as to those other articles

18   and we think that based on that ruling, which is at the request

19   of the defendants, we can really concentrate on the first two,

20   the podcast and the May article.

21       It's still, Your Honor, quite a lot to cover and that's

22   the reason why the extension of page limit.

23       **THE COURT:**  Well, let's -- by the way I just want to

24   harken back to the question of the standard of proof.

25       One of the cases that the defendants cited for their

**PROCEEDINGS**

1    assertion that you have a higher standard of proof than you

2    would for a motion for summary judgment -- and I'm really

3    talking about opposing a motion for summary judgment; in other

4    words, if the defendant came in and said "You know, the

5    plaintiff doesn't have a case."  And the plaintiff has, let's

6    say, a case -- not a great one maybe, but they have a case.

7    That's all they need.

8         But the case that the defendants cited as one of the

9    authorities for a higher standard is *Navellier*,

10   N-a-v-e-l-l-i-e-r, at 29 Cal. 4th, where the Court said that

11   you have to determine whether the plaintiff has demonstrated a

12   probability of prevailing.  So if that does hold, then that

13   would be a higher standard than summary judgment.

14        And the other thing that this whole, you know, motion does

15   is it really flips the burden.  Because on summary judgment, if

16   the defendants were coming in, they really have to kill the

17   plaintiffs' case.

18        And it's the defendant that has the burden under those

19   circumstances.  Here the defendant has this kind of opening

20   salvo burden of some minimal nature.  And then essentially the

21   whole thing turns on the plaintiff putting in a case, pretty

22   much like they would get in front of a jury, except you get to

23   rely on paper instead of people.  But it's pretty much the same

24   thing and it looks like higher standard.

25        The one very, very beneficial aspect for somebody pursuing

1   one of these motions in state court that you don't have here in

2   federal court is discovery goes forward; whereas, in state

3   court, you know, the law essentially says "Okay, you say you

4   have a case, let's hear it," and that's it.  You know, you

5   don't get to find out if you have a case or a better case or

6   whatever.  So that was considered state procedure and thrown

7   out as far as the federal law goes.

8        So okay.  I don't know that if what you're going to be

9   doing is putting your evidence in, much as you are, or as you

10  say with declarations, pretty much like the defendant did.

11       How much do you have to talk about in your pages, as

12  opposed to just saying "this is untrue because," and then you

13  put it in your declaration and you've cited to it.

14       **MR. ROSENTHAL:**  Well, one thing we could do is put in

15  a bare-bones memo, which I don't think is really going to make

16  it an easy job for the Court to understand what's going on with

17  citations to parts of the brief.

18       And I would point out that, Your Honor, we're not asking

19  for any more pages than the defendants have asked for.  They

20  put in a 25-page brief.  They also did put in a 15-page

21  additional brief which is at ECF 128 on evidence.  So they have

22  already done 40 pages of briefing and they want 25 more.  And

23  that's all we're asking for is 65 pages to address both the

24  evidence and the -- as I say, the two issues, one is falsity

25  and the other is malice.

**PROCEEDINGS**

1          And so we think there are some things that really do need

2      a legal discussion.  For example, the standard is not an easy

3      issue; there is quite a bit of law.  We think it deserves

4      attention.

5          In terms of the issue of what is the standard, we do

6      absolutely intend to show -- and I think the case is *Mindys* --

7      that it's a minimal standard.  And I think Your Honor's point

8      really illustrates the need to brief the issue of which

9      standard applies.  And so there is no question about:  How does

10     this play out?

11         It's very clear, I think under the prevailing case law,

12     both federal and state, that it's not the summary judgment

13     standard.  We think we need to really brief that issue.

14         Also if you look at their brief they raise many, many

15     issues that are really ones of law.  It's not simply a question

16     of:  Here is our declaration here is what it says, and here is

17     why their statement was false.

18         It's also a question of explaining what falsity means and

19     what malice means.  Malice is not "I really want to hurt these

20     people."  Malice has a constitutional aspect to it.  There is

21     constitutional malice; that's what they are relying on.  They

22     are saying you can't prove constitutional malice.  We actually

23     think we can prove both actual malice and constitutional, but

24     it requires briefing what that standard is, and there is really

25     quite a lot of case law that --

1          **MR. FORREST:**  Your Honor, this is Mr. Forrest.

