THOMAS R. BURKE (Bar No. 141930)
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, CA 94111
Telephone: (415) 276-6500
Facsimile: (415) 276-6599
Email: thomasburke@dwt.com

AMBIKA K. DORAN (*pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104
Telephone: (206) 757-8030
Facsimile: (206) 757-7030
Email: ambikadoran@dwt.com

BRENDAN CHARNEY (Bar No. 293378)
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, Suite 2400
Los Angeles, CA 90017
Telephone: (213) 633-6800
Facsimile: (213) 633-6899
Email: brendancharney@dwt.com

SIMON J. FRANKEL (Bar No. 171552)
Email: sfrankel@cov.com
ALEXA HANSEN (Bar No. 267271)
Email: ahansen@cov.com
ETHAN FORREST (Bar No. 286109)
Email: eforrest@cov.com
ABIGAIL P. BARNES (Bar No. 313809)
Email: abarnes@cov.com
SEAN HOWELL (Bar No. 315967)
Email: showell@cov.com
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105
Telephone: (415) 591-6000
Facsimile: (415) 955-6552

Attorneys for Defendants
REVEAL FROM THE CENTER FOR INVESTIGATIVE
REPORTING; MATT SMITH; and AMY WALTERS

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| PLANET AID, INC., and LISBETH THOMSEN,<br><br>    Plaintiffs,<br><br>  v.<br><br>REVEAL, CENTER FOR INVESTIGATIVE REPORTING, MATT SMITH, and AMY WALTERS,<br><br>    Defendants. | Case No. 3:17-cv-03695-MMC-JSC<br><br>**DEFENDANTS' REPLY IN SUPPORT OF SPECIAL MOTION TO STRIKE**<br><br>Judge: Hon. Maxine M. Chesney<br>Magistrate: Hon. Jacqueline Scott Corley |

## TABLE OF CONTENTS

I.    The FAC should be struck because Plaintiffs waived several key arguments...................2

    A.    Plaintiffs do not dispute that they are not entitled to damages. .............................2

    B.    Many statements in the FAC must be struck as a matter of law............................2

    1.    Plaintiffs fail to explain why each claim in the FAC is actionable........................2

    2.    Statements that appear for the first time in the FAC are time-barred. ...................4

II.    Plaintiffs are limited-purpose public figures........................................................4

III.    Plaintiffs fail to show malice. ..........................................................................8

    A.    CIR did not falsify or doubt its reporting...........................................................10

    1.    Plaintiffs accurately reported the circumstances of Plaintiffs' fraud...................10

    2.    Statements from farmers submitted after publication do not show malice...........15

    3.    Remaining arguments that CIR's statements show malice are baseless...............16

    B.    Plaintiffs fail to show malice based on CIR's reporting practices.......................19

IV.    CIR's publications are substantially true. .........................................................22

V.    The Court should reject Plaintiffs' other grounds for opposing the Motion....................22

VI.    The Court should overrule Plaintiffs' evidentiary objections...........................................23

VII.    Key parts of Plaintiffs' evidence are inadmissible. ..........................................................24

CONCLUSION...................................................................................................25

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aghmane v. Bank of Am., N.A.*,
   696 F. App'x 175 (9th Cir. 2017) ...................................................................................21

*Air Wisc. Air. Corp. v. Hoeper*,
   571 U.S. 237 (2014)........................................................................................... *passim*

*Anschutz Ent. Grp. v. Snepp*,
   171 Cal. App. 4th 598 (2009) .....................................................................................2

*Bank Melli Iran v. Pahlavi*,
   58 F.3d 1406 (9th Cir. 1995) ....................................................................................23

*Barger v. Playboy Enters., Inc.*,
   564 F. Supp. 1151 (N.D. Cal. 1983), *aff'd*, 732 F.2d 163 (9th Cir. 1984) .........................10

*Barrington v. A.H. Robins Co.*,
   39 Cal. 3d 146 (1985) ...............................................................................................4

*Bill Johnson's Rests., Inc. v. NLRB*,
   461 U.S. 731 (1983).................................................................................................22

*Bose Corp. v. Consumers Union of U.S., Inc.*,
   466 U.S. 485 (1984).........................................................................................14, 18

*Carr v. Forbes, Inc.*,
   259 F.3d 273 (4th Cir. 2001) .....................................................................................7

*Cobb v. Time, Inc.*,
   278 F.3d 629 (6th Cir. 2002) ...................................................................................21

*Coleman v. Keebler Co.*,
   997 F. Supp. 1102 (N.D. Ind. 1998) .....................................................................16, 20

*ComputerXpress v. Jackson*,
   93 Cal. App. 4th 993 (2001) .....................................................................................3

*DARE v. Rolling Stone Mag.*,
   101 F. Supp. 2d 1270 (C.D. Cal. 2000), *aff'd*, 270 F.3d 793 (9th Cir. 2001)....................22

*Di Giorgio Corp. v. Valley Labor Citizen*,
   260 Cal. App. 2d 268 (1968) .....................................................................................2

ii

*Edwards v. Nat'l Audubon Soc'y*,
  556 F.2d 113 (2d Cir. 1977)..................................................................18

*Gainsburg v. Steben & Co.*,
  838 F. Supp. 2d 339 (D. Md. 2011) .........................................................4

*Gertz v. Robert Welch, Inc.*,
  *418 U.S. 323* (1974) ...............................................................................6

*In re Girardi*,
  611 F.3d 1027 (9th Cir. 2010) ...............................................................10

*Harkonen v. Fleming*,
  880 F. Supp. 2d 1071 (N.D. Cal. 2012) .............................................5, 7

*Harte-Hanks Commc'ns, Inc. v. Connaughton*,
  491 U.S. 657 (1989)...........................................................................8, 21

*Jack v. TWA*,
  854 F. Supp. 654 (N.D. Cal. 1994) ........................................................25

*Jankovic v. Int'l Crisis Grp.*,
  822 F.3d 576 (D.C. Cir. 2016) .................................................................5

*Kandi v. Langford*,
  2018 WL 5999605 (C.D. Cal. Nov. 14, 2018)........................................1

*King Cty. v. Rasmussen*,
  299 F.3d 1077 (9th Cir. 2002) ...............................................................24

*Kumho Tire Co., Ltd. v. Carmichael*,
  526 U.S. 137 (1999)................................................................................24

*Leadsinger, Inc. v. BMG Music Publ'g*,
  512 F.3d 522 (9th Cir. 2008) .................................................................23

*Makaeff v. Trump Univ.*,
  715 F.3d 254 (9th Cir. 2013) ..........................................................5, 6, 7

*Michel v. NYP Holdings, Inc.*,
  816 F.3d 686 (11th Cir. 2016) ...............................................................18

*Montoya v. Orange Cty. Sheriff's Dep't.*,
  987 F. Supp. 2d 981 (C.D. Cal. 2013) ...................................................23

*Nat'l Found. for Cancer Research, Inc. v. Council of Better Bus. Bureaus, Inc.*,
  705 F.2d 98 (4th Cir. 1983) .....................................................................7

iii

*Nationwide Trans. Fin. v. Cass Info. Sys.*,
   523 F.3d 1051 (9th Cir. 2008) ...................................................................................24

*Newton v. NBC*,
   930 F.2d 662 (9th Cir. 1990) ..............................................................................8, 9, 14

*Pieszak v. Glendale Adventist Med. Ctr.*,
   112 F. Supp. 2d 970 (C.D. Cal. 2000) .......................................................................24

*Resolute Forest Prod., Inc. v. Greenpeace Int'l*,
   302 F. Supp. 3d 1005, 1017 (N.D. Cal. 2017) ...............................................................7

*Shakur v. Schriro*,
   514 F.3d 878 (9th Cir. 2008) .........................................................................................2

*Reader's Digest Ass'n v. Super. Ct.*,
   37 Cal. 3d 244 (1984) ....................................................................................................9

*St. Amant v. Thompson*,
   390 U.S. 727 (1968)..........................................................................................8, 9, 19, 20

*Time, Inc. v. Pape*,
   401 U.S. 279 (1971)..............................................................................................16, 20

*Van Buskirk v. CNN*,
   284 F.3d 977 (9th Cir. 2002) .......................................................................................21

*Worrell-Payne v. Gannett Co.*,
   49 F. App'x 105 (9th Cir. 2002) ................................................................................18

**Statutes**

Cal. Civ. Code § 48(a) ..........................................................................................................2

**Other Authorities**

Fed. R. Civ. P. 15 ...................................................................................................................4

Fed. R. Civ. P. 26(e)(1)(A) .........................................................................................16, 20

Fed. R. Evid. 702 .................................................................................................................24

Fed. R. Evid. 1006 ...............................................................................................................24

Plaintiffs' Opposition presents the Court with a morass, but only two points matter in resolving Defendants Matt Smith, Amy Walters, and The Center for Investigative Reporting's (collectively, "CIR") anti-SLAPP motion: (1) Plaintiffs are limited-purpose public figures who (2) must show that CIR made statements about Plaintiffs with actual malice. Plaintiffs fail to rebut either point—and they completely ignore several independent arguments for striking their claims—so they lose.

