THOMAS R. BURKE (Bar No. 141930)
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, CA 94111
Telephone:(415) 276-6500
Facsimile: (415) 276-6599
Email: thomasburke@dwt.com

AMBIKA K. DORAN (pro hac vice)
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104
Telephone:(206) 757-8030
Facsimile: (206) 757-7030
Email: ambikadoran@dwt.com

BRENDAN CHARNEY (Bar No. 293378)
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, Suite 2400
Los Angeles, CA 90017
Telephone:(213) 633-6800
Facsimile: (213) 633-6899
Email: brendancharney@dwt.com

SIMON J. FRANKEL (Bar No. 171552)
Email: sfrankel@cov.com
ALEXA HANSEN (Bar No. 267271)
Email: ahansen@cov.com
COVINGTON & BURLING LLP
415 Mission Street, Suite 5400
San Francisco, CA 94105
Telephone: (415) 591-6000
Facsimile: (415) 955-6552

Attorneys for Defendants
REVEAL FROM THE CENTER FOR INVESTIGATIVE
REPORTING; MATT SMITH; and AMY WALTERS

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PLANET AID, INC., and LISBETH THOMSEN,<br><br>      Plaintiffs,<br><br>      v.<br><br>REVEAL, CENTER FOR INVESTIGATIVE REPORTING, MATT SMITH, and AMY WALTERS,<br><br>      Defendants. | Civil Case No.: 3:17-cv-03695-MMC-JSC<br><br>**DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 425.16(c)**<br><br>Date: June 11, 2021<br>Time: 9:00 a.m.<br>Judge: Hon. Maxine M. Chesney<br>Courtroom: 7, 19th floor |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 11, 2021, at 9:00 a.m., in Courtroom 7 of the United States District Court for the Northern District of California, located on the 19th floor of the San Francisco Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, Reveal from The Center for Investigative Reporting, Matt Smith, and Amy Walters (collectively, "Reveal" or "Defendants") will and hereby do move this Court, pursuant to California Code of Civil Procedure ("C.C.P.") § 425.16 (the "anti-SLAPP statute"), for an order compelling Plaintiffs Planet Aid, Inc. and Lisbeth Thomsen (collectively "Planet Aid" or "Plaintiffs") to reimburse Defendants for the attorneys' fees and costs incurred in connection with their successful Special Motion to Strike Plaintiffs' Complaint (the "anti-SLAPP motion") (ECF No. 107). As the prevailing party pursuant to the Court's Order Granting Defendants' Motion to Strike; Dismissing Action with Prejudice entered on March 23, 2021 (the "March 23 Order") (ECF No. 309), Defendants are entitled to their attorneys' fees and costs. Defendants seek a total of $3,775,503.31 in attorneys' fees and $156,226.44 in costs related to the anti-SLAPP motion, a full accounting of which is included. In addition, Defendants seek fees related to this Motion for Attorneys' Fees and Costs (the "Motion"), a full accounting of which will be included with Defendants' reply memorandum.

Defendants submit this Motion pursuant to the March 23 Order, the anti-SLAPP statute, Rule 54(d) of the Federal Rules of Civil Procedure, and L.R. 54-5(b). This Motion is based on this Notice; on the attached Memorandum of Points and Authorities; on the accompanying Declarations of Gary Bostwick, Thomas R. Burke, Ben Donovan, Simon J. Frankel, Karl Olson, and Christa Scharfenberg; on all matters of which this Court may take judicial notice; on all pleadings, files, and records in this action; and on such other argument as may be received by this Court before or at the hearing on this Motion.

## **TABLE OF CONTENTS**

Page

I.      INTRODUCTION ...............................................................................................1

II.     PROCEDURAL HISTORY.................................................................................3

III.    ARGUMENT ......................................................................................................6

     A.      FEE SHIFTING UNDER THE ANTI-SLAPP STATUTE IS MANDATORY. ................6

     B.      DEFENDANTS' FEE REQUEST IS REASONABLE.......................................9

          1.      Counsel's Hourly Billing Rates Are Reasonable......................................9

          2.      The Hours Worked By Defendants' Counsel Are Reasonable............................14

          3.      The Total Fee Award is Reasonable ......................................................14

     C.      DEFENDANTS ARE ENTITLED TO RECOVER THEIR REASONABLE COSTS. ........18

IV.     CONCLUSION..................................................................................................19

# TABLE OF AUTHORITIES

**CASES**                                                                                                     Page(s)

*Adolph Coors Co. v. Truck Ins. Exch.*,
    383 F. Supp. 2d 93 (D.D.C. 2005) ................................................................................13

*Barry v. State Bar*,
    2 Cal. 5th 318, 321-22 (2017) ........................................................................................1

*Bernardi v. Cty. of Monterey*,
    167 Cal. App. 4th 1379 (Cal. Ct. App. 2008) ...............................................................10

*Braden v. BH Fin. Servs., Inc.*,
    No. 13-cv-2287, 2014 WL 892897 (N.D. Cal. Mar. 4, 2014) ........................................17

*Braun v. Chronicle Publ'g Co.*,
    52 Cal. App. 4th 1036 (1997) ..................................................................................14, 19

*Building a Better Redondo, Inc. v. City of Redondo Beach*,
    203 Cal. App. 4th 852 (2012) ..........................................................................................9

*Equilon Enterprises v. Consumer Cause, Inc.*,
    29 Cal. 4th 53 (2002) ....................................................................................................14

*Calvo Fisher & Jacob LLP v. Lujan*,
    234 Cal. App. 4th 608 (2015) ........................................................................................16

*Carver v. Bonds*,
    135 Cal. App. 4th 328 (2005) ........................................................................................14

*Center for Biological Diversity v. County of San Bernardino*,
    188 Cal. App. 4th 603 (2010) ..........................................................................................9

*Charlebois v. Angels Baseball LP*,
    993 F. Supp. 2d 1109 (C.D. Cal. 2012) ........................................................................18

*Chavez v. Netflix, Inc.*,
    162 Cal. App. 4th 43 (2008) ..........................................................................................10

*Children's Hosp. & Med. Ctr. v. Bontá*,
    97 Cal. App. 4th 740 (2002) ............................................................................................9

*Christian Rsch. Inst. v. Alnor*,
    165 Cal. App. 4th 1315 (2008) ......................................................................................15

*Christie v. Lester*,
    No. 14-cv-8993, 2015 WL 13439821 (C.D. Cal. June 15, 2015) ....................................1

*Church of Scientology v. Wollersheim*,
    42 Cal. App. 4th 628 (1996) .................................................................................14, 15

*eCash Techs., Inc. v. Guagliardo*,
    210 F. Supp. 2d 1138 (C.D. Cal. 2001) ..........................................................................7

*Farrar v. Hobby*,
    506 U.S. 103 (1992)........................................................................................................14

*Fitbit, Inc. v. Laguna 2, LLC*,
    No. 17-cv-79, 2018 WL 306724 (N.D. Cal. Jan. 5, 2018).............................................14

*Graham-Sult v. Clainos*,
    756 F.3d 724 (9th Cir. 2013) ...........................................................................................8

*Henry v. Bank of Am.*,
    No. 09-cv-628, 2010 WL 3324890 (N.D. Cal. Aug. 23, 2010) .......................................17

*Heritage Pac. Fin., LLC v. Monroy*,
    215 Cal. App. 4th 972 (2013) .....................................................................................9, 14

*Herring Networks, Inc. v. Maddow*,
    No. 19-cv-1713, 2021 WL 409724 (S.D. Cal. Feb. 5, 2021)..........................................13

*Horsford v. Bd. of Trustees of California State Univ.*,
    132 Cal. App. 4th 359 (2005) .....................................................................................9, 10

