SIMON J. FRANKEL (Bar No. 171552)
Email: sfrankel@cov.com
ALEXA HANSEN (Bar No. 267271)
Email: ahansen@cov.com
COVINGTON & BURLING LLP
415 Mission Street, Suite 5400
San Francisco, CA 94105
Telephone: (415) 591-6000
Facsimile: (415) 955-6552

THOMAS R. BURKE (CA State Bar No. 141930)
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, CA  94111
Telephone:(415) 276-6500
Facsimile: (415) 276-6599
Email:      thomasburke@dwt.com

AMBIKA KUMAR DORAN (*pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, WA 98101
Telephone: (206) 757-8030
Facsimile: (206) 757-7030
Email:      ambikadoran@dwt.com

BRENDAN CHARNEY (CA State Bar No. 293378)
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, Suite 2400
Los Angeles, CA 90017
Telephone:(213) 633-6800
Facsimile: (213) 633-6899
Email:      brendancharney@dwt.com

Attorneys for Defendants
REVEAL, CENTER FOR INVESTIGATIVE
REPORTING, MATT SMITH, and AMY WALTERS

IN THE UNITED STATES DISTRICT COURT

THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PLANET AID INC., and LISBETH THOMSEN, <br><br> Plaintiffs, <br><br> v. <br><br> REVEAL, CENTER FOR INVESTIGATIVE REPORTING, MATT SMITH, and AMY WALTERS, <br><br> Defendants. | Case No. 17-cv-03695-MMC <br><br> **DECLARATION OF CHRISTA SCHARFENBERG IN SUPPORT OF THE REVEAL DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS** <br><br> Date: June 11, 2021 <br> Time: 9:00 a.m. <br> Judge: Hon. Maxine M. Chesney <br> Courtroom: 7, 19th floor |

## DECLARATION OF CHRISTA SCHARFENBERG

I, Christa Scharfenberg, declare as follows:

1.     I am Senior Advisor to The Center for Investigative Reporting ("CIR"); until April 31, 2021, I was its Chief Executive Officer.  CIR, founded in 1977, is the nation's first and oldest nonprofit news organization focused on investigative reporting.  I have personal knowledge of the facts stated in this declaration and could truthfully testify to them if called as a witness.  I make this declaration in support of the Reveal Defendants' motion for attorneys' fees and costs.

2.     I am a 1993 graduate of the University of Massachusetts.  A decade later, I joined CIR as a communications manager.  I served as the acting executive director in 2007, as associate director from 2008-2015, and as the head of studio until 2017, when I became CEO.  Among my many responsibilities over the years, I have also been an executive or senior producer of documentaries for CIR, including FRONTLINE co-productions and the independent film *Banished*, which premiered at the 2007 Sundance Film Festival and the Academy Award-nominated Netflix co-production, *Heroin(e)*.  I helped launch CIR's California Watch reporting project in 2009 and helped with the merger of CIR and The Bay Citizen in 2012.  I also helped launch Reveal, CIR's Peabody Award-winning national public radio show and podcast in 2014.

3.     Over the past 44 years, CIR has received numerous awards for its investigative reporting.  Among the awards won in the last year are three Edward R. Murrow Awards, the Hillman Prize, the Investigative Reporters and Editors Award, and National Headliner Awards; we also were finalists for the Pulitzer Prize, the Peabody Award, and the Scripps Howard Award.  A link to all of the journalism awards CIR has received is available here:  https://revealnews.org/awards/

4.     This lawsuit, filed in August of 2016, threatened the existence of CIR.  CIR has a modest annual budget that is almost entirely funded by philanthropic donations.  Although CIR has insurance for its publishing activities, after over two years of protracted litigation and the need to address the factual allegations in Plaintiffs' 63-page complaint, by the Fall of 2018, with years of litigation on the horizon, CIR's available insurance proceeds were nearly exhausted.  Fortunately, Davis Wright Tremaine LLP and Covington & Burling LLP agreed to represent CIR and its

1

reporters on a pro bono basis.  We wrote about the case in an effort to let our supporters know about the challenges posed by this litigation.  https://revealnews.org/press/reveal-has-been-fighting-a-lawsuit-for-three-years-now-were-speaking-up-about-it/ Attached as Exhibit A is a true and correct copy of our article.