2          **THE COURT:**  Just a moment.

3     I just don't see how there can be a lot of case law on

4  what the standard is.  Maybe there are conflicting cases

5  because the courts of appeal in state court don't have to

6  agree, and if you don't have the Supreme Court weighing in on

7  it, California Supreme Court, you may have discrepant cases.

8  But I don't know how long that can go on for.

9          With respect to this question of evidence, I don't -- I

10  don't really want to have a lot of separate briefing on it.

11  And I'm not sure which document you're referring to as the

12  defendants' separate brief.

13     Can you tell me the docket number again?  I'm going to

14  have somebody pull that.

15          **MR. ROSENTHAL:**  Of course.  It's ECF 128.  And if you

16  look --

17          **THE COURT:**  128?

18          **MR. ROSENTHAL:**  Yes.  And if you look --

19          **MR. FORREST:**  Your Honor, this is Mr. Forrest.

20     128 is a request for judicial notice.  It's not a separate

21  evidentiary brief.

22          **THE COURT:**  Okay.  One second.  One second.

23          **MR. ROSENTHAL:**  If you look at -- Your Honor,

24  beginning at page 11, it's strictly a legal brief on evidence.

25          **THE COURT:**  I'll take a look at it.  It may be a brief

**PROCEEDINGS**

1  supporting why the Court should take judicial notice of

2  something.

3          **MR. ROSENTHAL:**  That's exactly what it is.

4          **THE COURT:**  And I'll get that particular filing.  And

5  I'll take a look at how -- did you file an opposition to it?

6          **MR. ROSENTHAL:**  No, Your Honor.  We understand that

7  that is what we're going to be filing when we file our

8  opposition, that we understood was part of the anti-SLAPP

9  motion.

10          **THE COURT:**  Well, I'm going to have to take a look and

11  see exactly what that entails then.  I did not understand that

12  to be essentially anything more than a request that we consider

13  certain things.  You know.

14          **MR. ROSENTHAL:**  But it also --

15          **THE COURT:**  Hang on a second.

16      Mr. Forrest, you wanted to respond to this, beyond saying

17  that it was a motion -- a request for judicial notice.

18          **MR. FORREST:**  Yes, Your Honor, just very briefly.

19  That was my first point, as Your Honor said, this is merely a

20  request for judicial notice, not a separate briefing on

21  evidentiary standards, on anything like that.

22          And second, as to plaintiffs' arguments about the legal

23  standard meriting extra briefing or extra pages, we simply

24  disagree.  We filed our motion within the 25-page limit imposed

25  by the local rules.  And what plaintiffs are describing is the

1   same application of law to facts that any legal brief would

2   merit.

3        And as Your Honor said, it doesn't appear that addressing

4   the legal standard in this case merits anything more than a

5   standard page limit here.

6        **THE COURT:**  Okay.  But let me take -- there may be

7   other reasons for expanding to a certain extent, but maybe not

8   expanding to cover a bunch of separate briefs here.

9        What I'm looking at -- and I'm looking at 128, it's a

10  request to look at articles that the defendant says the

11  plaintiff if is relying on.

12       Again, I don't know until the issues are really joined

13  here.  In other words, I think we're a little bit backwards by

14  having, you know, the defendant put in all this evidence about

15  reasonable reliance, if it's not even clear at the moment

16  exactly what the plaintiff is going to rely on as being the

17  actionable statements that they are going to base their case on

18  and why they are untrue.  Then we can take a look at who may

19  have talked to the defendants about those particular facts.

20       And they are going to have to be kind of specific, I

21  think.  I'm concerned that we're going to have a statement like

22  "You didn't provides cows to anybody."  And one guys says "I

23  didn't get a cow," or whatever it is.  And that's just one area

24  of this.  So I think, as I say, we have to get a little more

25  specific here.

**PROCEEDINGS**

1     It may be that given the magnitude of the statements that

2   the plaintiff is relying on that it might be helpful to have a

3   some extension.

4     Also with respect to the question of whether or not this

5   is a public figure -- let's see.  Who have we got left in the

6   case now?  We've got -- let's see we have Planet Aid,

7   Ms. Thomsen, which I guess is still in.

8         **MR. ROSENTHAL:**  Those are the only two plaintiffs.