*First*, Planet Aid is an internationally known non-profit with deep ties in government and an extensive record of publicizing its work and defending itself against criticism. Ms. Thomsen is the face of Planet Aid affiliate DAPP Malawi. CIR's reporting describes Planet Aid and Ms. Thomsen's work, which has been the subject of controversy for decades. Plaintiffs fail to show otherwise.

*Second*, Plaintiffs fail to show—even after years of discovery—that CIR published any statements with actual malice, *i.e.*, that CIR knowingly published false statements or was reckless or doubtful as to truth. After an 18-month investigation, CIR carefully reported and edited stories that explained CIR's findings based on dozens of sources.

In response, Plaintiffs misstate the law, seeking to distract from the demanding, subjective standard that they cannot meet. Plaintiffs also misrepresent and obscure the facts—often outright misstating what deponents said, misleadingly editing quotations, or ignoring what CIR actually published—and instead toss out piles of irrelevant evidence with no clear arguments. On top of all this, Plaintiffs also disobey the Court's instruction, and the legal requirement, to specify what statements they contend are actionable. The Court should not tolerate this "spaghetti approach," which "heave[s] the entire contents of a pot against the wall in hopes that something [will] stick." *Kandi v. Langford*, 2018 WL 5999605, at *12 (C.D. Cal. Nov. 14, 2018).

The Court should strike the FAC—a classic SLAPP suit—and award CIR fees and costs for defending against it. To reach this conclusion, CIR respectfully submits that the Court use as guides both (a) the settled law on malice and (b) CIR's actual statements and the record itself, as opposed to Plaintiffs' willfully misleading summaries and paraphrases.

With these tools in hand, the Court can slash through the thicket Plaintiffs have presented—and put an end to Plaintiffs' abuse of the courts in their efforts to silence criticism.

1

1

2

**I.      The FAC should be struck because Plaintiffs waived several key arguments.**

3

**A.      Plaintiffs do not dispute that they are not entitled to damages.**

4

Plaintiffs are not entitled to general or punitive damages because they do not dispute that they

5

did not serve a retraction notice on CIR within the statutory period. Cal. Civ. Code § 48(a); *Di Giorgio*

6

*Corp. v. Valley Labor Citizen*, 260 Cal. App. 2d 268, 274 (1968). Plaintiffs also do not dispute that they

7

failed to plead or show special damages precisely, including what specific money they lost because of

8

certain statements. Dkt. 107 ("Mot.") at 24 (citing authority). Indeed, the FAC is insufficiently precise as

9

to *any* type of damages. *See* Dkt. 78 ("FAC") ¶¶ 184–86.

10

Plaintiffs waive their responses to these arguments as a matter of law. *Shakur v. Schriro*, 514

11

F.3d 878, 892 (9th Cir. 2008). The Court need go no further in striking the FAC, which is based entirely

12

on their reputational claims. *E.g.*, *Anschutz Ent. Grp. v. Snepp*, 171 Cal. App. 4th 598, 643 (2009).

13

**B.      Many statements in the FAC must be struck as a matter of law.**

14

The FAC challenges nearly 80 statements in CIR's reporting dating from March 2016 to August

15

2017. The Court has often reminded Plaintiffs that they would need to provide support for these claims.

16

*E.g.*, Forrest Decl. Ex. A  (Aug. 21, 2020 Hr'g Tr.) at 6:6–11 (noting that Plaintiffs' case is "oozing out

17

all over the place . . . like a piece of protoplasm"). The Court should strike most of Plaintiffs' claims

18

because (1) the Opposition does not address them and (2) many are also time-barred.

19

**1.      Plaintiffs fail to explain why each claim in the FAC is actionable.**

20

Plaintiffs identify and address as actionable only a few statements from the FAC. Opp. at 5

21

("Defamation allegations are limited in the FAC to statements that funds were fraudulently siphoned

22

away from the USDA Program. ECF 78, ¶¶ 197–207.").[1] Even these Plaintiffs do not fully account for,

23

admitting they discuss only the "salient facts." Opp. at 1–2. They stuff argument into the improper

24

Hayes Declaration, flouting the page limit. Opp. at 1–2 (citing Dkt. 298-30 ("Hayes Decl.")); *infra* at

25

Section VII (addressing Hayes Decl.).

26

---

[1] The Opposition buries the actual publications. Opp. at 2 (defining "May 2016 Article" as document appearing at Dkt. 298-8 pp. 81–116). CIR reattaches the May 2016 Article and "the Podcast" (Dkt. 109-6, defined at Opp. p.2), as well as the sidebar on USDA funding that accompanied the May 2016 Article (Dkt. 78-4), to this brief for the Court's convenience. Forrest Decl. Exs. B, C, and D, respectively.

27

2

28

Plaintiffs waive defamation claims based on statements for which the Opposition does not specifically contend Plaintiffs would likely prevail. Under *Baral v. Schmidt*, the Court can strike allegations that are only a *part* of a cause of action—e.g., statements or portions of statements identified as being actionable under an umbrella count for defamation—rather than the *entire* cause of action. 1 Cal. 5th 376, 391–392 (2016) (plaintiff must make requisite showing for each challenged claim). Claims based on statements not addressed in Plaintiffs' brief must be struck, as must claims based on vague or general paraphrases. *E.g.*, *ComputerXpress v. Jackson*, 93 Cal. App. 4th 993, 1011 (2001) (striking claim where plaintiff failed to identify *each* actionable statement).

Only the following statements remain at issue:

1. "We've talked to at least a dozen people, inside your organization, and what they say individually, one by one as we've interviewed them, is that your organization is skimming US government funds. Your own people. The people in charge of your money, said that you're stealing money." FAC ¶ 197; Opp. at 12.

2. "Harrison is one of several insiders who told us at least half of the US government grant money was being siphoned away, one transaction at a time. And most of it was headed to the Teachers' Group African headquarters in Zimbabwe." Also, "So, that money from USDA grants, over $130 million, up to 70%, was allegedly taken from the projects it was meant for, and stripped from employees' salaries." FAC ¶ 199; Opp. at 8.

3. "Jackson, the employee working on the Planet Aid farmer's project in Malawi, he was told by his Teachers' Group bosses, the money from the USDA was going straight to Mexico." Also, "Jackson knew where the money was going all along." FAC ¶ 200; Opp. at 13.

4. "I told her what we'd seen. That we'd visited Farmers' Clubs, and in every instance the farmers themselves told us that was a lie." FAC ¶ 201; Opp. at 14.

5. "While researching the story, we spoke to about a dozen African members of the Teachers' Group. All of them gave a portion of their salary to the group. From 20% to 100%, everything they earned." FAC ¶ 203; Opp. at 15.

6. "Planet Aid said it installed 576 water pumps throughout Malawi. Mtimbuka, the Farmers' Club manager, said he had thought 25 of those pumps were targeted for Njuli." Also, "In Njuli, Reveal reporters found the village had only two pumps. One was given to the village. The chief bought his, he said, with a $100 loan that took him two years to pay off....Enock Chikaonda, a village leader and Farmers' Club member, was the only villager given a pump by Planet Aid." FAC ¶ 202; Opp. at 14.

| 7. | "Zebiah said he was among the Africans who upon joining the Teachers Group were pressured to sign a contract, often called a 'deed of contribution.' In it, members agree to donate a portion of their salary – anywhere from 20 to 100 percent." FAC ¶ 203; Opp. at.15 |
|---|---|
| 8. | [Marko:] "Iben Petersen and Ula Thomsen, they are the account holder on behalf of all Teachers' Group in Malawi. We don't know whether they can use, because we are depositing money in their accounts. Ula Thomsen is the husband to Lisbeth Thomsen." FAC ¶ 203; Opp. at 16. |
| 9. | "Even before the Teachers Group pressures members to hand over money to their bosses, funds are extracted by writing paychecks much smaller than reported to the USDA. In this way, her employers were siphoning $250 from her $350-per-month salary, she said, and then applying pressure to kick back even more. Zebiah said the DAPP project manager's story conforms with DAPP policy in Malawi." FAC ¶ 204; Opp. at 15 & n.6. |
| 10. | "You don't give millions of dollars to a group that is being investigated for fraud, tax evasion and pilfering of humanitarian funds, . . . [b]ut that is precisely what the USDA did." FAC ¶ 205; Opp. at 13. |
| 11. | "Alleged cult leader plays shell game with US foreign aid." FAC ¶ 206; Opp. at 13. |

All claims based on statements *other than those above* must be struck, and fees and costs awarded to CIR under *Baral*. CIR will submit a chart of all waived statements with its request for fees and costs.