*Islamic Ctr. of Mississippi, Inc. v. City of Starkville*,
    876 F.2d 465 (5th Cir. 1989), *overruled on other grounds by Shipes v. Trinity Indus.*,
    987 F.2d 311 (5th Cir. 1993) ..........................................................................................13

*Ketchum v. Moses*,
    24 Cal. 4th 1122 (2001) ..........................................................................................*passim*

*Lafayette Morehouse, Inc. v. Chronicle Publ'g Co.*,
    39 Cal. App. 4th 1379 (1995) ...........................................................................................8

*Le v. Sunlan Corp.*,
    No. 13-cv-707, 2014 WL 296032 (N.D. Cal. Jan. 27, 2014)..........................................17

*LHF Prods., Inc. v. Kabala*,
    No. 16-cv-2028, 2019 WL 7403960 (D. Nev. Dec. 31, 2019) .......................................17

*Ludwig v. Superior Court*,
    37 Cal. App. 4th 8 (1995) ...............................................................................................19

*Manufactured Home Communities, Inc. v. County of San Diego*,
    655 F.3d 1171 (9th Cir. 2011) ..........................................................................................7

*Mathis v. Spears*,
   857 F.2d 749 (Fed. Cir. 1988).................................................................................14

*Metabolife Int'l, Inc. v. Wornick*,
   213 F. Supp. 2d 1220 (S.D. Cal. 2002)....................................................................8

*Moore v. Liu*,
   69 Cal. App. 4th 745 (1999) ...............................................................................7, 15

*Nat'l Ass'n of Concerned Veterans v. Secretary of Def.*,
   675 F.2d 1319 (D.C. Cir. 1982)..............................................................................13

*New.Net, Inc. v. Lavasoft*,
   356 F. Supp. 2d 1090 (C.D. Cal. 2004) ...................................................................7

*United States ex rel. Newsham v. Lockheed Missiles & Space Co.*,
   190 F.3d 963 (9th Cir. 1999) ...................................................................................7

*Nishiki v. Danko Meredith, APC*,
   25 Cal. App. 5th 883, 897 (2018) ...........................................................................10

*Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc.*,
   776 F.2d 646 (7th Cir. 1985) ..................................................................................13

*Peak-Las Positas Partners v. Bollag*,
   172 Cal. App. 4th 101 (2009) .............................................................................2, 16

*Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*,
   No. 12-cv-4634, 2015 WL 4932248 (N.D. Cal. Aug. 18, 2015)........................1, 15

*Planned Parenthood of America v. Center for Medical Progress*,
   890 F.3d 828 (9th Cir. 2018) ...................................................................................6

*Ray Charles Found. v. Robinson*,
   919 F. Supp. 2d 1054 (C.D. Cal. 2013), *rev'd on other grounds*, 795 F.3d 1109 (9th
   Cir. 2015) ..................................................................................................................7

*Resolute Forest Prods., Inc. v. Greenpeace Int'l*,
   No. 17-cv-2824, 2020 WL 8877818 (N.D. Cal. Apr. 22, 2020)..............................7

*Ridgeway v. Wal-Mart Stores Inc.*,
   269 F. Supp. 3d 975, 999 (N.D. Cal. 2017) ...........................................................10

*Rosenaur v. Scherer*,
   88 Cal. App. 4th 260 (2001) .....................................................................................9

*Schroeder v. Irvine City Council*,
   97 Cal. App. 4th 174 (2002) .....................................................................................6

iv

*Serrano v. Unruh*,
    32 Cal. 3d 621 (1982) ...................................................................................8, 14, 16

*Smith v. Fireside Thrift Co.*,
    No. 07-cv-3883, 2007 WL 2729329 (N.D. Cal. Sept. 18, 2007) (Alsup, J.) ..........................................7

*Thomas v. Fry's Electronics, Inc.*,
    400 F.3d 1206 (9th Cir. 2005) .............................................................................6

*Tomazzoli v. Sheedy*,
    804 F.2d 93 (7th Cir. 1986) ...............................................................................13

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) .............................................................................7

*Wershba v. Apple Computer, Inc.*,
    91 Cal. App. 4th 224 (2001) ..............................................................................10

*Wilkerson v. Sullivan*,
    99 Cal. App. 4th 443 (2002) .............................................................................1, 8

*Wynn v. Chanos*,
    No. 14-cv-4329, 2015 WL 3832561 (N.D. Cal. June 19, 2015), *aff'd*, 685 Fed. Appx.
    578 (9th Cir. 2017)......................................................................................13


**OTHER AUTHORITIES**

Weil & Brown, "Cal. Practice Guide: Civil Procedure Before Trial" .......................................................11

Code of Civil Procedure Section 425.16......................................................................... *passim*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.   INTRODUCTION

On March 23, 2021, the Court granted Defendants' anti-SLAPP motion and dismissed the action with prejudice, finding that Plaintiffs were limited purpose public figures and that they had failed to show Defendants acted with actual malice in reporting about Plaintiffs' misuse of U.S. government funds. ECF No. 309. Yet for nearly five years before that, Plaintiffs harassed reporters for their thoroughly researched, edited, and corroborated investigative journalism and attempted to chill free speech on matters of public concern. Notwithstanding their claims' lack of merit, Plaintiffs demanded expansive discovery—at a cost borne almost exclusively by Defendants—and Defendants were forced to expend enormous time and resources defending against this suit.

California's anti-SLAPP statute was designed to protect against oppressive lawsuits like this one, which intimidate defendants from fighting back even when plaintiffs' claims are meritless. As the California Supreme Court has recognized, "[b]ecause SLAPPs seek to deplete the defendant's energy and drain his or her resources, the anti-SLAPP statute contains several provisions designed to limit the costs of defending against such a lawsuit and to prevent SLAPPs by ending them early and without great cost to the SLAPP target." *Barry v. State Bar*, 2 Cal. 5th 318, 321-22 (2017) (internal quotations omitted). One such provision is the fee-shifting provision, which provides that "a prevailing defendant on a special motion to strike ***shall be entitled*** to recover his or her attorney's fees and costs." C.C.P. § 425.16(c)(1) (emphasis added). The fee-shifting provision is mandatory, *Ketchum v. Moses*, 24 Cal. 4th 1122, 1131-32 (2001), and must be "broadly construed so as to effectuate the legislative purpose of reimbursing the prevailing defendant for expenses incurred in extricating herself from a baseless lawsuit." *Wilkerson v. Sullivan*, 99 Cal. App. 4th 443, 446 (2002). Not only does the fee-shifting provision offer financial relief to SLAPP targets, but it also discourages meritless lawsuits by imposing litigation expenses on the unsuccessful complaining party. *Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*, No. 12-cv-4634, 2015 WL 4932248, at *2 (N.D. Cal. Aug. 18, 2015).

Thus, once an anti-SLAPP motion is granted, defendants are entitled to all fees and costs incurred broadly in connection with their motion to strike. *See Christie v. Lester*, No. 14-cv-8993, 2015 WL 13439821, at *2 (C.D. Cal. June 15, 2015) ("While typically fees can only be awarded for hours

expended in pursuit of an anti-SLAPP motion, those hours and rates are broadly construed . . . ."). Since fee shifting is mandatory under the anti-SLAPP statute, the only issue before the Court is the *amount* of the fee award. *See, infra,* Section III. Consistent with the purview of the statute, Defendants respectfully seek reimbursement of $3,775,503.31 in attorneys' fees and $156,226.44 in costs incurred by Defendants' counsel in connection with the anti-SLAPP motion and the related discovery sought by Plaintiffs. This request is reasonable given the extent of discovery that Plaintiffs deemed "essential" for the anti-SLAPP motion and thus should be awarded in full.