5.      On March 23, 2021, this Court dismissed Plaintiffs' lawsuit with prejudice.  Although California's anti-SLAPP statute provides for the recovery of mandatory fees, attorneys' fees will not compensate for the true loss that that CIR and the public have suffered as a result of this litigation.  This action not only threatened CIR's ongoing viability as a news organization that produces one of a kind accountability reporting to the public, it forced CIR to devote hundreds of hours of reporter and staff time that would otherwise be devoted to the many ongoing reporting projects that CIR has underway at any given time.  We wrote about this aspect in a piece published last month in the *Columbia Journalism Review*.  https://www.cjr.org/tow_center/costly-lawsuit-against-investigative-reporting-looks-like.php Attached as Exhibit B is a true and correct copy of our article.

I declare under penalty of perjury that the foregoing is true and correct.  Executed in Oakland, California on May 6, 2021.

Christa Scharfenberg

DECLARATION OF CHRISTA SCHARFENBERG
Case No. 17-cv-03695-MMC

EXHIBIT A

Reveal has been fighting a lawsuit for three years. Now we're speaking up about it | Reveal



# Reveal has been fighting a lawsuit for three years. Now we're speaking up about it

by **Christa Scharfenberg** and **Matt Thompson**
November 5, 2019



Reveal travels to Malawi to learn more about an alleged cult leader who's playing a shell game with U.S. foreign aid. Credit: Matt Smith/Reveal

**After our reporting raised serious questions about an organization that has received aid from multiple governments, it took us to court.**

In 2016, Reveal from The Center for Investigative Reporting began publishing stories resulting from a wide-ranging investigation into Planet Aid, an

international charity that had received U.S. government funds for aid programs in impoverished areas of southern Africa. Reveal has now spent three years on a lawsuit that has cost millions of dollars in legal fees.

Since early 2017, we have been quiet about the case as litigation has proceeded through the court system, in order to put our resources toward our ongoing reporting. The cost of that silence is the hobbling of the public's ability to hold governments and organizations such as Planet Aid accountable. And so, with this post, Reveal's silence about our ongoing legal battle with Planet Aid comes to an end.

Our reporting, which unfolded in **radio and text stories**, raised significant questions about whether funds from the U.S. and other governments actually were reaching the people they were intended to help. For example, we reported that employees of a Planet Aid subcontractor in Malawi routinely were required to kick back portions of their salaries to a bank account controlled by an organization that has been likened to a cult. In trips to Malawi, our reporters were unable to find evidence that U.S. humanitarian aid grants to the organization had produced lasting benefits on the ground.

Our stories, and a British Broadcasting Corp. **radio documentary** based on our reporting, led the British government to cut off funding to Planet Aid's Malawi subcontractor and launch a probe into suspected foreign aid fraud. UNICEF also **cut off funding** to the subcontractor, known as DAPP Malawi.

Several months after the initial stories were published, Planet Aid sued us for libel in federal court, contending that the stories were false. During the legal back-and-forth that ensued, the organization produced declarations from a handful of individuals purporting to contradict our reporting. But Planet Aid furnished no facts that undermine the pattern laid out in dozens of interviews and backed up with court records, accounting ledgers, diplomatic correspondence, computer files, shipping manifests, meeting notes, bank statements, additional financial statements from offshore accounts and many other materials we gathered in the course of our reporting and shared with the public.