9         **THE COURT:**  Yeah.  So I mean -- and the defendant has

10   put forth why they think these are public figures.

11     And, again, if you want to counter what they are saying

12   about why your client has put themselves out there in the

13   spotlight, that's fine.  They did it in their essentially 25

14   pages.  So, I don't know if you would really need a skeleton

15   brief in this.  There are some number of issues.  There are

16   issues that come up often in these cases.

17     I may give you some extension.  If I do, I would be likely

18   to give the defendant a few extra pages too for any reply.

19   Because they may be -- that's why this is so weird.  Really, it

20   should start with you.  Then they should come up and say:  This

21   is why we are not liable.

22     Then you can come back and say:  No.  No.  Whatever.

23     But, instead, we are starting with somebody who doesn't

24   really have much of a burden coming forward in the first

25   instance.  They are then left with trying to respond to what

1    might be an oversized opposition with what's really the

2    opposition.

3          So I don't know.  I'll have to see how that goes.

4          I also feel that I will give the plaintiff the time they

5    want to go ahead and file their brief in a month.  Okay.  And

6    if the defendant then wants some extra time for the reply, if

7    you want a couple of weeks or more for the reply, I don't

8    really care.  This case has gotten so old; it's been around

9    forever.  So a week here or there is not going to really affect

10   me and any market play, you know.  So I'm happy to do a little

11   adjusting on that also.  But I want to just have a brief.  I

12   don't want to have a brief on this and a brief on that and

13   something else.

14         As far as the request for judicial notice, let me take a

15   look at that, again, for a minute, Document 128.  This is --

16   hang on.

17         **MR. FORREST:**  Your Honor, this is Mr. Forrest.

18         Can I just clarify our position as to the RJN?

19         **THE COURT:**  Sure.

20         **MR. FORREST:**  Your Honor, our view is the RJN is

21   separate from the anti-SLAPP briefing, and plaintiffs are free

22   to oppose it, of course.  But, as to the anti-SLAPP motion

23   itself, our position is that evidentiary objections to evidence

24   attached to that motion should be in the opposition to that

25   motion.  The RJN is a separate matter.

1      **THE COURT:**  Say that again, please.

2      **MR. FORREST:**  Our view, Your Honor, is that plaintiffs

3  are seeming, by my understanding, to be viewing the RJN as part

4  of the anti-SLAPP briefing.  It accompanies it, but it's

5  separate.  And plaintiffs are of course free to separately

6  oppose the RJN, but it's our view that evidentiary objections

7  to attachments to the anti-SLAPP motion should be presented in

8  the opposition to that motion so it's all of a piece, as

9  Your Honor suggested.

10     **THE COURT:**  Well, okay.  I don't know that it's a

11  separate motion in the sense of you get 25 pages of talking

12  about taking judicial notice of stuff.  You actually used 16;

13  then the other side has another 25; and you have 15; and we

14  have, in effect, 65 pages on somebody taking, you know,

15  judicial notice or not.

16      I haven't really seen it come up as being considered,

17  really, as a separate matter.  But if both of you think it is,

18  then I suppose I could give the plaintiffs some limitation

19  on -- I'm not going to sit here and have 65 pages of briefing

20  on a request for judicial notice.

21      It is essentially an objection to evidence being admitted

22  if the plaintiff opposes.  And I believe that that is,

23  ordinarily in the briefing, just considered part of the main

24  briefing, not a separate document called "Objections to

25  Evidence."

**PROCEEDINGS**

1    And, if necessary, I'll take a minute or two and take a

2    look at our local rules on that just to double check that.

3         **MR. ROSENTHAL:**  Your Honor, this is Sam Rosenthal

4    speaking.

5         I would note that it's styled a request in support of the

6    special motion to strike.

7         **THE COURT:**  It is.

8         **MR. ROSENTHAL:**  And I don't know why we ought to treat

9    the judicial notice issue any differently than any other

10   evidentiary issue.

11        **THE COURT:**  I don't think we should.

12        **MR. ROSENTHAL:**  So in terms of the page limit, they

13   are already up to, you know, add 15 to 25, they are already up

14   to 40.

15        **THE COURT:**  They took the Rule 25 on their motion.