**2. Statements that appear for the first time in the FAC are time-barred.**

Plaintiffs also fail to rebut the fact that several claims in the FAC are time-barred. Opp. at 40. Plaintiffs say these additions relate back under Rule 15. *Id.* They are wrong. *First*, under California law—which applies per Rule 15—"[t]he relation-back doctrine requires that the amended complaint must (1) rest on the "same general set of facts," (2) seek recovery for the "same injuries," and (3) refer to the same "*offending instrumentalities*." *Barrington v. A.H. Robins Co.*, 39 Cal. 3d 146, 150–52 (1985) (emphasis added). Here, each new statement added in the FAC is a separate and distinct "offending instrumentality" that cannot relate back. *See id. Second*, applying Rule 15(c)(1)(B), courts have found that relation back does not apply when the plaintiff asserts a new claim for defamation based on new statements. *See, e.g.*, *Gainsburg v. Steben & Co.*, 838 F. Supp. 2d 339, 344 (D. Md. 2011). As such, all statements in FAC ¶¶ 197–207 from Dkts. 78-4, 78-8, and 78-21 are time-barred and must be struck.

**II. Plaintiffs are limited-purpose public figures.**

Plaintiffs are limited-purpose public figures because (1) the challenged statements relate to Plaintiffs' participation in public controversies about their use of government funds; and (2) Plaintiffs

voluntarily injected themselves into this controversy. *Makaeff v. Trump Univ.*, 715 F.3d 254, 265 (9th Cir. 2013). Plaintiffs fail to rebut these points.

      ***Defendants reported on a preexisting controversy concerning Plaintiffs.*** Plaintiffs claim that CIR's reporting did not concern a "preexisting controversy" because CIR's focus on Plaintiffs' misuse of *USDA* funds was a new controversy, distinct from preexisting controversies about Plaintiffs' misuse *other* public funds. *See* Opp. at 19. This fails. *Jankovic v. Int'l Crisis Grp.*, 822 F.3d 576, 585 (D.C. Cir. 2016) (rejecting plaintiff's argument for more narrowly defined controversy when broader, inclusive one existed). Plaintiffs' use of public funds *generally* is the relevant issue, and this controversy meets the legal standard because (a) it was debated publicly for years before CIR's publications, and (b) it has ramifications beyond participants in this case. Mot. at 11–13. Plaintiffs do not challenge the latter point.

      Planet Aid has spent tens of millions of dollars for charitable purposes over the last 20 years (FAC ¶ 2), and for at least 18 of those years there has been a controversy—as evidenced by numerous articles published by various news outlets—over whether Planet Aid spent public funds properly. *E.g.* Forrest Decl. Exs. E–I, R–GG. *See Harkonen v. Fleming*, 880 F. Supp. 2d 1071, 1080 (N.D. Cal. 2012) (news articles demonstrated that issue was publicly debated and thus a public controversy). These articles have described Planet Aid's work as "criticized on several accounts" (Forrest Decl. Ex. E**)** and "draw[ing] scrutiny worldwide," (*id.* Ex. F); have called Planet Aid's "business practices questioned," (*id.* Ex. G); and have described Planet Aid as "trying to distance itself from controversies," (*id.* Ex. H). Indeed, before CIR's publications, the USDA itself became concerned because of numerous news articles tying Planet Aid to fraud, as well as complaints from citizens. *E.g.*, Dkt. 125-3.

      Ms. Thomsen, in her decades-long, official capacity as Director of DAPP Malawi, is inextricably part of the same public controversy. DAPP Malawi's own use of public funds and its relationship with Planet Aid have been "under probe" and in the public eye since at least 2002. *E.g.*, Dkt. 115-1. Plaintiffs depict Ms. Thomsen and DAPP Malawi as interchangeable, insisting that she should even be able to argue that statements about DAPP Malawi "were actually targeting her." Dkt. 237 at 11. Beyond this, Plaintiffs contend that prior articles about DAPP Malawi's use of public funds—which specifically mention Ms. Thomsen—have "nothing to do with" the relevant controversy because these articles do not

5

relate to *USDA* programs, or were too early in time. Opp. at 19. But again, the relevant public controversy is Plaintiffs' use of public funds, including USDA funds, and Plaintiffs cite no authority to contend that a few years' time makes public controversies about fraud disappear. *See* Mot. at 12. Indeed, Plaintiffs' arguments as to time only underscore how long public controversy has swirled around DAPP Malawi and Ms. Thomsen before CIR's reporting.

Finally, there can be no dispute that the alleged defamation concerns Plaintiffs' role in the controversy. *Cf.* Opp. at 20 (saying otherwise). Defendants' reporting and Motion both describe this, as does third-party coverage of Plaintiffs. *See* Mot. at 12–13; *see also* Forrest Decl. Exs. E–J, R–GG.

***Plaintiffs voluntarily injected themselves into the controversy.*** Plaintiffs have injected themselves into the public eye *for decades*, by seeking public funds and promoting and defending their work through various media. Dkt. 107 at 12–13. Plaintiffs argue that they did not "thrust themselves" into the controversy because they are merely "very high-profile" in their industry and have been "drawn into a public forum against their will." Opp. at 20. But Plaintiffs have *actively inserted* themselves into the controversy, most significantly through both Planet Aid's and Ms. Thomsen's substantial, voluntary use of the media. Also, Plaintiffs' easy access to "channels of effective communications"—as evidenced by press releases, news articles, and public appearances, described below, as well as use of PR and crisis firms—better situates them than private persons to respond to criticism. *Gertz v. Robert Welch, Inc., 418 U.S. 323,* 344 (1974) (describing access to media as important consideration in determining public figure status); *Makaeff*, 715 F.3d at 265; *see also, e.g.*, Dkt. 125 (Smith Decl.) ¶ 41 & Exs. H–I; Dkt. 114 (Walters Decl.) ¶¶ 24–25 & Ex. C.

Planet Aid routinely, actively, and voluntarily uses the media to improve its public image of doing charitable work. *First*, Planet Aid has issued numerous press releases regarding its charitable work and use of public funds, including its work in Malawi. *E.g.* Forrest Decl. Exs. HH–KK. *Second*, Planet Aid has responded to previous allegations of misconduct by making statements in news articles, including that criticism of Planet Aid is unfair (Forrest Decl. Ex. I)**,** and that its "donation uses are legitimate," (*id.* Ex. J). *Third*, Planet Aid's website connects viewers directly to third-party news articles about its charitable work, including its work in Malawi. "Planet Aid in the News,"

6

planetaid.org/about/media/planet-aid-in-the-news (last accessed Oct. 26, 2020). Planet Aid's thorough engagement with the media shows it has "willingly inserted [itself] into the public's eye," well before the alleged defamatory statements were made. *Harkonen*, 880 F. Supp. 2d at 1081 (finding plaintiff voluntarily injected himself into the controversy in part because he issued press releases on the issue).

Planet Aid has also voluntarily thrust itself into the public eye, with respect to its charitable work, through significant funding efforts. *See Nat'l Found. for Cancer Research, Inc. v. Council of Better Bus. Bureaus, Inc.*, 705 F.2d 98, 101 (4th Cir. 1983) ("*NFCR*") (charitable solicitations support whether a plaintiff injects itself into controversy). *NFCR* found the plaintiff was a public figure in part because, via solicitations, it "extolled its judicious use of donated funds in finding a cure for cancer." *Id.* This is no different than Plaintiffs' own repeated self-promotion of their charitable work. *E.g.*, *Makaeff*, 715 F.3d at 269 (large advertising campaign indicated plaintiff injected himself into controversy); *Carr v. Forbes, Inc.*, 259 F.3d 273, 280 (4th Cir. 2001) (parties can become limited-purpose public figures by inviting public attention re: public contracts). The FAC even ties Plaintiffs' reputation directly to their ability to create relationships with "donors and partners willing to engage in projects with them," underscoring the relationship between their media presence and funding efforts. FAC ¶ 9.

Ms. Thomsen personally injected herself into the controversy by promoting her work in Malawi and appearing in social media—including making public appearances on at least ten different occasions to tout DAPP Malawi's charitable work—and by working to prevent DAPP Malawi from receiving bad press about its use of public funds. Mot. at 12–13 (citing record). Thomsen's actions are similar to those of the plaintiff in *Carr*, whom the court found had voluntarily injected himself into the public debate because he was "in charge of the company's activities" relating to the controversy and tried to "influence the merits of the controversy." 259 F.3d 273 at 281. And again—Plaintiffs have contended Ms. Thomsen *is* DAPP Malawi Dkt. 237 at 11.

Finally, Plaintiffs' FAC references their public personae and alleges harm to "reputation and standing in the community, and indeed world-wide." *E.g.*, FAC ¶¶ 195, 210; *see also* FAC ¶¶ 8, 9, 54, 187. A plaintiff's "own allegations about [its] world-wide reach and influence, as well as the public nature of its work . . . show that the company is a limited public figure." *Resolute Forest Prod., Inc. v.*

DEFENDANTS' REPLY IN SUPPORT OF SPECIAL MOTION TO STRIKE
CASE NO. 3:17-CV-03695-MMC

*Greenpeace Int'l*, 302 F. Supp. 3d 1005, 1017 (N.D. Cal. 2017); *Chapin*, 993 F.2d at 1092 n.4 (plaintiff "irretractably" admits public figure status by complaining of injury to reputation as "charitable leader").