 *First*, the number of hours for which Defendants seek reimbursement is reasonable given the importance and duration of the litigation and the complexity of the issues involved. Plaintiffs' sprawling pleadings challenged more than 150 statements or implications in Defendants' reporting, causing Defendants to spend significant time responding in their anti-SLAPP motion to each unsubstantiated claim by Plaintiffs. *See* Declaration of Thomas R. Burke ("Burke Decl.") ¶ 5. In addition, Plaintiffs insisted that extensive discovery was "essential" *prior* to a decision on the anti-SLAPP motion, *see* Frankel Decl. Ex. G (Jan. 17, 2019 Hr'g Tr.) at 15:12–18:4; *infra,* Section III.B, requiring Defendants to produce over 90,000 pages of documents and 80 hours of audiovisual material, defend six depositions, and engage in *years* of discovery disputes with Plaintiffs' counsel. *See* Burke Decl. ¶ 9; Declaration of Simon J. Frankel ("Frankel Decl.") ¶ 5; ECF No. 235 at 8 & n.7. In this case, Plaintiffs requested so much discovery that the number of hours Defendants worked in connection with the anti-SLAPP motion was significantly higher than the time devoted to just the briefing on the motion itself—indeed, *two years* higher. The scope of discovery in this case essentially amounted to a full Rule 56 discovery process, with all the accompanying costs. Under the anti-SLAPP statute, Defendants are entitled to recover the resultant fees and costs, as Plaintiffs "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the [opposing party] in response." *Peak-Las Positas Partners v. Bollag*, 172 Cal. App. 4th 101, 114 (2009) (citation and internal quotations omitted). And, as detailed below and in accompanying declarations, Defendants have carefully scoured their time records to omit any entries for work not related directly to and necessary for the anti-SLAPP motion and the discovery sought by Plaintiffs in connection with that motion. Thus, the number of hours sought by this Motion is reasonable under the circumstances and should be awarded in full.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Second*, the hourly rates charged by Defendants' U.S.-based counsel at Davis Wright Tremaine LLP ("Davis Wright") and Covington & Burling LLP ("Covington"), as well as by counsel in Malawi, Ritz Attorneys at Law ("Ritz"), are reasonable given the attorneys' experience and expertise. Davis Wright and Covington's rates are well within the range charged by comparable lawyers handling First Amendment litigation in Northern California. *See* Declaration of Gary L. Bostwick ("Bostwick Decl.") ¶ 18; Burke Decl. ¶¶ 19-20; Frankel Decl. ¶ 17; Frankel Decl. Ex. E; *infra,* Section III.B. Similarly, Ritz's rates are well within the range charged by comparable lawyers in Malawi. *See* Declaration of Ben Donovan ("Donovan Decl.") ¶ 6. Moreover, Defendants have excluded the fees of more than 40 timekeepers and have reduced their total fees by more than $770,000 in an exercise of billing discretion. *See* Burke Decl. ¶¶ 31, 35; Frankel Decl. ¶¶ 16, 51.

For these reasons, Defendants request that the Court grant this Motion and award full attorneys' fees and costs plus additional fees and costs incurred in preparing and arguing this Motion.

## II.    PROCEDURAL HISTORY

In August 2016, Plaintiffs—Planet Aid and its subcontractor's senior executive—filed a complaint in the U.S. District Court for the District of Maryland after Defendants published a series of articles and a podcast concerning Planet Aid's misuse of U.S. government funds. ECF No. 1. Plaintiffs alleged that Defendants' reporting was false and sought an award of over $25 million. *Id.*

Shortly after Plaintiffs filed their Complaint, Defendants hired Davis Wright to defend them. *See* Frankel Decl. ¶ 3. Davis Wright promptly filed a motion to dismiss for lack of personal jurisdiction and improper venue. ECF No. 11; Burke Decl. ¶ 3. After nearly a year of litigation regarding these issues, in June 2017, the District Court in Maryland granted Defendants' motion to dismiss and transferred the case to the Northern District of California. ECF No. 22; Burke Decl. ¶ 3. Nevertheless, Plaintiffs brought several motions attempting to retransfer the case back to Maryland, which were repeatedly denied. ECF Nos. 32, 75, 79, 81; Burke Decl. ¶ 4, 8.

In March 2018, Plaintiffs filed their 63-page First Amended Complaint in this Court, asserting claims for defamation, negligence, tortious interference, false light invasion of privacy, and unjust enrichment. ECF No. 78. Plaintiffs' First Amended Complaint challenged more than 150 alleged

statements or implications in more than 20 of Defendants' articles or podcasts. *Id*. at ¶¶ 197-212; Burke Decl. ¶ 5.

In June 2018, Defendants filed a Special Motion to Strike Plaintiffs' Complaint, the anti-SLAPP motion at issue in this Motion. ECF No. 107; Burke Decl. ¶ 6. In response, Plaintiffs argued that they needed discovery to adequately oppose Defendants' anti-SLAPP motion and the Court allowed limited discovery for this purpose, *see* Frankel Decl. Ex. F (Nov. 09, 2018 Hr'g Tr.) at 8:8-18, while extending Plaintiffs' deadline to oppose "until the parties' various discovery disputes are resolved." ECF. No. 142.

By this juncture, in September 2018, Defendants' available insurance coverage was dwindling. Burke Decl. ¶ 7. To address this situation, and recognizing that the scope of the anti-SLAPP motion work could grow dramatically with Plaintiffs' drive for discovery, Davis Wright agreed to continue its representation of Defendants pro bono. Burke Decl. ¶ 7. As part of this transition, Defendants asked Covington to join its representation, also on a pro bono basis, and to take the lead on discovery sought by Plaintiffs. Burke Decl. ¶ 7; Frankel Decl. ¶ 4. This allowed Defendants to proceed with their anti-SLAPP motion, but neither Defendants nor Defendants' counsel could have anticipated that Plaintiffs would prolong discovery, and in so doing, resolution of the anti-SLAPP motion, for over two years.

In September 2018, the Court referred the case to Magistrate Judge Jacqueline Scott Corley for discovery purposes. ECF No. 147. From late 2018 throughout 2019, Judge Corley oversaw the discovery process and presided over numerous hearings and letter briefs. *See e.g.*, ECF Nos. 149, 152, 153, 154, 155, 156, 159, 164, 168, 177, 182, 183, 184, 191, 193, 194, 202, 203, 204, 205, 235, 236, 237, 238, 239, 241, 245, 246, 247, 251, 254, 255, 256, 260, 261, 262, 263, 264, 265, 266, 267, 268, 269, 270, 272, 273, 274, 275, 276, 277, 278, 279, 280, 281, 282, 286, 287; *see also* Burke Decl. ¶ 11-12. All told, Defendants produced over 80 hours of audiovisual files and some 90,000 documents, which included drafts of all reports published by Defendants as well as outlines, scripts, and email exchanges. *See* Burke Decl. ¶ 9; Frankel Decl. ¶ 5; ECF No. 235 at 8 & n.7. Discovery was especially complex and expensive for numerous reasons, including: (1) many witnesses were located outside of the United States and did not speak English as their first language, which required Defendants to hire local counsel and obtain transcription and translation services, *see* Burke Decl. ¶ 5; (2) several witnesses were confidential sources whose documents and interviews required redaction, since their lives and livelihoods depended

on their identities remaining confidential, *see id.*; (3) Defendants' counsel needed to review and redact reporters' notes and drafts for information that may be used for another story, since such information is shielded from disclosure under the unpublished editorial privilege, *see* ECF Nos. 202, 203, 205; Frankel Decl. ¶ 5; (4) Defendants' counsel needed to *listen* to over 80 hours of audiovisual recordings to review for privileged content, *see* Frankel Decl. ¶ 5; (5) the sheer volume of the documents and testimony that the reporters amassed during their 18-month investigation for this story, *see* Burke Decl. ¶¶ 2, 5; Frankel Decl. ¶ 5. Given the volume of discovery sought by Plaintiffs, all these circumstances made discovery in this matter particularly protracted and burdensome. Frankel Decl. ¶ 5.