5/6/2021
Case 3:17-cv-03695-MMC Document 316-5 Filed 05/06/21 Page 7 of 17
Reveal has been fighting a lawsuit for three years. Now we're speaking up about it | Reveal

Before our stories were published, in keeping with our practice, we gave Planet Aid every opportunity to challenge our findings and offer countervailing facts. Multiple times in the course of our reporting, beginning as early as 2015, we reached out to Planet Aid, several affiliated individuals and the governmental agencies that funded the organization for comment on what we had found. After one of the organization's fundraisers, Marie Lichtenberg, refused an in-person interview and before our first story in the series was published, we sent Planet Aid a seven-page document with a detailed list of findings and corresponding questions to give the organization a chance to offer its perspective on what we had found. Instead of addressing any of the claims in our reporting, Planet Aid's spokesperson responded with a brief statement indicating that the organization had achieved positive results backed up by extensive financial reviews.

As a news organization committed to producing impactful investigative reporting for more than four decades, our journalistic integrity and credibility are our greatest assets. We have a strict policy of correcting any errors that appear in our published work. Yet Planet Aid has failed to provide any hard evidence that would meet the basic standards necessary to issue a correction. Instead, the organization turned to the courts with a lawsuit that mostly attacks not our stories, but our reporters' backgrounds, motives and tactics.

The court filings in this case are a matter of public record. We have spent years dredging Planet Aid's complaint and declarations for any evidence that might merit correcting our stories. We have found none. We welcome others to join the pursuit.

That Planet Aid has chosen to attack Reveal with lawyers and legal bills rather than facts is another sign of a troubling turn in the environment journalists are confronting increasingly. In spring 2016, as the first of our stories on Planet Aid was being published, another lawsuit against a news organization, Bollea v. Gawker, was coming to an end.

The suit had been funded by Peter Thiel, a billionaire with a grudge against Gawker, and it has been seen widely as a cautionary tale of the lethal damage deep-pocketed interests can inflict on a news organization through lawsuits.

5/6/2021          Reveal has been fighting a lawsuit for three years. Now we're speaking up about it | Reveal

As Trevor Timm, executive director of the Freedom of the Press Foundation, noted in a September 2016 column in **the Columbia Journalism Review**, the legal strategy pursued by plaintiffs in Bollea v. Gawker was designed "to do maximum damage to Gawker, rejecting settlement offers with the sole purpose of forcing the company to spend as much money as possible."

"Less wealthy news organizations may be forced into the same corner Gawker was without ever losing, and that's not to speak of the damage such cases could do to nonprofit news organizations or independent freelance journalists," Timm wrote.

For the most part, the attack on Gawker worked. Remnants of what was once a thriving digital network do linger on. But the departure, just last week, of **the entire editorial staff** of Deadspin – a former Gawker site – was a jolting reminder of the lawsuit's legacy.

Since that time, libel lawsuits have seemed to increase. In addition to Reveal, **BuzzFeed**, **The New York Times** and **Mother Jones** also have recently fought court battles. The question now is – at what cost? As Timm's prescient column concluded:

> *How many media organizations will spike stories involving controversial figures just to avoid years of legal hassle and skyrocketing legal bills? How many journalists will just not pursue those stories in the first place, knowing the extra layers of bureaucracy they'll have to fight through to get their stories published. And if there is a chance individual reporters are also on the hook, why would they risk their livelihood for a story to begin with?*

It is true that all news organizations have truth on their side. If their reports are true (and sometimes even if they are not), ultimately they should be protected by the First Amendment. But Peter Thiel has shown that is not necessarily always the case, and we should all be worried that other multi-millionaires and billionaires might now be smelling blood.

Planet Aid's actions in its lawsuit against Reveal are a manifest example of what deep-pocketed interests can do to a news organization even when the facts are on the journalists' side. We have spent the past three years defending against this lawsuit, which we believe is frivolous and which we expect will fail on the merits if it reaches trial. The legal cost of defending against this suit already has exceeded $7 million, which we would not have been able to sustain without the excellent pro bono representation of Covington & Burling LLP and Davis Wright Tremaine LLP. Our newsroom owes its continued existence to their work, and specifically to Thomas Burke at Davis Wright Tremaine, Ethan Forrest at Covington & Burling and our own general counsel, D. Victoria Baranetsky. It is notable that Planet Aid has leveled its legal firepower solely at Reveal, a modestly sized nonprofit journalism organization, rather than taking on the larger network of newsrooms that contributed to and distributed our reporting on Planet Aid, including the BBC and NBC Washington.