16   Yeah, they did.

17        Yeah.  Well, I see your point.  They do get more pages

18   because they are the moving party.  What's interesting is it's

19   kind of unfair because the bulk of the burden is on the

20   plaintiff, who is opposing the motion, not on the defendant

21   that's making it or merely the party with, you know, the burden

22   gets the last say, whether it's closing arguments or it's

23   whatever.

24        So all right.  What I'm going to do here -- and, you know,

25   you have to realize, there is a certain point if you overwhelm

1   the Court with too many pages, you're just going to lose your

2   reader at some point because this isn't -- I know it's taken up

3   a tremendous amount of your time and certainly a great deal of

4   the Court's time, primarily at this point in discovery.  But,

5   you know, it's not the only case that any chambers has and so

6   you've really got to get to the point pretty quickly and not

7   just expand all over the place.

8        So I was thinking about whether I ought to give you the

9   full, you know, 15 or not.  I will, but you're going to have to

10  use that to challenge everything.  In other words, this is

11  putting in your whatever you need to meet your burden, whatever

12  you think it is, in showing that you have a viable case.  And

13  then whether it has to, you know, be just limping to the finish

14  line or, you know, getting there on a four-minute mile.  I'm

15  not going to make a final ruling.  I'll wait to see what you

16  say in your papers.  Then you have whatever challenges you want

17  to make to whatever they are seeking judicial notice of.

18       But, again, I think in some respects, I would almost

19  ignore, at the outset, what the defendant is arguing and just

20  put in your case, with then, when you look at it, seeing where

21  if they are saying that they have good authority, which

22  ordinarily -- and this is what's weird -- if they hadn't said

23  all that up front and you put in your case.  And let's say you

24  put in, you know, a prima facie case of false statements.

25       Then the defendant can come back and say:  Well, whatever

**PROCEEDINGS**

1    the standard they are relying on then, public figure or just

2    plain old person, and negligence or actual malice.  And they

3    put in whatever and who they are relying on.  And then you

4    would be kind of stuck, unless I gave you a sur-reply because,

5    frankly, the whole thing is flipped around.  And it may make

6    less -- it may make more sense when nobody gets to do

7    discovery.

8        So in any event, let me just take a look at one thing for

9    a minute and see if I can come up with something here.  I was

10   just wondering about -- I was just -- if you'll give me just a

11   moment, I'm just going to look at something.

12       Okay.  In the opposition -- interesting.  What I'm looking

13   at and what I had in mind is in our local rules, 7-3(c), which

14   has to do with the reply -- right now we're talking about an

15   opposition, but in the reply it says (reading):

16          "Any evidentiary and procedural objections to the

17       opposition must be contained within the reply brief or

18       memorandum."

19       And so they are saying, you know, you don't have a whole

20   thing separately filed called "objections" to what they put in

21   as evidence.

22       Interestingly, in looking at the opposition and the

23   particular segment of 7-3 that covers the opposition which is

24   7-3(a), I'm not sure that language is in there, curiously --

25          **MR. FORREST:**  Your Honor --

1    **THE COURT:**  Excuse me.  It is. (Reading):

2         "Any evidentiary and procedural objections to the

3    motion must be contained within the brief or memorandum."

4         Okay.  So if you don't like what they want me to consider,

5    then you're going to have to say so in the 40 pages.

6         All right.  Now, that means that plaintiff has 40.  The

7    defendant has actually used up, I guess, let's see -- 41.  I

8    think they had 16 pages in their judicial notice idea.  But

9    they could attach that all along.  It's just an exhibit,

10   I guess.  But anyway -- so I'll give the defendants some extra

11   pages for their reply because, frankly, your reply is almost

12   going to be the main part of responding to the plaintiffs'

13   showing.

14        So, I will give you -- let's see.  They only got -- they

15   got 15 more and so I'm just thinking about this

16   proportionately.

17        Well, I'll let you file 25.  Okay?  The briefing will be

18   that the plaintiffs' opposition to the motion will be due,

19   we'll say, a month from today.  So we may as well take a look

20   at that date right now.

21        Today is the 21st?

22        I'm sorry.  Someone wanted to weigh in on that?

23        **MR. ROSENTHAL:**  Yes, Your Honor.  I notice that the

24   Jewish high holidays --

25        **THE COURT:**  Yes.  Who is speaking?

PROCEEDINGS

1      **MR. ROSENTHAL:**  I'm sorry.  This is Sam Rosenthal.