### III. Plaintiffs fail to show malice.

Plaintiffs' Opposition confirms that, despite years of invasive discovery, ***they cannot meet their burden to provide clear and convincing evidence that CIR had subjective knowledge or reckless disregard as to the falsity of any published statement***. *Newton v. NBC*, 930 F.2d 662, 668 (9th Cir. 1990) (*citing, inter alia, Bose Corp. v. Consumers Union of U.S., Inc.,*, 466 U.S. 485, 511 (1984)).

At no point has any CIR reporter or editor doubted the truth of their reporting, even after Plaintiffs deposed reporters Mr. Smith and Ms. Walters; editors Amy Pyle and Robert Rosenthal, who did the most detailed edits; and editors Robert Salladay and Kevin Sullivan, who were less involved but still reviewed the final pieces. *See* Smith Decl. ⁋ 43; Forrest Decl. Ex K, (Smith Dep.) 338:17–20; Walters Decl ⁋ 32; Forrest Decl. Ex. L, (Walters Dep.) 84:4–15. Every editor who reviewed and approved the publications affirmed their belief in the stories' accuracy. Dkt. 110 (Pyle Decl.) ⁋ 27; Dkt. 111 (Salladay Decl.) ⁋ 10; Dkt. 112 (Sullivan Decl.) ⁋ 6; Dkt. 113 (Rosenthal Decl.) ⁋ 6. None of these witnesses has disavowed their views, and each declaration is admissible and relevant. *Infra* at Sections III.A (rebutting Plaintiffs' contrary arguments) & VI (rebutting Plaintiffs' evidentiary objections).

Responding to this basic but crucial point, Plaintiffs willfully misunderstand and distort the legal standard for actual malice, in a fundamental error that is fatal to all of their arguments. Plaintiffs attempt to substitute their very strict burden to show ***by clear and convincing evidence*** actual subjective knowledge of falsity, "serious doubts", or "obvious reasons to doubt" (*St. Amant v. Thompson*, 390 U.S. 727, 731 (1968)), with "a less severe standard … of 'highly unreasonable conduct constituting an extreme departure from the standards of investigation and reporting ordinarily adhered to by responsible publishers'" (*Harte-Hanks Commc'ns, Inc. v. Connaughton*, 491 U.S. 657, 663–64 (1989)). But the Supreme Court has repeatedly and resoundingly rejected the latter "professional standards rule." *Id.*

As their main legal authority, Plaintiffs rely on *Curtis Publishing Co. v. Butts*, claiming that because CIR's stories were not "hot news," CIR should be held to higher standards. Opp. at 22. But as the California Supreme Court has ruled, the "hot news" rule and objective standards from *Butts* were

8

replaced with the subjective standard from *St. Amant. Reader's Digest Ass'n v. Super. Ct.*, 37 Cal. 3d 244, 257–58 (1984). Further, Plaintiffs' contention that *Butts* is apposite (Opp. at 29) illustrates how severely Plaintiffs misstate and ignore the scope and diligence of CIR's investigation. In *Butts*, the defendant published a story based on one statement alleging that a football coach gave his opponent confidential plays on a telephone call *without reviewing the primary materials*, such as call notes and game footage, that would contradict the charge. 388 U.S. at 157. This case is unlike *Butts*, given CIR's 18-month investigation including extensive reporting, on-the-ground photo and audio documentation, interviews with numerous on-the-record witnesses, reams of documents reviewed by the reporters, and multiple attempts to obtain Plaintiffs' comment. *See* Mot. at 2–11.

Plaintiffs complain that CIR should have conducted an *even more* exhaustive investigation. *E.g.*, Opp. at 31. This is irrelevant. CIR's reliance on corroborated witnesses and documents precludes a finding that CIR published anything "inherently improbable" or "based wholly on an unverified anonymous telephone call" or some other source that the defendant had "obvious reasons to doubt." *St. Amant*, 390 U.S. at 732. Nitpicking CIR's investigation does not help Plaintiffs because the standard for "reckless conduct is not measured by whether a reasonably prudent [person] would have published or would have investigated before publishing. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of [the] publication." *Id.* at 731. Even in *St. Amant*, the defendant's reliance on one biased source, plus failure to independently investigate, *did not suffice* to show malice because the plaintiff failed to show that the defendant published the allegedly defamatory statements with a knowing or doubtful mind as to falsity. 390 U.S. at 732–33.

Here, for even stronger reasons, CIR did not publish with actual malice, given it relied on at least 12 on-the-record sources, and investigated and corroborated what the sources said. So even Plaintiffs could show that CIR reported false facts based on what sources told them, CIR cannot be held liable because "*New York Times [v. Sullivan]* and its progeny protect journalists and publishers from liability based on errors of fact that arise from reliance on a credible source," and even where a source's "reliability is unknown, [a journalist] has not published false information with actual malice if the journalist made some effort to verify the source's information." *Newton*, 930 F.2d at 682.

9

Per below, Plaintiffs' only arguments are to rely on misleading claims that (a) CIR falsified or doubted its reporting, or (b) CIR's reporting methods support malice. These arguments all fail.

## A. CIR did not falsify or doubt its reporting.

Failing to make a case for malice, Plaintiffs seek to mislead the Court by misstating the settled standard for actual malice; misrepresenting what CIR published; mischaracterizing and distorting evidence; and nitpicking minor alleged errors that cannot support Plaintiffs' burden. But to establish malice, the alleged falsity must be "material"; "[m]inor inaccuracies do not amount to falsity so long as 'the substance, the gist, the sting, of the libelous charge be justified.'" *Air Wisc. Air. Corp. v. Hoeper*, 571 U.S. 237, 247 (2014) (quoting *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 517 (1991)).

In focusing on trivia and attacking isolated aspects of CIR's investigation, Plaintiffs ignore the extensive record of evidence that CIR gathered and reviewed. *See, e.g.*, Smith Decl. ¶ 7 ("I conducted in excess of 200 interviews" and collected "approximately one half million pages worth of documents"). Plaintiffs' attempts to misconstrue testimony and smear CIR's reporters do not—*even if true*—meet Plaintiffs' burden to show subjective knowledge of falsity or recklessness as to falsity.

The Opposition is so replete with misrepresentation and irrelevancy that page limits preclude a comprehensive tally, but the most egregious are discussed below. *See also In re Girardi*, 611 F.3d 1027, 1037 (9th Cir. 2010) ("The vice of misrepresentation is not that it is likely to succeed but that it imposes an extra burden on the court. . . . The court relies on the lawyers before it to state clearly, candidly, and accurately the record as it in fact exists.") (internal citations omitted). Once Plaintiffs' impertinent arguments and misleading facts are culled, it is clear that Plaintiffs have not—*and cannot*—meet their "very difficult" burden to show malice. *Barger v. Playboy Enters., Inc.*, 564 F. Supp. 1151, 1156 (N.D. Cal. 1983), *aff'd*, 732 F.2d 163 (9th Cir. 1984)

### 1. Plaintiffs accurately reported the circumstances of Plaintiffs' fraud.

The Opposition's centerpiece is Plaintiffs' claim that it is "outrageous" for CIR to have reported that Planet Aid received $130 million from the USDA and diverted much of it. Opp. at 23. Plaintiffs focus not on the sting of fraud but on how much currency Planet Aid purportedly received from the USDA, which Plaintiffs contend CIR knowingly miscalculated. Opp. at 30. But CIR's stories laid out in

detail what the USDA grant figure meant. *E.g.*, Dkt. 78-4 at 3 (May 23, 2016 sidebar story, published with May 2016 Article, explaining the USDA's $133 million allocation to Planet Aid, and stating that the explaining the facts of the allocation required "a tour through one of the more byzantine relief programs in the world."). Indeed, in this sidebar—which was the subject of significant research and editing—CIR explained with precision both what was known about Planet Aid's USDA allocations and what was unknown. *See id.*; *see also* Forrest Decl. Ex. M (Rosenthal Dep.) 218:16–223:21 (discussing sidebar and explaining why statements about USDA allocations were accurate).

   ***USDA confirmed its funding amount.*** Plaintiffs do not and cannot dispute the fact that before CIR's first publication, CIR asked USDA to confirm the total funding allocated under agreements with Planet Aid. Walters Reply Decl. Ex. C. USDA responded by confirming that the total is "approximately $133 million," which CIR reported. May 2016 Article at 2. Ignoring USDA's confirmation, Plaintiffs contend that CIR "knew [its] statements were false" regarding the allocation figure. Opp. at 23. But multiple witnesses testified that they do not believe this statement was false. Rosenthal Dep. 223:19–21, 224:6–19, 248:18–22; Walters Dep. 470:14–471:1. Elsewhere, Plaintiffs contend that Mr. Rosenthal said Ms. Walters' Tweets about the allocations were wrong. Opp. at 23. But—again revealing Plaintiffs' misrepresentations—Mr. Rosenthal testified that he "*wouldn't*" say Ms. Walters' Tweets were incorrect. Rosenthal Dep. 247:14–248:22 (emphasis added). Either way, saying Planet Aid "got" instead of "was allocated" millions of dollars does not affect the statement's sting. *Air Wisc.*, 571 U.S. at 247 (2014).