Plaintiffs also refused to formalize their position on what claims were at issue in the case. For example, after Plaintiffs suggested their claims were limited to statements by Defendants concerning the United States Department of Agriculture, Defendants, on December 31, 2018, proposed redlines to the First Amended Complaint to limit Plaintiffs' claims to statements concerning the USDA; Plaintiffs rejected this proposal. *See, e.g.*, ECF No. 237; Burke Decl. ¶ 8; Frankel Decl. ¶ 7. Plaintiffs also suggested—but then did not pursue—holding a summary judgment-like hearing on whether Plaintiffs were limited purpose public figures. *See* Frankel Decl. Ex. H (Jan. 18, 2019 Hr'g Tr.) at 31:9-17; Burke Decl. ¶ 8; Frankel Decl. ¶ 7. As another example, at a November 21, 2019 hearing, Judge Corley ordered the parties to immediately meet and confer in person to resolve *all* of their remaining discovery disputes. Yet for months afterwards, Plaintiffs continued to bring new, spurious discovery requests that necessitated sometimes weekly letter briefs from the parties. *See, e.g.*, ECF Nos. 260, 263, 267, 270, 275, 278, 279. Judge Corley ultimately agreed with Defendants that Plaintiffs' discovery requests were untimely and that Plaintiffs were not entitled to more document discovery. *See* ECF No. 282. At every turn, Plaintiffs rejected Defendants' attempts to set guardrails on discovery expenses.

At the same time, Plaintiffs demanded, and so Defendants also defended, six depositions of Reveal reporters and editors in connection with the anti-SLAPP motion. *See* Frankel Decl. ¶ 5, 56. Each deposition required many hours of witness preparation by Defendants' counsel and some required travel costs. *Id.* For each deposition, Plaintiffs' counsel used nearly the full allotted time for the witness. *See* Frankel Decl.¶ 5.

1

2
The discovery sought by Plaintiffs was finally completed in July 2020. Burke Decl. ¶ 13; Frankel

3
Decl. ¶ 8. Plaintiffs then filed their 41-page Opposition to the anti-SLAPP motion on September 22,

4
2020, ECF No. 298, and Defendants filed their 25-page Reply on October 26, 2020, ECF No. 300. On

5
March 23, 2021, the Court granted Defendants' anti-SLAPP motion and dismissed the action with

6
prejudice. ECF No. 309. Even after years of prolonged discovery, Plaintiffs could not show that

Defendants made their statements with actual malice. *Id.*[1]

7
**III.   ARGUMENT**

8
   **A.   FEE SHIFTING UNDER THE ANTI-SLAPP STATUTE IS MANDATORY.**

9

10
In *Ketchum*, the California Supreme Court emphasized that "any SLAPP defendant who brings a

successful motion to strike is entitled to ***mandatory*** attorney fees." 24 Cal. 4th at 1131 (emphasis

11
added); *see Schroeder v. Irvine City Council*, 97 Cal. App. 4th 174, 193-94 (2002) (rejecting limitations

12
on SLAPP statute's fee-shifting provision as being "inconsistent with the mandatory language of section

13
425.16, subdivision (c)"). The *Ketchum* court recognized that the SLAPP fee award is designed to

14
discourage baseless lawsuits "by imposing the litigation costs on the party seeking to 'chill the valid

15
exercise of the constitutional right[] of freedom of speech[.]" *Ketchum,* 24 Cal. 4th at 1131. "[T]he

16
legislative aim in including the attorney fee provision was apparently to strengthen enforcement of

17
certain constitutional rights, including freedom of speech … by placing the financial burden of

18
defending against so-called SLAPP actions on the party abusing the judicial system." *Id.* at 1136.

19
The Ninth Circuit has held that the anti-SLAPP statute's mandatory fee-shifting provision

20
applies in federal diversity cases, like this one. In *Thomas v. Fry's Electronics, Inc.*, 400 F.3d 1206,

21
1206 (9th Cir. 2005), for example, the court unequivocally declared that "California anti-SLAPP

22

23
---

[1] Deciding the anti-SLAPP motion consistent with *Planned Parenthood of America v. Center for Medical Progress*, 890 F.3d 828 (9th Cir. 2018) (where a defendant's anti-SLAPP motion attacks the

24
factual sufficiency of the claim, "then the motion must be treated as though it were a motion for summary judgment and discovery must be permitted"), this Court merely determined that Plaintiffs

25
presented triable issues of fact as to most (but not all) of the statements that Plaintiffs challenged as false. March 23 Order at 5-15. This Court then dismissed Plaintiffs' complaint with prejudice after

26
finding that Plaintiffs failed to show that Plaintiffs published any of the challenged statements with

27
actual malice. March 23 Order at 42. Plaintiffs have nonetheless been telling the world that this Court found all the statements *were* false. *See* https://www.planetaid.org/about/media/press-releases/federal-

28
judge-confirms-reveal-published-46-false-statements-about-planet-aid.

1   motions to strike and entitlement to fees and costs are available to litigants proceeding in federal court."

2   *See also Manufactured Home Communities, Inc. v. County of San Diego*, 655 F.3d 1171, 1181 (9th Cir.

3   2011) (affirming award of attorneys' fees to prevailing defendants on SLAPP motion); *Vess v. Ciba-*

4   *Geigy Corp. USA*, 317 F.3d 1097, 1110 (9th Cir. 2003) (same); *United States ex rel. Newsham v.*

5   *Lockheed Missiles & Space Co.*, 190 F.3d 963, 971-73 (9th Cir. 1999) (California's anti-SLAPP statute

6   applies in federal court).

7        Consistent with these authorities, federal district courts have routinely held that the party who

8   prevails on an anti-SLAPP motion is *entitled* to an award of fees under the statute. *See, e.g.*, *Smith v.*

9   *Fireside Thrift Co.*, No. 07-cv-3883, 2007 WL 2729329, at *2 (N.D. Cal. Sept. 18, 2007) (Alsup, J.)

10   (noting that "California anti-SLAPP motions to strike and entitlement to fees and costs are available to

11   litigants proceeding in federal court," and finding the prevailing defendants on an anti-SLAPP motion

12   were entitled to fees (citation omitted)); *Resolute Forest Prods., Inc. v. Greenpeace Int'l*, No. 17-cv-

13   2824, 2020 WL 8877818, at *4 (N.D. Cal. Apr. 22, 2020) (awarding attorneys' fees and costs to

14   defendants after granting anti-SLAPP motion); *Ray Charles Found. v. Robinson*, 919 F. Supp. 2d 1054,

15   1067 (C.D. Cal. 2013) ("[b]ecause Defendants have prevailed on their anti-SLAPP motion, attorney's

16   fees are mandatory and the Court awards them"), *rev'd on other grounds*, 795 F.3d 1109 (9th Cir. 2015);

17   *New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090, 1115 (C.D. Cal. 2004) ("defendant who prevails on an

18   anti-SLAPP motion to strike is entitled to recover his or her attorney fees"); *eCash Techs., Inc. v.*

19   *Guagliardo*, 210 F. Supp. 2d 1138, 1154 (C.D. Cal. 2001) ("[t]he attorneys' fees provision of Section

20   425.16 also applies in federal court, and declares that an award of attorneys' fees to a moving party is

21   mandatory if a special motion to strike is granted").