Perhaps the worst consequence of lawsuits like this is what The Washington Post media columnist Margaret Sullivan has dubbed **"the Gawker Effect."** The time and expense our reporters have devoted to walking lawyers and judges through an overwhelming quantity of material gathered over years of reporting effectively has reduced the resources we have been able to devote to continuing to pursue our questions about Planet Aid and other matters of public interest.

We will continue to report on the organization, creating editorial structures to safeguard the independence of this investigation internally. And we will cooperate with media reporters and others who wish to cover this case, because we believe it illuminates aspects of the legal playbook organizations that want to silence journalists will increasingly adopt.

Our decision to open up reflects our belief that secrecy tends to abet the powerful at the expense of the public. The law should be a refuge for fair and factual journalism, not a weapon against it.

***Correction, Nov. 6, 2019:*** *An earlier version of this story misstated the list of partners that distributed our reporting on Planet Aid. The Boston Globe and Chicago Tribune were not among those partners.*

## CHRISTA SCHARFENBERG

✉ cscharfenberg@revealnews.org

Christa Scharfenberg is CEO of The Center for Investigative Reporting. She joined CIR in 2003 as communications manager and has been a leader in its growth from a small nonprofit news organization, producing a handful of stories a year, to a multiplatform newsroom that reaches millions of people monthly through public radio, podcasts, documentaries, social media and the web. She managed the launch and growth of Reveal, CIR's Peabody Award and duPont-Columbia University Award-winning national public radio show and podcast, produced with PRX. She has been an executive or senior producer of documentaries for CIR, including the Academy Award-nominated film "Heroin(e)," numerous FRONTLINE co-productions and the independent film "Banished," which premiered at the 2007 Sundance Film Festival. Scharfenberg is a member of the Poynter Institute's National Advisory Board and was a 2014 Punch Sulzberger Program fellow at Columbia University Journalism School. Prior to joining CIR, she was associate director of the Film Arts Foundation in San Francisco. She is based in CIR's Emeryville, California, office.

**More by Christa Scharfenberg**

## MATT THOMPSON

✉ mthompson@revealnews.org

Matt Thompson was the editor in chief of Reveal from The Center for Investigative Reporting and a contributing editor at The Atlantic. Prior to his arrival at Reveal, he served as the executive editor of The Atlantic, overseeing new editorial initiatives and planning, developing the magazine's recruitment and talent development operations, and guiding strategy for podcasting and digital membership. He's also one of the founding hosts of "Radio Atlantic," the organization's pioneer podcast. Previously, as the deputy editor of TheAtlantic.com, Thompson oversaw digital coverage teams and developed editorial projects in conjunction with site editors.

Before joining The Atlantic in January 2015, Thompson was director of vertical initiatives (and mischief) for NPR, where he led the creation of several teams of broadcast and digital journalists, including Code Switch, which covers race, ethnicity and culture; and NPR Ed, which covers education. During his time with NPR, he worked with public radio stations across the country on editorial strategy and co-wrote the organization's ethics handbook. Prior to NPR, Thompson worked as an editor and reporter for news organizations around the U.S., including the Star Tribune in Minneapolis, The Fresno Bee and the Poynter Institute. He currently serves

as a member of the board of directors for The Center for Public Integrity and is a co-founder of Spark Camp. Thompson is based in Reveal's Emeryville, California, office.