2      I notice that the Jewish high holidays end on the 20th.  I

3  wonder if it will be possible to do the 22nd?

4      **THE COURT:**  Yeah.  Hang on a second.  One, two, three,

5  four.  Okay.  All right.  Sure.  Yeah.  Okay.  So due

6  September 22.

7      Yeah.  Let me take a look at that calendar.  I always have

8  trouble keeping track of when things come up.

9      Yeah, Rosh Hashanah begins Friday, September 18th.

10     **MR. ROSENTHAL:**  And ends on the 20th, I believe.

11     **THE COURT:**  Yeah.  Does that give you enough time if

12  you're observing?

13     **MR. ROSENTHAL:**  Well, I am not as observant as I

14  should be, but I think the 22nd should be fine.

15     **THE COURT:**  Okay.  You've got it.

16     And then the reply would be due -- all right.  Let me hear

17  from plaintiffs -- I'm sorry.  Let me hear then no, wait a

18  minute.  That's the opposition.  So the reply then -- let's

19  see.

20     Mr. Forrest, we're looking at the -- they've got

21  essentially, if you take out the Jewish high holidays, a month

22  to file their opposition.  I know you say it's been hanging

23  around for a long time -- and it has been -- but things kept

24  cropping up.

25     So how much time do you want to take to put together your

 1   now-expanded reply?

 2           MR. FORREST:  Your Honor, it has been a while, but I

 3   think when we originally envisioned the briefing schedule the

 4   reply would have been due a month from the opposition.  And

 5   especially, given the apparent expansion in pages that

 6   plaintiffs will have in their opposition, we think a month from

 7   in this case would be appropriate.  So a month from September

 8   22nd.

 9           THE COURT:  Is there any problem with that?

10           MR. ROSENTHAL:  No, I think that's fine.

11           THE COURT:  Okay.

12           MR. BURKE:  Your Honor, this is Thomas Burke.

13      Is it possible to move that to the 26th?  I just have,

14   actually, three other replies due that week.

15           THE COURT:  Wait a minute.  So you want to do the

16   reply -- right now we were looking at, I thought we were

17   looking at the 27th of October.

18           MR. BURKE:  As long as it's that week.  Yes, I guess I

19   calculated incorrectly.

20           THE COURT:  No.  I'm not sure you did.  But let me

21   take a look.  We're saying plaintiffs' opposition is due on

22   September 22?  Is that what we agreed on?

23           MR. BURKE:  Yes.

24           THE COURT:  All right.  So you take a month from that,

25   let me do it again.  One, two, three, four -- no, you're right.

PROCEEDINGS

1    Four weeks is the 20th.

2        And you say you've got how many replies due?

3        **MR. BURKE:**  I have a remarkable three that week, Your

4    Honor, among other things.

5        **THE COURT:**  So you want the 27th?

6        **MR. BURKE:**  26th is fine.

7        **THE COURT:**  All right.  Any hue and cry over that?

8        **MR. ROSENTHAL:**  No, not from the plaintiffs.

9        **THE COURT:**  Okay.  So that's what we're looking at now

10   for our briefing schedule.  The page limits are -- the reply

11   can be up to 40 pages.  Okay.  The opposition -- I'm sorry.

12   The reply, 25.  No more separate motions.  We're just all doing

13   it within these page limits.

14       **MR. ROSENTHAL:**  Your Honor --

15       **THE COURT:**  Yeah.

16       **MR. ROSENTHAL:**  This is Sam Rosenthal speaking.

17       One clarification:  We have the opposition to the request

18   for judicial notice.  Could I perhaps wrap that into our brief

19   and do a total of 50 pages --

20       **THE COURT:**  No.

21       **MR. ROSENTHAL:**  -- which would -- you want the

22   opposition to the request for judicial notice separately

23   briefed?

24       **THE COURT:**  No.  That's what -- no.  My feeling is

25   that objections -- per our local rules, objections to evidence

1    are to be wrapped into the briefing, not a separate motion.

2        To the extent they have requests for judicial notice --

3    and I'll go back and look at this for the moment -- it's what

4    they want me to consider.  I don't even know how much of this

5    is even relevant.  I don't know where it is going to fit into

6    what you, ultimately, as the plaintiff says the case is about.