   Plaintiffs also contend—without citing any evidence as to any knowledge CIR had or could have had here—that it was a "mathematical impossibility" for Planet Aid to have diverted the 50–70 percent CIR reported insiders as having estimated, such that CIR was reckless or aware of the fraud conclusion's falsity. Opp. at 23–24. CIR carefully considered and stood behind the bases for its reporting this range. *See, e.g.*, Mot. at 6, 18–19. Contrary to Plaintiffs' misrepresentations, CIR's witnesses testified that the 50–70 percent range was accurate based on what they knew. *See* Forrest Decl. Ex N ("Pyle Dep.") 106:8–107:14; Walters Dep. 487:1–9; Forrest Decl. Ex O (Sullivan Dep.) 167:17–168:3; Rosenthal Dep. 286:15–21 & 287:1–3. Plaintiffs misrepresent Mr. Rosenthal's testimony in stating that he doubted CIR's reporting and could not verify any amount of diverted funds. Opp. at 24 (citing Rosenthal Dep.

11

284:4–286:17). He testified, rather, that he had not seen evidence of hypothetical figures Plaintiffs' counsel conjured from nowhere. *Id.* Mr. Rosenthal testified further that the amount Planet Aid allegedly siphoned away is what CIR's sources told CIR and what CIR published—which was not a specific number but a possible range. Rosenthal Dep. 282:8–12, 283:22–288:1.

*CIR accurately reported and did not manipulate or misrepresent sources' conclusions as to fraud.* CIR accurately reported that "*Harrison [Longwe] is one of several insiders who told us* at least half of the US government grant money was being siphoned away." Podcast at 14 (emphasis added). Mr. Longwe, DAPP Malawi's former financial controller, told CIR his "conclusion that approximately 50% to 70% of government grant money was being diverted from aid projects in Africa to the Teachers' Group." Dkt. 116 (Longwe Decl.) ¶ 13. As discussed in this Reply and in CIR's Motion, Mr. Longwe's conclusion—which CIR had every reason to believe given his insider position as controller and the credible explanations of documents he provided in support—is supported by each of the "stings" forming its premise, and is corroborated by multiple other insiders. Mot. at 6, 18–19.

Plaintiffs contend that CIR doubted and even altered Mr. Longwe's statements. Opp. at 28–29. But the evidence Plaintiffs cite as to editors pushing back on Mr. Longwe's statements show nothing but the normal editorial process of testing facts and sources before publishing them. *Id.* at 28. As noted above, the reporters and editors reviewed the stories and supporting evidence, and all maintain that the publications are accurate. Further, Mr. Longwe's estimates are just that—estimates based on limited information—as the story makes clear, given Plaintiffs' secrecy. *E.g.*, May 2016 Article at 20–24; Podcast at 14–15. Also, CIR's witnesses have stood by Mr. Longwe's information. *See supra*; *see also, e.g.*, Walters Decl. ¶ 34–37; Smith Decl. ¶ 44–47. Here, Mr. Rosenthal did *not* testify—again contrary to Plaintiffs' misrepresentations—that Mr. Longwe "was not presented with the correct figure" such that his statements became unreliable. Opp. at 29 (citing Rosenthal Dep. 322:3–11). In the cited testimony, Plaintiffs' counsel asked Mr. Rosenthal to adopt a hypothetical based on what Mr. Longwe might have said about various different numbers, and Mr. Rosenthal declined to speculate on that.

Plaintiffs' claim that CIR "altered [Mr. Longwe's statement] to fit their pre-conceived script" is made up. Opp. at 29. Plaintiffs cite one exhibit: part of an interview with Mr. Longwe (see the page

range), which Plaintiffs never explain shows that CIR "altered" anything. *Id.* (citing Dkt. 298-10 at pp. 41–43). Plaintiffs also cite their own witness' testimony, which has nothing to do with Mr. Longwe's statement, and which was not available to CIR during reporting. Opp. at 29; *New York Times*, 376 U.S. at 286. Mr. Longwe affirmed what he told CIR and what it published. Dkt. 116 ¶¶ 12–13.

> ***Other sources who did not necessarily discuss USDA or offer percentage figures supported the sting of what CIR and Mr. Longwe stated.*** As to sourcing, Plaintiffs claim that apart from Mr. Longwe, none of CIR's sources told CIR that at least half of US government grant money had been siphoned away—such that, per Plaintiffs, CIR must have known their reporting was false or doubtful. Opp. at 26–29. This is misleading. As the Motion explains, support for the estimated range reported in the Podcast and the May 2016 Article came from Mr. Longwe specifically, ***as well as at least nine other sources*** who described the underlying facts concerning Plaintiffs' conduct. Mot. at 6, 18–19 (citing factual support). It is irrelevant that other sources—whose statements supported the gist or sting of Mr. Longwe's conclusion—may not have put percentage ranges on what they said, or that these sources told CIR about Plaintiffs' use of US government funds generally without specifying the USDA. *See id.* Those witnesses confirmed and described frauds in which Plaintiffs or their affiliates were allegedly involved, which were consistent with conduct described in CIR's stories. *See* Dkts. 108, 119, 127.

Plaintiffs' argument here artificially narrows and distorts what CIR actually published, and again misrepresents what sources said. For example, Plaintiffs contend Mr. Goteka said only that DAPP Malawi was "funded by donors, 'including government donors such as USDA,'" without stating that DAPP fleeced USDA. Opp. at 28. But Mr. Goteka *actually* said, "Given that DAPP Malawi is funded by grants by donors, including government agencies such as USDA, Jacaranda [a farm operated by DAPP Malawi] *operates to divert government funds intended for foreign aid to the Teachers' Group.*" Goteka Decl. ¶ 45 (emphasis added). As another example, Plaintiffs claim Mr. Malabwe's statements about Plaintiffs' graft are irrelevant because he "didn't mention the USDA at all—*not one word.*" Opp. at 28 (citing Dkt. 109-6 at 45–72) (emphasis added).[2] This is false. Mr. Malabwe mentioned USDA

---

[2] There is no pp. 45–72 and no mention of Malabwe at Dkt. 109-6. Plaintiffs meant Dkt. 109-5.

repeatedly, including stating—in discussing USDA and UNICEF—that he was "100% sure" that Plaintiffs were taking money from those programs. Dkt. 109-5 at 53–54.

Separately, Plaintiffs contend that four of CIR's sources—Messrs. Chitosi, Mtimbuka, Goteka, and Gade—never told CIR that Plaintiffs were mishandling USDA money, so CIR's reliance on these sources shows fabrication or misrepresentation of what these sources said. Opp. at 26–27 (citing Dkts. 108, 120, 126, 127). But those witnesses all described patterns of misconduct by Planet Aid or its affiliates. Other sources—namely Messrs. Longwe and Zebiah—provided additional information about the estimate of total funds misused that was described in the stories. *See supra*. Plaintiffs state without citing any record evidence that CIR somehow made up what these sources said, or that CIR knew that none of these people were in a position to provide this information. Opp. at 26–27. But this is rebutted on the facts described above and in the Motion. *Supra*; *see also* Mot. at 18–19.

As a matter of law, the patterns of misconduct CIR's sources describe support the "gist" or "sting" of CIR's stories—that Plaintiffs were misusing government funds, including USDA funds. *Air Wisc.*, 571 U.S. at 247.

**Plaintiffs' nitpicking is irrelevant as a matter of law.** Even assuming *arguendo* that CIR erred in calculating the amount of currency obtained or diverted by Planet Aid from the USDA, this error is not material. A swindle is a swindle, and the sting of fraud is not rebutted on the grounds that CIR purportedly could not account for every dollar. *See, e.g., Newton*, 930 F.2d at 685 ("ambiguity" in broadcast about severity of plaintiff's financial difficulties "does not sustain the burden of establishing with clear and convincing clarity that the journalists acted with knowing or reckless disregard of falsity"); *see also, e.g.*, *Bose Corp*, 466 U.S. at 512–13 (if "adoption of the language chosen was one of a number of possible rational interpretations of event that bristled with ambiguities" choice of language, even if it includes misconception, does not put statement outside First Amendment protection).

**CIR editors' statements during the editorial process don't show malice.** Plaintiffs decontextualize CIR editors' comments in a failed attempt to claim they show malice. *First*, Plaintiffs are wrong that CIR wrote its stories before investigating. Opp. at 38–39. It is undisputed that reporting occurred both before and after the July 2015 email chain Plaintiffs cite, and that the stories went through

14

multiple drafts. *See* Mot. at 3–9. Deb George, the editor Plaintiffs cite for this argument, explained that Kevin Sullivan (radio editor for the story) corrected her misunderstanding that the story was pre-written, and she also confirmed that what she mistakenly thought was a script was just a "preliminary sketch." Forrest Decl. Ex. P (George Dep.) 116:10–120:20. *Second*, the editor who said the story was "a mess" confirmed that she meant stylistically not factually. Pyle Dep. 402:6–403:16. Editors who said certain phrases were "weak" or "problematic" explained that this was part of the iterative process of editing and assessing sources until the editors were satisfied—which they were. *Id.* 102:15–108:5; Forrest Decl. Ex. Q (Salladay Dep.) 175:15–176:12.