22        Because the purpose of the anti-SLAPP statute's fee-shifting provision is to give "financial relief

23   in the form of attorney's fees and costs" to defendants who have been the target of SLAPP suits, *e.g.*,

24   *Moore v. Liu*, 69 Cal. App. 4th 745, 750 (1999), and to discourage SLAPP suits by "imposing the

25   litigation costs on the part[ies]" filing them, the statutory provision does not include any limitations or

26   qualifications on the amount of fees and costs recoverable, other than that the fees be reasonable, *e.g.*,

27   *Ketchum*, 24 Cal. 4th at 1131, 1139 (noting "the absence of any indication by the Legislature of the

28   intent to specially limit attorney fees in anti-SLAPP actions"); C.C.P. § 425.16(c). Indeed, the California

Legislature has mandated a "broad" interpretation of the anti-SLAPP statute that encourages *fully* reimbursing defendants who prevail on an anti-SLAPP motion. *See* C.C.P. § 425.16(a); *Wilkerson v. Sullivan*, 99 Cal. App. 4th 443, 446 (2002) (section 425.16 must be "broadly construed so as to effectuate the legislative purpose of reimbursing the prevailing defendant"); *see also Graham-Sult v. Clainos*, 756 F.3d 724, 752 (9th Cir. 2013) ("'[T]he provision is broadly construed so as to effectuate the legislative purpose of reimbursing the prevailing defendant for expenses incurred in extracting herself from a baseless lawsuit.'" (citation omitted)). It is thus well established that a defendant who prevails under the anti-SLAPP statute is entitled to recover all fees and costs incurred in connection with the successful prosecution of an anti-SLAPP motion. *Lafayette Morehouse, Inc. v. Chronicle Publ'g Co.*, 39 Cal. App. 4th 1379, 1383 (1995); *see Metabolife Int'l, Inc. v. Wornick*, 213 F. Supp. 2d 1220, 1223 (S.D. Cal. 2002) ("[T]he entire lawsuit is subject to the anti-SLAPP motion because all causes of action against [defendant] relate to free speech and all of the activity by [defendant's] attorneys occurred in the context of, and were inextricably intertwined with, the anti-SLAPP motion. . . . All of [defendant's] attorney fees and expenses were incurred 'in connection with' the anti-SLAPP motion." (footnote omitted)).

Here, Defendants prevailed on their anti-SLAPP motion. The Court's March 23 Order dismissed Plaintiffs' claims with prejudice on the basis of an argument explicitly raised in Defendants' anti-SLAPP motion—namely, that even after years of invasive discovery, Plaintiffs could not show actual malice. *See* ECF No. 107 at 11; ECF No. 300 at 8. Thus, Defendants are entitled all fees and costs incurred broadly in connection with their anti-SLAPP motion.

In addition, Defendants are also entitled to recover their reasonable attorneys' fees incurred in connection with filing this Motion for Attorneys' Fees and Costs.[2] *See Ketchum*, 24 Cal. 4th at 1141 (prevailing defendant's award must include "the fees incurred in enforcing the right to mandatory fees under Code of Civil Procedure section 425.16"); *accord Serrano v. Unruh*, 32 Cal. 3d 621, 639 (1982)

---

[2] Defendants will provide supplemental evidence with their Reply to support a request for any additional fees and costs incurred through the drafting and any oral argument on this Motion, as well as any other future proceedings initiated by Plaintiffs in this case. *See* Burke Decl. ¶ 33.

(recoverable fees "include compensation for all hours reasonably spent, including those necessary to establish and defend the fee claim").

## B.   DEFENDANTS' FEE REQUEST IS REASONABLE.

Under California law, courts calculate an award of attorneys' fees by determining a lodestar figure "based on the reasonable hours spent, multiplied by the hourly prevailing rate for private attorneys in the community conducting *noncontingent* litigation of the same type." *Ketchum*, 24 Cal. 4th at 1133. Here, Defendants' fee request is reasonable as to both the rates and hours sought, especially in light of the extensive discovery Plaintiffs required, the $25 million in damages Plaintiffs sought, and the First Amendment rights at stake in this litigation.

### 1.   Counsel's Hourly Billing Rates Are Reasonable

A reasonable hourly rate is one "within the range of reasonable rates charged by and judicially awarded comparable attorneys for comparable work." *Children's Hosp. & Med. Ctr. v. Bontá*, 97 Cal. App. 4th 740, 783 (2002). To determine a reasonable rate, courts consider "the experience, skill, and reputation of the attorney requesting fees." *Heritage Pac. Fin., LLC v. Monroy*, 215 Cal. App. 4th 972, 1009 (2013) (citation omitted). "Affidavits of the [prevailing party's] attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases … are satisfactory evidence of the prevailing market rate." *Id.* (citation omitted). Courts also consider "counsel's special expertise" in the areas of law at issue in the litigation. *Building a Better Redondo, Inc. v. City of Redondo Beach*, 203 Cal. App. 4th 852, 872 (2012). Firms working on a pro bono basis can recover attorneys' fees for an anti-SLAPP motion. *See Rosenaur v. Scherer*, 88 Cal. App. 4th 260, 283 (2001).

Although Defendants are permitted to seek a fee enhancement for the contingent nature of their counsel's work, Defendants are only seeking the fair market value for their counsel's services.[3] A prevailing party whose lawyers worked on a contingent basis or charged a reduced rate can seek a higher reasonable market value for attorneys' services under the lodestar approach. *See Center for Biological Diversity v. County of San Bernardino*, 188 Cal. App. 4th 603, 619 (2010); *Horsford v. Bd. of Trustees*

---

[3] Both Davis Wright and Covington continued to represent Defendants on a pro bono basis after 2018, with the understanding that the firms would seek attorneys' fees if successful. *See* Frankel Decl. ¶ 4.

*of California State Univ.*, 132 Cal. App. 4th 359, 394–95 (2005). For firms working on a contingent basis, "the contingent and deferred nature of the fee award . . . *requires* that the fee be adjusted in some manner to reflect the fact that the fair market value of legal services provided on that basis is greater than the equivalent noncontingent hourly rate." *See id.* (emphasis added). A multiplier of 1.25 is considered "modest," and courts often impose significantly larger multipliers. *See Bernardi v. Cty. of Monterey*, 167 Cal. App. 4th 1379, 1399 (Cal. Ct. App. 2008); *see also, e.g.*, *Nishiki v. Danko Meredith, APC*, 25 Cal. App. 5th 883, 897 (2018) (upholding 1.5 multiplier); *Chavez v. Netflix, Inc.*, 162 Cal. App. 4th 43, 66 (2008) (upholding 2.5 multiplier); *Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 255 (2001) (upholding 1.42 multiplier, and noting that "[m]ultipliers can range from 2 to 4 or even higher."); *Ridgeway v. Wal-Mart Stores Inc.*, 269 F. Supp. 3d 975, 999 (N.D. Cal. 2017) (imposing 2.0 multiplier). Fee enhancements are also used specifically in anti-SLAPP motions. The California Supreme Court stated that a multiplier is appropriate in anti-SLAPP litigation when, among other elements, the risk of recovery is contingent, as it is with pro bono representation, and it is appropriate to reward the quality of the representation. *See Ketchem v. Moses,* 24 Cal. 4th 1122 (2001).