**More by Matt Thompson**

---

EXHIBIT B

# OP-ED: What a costly lawsuit against investigative reporting looks like

**LAST WEEK, A FEDERAL COURT** in California issued (https://drive.google.com/file/d/1jzyFeW6ckxoHx52SvEmjG902ydoV_BtH/view? usp=sharing) a 44-page order throwing out a libel lawsuit (https://revealnews.org/press/federal-judge-dismisses-planet-aids-lawsuit-against-reveal/) filed in 2016 against *Reveal*, a non-profit newsroom run by The Center for Investigative Reporting, by Planet Aid, an international charity that received US government funds for aid programs. Planet Aid filed its lawsuit in August 2016 after *Reveal* published several stories (https://revealnews.org/press/reveal-has-been-fighting-a-lawsuit-for-three-years-now-were-speaking-up-about-it/) based on almost two years of reporting which tied the charity to an alleged cult and raised questions about the charity's spending. *Reveal*'s investigation attracted the attention of the British government, which cut off funding to Planet Aid's subcontractor and launched a probe into suspected foreign-aid fraud. While the judge's decision is an unequivocal legal win for *Reveal*, it took more than four-and-a-half years and millions of dollars to get there.

The ruling comes at a time when defamation law is having an unexpected moment in the sun. Last month, when Smartmatic brought a $2.7-billion libel lawsuit against Fox News, some suggested that defamation suits are just what the marketplace of ideas needs (https://www.nytimes.com/2021/02/06/business/media/conservative-media-defamation-lawsuits.html); Ben Smith, the *New York Times* media columnist, praised (https://www.nytimes.com/2020/12/20/business/media/smartmatic-lawsuit-fox-news-newsmax-oan.html) the suit for discouraging the amplification of falsehoods.

But such boosterism is short-sighted. Defamation cases such as the Smartmatic lawsuit may be a "useful corrective," Yochai Benkler, a professor at Harvard Law School, recently told the *Times*

Case 3:17-cv-03695-MMC Document 336-6 Filed 05/06/21 Page 14 of 17

(https://www.nytimes.com/2021/02/06/business/media/conservative-media-defamation-lawsuits.html). However, he added, "we have to be very cautious in our celebration of these lawsuits, because the history of defamation is certainly one in which people in power try to slap down critics."

On paper, *Reveal* achieved complete success. In the order to dismiss, a federal judge wrote of *Reveal*, "defendants were engaged in the typical editorial process of fact-checking and revising drafts of their articles prior to publication, after which they confirmed the reliability of that information." In essence, our reporters did their job.

But the victory is somewhat pyrrhic. Fighting Planet Aid's complaint was exceptionally costly to *Reveal*—both in lost reporting time and in other employee resources. Still, the effort was necessary for a case where Planet Aid alleged an estimated $25 million in damages, a sum that is twice CIR's annual budget.

While seemingly stratospheric, such devastating damage claims are not out of the ordinary. Over the past decade, the press has suffered an increasing trend of costly cases, including but not limited to defamation cases. Hulk Hogan's 2013 privacy lawsuit against Gawker sought more than $100 million in damages from the publication. Writing for CJR (https://www.cjr.org/opinion/thiel_gawker_ailes_trump.php), Trevor Timm, executive director of the Freedom of the Press Foundation, described the case as "structured...to do maximum damage," and called the case a "blueprint for destroying a news organization." In 2016, ABC News settled a billion-dollar defamation lawsuit brought by a South Dakota-based beef production company at the cost of $177 million. ABC maintains that its reporting was factually accurate.

What was once a blueprint has now turned into a thick playbook, with the power to wreak havoc on newsrooms—particularly on nonprofits, such as *Reveal*, that focus on long-term investigations. Here are a few plays that plaintiffs might use against news outlets, and how they were used in our case:

**File a really long complaint with copious other documents.** The 276-page complaint filed by Smartmatic against Fox News may present some strong claims (https://www.cnn.com/videos/business/2021/02/07/expert-says-smartmatic-has-a-very-strong-complaint.cnn/video/playlists/business-reliable-sources/). But

length isn't necessarily a sign of overall merit. Many other defamation complaints tend to be bloated with improper arguments, which can create the false appearance of grievous wrongdoing and sloppy reporting committed by the media entity being sued.

In our case, Planet Aid listed 80 objections to CIR's reporting in its nearly 70-page complaint. This approach was repeated in other filings in the case against *Reveal*, creating a time-consuming workload for the district court judge, who is duty-bound to investigate every claim to mitigate the risk of reversal on appeal. The result was costly, protracted litigation.