7        There has to be some focus here.  We have got things with

8    this Tvind -- or however you pronounce it; whether it's a cult

9    or not; where the money is going; and whether people are

10   getting livestock; and whether people have to contribute part

11   of their salary; or whether they are getting stiffed on their

12   paycheck.  I mean, there are a million things here.

13       How many of them you really want to base your case on and

14   make your, you know, complaint about obviously that's going to

15   be up to the plaintiff.  We can then even see how much of this

16   is going to be of relevance.

17       There is some general concepts of law here on judicial

18   notice.  Sometimes you can take judicial notice of something

19   for the fact it was said, not for the truth of what's said, but

20   just that it's out there for one reason.  Court documents are

21   ordinarily judicially noticeable.  If there is a fight over

22   whether something is authentic, obviously, that's going to have

23   an effect on whether the Court can take judicial notice.

24       They were looking at what they said were court documents

25   in publications.  If there are publications, nobody is fighting

 1  about whether these are accurate copies of print publications.

 2  Now, I don't know whether they are relevant, but that's a

 3  different issue.

 4      So I think we have to wait and see.  But I don't want to

 5  make a big deal about this judicial notice stuff at the moment.

 6  If it turns out it's critical and you just are in despair over

 7  what you are doing, you may have to come back to me; but I'm

 8  not encouraging you to do it.

 9      My initial response was -- as you both recall -- to any

10  extension was "no."  All right.  Now, you've worn me down to a

11  "yes," but I don't know that you're getting a lot more yeses

12  out of me anymore.

13          MR. ROSENTHAL:  Your Honor, Sam Rosenthal, again.  Did

14  I get a "yes" on the 50 pages?

15          THE COURT:  No.

16          MR. ROSENTHAL:  It was a "no."  Okay.  Okay, Your

17  Honor.

18          THE COURT:  That was the interjection mid-comment by

19  you, before you wrapped up your request.

20          MR. ROSENTHAL:  Okay.

21          THE COURT:  No.  I can see this.  It's going to feel

22  just like the rest of the history of this case.

23      All right.  So what you do have is you have some expanded

24  page limits for the reasons that I've said.  You have a

25  briefing schedule for the reason that I said.

**PROCEEDINGS**

1        And getting back to where I was before Mr. Rosenthal tried

2   for the extra 10 pages on top of the 15 -- I hesitate to ask

3   this, but you do have my undivided attention at the moment:  Is

4   there something else that we need to deal with?

5        Oh, I don't know -- we don't have a hearing date for --

6   before you chimed in.  Well, you've given yourselves all this

7   extra time, so I'm going to give myself extra time too, then.

8   We're looking at October.  Is it October 26th that we're

9   looking at the last brief?

10            **MR. ROSENTHAL:**  Yes.

11            **MR. FORREST:**  Yes, Your Honor.

12            **THE COURT:**  Let's see how that goes.  Occasionally, I

13   get people -- I get people they give themselves months and

14   months to file their various papers and they give the Court,

15   like, a week or whatever to -- if you really want me to digest

16   all this extra stuff -- let's see.  Okay.

17        I'm going to go over to the 30th because then the hearing

18   would be on a Friday.  We'll count that as -- let's say, I

19   don't -- you know, I was going to say November 20.  That's the

20   Friday before the Thanksgiving week.  I don't know if anybody

21   has plans to be away then.  I don't at the moment.  In fact, I

22   don't have plans to go anywhere, you know, in the pandemic.

23   But is that a bad date for any of you?

24            **MR. ROSENTHAL:**  That's fine.

25            **MR. FORREST:**  If only you could order that, Your

PROCEEDINGS

```
 1    Honor, that we could go away.

 2              MR. ROSENTHAL:  Yes, we would love to go away.

 3                        (Laughter.)

 4              THE COURT:  Let's try it.

 5              MR. FORREST:  Yes, Your Honor.  This is Mr. Forrest.

 6         I imagine I will be sitting right here at my kitchen table

 7    on that date.  So no objection, if that's convenient for the

 8    Court.

 9              THE COURT:  Well, let's put it down.  It's a little

10    less than a month from the time that the last brief is filed.

11    And otherwise we're into the Thanksgiving week and then we're

12    into the week after that.  It may be that with whatever is

13    going on I may move the hearing or I may take it under

14    submission.  I don't know.  I have a feeling we will have a

15    hearing in this case.

16         Ideally if the restrictions that we've got currently --

17    you know, right now, our district is hearing no civil matters

18    in person.

19         And if we were going to have a hearing and if it was going

20    to be an important proceeding, it would be best to have it in

21    person rather than what I would otherwise do, which would be

22    zoom.  I wouldn't do it on the phone.  Nobody can tell when

23    anybody is through talking and how their particular points are

24    being received at the other end.  We would do Zoom or in

25    person.
```