Further, Plaintiffs again misrepresent CIR's depositions to contend that CIR's editors said they never looked at key documents. Opp. at 31–37. These deponents all said they could not remember everything they reviewed years after the fact, but affirmed that per their declarations, they reviewed and approved the final reporting and associated facts. *E.g.*, Sullivan Dep. 40:15–20, 113:16–116:11, 129:20–130:16, 181:11–182:19; Salladay Dep. 114:3–115:2, 134:16–137:3, 145:17–146:22, 152:2–157:12, 178:10–180:3; Rosenthal Dep. 380:9–20; Pyle Dep. 107:9–14, 125:13–20, 134:11–17, 162:2–22, 448:7–16; Smith Dep. 170:17–22, 411:4–412:11; *see also* Supra Section III.A. Plaintiffs say that Mr. Salladay said certain audits should have been included in the stories, and that Mr. Rosenthal agreed, but both editors were discussing hypotheticals about audits that they were neither testifying about as exhibits nor using to refresh recollection. Opp. at 33 (citing Salladay Dep. 29:3–12, Rosenthal Dep. at 383:13–17).

### 2. Statements from farmers submitted after publication do not show malice.

Plaintiffs contend that "every single farmer interviewed by CIR disputed the accuracy of what was published." Opp. at 30. This is misleading for the reasons described below, and none of these witnesses controvert the stories' sting. *Air Wisc.*, 571 U.S. at 247. It is also telling that the Opposition does not rebut the declaration of Marko Zebiah, a farmers' club manager who affirms the accuracy of CIR's publishing on these points. Dkt. 117 ¶¶ 24–25.

Nearly all of Plaintiffs' declarations on this topic are inadmissible. *Infra* at Section VII. But even if they were not, the overlapping declarations—i.e., declarations from Messrs. Molande, Mtimbuka, and Chikaonda, who previously submitted declarations for CIR (Dkts. 120–22)—do not contradict what

these farmers originally stated or declared. (Aside from these witnesses, none of Plaintiffs' declarants on this topic were people CIR used as sources for the reporting or witnesses for the Motion.) These witnesses explained to CIR, during reporting, that (a) Planet Aid/DAPP promised goods or services they did not provide in full, such as seeds, rope pumps, and livestock (Mot. at 14, 18, citing Molande, Mtimbuka, and Chikaonda); (b) skimmed salaries, were linked to the Teachers Group, and defrauded government funders (*Id.* at 14–17, citing Molande and Mtimbuka). Comparing these overlapping declarations shows that, in the declarations executed for Defendants, these witnesses do not controvert what they told CIR. *Compare* Dkt. 122 (Molande for CIR) ¶¶ 5–17 *with* Dkt. 298-46 (Molande for Pls.) ¶¶ 3–14; *compare* Dkt. 121 (Chikaonda for CIR) ¶¶ 4, 7–10 *with* Dkt. 298-27 (Chikaonda for Pls.) ¶¶ 2–5; *compare* Dkt. 120 (Mtimbuka for CIR) ¶¶ 6–7 *with* Dkt. 298-47 (Mtimbuka for Pls.) ¶ 4, 7. & 7.5.

As to Mr. Chibwana, who was a source but did not submit a declaration for CIR, Plaintiffs ignore the interview with him that CIR recorded during its reporting, in which—after first claiming he, as village chief, was entitled to a pump without paying—Mr. Chibwana explains, as CIR reported, that he only obtained the pump, which often broke, via a loan. Walters Reply Decl. Ex. B at timestamps 45:46–47:03, 55:18–56:54; *see also* Ngwira Decl. ¶¶ 18–19 & Ex E (affirming these facts in later interview). Plaintiffs procured a declaration where Mr. Chibwana says he did not tell CIR the pumps were not free. Dkt. 298-26 ¶ 3. But he told CIR otherwise during their reporting, and they relied on it in the story—so the new declaration cannot show malice as a matter of law. *N.Y. Times*, 376 U.S. at 286; *see also Pape*, 401 U.S. at 290 (even if ambiguous, CIR's reasonable interpretation of interview does not show malice).

Also, as to Plaintiffs' claim that CIR invented a farmer source in an interrogatory response, this is false, as Plaintiffs know: Ms. Walters testified that the response in question was mistaken, correcting it. Walters Dep. 556:3–557:8; *see also* Fed. R. Civ. P. 26(e)(1)(A); *Coleman v. Keebler Co.*, 997 F. Supp. 1102, 1107 (N.D. Ind. 1998) (deposition clarifying prior discovery acts as correction per FRCP).

**3.   Remaining arguments that CIR's statements show malice are baseless.**

Plaintiffs' other claims that CIR's own statements show malice all fail. Opp. at 23–26.

***CIR's reporting made clear that many details of Planet Aid and DAPP's conduct were unknown.*** Plaintiffs claim that it shows malice for Mr. Smith to have said, after reviewing certain files

16

from Planet Aid, that he could find "no smoking gun as to what [Plaintiffs] are doing with the money." Opp. at 25. But CIR never claimed to have such a smoking gun, and the story said Planet Aid's conduct was mysterious. *E.g.*, May 2016 Article at 33 (noting at end of reporting that "many questions [left] unanswered"). As for the basis of what CIR *did* report, including statements about DAPP trafficking money in strange ways, CIR described their bases for this reporting at length in their Motion—which Plaintiffs ignore. *E.g.*, Mot. at 3–4, 6, 9, 15, 18–21, 24. Further, Mr. Smith was only discussing a subset of documents when he said he had not found a smoking gun as to the details of Planet Aid's conduct, and there is no dispute that CIR has never possessed every document from Planet Aid or its affiliates. Opp. at 25 (citing Ex. 17(r) to the Rosenthal Decl., but meaning Ex. 4(r)). As Judge Corley found— noting that Plaintiffs misrepresented Mr. Smith's deposition—Plaintiffs never even asked Mr. Smith to identify all the files CIR had from Planet Aid. Dkt. 282 at 4–5.

Contrary to the Opposition's misrepresentations, no deponents testified to having "serious doubts" about their reporting due to unknowns. Mr. Rosenthal affirmed multiple times his confidence in the reporting. *E.g.*, Rosenthal Dep. 82:6–17, 282:10–12. Plaintiffs misrepresent Mr. Smith's testimony in contending he agreed he had "serious doubts"— he only testified that he wrote the "smoking gun" email. *See* Opp. at 25 (citing Smith Dep. at 176:3–177:11). Finally, Ms. Pyle never admitted such doubts in the document Plaintiffs distort: she said the story "just needs a tweak" to clarify that CIR did not know everything about Plaintiffs' finances—as the story explained. Dkt. 298-21 at p.4.

**CIR did not falsify or doubt their reporting on pumps.** Plaintiffs fail to show that any of CIR's witnesses disavowed CIR's reporting on how many water pumps villages received or were supposed to receive from Planet Aid. Opp. at 25. CIR stated only that a former DAPP Malawi program manager "thought" the village of Njuli was to receive 25 pumps, and that a village chief said the village only received one pump and took a loan for another. May 2016 Article at 25–26; Dkt. 120 (Mtimbuka Decl.) ₧ 7.o; Dkt. 121 (Chikaonda Decl.) ₧₧ 7–10; *see also supra* at Section III.A.2 (discussing Chibwana interview). Plaintiffs suggest that CIR may later have been confused about exactly how many pumps were at issue, but again, in a setting so fraught with ambiguity such statements cannot—as a matter of

law—show malice, especially not when CIR accurately reported facts from reliable sources. *Bose Corp.*, 466 U.S. at 512–13; *see also Air Wisc.*, 571 U.S. at 247.

**Ms. Walters did not misrepresent a purportedly contrary interview.** CIR's interviews do not contradict the statement they put to Lisbeth Thomsen regarding the investigation into DAPP Malawi's representations about its work providing ample benefits to farmers, "That we'd visited Farmers' Clubs, and in every instance the farmers themselves told us that was a lie." Opp. at 25. To claim that one person actually contradicted this, Plaintiffs quote Ms. Walters' summary of an interview with a woman in which Ms. Walters reports that the woman was happy to have received a pump from Planet Aid. *Id.* But Ms. Walters testified that this woman was *not a farmer* and was not in the broadcast—so the purportedly contradictory sentence does not apply to her anyway—and also that the woman was dissatisfied with other Planet Aid actions. Walters Dep. 288:15–289:6, 290:12–18, 291:17–292:2, 293:16–294:3.

Further, as to CIR's exchange with Ms. Thomsen in particular, CIR faithfully published the entire interaction, including Thomsen's response that "I'm definitely not stealing any money." Podcast at 15. By including these denials—and other statements by Planet Aid "contrary to the [article's] general conclusions"—CIR gave "readers sufficient information to weigh for themselves the likelihood of an article's veracity," which "tends to undermine the claims of malice." *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 703 (11th Cir. 2016). Denials by the subject of a negative article also do not raise an inference of actual malice. *Worrell-Payne v. Gannett Co.*, 49 F. App'x 105, 108 (9th Cir. 2002); *see also Edwards v. Nat'l Audubon Soc'y*, 556 F.2d 113, 120–21 (2d Cir. 1977) (actual malice cannot be based on mere denials, which are commonplace and do not raise likelihood of error).