For most of this anti-SLAPP motion, Defendants were represented by Davis Wright and Covington pro bono and both firms accepted the financial burden of the representation regardless of the outcome. Although Davis Wright and Covington could request a fee multiplier, the firms are only requesting the market value for their fees and costs. *See* Burke Decl. ¶¶ 19-20; Frankel Decl. ¶¶ 16-17. Defendants seek reimbursement based on the rates charged by their counsel in this matter:

| Davis Wright Tremaine Hourly Rates | | | | | |
|---|---|---|---|---|---|
| **Attorney** | **Title** | **Standard Rates (2016 - 2021)** | **Timeline** | **Hours Billed** | **Fees Billed** |
| Thomas R. Burke | Partner | $675 - $845 | 2016 - 2021 | 718.90 | $517,080.00 |
| Ambika Kumar | Partner | $515 - $685 | 2017 - 2020 | 293.70 | $159,877.50 |
| Brendan Charney | Associate | $370 - $570 | 2016 - 2021 | 1161.60 | $494,324.50 |
| Jennifer Chung | Associate | $375 - $415 | 2018 - 2019 | 277.40 | $104,901.00 |
| Noel Nurrenbern | Paralegal | $290 - $360 | 2016 - 2020 | 1003.20 | $320,215.50 |

| Covington Hourly Rates | | | | | |
|---|---|---|---|---|---|
| **Attorney** | **Title** | **Standard Rates (2018 - 2021)** | **Timeline** | **Hours Billed** | **Fees Billed** |
| Simon J. Frankel | Partner | $910 - $1020 | 2018 - 2021 | 79.90 | $74,875.00 |
| Alexa R. Hansen | Partner | $825 - $975 | 2018 - 2021 | 85.80 | $75,256.00 |
| Miriam M. Arghavani | Associate | $560 - $595 | 2020 - 2021 | 114.10 | $64,120.00 |
| Abigail P. Barnes | Associate | $530 - $595 | 2018 - 2019 | 106.00 | $60,944.50 |
| Ethan C. Forrest | Former Associate | $660 - $825 | 2018 - 2021 | 1,090.20 | $822,865.00 |
| Sean F. Howell | Associate | $530 - $595 | 2018 - 2019 | 406.10 | $236,345.00 |
| Sari Mazzurco | Former Associate | $600 - $670 | 2018 - 2019 | 639.40 | $408,798.00 |
| Annie Y. Shi | Associate | $525 - $635 | 2019 - 2021 | 484.40 | $263,288.50 |
| Alison C. Wall | Associate | $560 - $710 | 2019 - 2021 | 159.50 | $96,287.50 |
| William J. Jarboe | Paralegal | $410 - $460 | 2019 - 2021 | 123.10 | $54,334.00 |

*See* Burke Decl. ¶ 32; Frankel Decl. ¶ 16. In an exercise of billing discretion, Davis Wright has excluded time billed by 9 additional timekeepers as well as approximately $100,000 of attorneys' fees incurred in connection with the anti-SLAPP motion and associated discovery. *See* Burke Decl. ¶¶ 31, 35. Covington has similarly removed 31 timekeepers who billed under 75 hours to the case, which has resulted in a deduction of approximately 24%, or over $670,000, in fees. *See* Frankel Dec. ¶ 12. In total, Defendants seek $3,775,503.31 in attorneys' fees.[4]

The rates described above are reasonable in light of the respective attorneys' experience, skill, and reputation. Mr. Burke is a partner in Davis Wright's San Francisco office, with over three decades of litigation experience. *See* Burke Decl. ¶¶ 22-23. He has substantial expertise in First Amendment law and anti-SLAPP law, in particular as the author of "Anti-SLAPP Litigation" (The Rutter Group 2013-present) and a Contributing Editor to Weil & Brown, "Cal. Practice Guide: Civil Procedure Before Trial" (The Rutter Group 2014-present) (Anti-SLAPP Motions). *See id*. For over the past decade, Mr.

---

[4] This number includes fees charged by local Malawi counsel, who were instrumental in interviewing and writing declarations for Malawian witnesses. Burke Decl. ¶ 5. Attorneys familiar with the legal market and fees in Malawi and the South African region have examined these fees and found them to be reasonable. *See* Donovan Decl. ¶ 6.

Burke's media and First Amendment practice has been acknowledged through annual listings in *Chambers*, *Best Lawyers in America* and *Super Lawyers*, among others. *Id.*

Ms. Doran is a partner in Davis Wright's Seattle office, with over 14 years of litigation experience. *See id.* ¶ 23. Ms. Doran has litigated dozens of cases involving defamation and related claims, many of them involving anti-SLAPP motions. *Id.* Ms. Doran is co-chair of the firm's award-winning nationwide media law practice. *Id.*

Mr. Frankel is Managing Partner of Covington & Burling's San Francisco office. *See* Frankel Decl. ¶¶ 19-22. Mr. Frankel has nearly three decades of litigation experience, specializing in complex civil disputes and copyright and trademark litigation. *See id.* He has previously litigated numerous anti-SLAPP motions. *See id.* Mr. Frankel has been consistently recognized by *Best Lawyers in America* for his intellectual property litigation skills (2012-2020). *See id.* In 2020, he was recognized by *Chambers USA* as a leading lawyer in the Art and Cultural Law category. *See id.*

Ms. Hansen is a partner in Covington & Burling's San Francisco office. She has over a decade of litigation experience, and has handled numerous complex civil litigation matters. She specializes in patent litigation. *See id.* ¶ 23.

Davis Wright associates Brendan Charney, Jennifer Chung, and Sarah Burns, and Covington associates Miriam Arghavani, Abigail Barnes, Ethan Forrest, Sean Howell, Sari Mazzurco, Annie Shi and Alison Wall all contributed substantially to the case. Based on the associates' qualifications, experience, and geographic region, their hourly rates are reasonable for attorneys of their background. *See* Burke Decl. ¶¶ 25-27; Frankel Decl. ¶¶ 26-46. Although Covington associates have higher rates, their rates are at or below the rates charged by associates at international, large peer firms. *See* Frankel Decl. ¶ 16; Frankel Decl. Ex. E.

The standard billing rates charged for each of the attorneys in this case are within or below the median rates for attorneys with comparable tenures at peer firms in the San Francisco Bay Area. *See* Bostwick Decl. ¶ 19; Burke Decl. ¶¶ 19-20; Frankel Decl. ¶ 17. Numerous courts have held that the actual rate charged by counsel to private clients is generally the best evidence of a reasonable hourly

1  rate.[5]  *See, e.g.*, *Adolph Coors Co. v. Truck Ins. Exch.*, 383 F. Supp. 2d 93, 97 (D.D.C. 2005) ("[a]n

2  attorney's usual billing rate, when in line with those prevailing in the community for similar services by

3  lawyers of reasonably comparable skill, experience, and reputation, is presumptively reasonable")

4  (citation and internal quotation omitted); *Nat'l Ass'n of Concerned Veterans v. Secretary of Def.*, 675

5  F.2d 1319, 1326 (D.C. Cir. 1982) ("the actual rate that applicant's counsel can command in the market is

6  itself highly relevant proof of the prevailing community rate"); *Tomazzoli v. Sheedy*, 804 F.2d 93, 98

7  (7th Cir. 1986) ("[f]or private counsel with fee-paying clients, the best evidence is the hourly rate

8  customarily charged by counsel or by her law firm"); *Islamic Ctr. of Mississippi, Inc. v. City of

9  Starkville*, 876 F.2d 465, 469 (5th Cir. 1989), *overruled on other grounds by Shipes v. Trinity Indus.*,

10  987 F.2d 311, 322 (5th Cir. 1993) (attorney's uncontested customary billing rate is *prima facie*

11  reasonable); *Ohio-Sealy Mattress Mfg. Co. v. Sealy, Inc.*, 776 F.2d 646, 660 (7th Cir. 1985) ("hourly

12  rates used to compute the lodestar are typically the rates lawyers charge clients who pay on a regular

13  basis").