**Sue in far-away courts that have plaintiff-friendly laws.** Defamation plaintiffs sue newsrooms in remote jurisdictions to benefit from more favorable laws and friendly courts, all while draining newsroom resources in the process. This practice is known as forum shopping, and it's as old as the seminal *New York Times v. Sullivan* case. In that case, the *Times* was hauled more than a thousand miles to Alabama to defend its publication of an advertisement supporting the Civil Rights Movement. More recently, the tactic was used in the Gawker case, which was tried in Florida, and the ABC "pink slime" case, which was tried in South Dakota.

In *Reveal*'s case, Planet Aid tried at least five times to bring the case to Maryland instead of California, where CIR is located. Although Maryland does have an anti-SLAPP statute, which is designed to quickly bat down defamation suits, it is far weaker than California's own anti-SLAPP statute. Maryland's law does not provide an automatic right of appeal, nor does it permit a winning party to get attorneys' fees. And even though both the Maryland and California courts concluded that California was the proper place for trial, Planet Aid still continued to ask for the case to be returned to Maryland.

**Employ costly discovery.** Some anti-SLAPP statutes allow defendants of meritless libel cases to escape discovery and, in turn, minimize costs of protracted litigation. Sadly for media defendants, federal judges have rejected the application of these state procedural rules in their courtrooms, permitting discovery to proceed against defendants in defamation suits. In our case, the discovery process took nearly two years and involved the disclosure of hundreds of thousands of documents related to CIR's reporting, as well as 500 audio recordings based on 200

interviews conducted in distant places including Denmark and Malawi. On top of being costly and time-consuming, this discovery was invasive, in that it gave Planet Aid access to journalists' source material.

While Planet Aid was able to scour many of our reporters' notes, CIR was fortunately able to assert  the so-called "reporter's privilege," which can protect a reporter's confidential sources. This was good in terms of the integrity of our reporting but crushing in terms of resource costs, as lawyers needed to be meticulous in combing through mountains of notes, e-mails, whistleblower reports, and audio tape to redact identifying information. This took thousands of hours, amounting to millions in legal fees on discovery alone. It also necessitated help from not one, but two law firms—Davis Wright Tremaine and Covington & Burling—as CIR's own legal department couldn't handle this work on its own. This taxing discovery also affected our newsroom, as it took CIR staff away from their reporting and hampered their ability to do their jobs; as one of CIR's attorneys bemoaned at a hearing, the discovery process was "so burdensome that we ha[d] two reporters and one editor working full time on this." All of the time CIR had to spend defending their prior work could have been spent conducting new investigations. None of this time is recoverable.

**Limit discovery to defendants.** When an anti-SLAPP motion is filed in federal court, judges may allow plaintiffs to dig into defendants' records without allowing defendants to do the same to the plaintiffs. In our case, discovery didn't go both ways. Although Planet Aid was permitted to gather copious and detailed information about CIR's reporting, CIR was not permitted to do the same. This asymmetry meant that Planet Aid could make it as difficult and as expensive as possible for CIR to continue its defense without experiencing a similar drain on resources or confronting a comparable level of judicial review, skepticism, and inquiry.

While generous pro-bono legal assistance (https://revealnews.org/press/federal-judge-dismisses-planet-aids-lawsuit-against-reveal/) helped to spare us from financial ruin, *Reveal* will never be able to recover the time that could have been spent on reporting, or forget the stress that a multi-million-dollar lawsuit inflicts on its employees. To make matters worse,  other news organizations might look at this

lawsuit and decide that reporting on powerful or deep-pocketed organizations isn't worth the risk. For every Smartmatic case lauded as a promising defense against disinformation, there are also outcomes like ours.

---

D. Victoria Baranetsky and Alexandra Gutierrez D. Victoria Baranetsky serve as a Knight News Innovation Fellow at the Tow Center and General Counsel at Reveal from The Center for Investigative Reporting; Alexandra Gutierrez is a First Amendment Fellow at The Center for Investigative Reporting.

TOP IMAGE: PHOTO: ADOBE STOCK