PROCEEDINGS

1    I don't think we're going to have anything in person,

2    civil this year, to be honest.  And if that's true, we may

3    consider even just putting stuff over that could benefit by a

4    full-bore regular hearing.  But let's wait on that and see how

5    the briefing goes.

6         Yeah.  Now, to get back to my question that I was posing

7    to you folks, which is:  Is there anything else that we ought

8    to address?

9         This hearing would be at 9:00, by the way, on Friday,

10   November 20.

11             MR. ROSENTHAL:  I have just two points, Your Honor.

12             THE COURT:  Be sure to say who you are so the reporter

13   can --

14             MR. ROSENTHAL:  I apologize.  This is Sam Rosenthal

15   speaking.

16        I botched *Mindys*.  It's not a California case, it's a

17   Ninth Circuit case, and articulates the level or the standard

18   as the minimal level of sufficiency or triability.  So I just

19   wanted to correct that's it not a California case, it's a

20   Ninth Circuit case.

21             THE COURT:  All right.  We'll see how that goes.

22   All right.  They may have a different view of how all this

23   works.  I don't know.  As I say, it really isn't as meaningful

24   a motion as it might otherwise be.

25        Okay.  Anybody else?

**PROCEEDINGS**

1       **MR. ROSENTHAL:**  One other thing, Your Honor.  Sam

2   Rosenthal, again.

3     Just a very mundane point.  Does Your Honor prefer -- we

4   will be attaching deposition pages.  Do you prefer minuscript

5   or full pages, or single or double-sided?

6       **THE COURT:**  Oh, no.  Do it single-sided, not double.

7   You can do -- it comes out, what, four to a page if you do a

8   mini thing?

9       **MR. ROSENTHAL:**  Correct.

10      **THE COURT:**  That's fine.

11      **MR. ROSENTHAL:**  Okay.

12      **THE COURT:**  That's fine.

13      **MR. ROSENTHAL:**  That's all I had, Your Honor.

14      **THE COURT:**  That was that?

15     All right.  How about from the other side of the virtual

16   courtroom?

17      **MR. FORREST:**  This is Mr. Forrest, Your Honor.

18     I don't have anything.  Mr. Burke will correct me if there

19   is anything else we need to discuss, however.

20      **THE COURT:**  Are you correcting him?

21      **MR. BURKE:**  No, Your Honor, other than still a hopeful

22   plea for that order that you'll lift the pandemic, but we'll

23   stand by for that.

24               (Laughter.)

25      **THE COURT:**  If it were only in my power.

1          Ms. Geiger, I have often said, if I have overlooked

2    something and we're in the courtroom, she will turn around and

3    give me a sort of meaningful stare.  Is there anything that you

4    need for your records?

5               THE CLERK:  No, Your Honor.

6               THE COURT:  Okay.  So, Counsel, I -- I don't think

7    there is going to be a separate order prepared on this.  I

8    don't know if anybody gave me a proposed order, I could

9    possibly do something; otherwise, our minutes should reflect

10   all of my rulings and take care of that.  It's not that

11   detailed a matter.  Although, I have to tell you I gave it a

12   lot of thought.  All right.

13         So everybody stay well, have a good weekend, and I'll

14   await the next filing.  Thank you very much.

15               MR. BURKE:  Thank you, Your Honor.

16               MR. ROSENTHAL:  Thank you, Your Honor.

17               MR. FORREST:  Thank you, Your Honor.

18         Mr. Rosenthal, Mr. Burke, thank you both.

19               THE CLERK:  Court is in recess.

20               (Proceedings adjourned at 9:42 a.m.)

21                         ---o0o---

## CERTIFICATE OF REPORTER

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.


DATE:    Sunday, August 30, 2020

Ruth Levine Ekhaus, RDR, FCRR, CSR No. 12219
Official Reporter, U.S. District Court