**CIR did not falsify or doubt that USDA funded Planet Aid despite law enforcement investigations.** Plaintiffs claim that CIR knowingly published falsehoods in saying USDA funded Planet Aid despite prior law enforcement investigations into Planet Aid. Opp. at 26. But Plaintiffs do not deny or rebut that Denmark charged with financial crimes people affiliated with Planet Aid and DAPP, as the FBI noted in 2001. Dkt. 107 at 6–7. Plaintiffs also do not deny that USDA funded Planet Aid and DAPP despite prior investigations. *See* Dkts. 78-9, -12, -13. Whether some authorities abandoned or paused investigation does not undermine the gist of Defendants' reporting. *Air Wisc.*, 571 U.S. at 247.

18

1

***Plaintiffs' accusations of malice as to Mozambique and non-farming programs are irrelevant.***

2
Plaintiffs identify no purportedly actionable statements about Mozambique or non-farming programs.

3
*E.g.*, Opp. at 10. CIR's stories state that although Planet Aid and its affiliates worked in Mozambique

4
and did work apart from farming, the stories' focus was on Planet Aid and DAPP Malawi's farming

5
programs in Malawi, as even the statements Plaintiffs allege as defamatory show. *See supra* Section

6
I.B.1; *see also, e.g.*, Smith Decl. ¶ 20 ("We also decided to focus on Malawi rather than Mozambique or

7
other countries, because it was the English-speaking country that received much of Planet Aid/USDA

8
funds."). Plaintiffs claim CIR's statements about Mozambique somehow show malice as to CIR's

9
statements about Malawi. *See* Opp. at 24. But per above, Plaintiffs' arguments about Malawi fail.

10
***"MERE" is irrelevant.*** Plaintiffs contend it shows malice for Mr. Smith to have raised questions

11
about an entity called MERE. Opp. at 26. CIR's reporting does not mention MERE and only notes—in

12
terms Planet Aid does not challenge—that money went from DAPP to a Hong Kong entity. *Id.*

13
**B.    Plaintiffs fail to show malice based on CIR's reporting practices.**

14
Plaintiffs make various arguments that CIR's reporting methods show malice. Each fails.

15
***Even if true, CIR's reliance on hostile or biased sources cannot show malice because CIR***

16
***corroborated what sources said.*** Plaintiffs claim it shows malice for CIR to have relied upon sources

17
who Plaintiffs say were biased, e.g., people purportedly fired by DAPP Malawi. Opp. at 31. Plaintiffs

18
cite inapposite authority assuming that "reliance *solely* on a source known to be hostile" may support a

19
finding of malice. *Id.* (citing *Evans v. Unkow*, 38 Cal. App. 4th 1490, 1497 (1995)). But, as discussed in

20
the Motion and not rebutted in the Opposition, CIR did not rely "solely" on a single source for *any* of

21
the stings of which Plaintiffs complain. Mot. at 13–19. Such corroboration precludes finding of malice.

22
*E.g.*, *St. Amant*, 390 U.S. at 733 (reliance on purportedly biased source did not permit malice inference

23
when defendant had "verified other aspects" of source's information and had other indicia of source's

24
credibility). It is also both false and irrelevant for Plaintiffs to claim that Ms. Pyle admitted CIR would

25
"open [them]selves up" by publishing reporting without stating that sources were purportedly fired.

26
Opp. at 31 (citing Dkt. 298-8 at p.68). As Ms. Pyle stated, this discussion arose in choosing a description

27

28

DEFENDANTS' REPLY IN SUPPORT OF SPECIAL MOTION TO STRIKE
CASE NO. 3:17-CV-03695-MMC

of the facts of a DAPP employee's departure: not for "stealing" but for being accused "of misusing the organization's tax-free nonprofit status." Pyle Dep. 418:13–420:18; May 2016 Article at 23.

*CIR did not fabricate sources or quotes.* Plaintiffs also misrepresent the record to contend that CIR fabricated sources, by contending that CIR relied on facts from Emmanuel Phiri and Rikke Viholm even though both those people submitted declarations saying they were not sources. Opp. at 28 (citing interrogatory responses appearing at Dkt. 289-19). As to Ms. Viholm, Mr. Smith clarified at his deposition that her inclusion in the interrogatory responses was just a mistake. Smith Dep. 437:6–438:20; Fed. R. Civ. Pro. 26(e)(1)(A); *Coleman*, 997 F. Supp. at 1107. As to Mr. Phiri, Mr. Smith testified that he spoke with Mr. Phiri before publication, after which Plaintiffs declined to ask anything further. Smith Dep. 336:6–337:9. Mr. Phiri might claim he was never a source (Dkt. 298-55), but that does not matter because nothing he says now undermines what Defendants reported.

*CIR did not ignore or mischaracterized contrary materials.* Plaintiffs also contend that CIR ignored or mischaracterized documents or statements that undermined CIR's reporting, including as to evidence concerning salary skimming and various financial documents. Opp. at 30–37. Plaintiffs base this argument mainly on declarations from their employees, who review documents CIR referenced or possessed and conclude that CIR was wrong about these documents and related topics. *Id.* But this is irrelevant to malice because (1) actual malice must exist "at the time of the publication," *New York Times*, 376 U.S. at 286; and (2) Plaintiffs' own readings of complex, often ambiguous documents does not show malice given CIR's own reporting and analysis, *Time, Inc. v. Pape*, 401 U.S. 279, 290 (1971).

Plaintiffs also say that Defendants ignored contrary material such as people's positive statements about Plaintiffs' USDA programs. Opp. at 36. CIR's reporting references statements of this sort. *E.g.*, May 2016 Article at 31–34; Dkt. 78-9. It is insufficient for Plaintiffs to contend that CIR should have interviewed various people Plaintiffs say are critical (Opp. at 36–37), because—as explained in the Motion and this brief—CIR relied on multiple corroborated sources and documents for what they published. *E.g.*, Mot. at 2–10; *St. Amant*, 390 U.S. at 732. And contrary to Plaintiffs' claims here, which do not even specify any publication, Mr. Smith did not confess to publishing any statement about book

translations without support: in the cited deposition transcript he tells Plaintiffs he did not remember what he was talking about in a 2015 email. Opp. at 36–37 (citing Smith Dep. 411:4–412:11).

Plaintiffs also contend that a DAPP Malawi accountant, Mary Bokosi, was interviewed by CIR and helped CIR review DAPP's accounting records, such that CIR knew it was reporting falsities. Opp. at 34 (citing Dkt. 116 ¶ 9(h) & Dkt. 298-23). This is made up. Indeed, Plaintiffs go on to say CIR never interviewed Ms. Bokosi. Opp. at 36. Either way, she only declared that she declined to speak to CIR about alleged accounting fraud—not that she confirmed any records. Dkt. 298-23 ¶ 4. Also, Mr. Longwe does not say that he spoke to or met with Ms. Bokosi. *Cf.* Opp. at 34 (citing Dkt. 116 ¶ 9(h)).

***Plaintiffs' allegations about CIR's conduct does not show malice.*** Plaintiffs claim that CIR (a) misrepresented themselves and (b) bribed sources, and also that (c) CIR's work with journalist Kandani Ngwira shows malice. Opp. at 22–23, 30, 37–38. ***These slurs aimed at award-winning journalists are simply untrue***—but even taken in Plaintiffs' favor, they do not show malice. The Ninth Circuit holds that "[t]he journalist's right to use aggressive and abrasive tactics in an attempt to ferret out information from reluctant individuals is well established" when there is no defamation, as there is not in this case. *Van Buskirk v. CNN*, 284 F.3d 977, 982 (9th Cir. 2002) (citing *Desnick v. ABC*, 44 F.3d 1345, 1355 (7th Cir. 1995)). The Sixth Circuit has also held that payment to a source, who had a criminal record, did not show malice. *Cobb v. Time, Inc.*, 278 F.3d 629, 638 (6th Cir. 2002). Plaintiffs' sole case, *Aghmane v. Bank of Am., N.A.*, 696 F. App'x 175, 176 (9th Cir. 2017), does not counsel otherwise.

Plaintiffs' attempt to smear Mr. Ngwira also fails. Plaintiffs claim CIR was reckless in hiring Mr. Ngwira because he had a criminal record. Opp. at 22–23. Yet CIR carefully vetted Mr. Ngwira and concluded that his conviction was an example of a reporter being targeted for his work in a country where reporters are often persecuted for doing their jobs. Smith Decl. ¶¶ 17–19; Pyle Decl. ¶¶ 11–12; Ligomeka Decl. ¶¶ 5–13; Ngwira Decl. 25–29. These declarations also explain that these witnesses had no reason to doubt Mr. Ngwira's work. Plaintiffs ignore these points.

***CIR's desire for "impact" does not show malice.*** Plaintiffs claim CIR's motive or interest in its reporting having impact shows malice. Opp. at 39. The Supreme Court rejects this theory. *Harte-Hanks*,

491 U.S. at 667. And purported hope for social impact does not show malice as a matter of law. *DARE v. Rolling Stone Mag.*, 101 F. Supp. 2d 1270, 1286 (C.D. Cal. 2000), *aff'd*, 270 F.3d 793 (9th Cir. 2001).