14      Finally, other courts have found similar rates to be reasonable in comparable cases. For example,

15  on February 5, 2021, a judge in the Southern District of California granted attorneys' costs and fees for

16  an anti-SLAPP case, and found the following rates reasonable: $1,150 per hour for the lead partner,

17  $1,050 per hour for a partner, $720 per hour for a senior associate, $470 per hour for a mid-level

18  associate, and $280 per hour for a paralegal. *See Herring Networks, Inc. v. Maddow*, No. 19-cv-1713,

19  2021 WL 409724, at *7-8 (S.D. Cal. Feb. 5, 2021). Furthermore, in 2015, Judge Orrick found the

20  following rates reasonable for attorneys who brought an anti-SLAPP fee motion in a defamation action:

21  $1,035 and $1,085 per hour for a partner with 40 years of experience; $875 and $920 per hour for a

22  partner with 20 years of experience; $645 and $710 per hour for an associate with six years of

23  experience; and $570 and $640 per hour for an associate with four years of experience. *Wynn v. Chanos*,

24  No. 14-cv-4329, 2015 WL 3832561 at *2 (N.D. Cal. June 19, 2015), *aff'd*, 685 Fed. Appx. 578 (9th Cir.

25  2017) (explaining that the rates "are at the top end of what is reasonable in the Bay Area market" but

26

27  ───────────────

   [5] Defendants had some insurance coverage, but by the fall of 2018 it was nearly exhausted. *See* Burke

28  Decl. ¶ 7.

───────────────

nonetheless "reasonable"). *See also Fitbit, Inc. v. Laguna 2, LLC*, No. 17-cv-79, 2018 WL 306724, at *9 (N.D. Cal. Jan. 5, 2018) (awarding fees in SLAPP case based on $750 hourly rate).

As shown by these cases and by the attached declarations, counsel's hourly rates are reasonable. *See Monroy*, 215 Cal. App. 4th at 1009.

### 2.     The Hours Worked By Defendants' Counsel Are Reasonable

A fee award "should ordinarily include compensation for all hours reasonably spent, including those relating solely to the fee." *Serrano*, 32 Cal. 3d at 624. As set forth in the supporting declarations, Defendants seek reimbursement for work reasonably and necessarily performed in connection with the anti-SLAPP motion and associated discovery, while omitting non-SLAPP fees (including fees relating to the transfer of venue and settlement negotiations). Defendants have also omitted over a thousand hours of time contributed to the case by attorneys, researchers, and paralegals outside the principal team in this matter. *See* Frankel Decl. ¶ 50. Following these reductions, as set out above, Defendants seek fees reflecting a total of 6,933.6 hours of work by attorneys and other legal professionals. Independent attorneys who have extensive experience with anti-SLAPP matters have found these hours to be reasonable. *See* Declaration of Karl Olson ("Olson Decl.") ¶¶ 7-8;  Bostwick Decl. ¶ 23.

### 3.     The Total Fee Award is Reasonable

For at least the following reasons, Defendants' request for attorneys' fees is reasonable and should be awarded in full.

***First***, the "the most critical factor in determining the reasonableness of a fee award is the degree of success obtained." *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (quotation omitted). Defendants' anti-SLAPP motion was entirely successful because it resulted in the dismissal with prejudice of all of Plaintiffs' claims. ECF No. 309 at 44. Courts have recognized that "[w]here, as here, a prevailing party has obtained excellent results, his attorney should recover a fully compensatory fee. Normally, this will encompass *all hours reasonably expended on the litigation*." *Mathis v. Spears*, 857 F.2d 749, 755 (Fed. Cir. 1988) (emphasis added; citation omitted).

***Second***, Defendants' anti-SLAPP motion vindicated important First Amendment rights. *See Church of Scientology v. Wollersheim*, 42 Cal. App. 4th 628, 659 (1996), *disapproved on other grounds by Equilon Enterprises v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 68 n.5 (2002) (reasonableness of fees

includes consideration of the "importance of the litigation"). Plaintiffs' lawsuit targeted Defendants' free speech in connection with issues of public concern. Publications on issues of public interest, like Defendants' articles, "advanc[e] the 'highest rung' of First Amendment values." *Braun v. Chronicle Publ'g Co.*, 52 Cal. App. 4th 1036, 1047 n.5 (1997) (affirming grant of media organization's SLAPP motion and award of attorneys' fees); *see also Carver v. Bonds*, 135 Cal. App. 4th 328, 343-44 (2005) (same). Consistent with the anti-SLAPP statute's goals, reimbursement of expenses to prevailing defendants are necessary to avoid the "chill" on protected speech that lawsuits like this one can cause, and also to discourage plaintiffs from attempting to retaliate against speakers for engaging in protected expression. *See Moore v. Liu*, 69 Cal. App. 4th 745, 748 (1999) (explaining that Legislature intended the SLAPP statute's fee-shifting provision both as "monetary relief" to prevailing defendants and also "the punishment which Section 425.16 imposes on persons who use the courts to chill others' exercise of their constitutional rights"). The award of fees is especially important in this case, because the extent of discovery overwhelmed Defendants' insurance funds and placed them in danger of bankruptcy for their valid First Amendment speech. See Declaration of Christa Scharfenberg ("Scharfenberg Decl.") ¶ 4. Although Defendants were ultimately able to retain pro bono counsel and remain solvent, the threat of a two-year, multi-million dollar litigation battle will likely have a chilling effect on other reporters' protected speech. The grant of attorneys' fees and costs will mitigate this chilling effect exactly as the anti-SLAPP statute intended. Defendants' successful defense vindicated vital free speech rights, further justifying their fee request. *See Wollersheim*, 42 Cal. App. 4th at 659.

*Third*, the issues raised by the First Amended Complaint and Plaintiffs' own litigation tactics were particularly burdensome in this case. Courts deciding fee motions have recognized that "most anti-SLAPP motions … tend to present complex issues." *Piping Rock Partners, Inc. v. David Lerner Assocs.*, No. 12-cv-4634, 2015 WL 4932248, at *5 (N.D. Cal. Aug. 18, 2015); *see Christian Rsch. Inst. v. Alnor*, 165 Cal. App. 4th 1315, 1319 (2008) ("SLAPP motions are generally difficult"). Consequently, in *Piping Rock Partners*, the court found that the fee award was supported by the fact that the "anti-SLAPP motion at issue involved roughly a dozen defamatory statements, three causes of action, and complex issues of law . . . ." 2015 WL 4932248, at *5, 12.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Here, Plaintiffs' sprawling pleadings challenged over 150 statements or implications from Defendants' reporting, and, despite multiple reminders by the Court, Plaintiffs failed to provide support for each of these claims. *See, e.g.*, Burke Decl. ¶ 5; Frankel Decl. Ex. J (Aug. 21, 2020 Hr'g Tr.) at 6:6–11. Plaintiffs showed little consideration for costs and rejected multiple attempts to narrow the case. Although Plaintiffs were initially responsive to holding a summary judgment hearing on whether Plaintiffs were limited purpose public figures, and to narrow the case to a subset of USDA statements, Plaintiffs nonetheless proceeded with expansive discovery without narrowing these issues.[6] *See* Frankel Decl. Ex. F at 77:7–78:18; Frankel Decl. Ex. G. at 12:9–13:22; Frankel Decl. Ex. H. at 31:9–17; ECF No. 237.