## IV.     CIR's publications are substantially true.

In contesting the substantial truth of CIR's stories, Plaintiffs try to submerge CIR's deep but focused reporting in a bog of confusing, unrelated facts. Opp. at 8–17. CIR lacks space to dissect each impertinent statement here. But—in addition to points regarding truth discussed above—it suffices for the Court to (a) read what CIR actually published and (b) evaluate CIR's support for its publications described in the Motion. These facts show that CIR's reporting is narrower than the misleadingly broad narrative Plaintiffs describe, which is based mainly on declarations and evidence from Plaintiffs' own witnesses that go beyond what CIR actually published. *See* Opp. at 8–17. Indeed, none of this material was even available for CIR to consider during its reporting, despite CIR's repeated efforts to get Plaintiffs to provide information and answer questions. *See* Smith Decl. ¶ 41; Walters Decl. ¶¶ 24–26.

When the specific statements Plaintiffs challenge (*supra* at Section I.B.1) are put in proper context, the facts show that CIR is not making the outrageous statements Plaintiffs contend (Opp. at 17), but rather that the gist of CIR's reporting is intact and the stories are substantially true. Mot. at 21–24.

## V.     The Court should reject Plaintiffs' other grounds for opposing the Motion.

Plaintiffs do not challenge CIR's argument as to Plaintiffs' non-defamation claims: if the First Amendment bars a defamation claim, it bars other claims purporting to arise from the same facts. Mot. at 25 (citing *Hustler Mag., Inc. v. Falwell*, 485 U.S. 46, 50 (1988)). Plaintiffs do not even argue that their conspiracy or tortious interference claims are distinct from the defamation claim's facts. Opp. at 40. Nor do they contend they have an independent case for unjust enrichment. *See id.*

Separately, Plaintiffs argue—over binding Ninth Circuit law—that CIR's Motion subverts Plaintiffs' own First Amendment rights. Opp. at 40. CIR takes issue with Plaintiffs draping themselves in the mantle of the First Amendment in pursuing their punitive, harassing litigation against the press. The First Amendment protects access to courts, but not abusive and baseless litigation, and CIR submits that this is doubly true when the targets of such litigation are reporters publishing on matters of public significance. *See Bill Johnson's Rests., Inc. v. NLRB*, 461 U.S. 731, 743–44 (1983).

Last, the Court should strike the FAC with prejudice because Plaintiffs already amended, and the ample discovery and motion practice to date show that further amendment would be futile, prejudicial, and the cause of undue delay. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

## VI.    The Court should overrule Plaintiffs' evidentiary objections.

*Rule 56(d) does not bar or delay resolution of CIR's Motion.* **First**, Plaintiffs' Rule 56(d) affidavit lacks foundation as to why Plaintiffs need discovery from certain witnesses: counsel's statements are based only on belief, not personal knowledge. Dkt. 298-1 ¶¶ 26–37; *see also, e.g.*, *Bank Melli Iran v. Pahlavi*, 58 F.3d 1406, 1412–13 (9th Cir. 1995). *Second*, Judge Corley has overseen years of discovery to give Plaintiffs what they deemed essential to respond to the Motion. *E.g.*, Dkt. 282. Plaintiffs do not explain why they still cannot respond without more discovery—especially not when they offer no excuse for not pursuing foreign discovery until this year, regardless of whether they think it will work. Also, Plaintiffs asked to resume briefing (Dkt. 288), so seeking further deferral now is sandbagging.

*Rule 403 does not apply here.* Plaintiffs contend the Court should disregard evidence under FRE 403. Opp. at 5–6. FRE 403 has no place at this posture. *Montoya v. Orange Cty. Sheriff's Dep't.*, 987 F. Supp. 2d 981, 994 (C.D. Cal. 2013). To the extent Plaintiffs claim this evidence is irrelevant, all of the evidence cited pertains to the gist of CIR's stories. *E.g.*, Mot. at 2–10. Plaintiffs also list other objections to unidentified evidence. Opp. at 8. These lack specificity and also have no place at this posture.

*CIR's declarations are not barred.* Plaintiffs contend, citing no authority, that the Court should disregard CIR's declarations from Messrs. Molande and Chibwana. CIR did not submit a declaration from Mr. Chibwana. As to all of CIR's Malawian declarants, CIR submitted detailed, notarized declarations from local lawyers who explain how the witnesses' declarations were prepared. Dkts. 123 (Nkhata Decl.) & 124 (Theu Decl.). (It is worth noting that Plaintiffs offer no such information about their own declarations.) As to Mr. Molande, his CIR declaration states that his declaration was read to him in Chichewa, and that he understood it would be translated into English. Dkt. 122 ¶ 1. Attorney Bright Theu described preparing, translating, and executing Mr. Molande's declaration. Dkt. 124 ¶¶ 1–6,

23

14. Mr. Molande's declaration for Plaintiffs—which is inadmissible as explained above and appears incomplete per a bracketed phrase at ¶ 12—does not contradict the process Mr. Theu explained.

Plaintiffs also say that the declarations of CIR editors and reporters should be excluded because they controverted their declarations. Opp. at 14. But per above, these declarants could not always recall everything related to their declarations years after executing them—which is not grounds for exclusion. *E.g.*, *Pieszak v. Glendale Adventist Med. Ctr.*, 112 F. Supp. 2d 970 (C.D. Cal. 2000). Last, the fact that one part of Mr. Smith's 26-page declaration says "Amy" instead of "Matt" does not show the declaration was copied from someone else's, as is obvious from its substance. Opp. at 7.

Finally, Plaintiffs seek to exclude several recordings because some were made after the stories were published, and some were either made in non-English languages or are partial. Opp. at 6–7. But this goes to relevance, not admissibility, and Plaintiffs only evidentiary claim—that Mr. Ngwira's declaration lacks foundation because Plaintiffs need more discovery—is dispatched above.

***CIR is not using privilege as a sword and shield.*** Plaintiffs claim CIR asserted confidential source privilege but refused to answer whether confidential sources contradicted the reporting. Opp. at 5 (citing only Pyle Dep. 316:13–318:1). This is false. Ms. Pyle refused to tell Plaintiffs whether specific people were granted confidentiality, and Plaintiffs never challenged this.

## VII.   Key parts of Plaintiffs' evidence are inadmissible.

***The Hayes Declaration is inadmissible.*** Even if the Hayes Declaration were admissible, it does not support a showing of malice, for the reasons explained above. *Supra* Section III. But, for several reasons, the Hayes Declaration should be struck. *First*, it flouts the Court's 40-page limit on the Opposition because Plaintiffs use it to incorporate by reference facts and arguments that should have been in the brief. *E.g.*, *King Cty. v. Rasmussen*, 299 F.3d 1077, 1082 (9th Cir. 2002). *Second*, it is not a proper FRE 1006 summary because it is not "the *only practicable means*" of making facts available to the Court. Fed. R. Evid. 1006 & cmte. note (emphasis added). Aside from transcripts he does not discuss, Hayes "summarized" the parties' anti-SLAPP filings, which are already before the Court. Hayes Decl. at 39. *Third*, it is neither reliable nor admissible expert opinion because Hayes does not explain how his opinions meet federal requirements. Fed. R. Evid. 702; *Kumho Tire Co., Ltd. v. Carmichael*,

24

1    526 U.S. 137 (1999). Hayes' "opinions" are also mere legal conclusions. *E.g.*, Hayes Decl. ¶ 2;

2    *Nationwide Trans. Fin. v. Cass Info. Sys.*, 523 F.3d 1051, 1058 (9th Cir. 2008).

3    **Plaintiffs' purportedly translated declarations are inadmissible.** These nine declarations are

4    inadmissible because neither Plaintiffs nor the declarants provide sufficient sworn details about the

5    declarations' translation or execution. Dkts. 298-25, -26, -27, -29, -35, -38, -46, -50, -57; *Jack v. TWA*,

6    854 F. Supp. 654, 659 (N.D. Cal. 1994) (citing Fed. R. Evid. 604 & 901).

                                          **CONCLUSION**

7            The Court should strike the FAC with prejudice and award CIR fees and costs.

9    DATED: October 26, 2020                    Respectfully submitted,

10                                               DAVIS WRIGHT TREMAINE LLP
                                                 THOMAS R. BURKE
11                                               AMBIKA K. DORAN
                                                 BRENDAN CHARNEY
12
                                                 COVINGTON & BURLING LLP
13                                               SIMON J. FRANKEL
                                                 ALEXA HANSEN
14                                               ETHAN FORREST
                                                 SEAN HOWELL
15                                               ABIGAIL P. BARNES
16
17                                               By:   */s/ Ethan Forrest*
                                                       Ethan Forrest
18
19                                               Attorneys for Defendants
                                                 REVEAL FROM THE CENTER FOR
20                                               INVESTIGATIVE REPORTING; MATT SMITH;
                                                 and AMY WALTERS
21

22

23

24

25

26

27

28

                                              25