Plaintiffs insisted on discovery before the anti-SLAPP motion was decided, as they deemed it "essential" to their opposition. *See* Frankel Decl. Ex. G at 15:12–18:4. Both parties and the Court understood that Plaintiffs were to identify what discovery was "essential" and Defendants were to comply with their requests. The Court reminded the Plaintiffs, "[Y]ou can at any time say, I have enough and say I have enough; right? So this is sort of getting you the discovery." *See* Frankel Decl. Ex. G at 18:2–4. Plaintiffs were in control of the extent, and thus the costs, of discovery, and had full discretion in determining what discovery they contended was "essential" to the anti-SLAPP motion. As one California court noted, a party "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the [opposing party] in response." *Peak-Las Positas Partners*, 172 Cal. App. 4th at 114 (quoting *Int'l Longshoremen's & Warehousemen's Union v. Los Angeles Export Terminal, Inc.*, 69 Cal. App. 4th 287, 304 (1999)); *see also Serrano*, 32 Cal. 3d at 634 n.18 (opposing party's litigation tactics help determine reasonableness of prevailing party's hours); *Calvo Fisher & Jacob LLP*

---

[6] Although Plaintiffs repeatedly stated the scope of this case only extended to statements concerning the USDA, Plaintiffs refused to amend their complaint or enter into a formal stipulation confirming this position. ECF No. 237. The Court suggested that Plaintiffs could amend their complaint again or otherwise find a way to memorialize their position that their claims only concern the USDA, and in turn Defendants could agree not to seek fees for unrelated claims. *See* Frankel Decl. Ex. F at 77:7–78:18. In an effort to facilitate this result, on December 31, 2018, Defendants submitted to Plaintiffs a proposed amended complaint and stipulation memorializing this offer to narrow the complaint. ECF No. 237. Plaintiffs did not respond to the substantive amendments to the allegations and counts, and did not respond to further requests to formalize the limitations on their claims. *Id.*

---

16

*v. Lujan*, 234 Cal. App. 4th 608, 627 (2015) (affirming fee award, noting that "the amount of attorney fees incurred by [the prevailing party] was increased by [the opposing party's] own conduct").

Discovery was complex and expensive for many reasons. Many witnesses were located outside of the United States and did not speak English as their first language. Burke Decl. ¶ 5. As such, Defendants needed to work with local counsel and purchase translation and transcription services in order to review the witnesses' documents and prepare their declarations. *Id.* Further, many witnesses were confidential sources whose lives and livelihoods were at stake if their identities were revealed. *Id.* A significant portion of Defendants' production was audiovisual files, which required attorneys to *listen* to hours of recordings in order to identify and protect confidential sources and other privileged information. Frankel Decl. ¶ 5. Unlike a paper document, which may be scanned or searched using electronic means, there was no way of speeding the review of audiovisual files. Discovery proceeded for two years and involved six depositions and production by Defendants of over 90,000 documents and over 80 hours of audiovisual recordings. *See* Burke Decl. ¶ 9; Frankel Decl. ¶ 5; ECF No. 235 at 8 & n.7.

The Northern District of California has repeatedly held that fees for time spent on discovery for an anti-SLAPP motion are recoverable, as "work that is inextricably intertwined with an anti-SLAPP motion is also compensable." *Braden v. BH Fin. Servs., Inc.*, No. 13-cv-2287, 2014 WL 892897, at *8 (N.D. Cal. Mar. 4, 2014); *Le v. Sunlan Corp.*, No. 13-cv-707, 2014 WL 296032, at *7 (N.D. Cal. Jan. 27, 2014) (granting attorneys' fees for discovery that was "inextricably intertwined" with an anti-SLAPP motion); *Henry v. Bank of Am.*, No. 09-cv-628, 2010 WL 3324890, at *3-4 (N.D. Cal. Aug. 23, 2010) (including in an anti-SLAPP fee award time spent litigating "discovery initiated by the opposing party . . . directly related to the motion to strike"); *Cf. LHF Prods., Inc. v. Kabala*, No. 16-cv-2028, 2019 WL 7403960, at *6 (D. Nev. Dec. 31, 2019) (holding that to be recoverable, discovery must be required in order to litigate the anti-SLAPP motion). In this case, discovery was entirely one-sided[7] and the *extent* of it was controlled by Plaintiffs; indeed, Plaintiffs themselves argued that this discovery was

---

[7] Defendants' were denied the opportunity to take affirmative discovery against Plaintiffs. *See* Burke Decl. ¶ 10; Frankel Decl. Ex. I at 42:2–43:23.

"essential." *See* Frankel Decl. Ex. G at 15:12–18:4. Therefore, Defendants' discovery work was thus inextricably intertwined with the work on the anti-SLAPP motion itself.

**Fourth**, this case was managed efficiently and economically. Davis Wright and Covington attorneys with lower billing rates conducted legal research, handled document discovery and production, prepared for and defended depositions, and drafted letter briefs as well as the anti-SLAPP papers. *See* Frankel Decl. ¶¶ 26-46, 52. The senior attorneys often took a supervisory role, overseeing the overall litigation strategy, editing the briefing, and communicating with Plaintiffs' counsel, thereby accruing fewer hours at their relatively higher rates. *See* Frankel Decl. ¶¶ 22, 25. Overall, 90% of Covington hours for which recovery is sought were incurred by associates billing at lower rates. *See* Frankel Decl. ¶ 52. This arrangement underscores the reasonableness of Defendants' fees request. *See Charlebois v. Angels Baseball LP*, 993 F. Supp. 2d 1109, 1123 (C.D. Cal. 2012) (counsel "efficiently staffed this matter" where associate handled bulk of drafting "with oversight by an experienced partner").

In sum, the attorneys' fees requested are reasonable and should be awarded in its entirety.

### C.    DEFENDANTS ARE ENTITLED TO RECOVER THEIR REASONABLE COSTS.

Under the anti-SLAPP statute, prevailing defendants are also entitled to recover costs. *See* C.C.P. §425.16(c)(1). Defendants seek reimbursement for $156,226.44 in costs necessarily incurred in connection with their successful anti-SLAPP motion and related discovery. These costs involved, among other expenses, document retrieval and storage service costs, photocopying costs, research costs, transcript costs, and deposition costs.[8] See Burke Decl. ¶ 36; Frankel Decl. ¶ 56. In addition, Defendants seek recovery for actual travel costs in connection with depositions sought and taken by Plaintiffs. The majority of these costs, approximately $120,000, relate to the discovery and document production process. *Id.* However, additional costs include court fees, copying and printing costs, transcript costs, and database research costs. *Id.* These costs are reasonable, customary for the services performed, and actually incurred by Defendants' counsel in connection with pursuing the anti-SLAPP motion and

---

[8] Because costs are awarded under the anti-SLAPP statute, Defendants have not separately submitted a bill of costs. *See* C.C.P. §425.16(c)(1) (subject to exceptions not applicable here, "a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees *and costs*" (emphasis added)).

1  handling the discovery Plaintiffs sought as part of opposing that motion. *Id*.  Furthermore, independent

2  attorneys who have extensive experience with anti-SLAPP fees and costs have found these costs to be

3  reasonable. Olson Decl. ¶ 8; Bostwick Decl. ¶¶ 19-20. Accordingly, Defendants' costs should be

4  awarded in full.

5  **IV.     CONCLUSION**

6          California's anti-SLAPP statute "is designed to nip SLAPP litigation in the bud by striking

7  offending causes of actions which 'chill the valid exercise of … freedom of speech[.]'" *Braun*, 52

8  Cal.App. 4th at 1042. The statute expresses a "legislative suspicion of SLAPP suits and an intent to

9  weed out all but those having demonstrable merit." *Ludwig v. Superior Court*, 37 Cal. App. 4th 8, 23

10  n.23 (1995). For the reasons set forth above, Defendants respectfully request that this Court order

11  Plaintiffs to pay Defendants $3,775,503.31 in attorneys' fees and $156,226.44 in costs incurred in

12  connection with the anti-SLAPP motion and discovery, as well as all fees and costs incurred in

13  connection with the filing of this Motion, including briefing and any hearings, in an amount to be

14  documented with the reply.

15

16  DATED: May 6, 2021                      Respectfully submitted,

17                                          COVINGTON & BURLING LLP
18                                          SIMON J. FRANKEL
                                            ALEXA HANSEN
19
                                            By: */s/ Simon J. Frankel*
20                                              Simon J. Frankel

21                                          Attorney for Defendants
22                                          REVEAL FROM THE CENTER FOR
                                            INVESTIGATIVE REPORTING;
23                                          MATT SMITH; and AMY WALTERS

24

25

26

27

28