Samuel Rosenthal (pro hac vice)
sam.rosenthal@nelsonmullins.com
Nelson Mullins Riley & Scarborough LLP
101 Constitution Ave., N.W.
Washington, D.C. 20001
Telephone:  +1 202-689-2915
Facsimile   +1 202-712-2860

Phil Busman (pro hac vice)
Phil.busman@nelsonmullins.com
Nelson Mullins Riley & Scarborough LLP
101 Constitution Ave., N.W.
Washington, D.C. 20001
Telephone:  +1 202-689-2988

Cory E. Manning (State Bar # 213120)
cory.manning@nelsonmullins.com
Nelson Mullins Riley & Scarborough LLP
1320 Main St., 17th Floor
Columbia, SC 29201
Telephone:  +1 803-255-5524
Facsimile   +1 803-256-7500

Crispin L. Collins (State Bar # 311755)
crispin.collins@nelsonmullins.com
Nelson Mullins Riley & Scarborough LLP
19191 S. Vermont Ave., Suite 301
Torrance, CA 90502
Telephone:  +1 424-221-7407
Facsimile   +1 424-221-7499

Attorneys for Plaintiffs
Planet Aid Inc. and Lisbeth Thomsen

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PLANET AID INC.; and LISBETH THOMSEN,<br><br>Plaintiffs,<br><br>v.<br><br>REVEAL, CENTER FOR INVESTIGATIVE REPORTING; MATT SMITH; and AMY WALTERS,<br><br>Defendants. | Case No. 17-cv-03695-JSC<br><br>**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' ATTORNEY FEE APPLICATION**<br><br>Judge: Hon. Maxine Chesney<br><br>**DATE:    July 30, 2021**<br>**TIME:**<br>**LOCATION:    San Francisco Courthouse<br>Courtroom 7- 19th Floor<br>450 Golden Gate Ave.<br>San Francisco, CA 94102** |

NELSON, MULLINS, RILEY & SCARBOROUGH, LLP

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................... 1

PROCEDURAL HISTORY........................................................................................ 2

DEFENDANTS' EXCESSIVE FEE DEMAND ........................................................ 3

ARGUMENT ............................................................................................................. 6

    I.       FEES SHOULD BE ADDRESSED AFTER PLAINTIFFS' APPEAL ................... 6

    II.    IF THE COURT ADDRESSES FEES, IT SHOULD DENY DEFENDANTS' EXCESSIVE REQUEST OUTRIGHT .......................................... 6

        A.    Defendants' Fee Request Is Excessive By Historical Standards ................... 6

        B.    The Court Should Apply the Rule of "Constitutional Avoidance." .............. 8

            1.    Fees should be denied for discovery required under the Federal Rules......................................................................................... 9

            2.    Defendants Should Not be Allowed to Recover Fees They Did Not Actually Pay ...................................................................... 10

        C.    IF FEES ARE GRANTED THEY SHOULD BE DRAMATICALLY REDUCED BECAUSE DEFENDANTS HAVE FAILED TO SUSTAIN THEIR BURDEN OF SHOWING THAT THE FEE APPLICATION IS REASONABLE ......................................................... 11

        A.    The Hourly Rates Charged by Defense Counsel Far Exceed Those Found Reasonable by Courts in this District.................................. 11

        B.    Defendants' Claimed Hours Are Totally Unreasonable ............................. 13

            1.    Defendants Are Only Entitled to Recover Fees and Expenses Related to the Anti-SLAPP Motion, Not the Entire Case ............. 13

            2.    Time Claimed For anti-SLAPP Discovery Is Grossly Excessive............................................................................................ 14

            3.    The Number of Hours Expended Drafting the anti-SLAPP Motion is Grossly Excessive ............................................................ 18

            4.    Defendants' Fees For Oral Argument That Never Happened Are Excessive............................................................................. 21

            5.    Fees and Expenses Should Also Be Denied Where It Is Impossible for the Court to Determine Whether the Hours or Expenses are Reasonable ............................................................. 21

            6.    Legal Fees for Clerical and Administrative Tasks Are Not Recoverable......................................................................................... 23

        C.    REQUESTS FOR COSTS SHOULD BE DENIED OR REDUCED.......... 24

        D.    DEFENDANTS' SHOULD BE DENIED FEES ON FEES ....................... 25

CONCLUSION........................................................................................................ 25

NELSON, MULLINS, RILEY & SCARBOROUGH, LLP

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*APL Co. PTE, LTD v. UK Aerosols, LTD et.al.*,
   2010 U.S. Dist. LEXIS 91853 ........................................................................................ 23

*Apple, Inc. v. Samsung Elec. Co., Ltd.*,
   2012 U.S. Dist. LEXIS 160668 (N.D. Cal. Nov. 7, 2012) ..................................................... 22

*AT&T Mobility*, 2018 WL 1567819, at *3 ................................................................................ 19

*Bekele v. Ford*,
   No. 11-cv-1640, 2011 WL 4344189 (N.D. Cal. Sept. 15, 2011) ........................................... 19

*Blackburn v. ABC Legal Services, Inc.*,
   No. 11-CV-01298 JSW (NC), 2012 WL 1067632 (N.D. Cal. Feb. 24, 2012) ................. 14, 19

*Blum v. Stenson*,
   465 U.S. 886 (1984) ...................................................................................................... 11

*Braden v. BH Fin. Servs., Inc.*,
   No. C 13-02287 CRB, 2014 WL 892897 (N.D. Cal. Mar. 4, 2014) ...................................... 12

*Camacho v. Bridgeport Fin., Inc.*,
   523 F.3d 973 (9th Cir.2008) ........................................................................................... 13

*Center for Biological Diversity v. County of San Bernardino*,
   185 Cal.App.4th 866 (2010) ........................................................................................... 13

*Chalmers v. City of Los Angeles*,
   796 F.2d 1205 (9th Cir. 1985) ......................................................................................... 11

*Christian Research Inst. v. Alnor*,
   165 Cal. App. 4th 1315 (2008) ............................................................................. 13, 14, 21

*Clark v. Martinez*,
   125 S.Ct. 716 (2005) ....................................................................................................... 9

*Contreras v. City of Los Angeles*,
   2013 U.S. Dist. LEXIS 49412 (C.D. Cal. March 28, 2013) .................................................. 14

*CoreCivic v. Candide*,
   No. C–20–03792–WHA, 2021 WL 1267259 (N.D. Cal., 04/06/2021) ......................... *passim*

*Crowe v. Gogenini*,
   No. 2:11-cv-3438, 2014 WL 130488, at *5 (E.D. Cal. Jan 13, 2014) ..................................... 19

NELSON, MULLINS, RILEY & SCARBOROUGH, LLP

*Ctr. for Food Safety v. Vilsack*,
 2011 U.S. Dist. LEXIS 144428 (N.D. Cal. Oct. 12, 2011) .................................................. 22

*DeSimone V. Industrial Bio-Test Laboratories*,
 83 F.R.D. 615 (S.D.N.Y. 1979) ........................................................................................ 23

*In re Donovan*,
 877 F.2d (D.C. Cir. 1989) ................................................................................................ 23

*Drevaleva v. Department of Industrial Relations*,
 2019 WL 7172621 (Cal. lst Dist., 12/20/19) ................................................................... 12

*Fallay v. San Francisco City and County*,
 2016 WL 879632 (N.D. Cal. 3/8/16) ........................................................................ 12, 21

*Firestone v. Parkview Health Systems, Inc.*,
 374 F. Supp. 2d 658 (N.D. In. 2005) ............................................................................... 24

*Gates v. Rowland*,
 39 F.3d 1439 (9th Cir. 1994) ........................................................................................... 11

*Gemcap Lending I, LLC v. Unity Bank Minn.*,
 2019 WL 3842010 (N.D.Cal., 8/15/2019) ....................................................................... 12

*Guckenberger v. Boston Univ.*,
 8 F.Supp.2d 91 (D. Mass. 1998) ..................................................................................... 17

*H.J., Inc. v. Flygt Corp.*,
 925 F.2d 257 (8th Cir. 1991) ........................................................................................... 23

*Hajro v. United States Citizenship and Immigration Services*,
 900 F. Supp. 2d 1034 (N.D. Cal. 2012) ........................................................................... 22

*Henry v. Bank of Am. Corp.*,
 No. C 09-0628 RS, 2010 WL 3324890 (N.D. Cal. Aug. 23, 2010) .................................... 12

*Hensley v. Eckerhart*,
 461 U.S. 424 (1983) ................................................................................................... 11, 14

*Hyan v. Liberty Surplus Ins. Corp.*,
 No. 14-cv-2004, 2020 WL 5092448 (C.D. Cal. Jan. 15, 2020) ......................................... 19

*Interim Healthcare, Inc. v. Health Care@Home, LLC*,
 2019 WL 6791465 (S.D. Fla. November 27, 2019) ........................................................... 24

*Kearney v. Foley & Lardner*,
 553 F. Supp. 2d 1178 (S.D. Cal. 2008) ........................................................................... 21

*Ketchum v. Moses*,
 24 Cal.4th 1122 (2001) ....................................................................................... 7, 20, 21

NELSON, MULLINS, RILEY & SCARBOROUGH, LLP

*La Liberte v Reid*,
  966 F.3d 79 (2d Cir. 2020) ............................................................................. 6

*League of United Latin American Citizens, Inc. v. Eureste*,
  No. 13-CV-04725-JSC, 2014 WL 5473560 (N.D. Cal. Oct. 28, 2014) .......................... 13, 19

*Lee-Tzu Lin v. Dignity Health-Methodist Hospital of Sacramento*,
  No. 14-cv-666, 2014 WL 5698448 (E.D. Cal. Nov. 4, 2014) ................................... 19

*Leo v. Cary*,
  158 Fed.Appx. 60 (9th Cir. 2005) ...................................................................... 25

*Lighthouse v. Printroom, Inc.*,
  2015 WL 12732-457 (C.D. Cal., 12/10/15) .......................................................... 25

*Loop Al Labs Inc. v. Anna Gatti*, 2016 WL 2640472 (N.D. Cal. 5/9/2016 ...................... 12

*Lota v. Home Depot U.S.A., Inc.*,
  2013 U.S. Dist. LEXIS 181848 (N.D. Cal. Dec. 31, 2013) ...................................... 11

*Makaeff v. Trump University*,
  No. 10-cv-940, 2015 WL 1579000 (S.D. Cal. April 9, 2015) .................................... 8

*Maloney v. T3 Media, Inc.*,
  No. 14-cv-5048, 2015 WL 3879634 (C.D. Cal. May 27, 2015) ................................... 8, 13

*Maughan v. Google Technology, Inc.*,
  143 Cal. App. 4th 1242 (2006) .......................................................................... 19

*Medifast, Inc. v. Minkow*,
  2015 WL 13827934 (S.D. Cal., 3/24/15) .............................................................. 24

*Metabolife Intern., Inc. v. Wornick*,
  264 F.3d 832 (9th Cir. 2001) ............................................................................ 9

*Minichino v. First Cal. Realty*,
  No. 11-cv-5185, 2012 WL 6554401 (N.D. Cal. Dec.14, 2012) ................................... 12, 19

*Mireskandari v. Daily Mail*,
  No. 12-cv-02943, 2014 WL 12586434 (C.D. Cal., 11/07/2014) ................................ 7, 10, 13

*Moreau v. Daily Indep.*,
  No. 12-cv-1862, 2013 WL 796621 (E.D. Cal. Mar. 4, 2013) ................................... 19

*NACCP v. Button*,
  371 U.S. 415 (1963) ...................................................................................... 9

*Nadarajah v. Holder*,
  569 F.3d 906 (9th Cir. 2009) ............................................................................ 23

NELSON, MULLINS, RILEY & SCARBOROUGH, LLP

iv

*New.Net, Inc. v. Lavasoft*,
    356 F. Supp. 2d 1090 (C.D. Cal. 2004) ................................................................ 10

*Open Source Sec., Inc. v. Perens*,
    No. 17-cv-4002, 2018 WL 2762637 (N.D. Cal. June 9, 2018) ..................... 8, 14, 22

*Peak Health Center v. Dorfman*,
    2020 WL 3254337 (N.D. Cal., 6/16/20) ............................................................. 12

*Pecot v. Wong*,
    2018 WL 459354 (lst Dist., 1/18/18) ................................................................. 12

*Phillips and Jordan, Inc. v. McCarthy Improvement Co.*,
    2021 WL 364644 (D. S.C., 2/3/21) ..................................................................... 24

*Planned Parenthood Fed'n of America, Inc. v. Ctr. for Med. Progress*,
    890 F.3d 828 (9th Cir. 2018) .............................................................................. 9

*Plevin v. City & Cty. of S.F.*,
    No. 11-cv-2359, 2013 WL 2153660 (N.D. Cal. May 16, 2013) .......................... 19

*Premier Med. Mgmt Sys., Inc. v. Cal. Ins. Guar. Ass'n.*,
    163 Cal. App. 4th 550 (2008) .............................................................................. 8

*Prison Legal News v. Schwarzenegger*,
    561 F. Supp. 2d 1095 (N.D. Cal. 2008) .............................................................. 24

*Race Tires America, Inc. v. Hoosier Racing Tire Corp.*,
    674 F.3d 158 (3d Cir. 2012) ............................................................................... 24

*Ramos v. Lamm*,
    713 F.2d 546 (10th Cir. 1983) ............................................................................ 17

*Resolute Forest v. Greenpeach Int'l,, No. 4:17-cv-02824 (JST)*, 2020 WL 8877818,
    at *4 (N.D. Cal. 2019) ....................................................................................... 25

*Resolute Forrest v. Greenpeace International*,
    No. 4:17-cv-02824-JST, 2019 WL 8377690 (N.D. Cal. 9/24/2019) ................ 7, 12

*Role Models America, Inc. v. Brownlee*,
    353 F.3d 962 (D.C. 2004) .................................................................................. 23

*Ryan v. Editions Ltd. West, Inc.*,
    2012 U.S. Dist. LEXIS 179641 (N.D. Cal. Dec. 18, 2012) ................................ 22

*Ryan v. Editions Ltd. West, Inc.*,
    2016 WL 233093 (N.D. Cal. 1/19/16) ................................................................ 12

*Sandlin v. McLaughlin*,
    50 Cal.App.5th 805 (2020) .................................................................................. 9

NELSON, MULLINS, RILEY & SCARBOROUGH, LLP

*Santiago v. Equable Ascent Fin.*,
    2013 U.S. Dist. LEXIS 97762 (N.D. Cal. July 12, 2013) ...................................................... 23

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
    559 U.S. 393 (2010) .............................................................................................................. 9

*Smith v. Payne*,
    No. 12-cv-1732, 2013 WL 1615850 (N.D. Cal. Apr.15, 2013) ................................... 7, 13, 19

*Taleff v. Southwest Airlines Co.*,
    2013 U.S. App. LEXIS 7296 (9th Cir. Mar. 21, 2013) .......................................................... 23

*Thayer v. Wells Fargo Bank*,
    92 Cal.App.4th 819 (2001) ................................................................................................. 18

*Tomlinson v. Combined Underwriters Life Ins. Co.*,
    2009 U.S. Dist. LEXIS 66495 (N.D. Okla. July 29, 2009) ..................................................... 23

*Vargas v. Berkely Unified School District*,
    2017 WL 5991857 (N.D. Cal. 12/4/17) .............................................................................. 12

*Vargas v. City of Salinas*,
    200 Cal. App.4th 1331 (2011) .............................................................................................. 8

*Welch v. Metropolitan Life Insurance Co.*,
    480 F.3d 942 (9th Cir. 2007) ........................................................................................ 22, 23

*Yagman v. Edmondson*,
    723 Fed. Appx 487 (9th Cir. 2018) ..................................................................................... 11

**Statutes**

Cal. Stat. § 425.16(f) ................................................................................................................ 10

Cal. Stat. § 4251.6 (c)(1) .......................................................................................................... 10

**Court Rules**

Cal. Rules of Court, Rule 3.1702(b)(2)(B) & 3.1702(d) ............................................................... 6

Fed.R.Civ.P. 11 ........................................................................................................................ 18

Fed.R.Civ.P. 37 ........................................................................................................................ 18

Rule 37(a)(5)(A) ....................................................................................................................... 18

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

NELSON, MULLINS, RILEY & SCARBOROUGH, LLP

1

## INTRODUCTION

The court found that defendants made numerous false statements about plaintiffs, but struck their claims because it believed plaintiffs had offered insufficient evidence of malice. Defendants now seek a shocking almost $4 million in attorneys' fees and costs. There is no precedent for such an award, which is forty-one times the average fees awarded in this District or geographic area, and nearly eight times the highest prior similar award.  See Rosenthal Decl., Ex. A.  Defendants' claim is based on gross overstaffing and overbilling. Defendants claim over 7,000 hours of work by 15 billers across three law firms. See ECF 316-1, 316-4.  Their 221 pages of summary billing records reveals deeply concerning padding.  Defendants also grossly exaggerate the number of documents produced.  See Molner Decl., ¶10.  No task was too small to overbill; Defendants even claim 22 hours for attorneys to prepare errata sheets for less than 12 hours of deposition!  Glynn Decl., ¶ 54.

There is no need for the Court to engage what Judge Alsup called the "bone-crushing" exercise of vetting fees.   See *CoreCivic v. Candide*, No. C–20–03792–WHA, 2021 WL 1267259 (N.D. Cal., 04/06/2021).  Plaintiffs have appealed this court's dismissal, challenging both its conclusion and the highly controversial application of California's anti-SLAPP law in federal court. Judge Alsup took the sensible approach of deferring setting any fee amount until after that appeal. *CoreCivic v. Candide*, No. C–20–03792–WHA, 2021 WL 1267259 (N.D. Cal., 04/06/2021).  But if fees are to be considered now, they should be either denied entirely as a result of defendants' excessive claim or drastically reduced. As discussed in detail below, a reasonable fee for this motion does not exceed $ 443,501 which would still rival the largest anti-SLAPP attorneys' fee award found in this District.  See Rosenthal Decl. Ex. A.

Plaintiffs thus request that the Court either defer ruling on Defendants' request until, if still warranted, after plaintiff's appeal or, alternatively, that the Court deny the request in whole or substantial part as grossly excessive. The fee application here cries out for such a resolution.

NELSON, MULLINS, RILEY & SCARBOROUGH, LLP

1

**PROCEDURAL HISTORY**

This action was filed on August 25, 2016.   Almost half the time this case was pending was spent dealing with a ruling on the motion to transfer venue from Maryland to this Court.  See Rosenthal Decl., ¶ 4.   The jurisdiction and venue issues were totally unrelated to the issues raised on the motion to strike, as shown by defendants' arguments that two editors, whose respective roles were the subjects of retransfer motions, were alleged to be so remote that they could not establish "minimum contacts" with Maryland.   See ECF 75. None of the issues relating to jurisdiction and venue went to the truth of the stories, or whether defendants acted with malice.

Nothing occurred relating to the anti-SLAPP motion during substantial periods of time while this case was pending.  Until the court ruled on the motion to retransfer the case to Maryland, it was unclear whether an anti-SLAPP motion would be allowed at all in the case since Maryland law differs substantially from California as to anti-SLAPP motions.   Further, it was not until March 16, 2018 that a first amended complaint ("FAC") was filed. ECF 78.  Even before any discovery could commence, the parties agreed to stay the case to pursue settlement discussions. See ECF 95.   Those stays remained in effect each time the parties engaged in face to face discussions with the Hon. Magistrate Judge Sallie Kim, as well as numerous settlement discussions between themselves.  See, e.g., ECF 95, 104, 105, 217.  Defendants further requested a stay due to the pandemic.

After discovery issues were remanded to the Hon. Magistrate Judge Corley, the parties appeared at a hearing on November 9, 2018, at which time discovery issues were narrowed substantially. For one thing, discovery was limited to sources and editorial material involved in only the first two publications: a Podcast, which initially aired in March, 2016 and the lead article, which followed on May 23, 2016.  See Rosenthal Decl., ¶ 17 *et seq.*   Plaintiffs' counsel also agreed that discovery could be limited to allegations that tens of millions of dollars had been diverted from USDA programs. *See id.*, ¶ 13 et seq.  In response, defense counsel remarked that this would result in "far less discovery" and a "very tiny anti-SLAPP motion."  *Id.*

Notwithstanding plaintiffs' agreement on the record to limit discovery to allegations about the USDA program, defendants produced substantial materials having nothing to do with those

NELSON, MULLINS, RILEY & SCARBOROUGH, LLP

programs.  Defendants allege that they produced 80 hours of audio recordings.  Almost half (37.5 hours) relates to individuals who had nothing to do with the USDA program.  See Rosenthal Decl. ⁋ 57.  Defendants' claim that they engaged in a painstaking review of documents resulting in production of 90,000 documents. See ECF 316-1 (Frankel Decl.), ⁋ 5.  No such number of documents were produced; the production was one-seventh of that amount, or 13,573 documents, one-third of which were photos. See Molner Decl., ⁋ 10.   Moreover, a great deal of the material was completely irrelevant to the issues in the anti-SLAPP motion, or required no privilege review. See Rosenthal Decl., ⁋⁋ 35-43. This included massive quantities of undecipherable photos, see *id*. Ex. R, someone's idea of photogenic subjects, such as beach, travel and nature, see *id*., Ex. S, and 500 photos of Kandani Ngwira making funny faces.  *Id.*, Ex. T.  A large percentage of the discovery consisted of irrelevant documents in Danish, see *id.*, Ex. N; government reports, *id*., Ex M, and/or Planet Aid and DAPP Malawi's own documents improperly obtained by defendants prior to publishing the stories, and material having zero evidentiary value to any party. *Id.*, ⁋ 47.

Whatever initial requests had been made by plaintiffs for discovery, defendants later took the position that plaintiffs had withdrawn those requests and instead, "dictated precisely the discovery they needed from Defendants, at a granular level."   Rosenthal Decl., Ex. ⁋⁋ 59-62. Those "granular requests," according to defendants themselves, should have required production of a tiny fraction of what was ultimately produced.  *Id.* As to depositions, plaintiffs sought to depose only six of the individuals who had provided declarations supporting the anti-SLAPP motion.  In response, defendants argued that two of the six were so marginally relevant that their declarations should be withdrawn if the Court denied if depositions were denied.  ECF 286.

### DEFENDANTS' EXCESSIVE FEE DEMAND

The Court granted defendants' anti-SLAPP motion, finding that Plaintiffs had demonstrated numerous false statements were made about them but rejecting Plaintiffs' evidence of malice as insufficient. ECF 309.  Defendants now move for attorneys' fees and costs relating to services by three law firms, totaling $3,775,503.31 for nearly 7,000 hours of attorney and paralegal time.  In addition, they have requested costs totaling $156,226.44.  As to the majority of the lawyers, the same stock justification was given by defendants for rates between $525 and $1020,

3

namely that the rates are appropriate "based on [their] qualifications and experience in the substantive area of law and the geographic region." See 316-1 (Frankel Decl. 316-1, ¶¶ 19-46. Two lawyers had not even been admitted to the practice of law when being billed at those rates. See Pierce Decl., ¶¶ 37, 40.   Charges of $600-670 were claimed justified based on her experience in "the geographic region," although she practiced in the firm's New York City office.   No Covington lawyers had any experience in anti-SLAPP motions.  See Pierce Decl., ¶¶28-41. Defendants concede Covington's charges of well over $2 million cannot be justified under the loadstar standard.[1]

There is no breakdown of the fees or expenses offered in the application.  Nor were any actual invoices provided to the Court inasmuch as none of the three clients were billed for any of the services. Rosenthal Decl., ¶ 71. Defendants instead provide internal records from the three firms listing time entries.  Plaintiffs' expert determined the following breakdown, although the total number is over $1 million higher considering the number of vague, block-billed or similar entries:

| Category | Fees Sought |
| --- | --- |
| Jurisdiction and venue motions practice, including limited discovery | $89,845.25 |
| Mediation and settlement | $32,227.75 |
| Document and audiovideo review and related activities | $1,071,984.18 |
| Deposition preparation and attendance for six depositions, plus preparation of errata sheets | $539,588.08 |
| Discovery Disputes | $70,892.75 |
| Briefing anti-SLAPP motion, including preparation of declarations | $812,354.82 |
| Preparation for cancelled oral argument re anti-SLAPP motion | $88,913.50 |
| Administrative and clerical tasks | $35,340.92 |
| Fees for counsel in Malawi | $24,033,21 |
| Costs | $156,226.44 |

---

[1] Defendants confess that the Covington rates reflect "the reality" that firms with overseas offices charge higher rates to cover overhead.  See ECF 316-3, ¶ 20.  That "reality" of course is irrelevant under the lodestar standard, which looks to rates prevailing in the community for similar work. See Pierce Decl., ¶ 26.

NELSON, MULLINS, RILEY & SCARBOROUGH, LLP

Three expert reports are offered to show the grossly excessive nature of the application. One attorney fee expert, John Pierce, canvassed anti-SLAPP cases in this geographic area, as well as an extensive survey relied upon by courts in assessing the reasonableness of rates.   See Pierce Decl., ¶¶ 23-26.   Based on that extensive body of evidence, he has computed that, even if defendants' hourly rates and other charges were reasonable, the overall application should be reduced by $1,195,673.  Pierce Decl. ¶ 47.

A second expert, Michael Molner, is a litigation support specialist.  Based on metadata included in defendants' production, Mr. Molner found that defendants produced only 13,537 documents, Molner Decl., ¶¶ 10-12, one seventh the quantity represented by Messrs. Frankel and Burke in the Fee Application, see ECF 316-1 at  8:7-8, 316-4 at 9:9,  and that roughly one-third of those documents were photos. Molner Decl., ¶10-12.  Based on market rates for document review, Mr. Molner calculated that the entire review and production of documents, as well as transcripts, could have been accomplished for approximately $80,000.  See *id*., ¶ 19.  As Mr. Pierce concludes, even giving defendants the benefit of the doubt by increasing that number, fees are still excessive.

A third expert, who is also an expert on attorney fees, Clem Glynn, reviewed the entire submission, and offered his opinion that the amount of time claimed was grossly excessive.  Mr. Glynn found that an exceedingly large number of entries are block-billed, redacted or contain vague charges making it impossible to tell what was being done, and/or what amount was charged for a particular task.  Glynn Decl., ¶¶ 37-38.  Other charges were grossly excessive such as spending over twenty-two hours to prepare errata sheets for two depositions.  *Id.*  He found that over $800,000 was supposedly spent on the anti-SLAPP motion, *id*., ¶ 59, even though counsel admitted during discovery hearings that based on plaintiffs' position regarding discovery that this should be "*a very tiny SLAPP motion.*" Rosenthal Decl., Ex. B, at 76.  Mr. Glynn also found that some of the time entries exceeded the maximum hours which could have been charged to a task. For example, one attorney recorded 62.5 hours attending depositions which lasted a total of 40.5 hours, including breaks, and far less time actually "on the record."  Glynn Decl., ¶¶ 50-52.  The same lawyer billed 5.2 hours for a hearing along with a partner attending the same hearing, who billed 1.9 hours.  *Id.*, ¶¶ 28-29.

As explained by Plaintiffs' expert declarations, the vast majority of Defendants' claimed time is either unrelated to the anti-SLAPP motion or just plain excessive. Based on opinions offered by Messrs Pierce and Molner, Mr. Glynn concluded that the maximum fee which could have reasonably been charged was $443,501, which would rival the highest award found in this District.  See Rosenthal Decl., Ex. A.

## ARGUMENT

### I.    FEES SHOULD BE ADDRESSED AFTER PLAINTIFFS' APPEAL

As a preliminary matter, there is no reason for this Court to determine an award of fees or costs at this time. Plaintiffs have appealed this Court's order, challenging both the result and the application of the anti-SLAPP statute in the first place. If that appeal is successful, any fee award would be reversed and the time spent to address it wasted. Indeed, California law expressly recognizes the wisdom of waiting until an appeal is resolved to award attorneys' fees. See Cal. Rules of Court, rule 3.1702(b)(2)(B) & 3.1702(d).

As Judge Alsup recently recognized, the application of California's anti-SLAPP statute in federal court is controversial and arguably conflicts with Federal Rules. *CoreCivic,* at *3-5. There is a present Circuit split on the question, and even in the Ninth Circuit several judges have opined that the anti-SLAPP statute should not apply. *Id.* at *5; see *La Liberte v Reid*, 966 F.3d 79 (2d Cir. 2020) (following majority of Circuits and holding California anti-SLAPP statute inapplicable in federal court). Accordingly, while compelled by Circuit precedent to grant fees, Judge Alsup decided that the court would not engage in the "bone-crushing labor to vet the large amount of fees requested" until after the appeal of that case was decided. *Id.* at *6. The fees requested in *CoreCivic* were a miniscule fraction of Defendants' $4 million demand here. Even more so than in *CoreCivic*, this Court should defer determination of the amount of fees and costs—or deny the motion without prejudice to being renewed—until the Ninth Circuit renders its decision.

### II.    IF THE COURT ADDRESSES FEES, IT SHOULD DENY DEFENDANTS' EXCESSIVE REQUEST OUTRIGHT

#### A.  Defendants' Fee Request Is Excessive By Historical Standards

If the Court is inclined to proceed with determining the amount of fees now, it can and should take into consideration how the requested fees compare to those awarded in other cases.

Courts typically ask whether "California state and federal courts have awarded reasonable attorneys' fees comparable to the amount sought by the defendants."  *Mireskandari v. Daily Mail,* No. 12-cv-02943, 2014 WL 12586434, at *16, (C.D. Cal., 11/07/2014).  *See also Resolute Forest Forest v. Greenpeace International,* No. 4:17-cv-02824-JST, 2019 WL 8377690, n.3  (N.D. Cal. 9/24/2019). (citing approvingly *Lota by Lota v. Home Depot U.S.A., Inc.*, No. 11-cv-05777-YGR, 2013 WL 6870006, at *16-17 (N.D. Cal. Dec. 31, 2013) for the need to consider "competing surveys as well as awards in comparable cases.").   Defense counsel in this case have even urged courts to consider whether their own fee application was consistent with awards in other cases. See *Resolute Forest,* ECF 251 at 26 (Mr. Burke from Davis Wright).

Courts rightly have little patience for inflated fee demands filed in the hope that the court will compromise and award fees which are still exceedingly high.  See, e.g., *CoreCivic*, (finding that fees by DWT were inflated way beyond what the client was charged); *Resolute Forest,* Dkt. Nos. 251 at 28 (request found to be inflated, ordering counsel to submit a revised fee request, which was reduced by over a hundred thousand dollars); *Smith v. Payne*,   (application for fees by DWT  in the amount of $42,548 reduced by the court to approximately forty percent, to $29,901). An unreasonably inflated fee request is "a special circumstance permitting the trial court to reduce the award or deny one altogether." *Ketchum v. Moses,* 24 Cal.4th 1122, 1137 (2001).   The court also has discretion, "when faced with a massive fee application, . . . to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure as a practical means of trimming the fat from a fee application." *Id.*

Defendant's seek $3,931,729.75 in fees and costs. ECF 316 at 19. That shocking amount is more than forty-one times the average award in this geographic area in the last three and one-half years. See Rosenthal Decl., Decl., Ex. A. [2]  Nor is this case so complex to justify such a disparate

---

[2] The largest fee award, $545,572, was awarded in *Resolute Forest* to one of three sets of defendants, each of which were represented separately.  The fee awarded another set of defendants, by contrast, was $37,015. See Rosenthal Decl., Ex. A. That case involved a similar number of docket entries to this case.   That case was described as involving "sprawling pleadings," which challenged hundreds of alleged defamatory statements.  *Resolute Forrest, supra.*  Mr. Burke also claimed the pleadings "asserted numerous state law claims against the Greenpeace Defendants based on convoluted legal and factual theories which required extensive legal work to overcome," and that Plaintiffs filed lengthy pleadings with substantial appendices

NELSON, MULLINS, RILEY & SCARBOROUGH, LLP

NELSON, MULLINS, RILEY & SCARBOROUGH, LLP

result; even the five year battle with Trump University only justified a fee of $790,083—the highest we have been able to locate under California's anti-SLAPP law. *Makaeff v. Trump University*, No. 10-cv-940, 2015 WL 1579000 at *25 (S.D. Cal. April 9, 2015) (awarding $790,083 in complex class action lasting five years, and involving multiple appeals, as well as discovery consisting of "voluminous amount of case law, . . . volumes of . . . deposition testimony, declarations, and "voluminous documents and exhibits submitted by both parties." Id., at *25. Across California, none of the other cases involving the most complex fact patterns and protracted litigation even approach the fee sought here.  See also *Open source Sec., Inc. v. Perens*, No. 17-cv-4002, 2018 WL 2762637 (N.D. Cal. June 9, 2018) (multiple anti-SLAPP motions, as well as motions to dismiss and for summary judgment, as well as supplemental briefing; fee awarded: $259,900, which was half of that requested);  *Premier Med. Mgmt Sys., Inc. v. Cal. Ins. Guar. Ass'n.*, 163 Cal. App. 4th 550 (2008) (numerous defendants, anti-SLAPP motions for separate defendants, appellate briefing, and rounds of briefing on multiple issues; fees of approximately $300,000); *Vargas v. City of Salinas*, 200 Cal. App.4th 1331, 1336, 1350 (2011) (nine years of litigation, expert testimony, multiple rounds of briefing; fees awarded were $226,928); *Maloney v. T3 Media, Inc*., No. 14-cv-5048, 2015 WL 3879634 , at 6-7 (C.D. Cal. May 27, 2015)(putative class action, involving fourteen months of litigation; award was $195,838).

**B.     The Court Should Apply the Rule of "Constitutional Avoidance."**

The Court should also consider the impact that a million dollar award—let alone $4 million—would have on both plaintiffs and future litigants. Any award should fulfill the statutory intent of discouraging litigants from filing baseless or frivolous lawsuits.   Here, plaintiffs had every reason to believe when they filed suit that the publications were filled with falsehoods as the Court later found.    They certainly had no way of knowing that the case ultimately would be resolved against them based on evidence which went exclusively to defendants' subjective intent.

Any substantial award  here would not simply discourage baseless lawsuits, it would violate plaintiffs' indisputable First Amendment rights to seek redress and free speech in the

---

for which counsel necessarily had to expend substantial time and resources reviewing these papers and responding. ECF 251, Burke Decl. ¶ 8.

courts, *see NACCP v. Button,* 371 U.S. 415 (1963), denying plaintiffs who engaged in "protected activity" by filing this lawsuit the same equal protection under the Constitution granted to defendants under the anti-SLAPP statute.[3]   A multi-million dollar award would also chill the First Amendment rights of future litigants who seek to file lawsuits or challenge "protected activity," no matter how strong the evidence of falsity.

The rule of "constitutional avoidance" calls for courts to "give a statute's ambiguous language a limiting construction called for by one of the statute's applications, even though other of the statute's applications, standing alone, would not support the same limitation."   *Clark v. Martinez*, 125 S.Ct. 716, 723 (2005).  That canon of construction is "a tool for choosing between competing plausible interpretations of a statutory text, resting on the reasonable presumption that Congress did not intend the alternative which raises serious constitutional doubts."   *Id.* at 724.

One way to deal with the collision between the anti-SLAPP statute and constitutional rights is by harmonizing the legislative intent underlying the anti-SLAPP statute with recent federal cases making clear that the normal rules applicable in state court cannot govern federal proceedings.  *See Metabolife Intern., Inc. v. Wornick*, 264 F.3d 832 (9th Cir. 2001) (Procedural state laws are not used in federal court if to do so would result in a "direct collision" with a Federal Rule of Civil Procedure."); *see also Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co*., 559 U.S. 393, 396, n.1 (2010).

### 1. *Fees should be denied for discovery required under the Federal Rules.*

One way to try and harmonize state and federal interests would be by ruling that fees for discovery sought here are not recoverable under the anti-SLAPP statute.  Such a result is consistent with legislative intent, as shown by refusal to allow discovery, except in exceptional circumstances, *see* Section 425.16(g) ("All discovery proceedings in the action shall be stayed upon the filing of a notice of motion"), which is why it is anticipated that state cases would be "resolve[d] quickly and relatively inexpensively."  *Sandlin v. McLaughlin*, 50 Cal.App.5th 805

---

[3] Ironically, defendants argue that plaintiffs were required to show actual malice by defendants to obtain recovery, but that defendants have a mandatory right to recovery without any showing other than that they won the case.

NELSON, MULLINS, RILEY & SCARBOROUGH, LLP

(2020) (quoting *Rand Resources, LLC v. City of Carson* (2019) 6 Cal.5th 610, 619, 243 Cal.Rptr.3d 1, 433 P.3d 899).[4]   The federal rules, on the other hand, now commands that a plaintiff is entitled to the usual discovery to which they would be entitled opposing a motion for summary judgment.  See *Planned Parenthood Fed'n of America, Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018).  The monstrous fee award sought here is antithetical to legislative intent behind the anti-SLAPP statute, and would chill plaintiffs from suing even where—as here— numerous false and defamatory statements are published about them. The constitutional malice standard is a shield, not a sword to be wielded against plaintiffs in this fashion.

### 2.   Defendants Should Not be Allowed to Recover Fees They Did Not Actually Pay.

*A c*onstitutional collision can be avoided also by construing the anti-SLAPP statute to be true to its language, which is solely to reimburse litigants for fees paid for their defense, which in this case was noting.  See Rosenthal Decl., ¶71.  The statute itself expressly limits fees to those actually paid by them.  See Cal. Stat. §4251.6  (c)(1) ("a prevailing defendant on a special motion to strike shall be *entitled to recover his or her attorney's fees and costs*.")(emphasis added). Courts construing that statute have held that the statute is intended to allow only "recovery" of fees. See, e.g.,  *New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090, 1115 (C.D. Cal. 2004) (defendants entitled to "recover his or her attorney fees"). State cases similarly hold that an "award [of] reasonable attorney fees under section 425.16 [is determined based on what would] adequately compensate [ ] them for the expense of responding to a baseless lawsuit.'" *Mireskandari, at * 4* (citing *Jackson v. Yarbray*, 179 Cal.App.4th 75, 92 (2009).

Limiting fees to those actually paid prevents what happened here: lawyers who—with no client controlling cost—bill time willy-nilly without any concern about how many people do the same work or how long they take.  An award should not be used to train lawyers, or pay for spinning wheels, or padding billable hours.

---

[4] The statute also expresses the legislative intent to limit fees which can be obtained by insisting that the fee application must be filed within sixty days of the filing of suit, and resolved by the court within thirty days of the filing of the motion.  See Cal. Stat. § 425.16(f).

NELSON, MULLINS, RILEY & SCARBOROUGH, LLP

1

2

### C.  IF FEES ARE GRANTED THEY SHOULD BE DRAMATICALLY REDUCED BECAUSE DEFENDANTS HAVE FAILED TO SUSTAIN THEIR BURDEN OF SHOWING THAT THE FEE APPLICATION IS REASONABLE.

3

4

It is defendant's burden to "establish adequately the hours spent preparing the anti-SLAPP

5

motion, and a reasonable hourly rate for private attorneys in the community."    *Yagman v.*

6

*Edmondson*, 723 Fed. Appx 487 (9th Cir. 2018).  "[T]he fee applicant bears the burden of

7

documenting the appropriate hours expended in the litigation and must submit evidence in support

8

of th[e] hours worked. . . . " *Gates v. Rowland*, 39 F.3d 1439, 1449 (9th Cir. 1994)(quoting *Gates v.*

9

*Deukmejian*, 987 F.2d 1392, 1397-98 (9th Cir. 1992).  *See also Hensley v. Eckerhart,* 461 U.S. 424,

10

437 (1983).

11

### A.  The Hourly Rates Charged by Defense Counsel Far Exceed Those Found Reasonable by Courts in this District.

12

13

Defendants have offered no basis for the hourly rate sought in their fee application, instead

14

they rely on a survey and insisting that they are charging their normal hourly rates.  Neither is

sufficient.

15

16

First, defendants cannot just claim to be charging their "regular" rates. "Determination of a

17

reasonable hourly rate is not made by reference to rates actually charged the prevailing party."

18

*Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1985) citing *White v. City of*

19

*Richmond*, 713 F.2d 458, 461 (9th Cir. 1983)). The party seeking fees must submit "satisfactory

20

evidence ... that the requested rates are in line with those prevailing in the community for similar

21

services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*,

22

465 U.S. 886, 895-96 n. 11 (1984).

23

As for the survey offered by Valeo Database to justify hourly rates, it has been severely

24

criticized and rejected in other cases.  See Pierce Decl., ⁋ 21, n.6 (*citing Kranson v. Fed. Express*

25

*Corp.,* 2013 U.S. Dist. LEXIS 173499 * 27 n.12 (N.D. Cal. Dec. 11, 2013); *Lota v. Home Depot*

26

*U.S.A., Inc.*, 2013 U.S. Dist. LEXIS 181848 *55 n.26 (N.D. Cal. Dec. 31, 2013). Commenting on

27

the same analysis offered here by the same law firm present here (Davis Wright), another Court in

28

this District commented that "the parties cherry-pick individual cases in which courts approved

NELSON, MULLINS, RILEY & SCARBOROUGH, LLP

various hourly rates," and that the appropriate measure as to rates is through expert testimony and legitimate surveys of attorneys' fees. *See Resolute Forest,* n. 3.

As shown by the Pierce Declaration, there is a robust body of law establishing reasonable rates in this community for similar work.    The average rates awarded by courts in the community where the case was pending range from $450-650 for partners, $300-425 for associates, and $180 for paralegals. See Pierce Decl., ¶¶ 41, 46.   Considering all factors, various rates sought by defendants exceed those average rates found to be reasonable by courts in this district.  See Pierce Decl.  See Pierce Decl., ¶ 44.[5]

Defendants make no attempt to address this precedent. That is particularly true as to Covington, which is responsible for the majority of fees and expenses (over $2 million).  Instead of justifying its fees, defendants offer a declaration by a practicing lawyer who confesses that "hourly rates charged by Covington lawyers are "higher, in my experience [than those for similar work discussed in his declaration, and that] this reflects the reality that large law firms that maintain international offices to meet the needs of their clients overseas charge higher hourly rates."  ECF 316-3, Bostwick Decl., ¶ 20.  Whether Covington services clients in Beijing, or does project

___

[5] Cases cited by Pierce establish reasonable rates far below those charged here.  A reasonable rate for experienced First Amendment litigators was found to be between $225 to $775, with the latter being appropriate for someone with 35 years of experience, and 150 to $220 for paralegals.  See *Peak Health Center v. Dorfman*, 2020 WL 3254337, at 5 (N.D. Cal., 6/16/20).  *Drevaleva v. Department of Industrial Relations*, 2019 WL 7172621 (Cal. lst Dist., 12/20/19) ($250 per hour); *Gemcap Lending I, LLC v. Unity Bank Minn.*, 2019 WL 3842010, at 5 (N.D.Cal., 8/15/2019); *Pecot v. Wong*, 2018 WL 459354 (lst Dist., 1/18/18) ($400 per hour); *Vargas v. Berkely Unified School District*,  2017 WL 5991857 (N.D. Cal. 12/4/17) (rate for a "partner with almost 29 years of experience at $625/hr, the senior associate with almost nine years of experience at $450/hr, and the junior associate at $350/hr"); *Loop Al Labs Inc. v. Anna Gatti,* 2016 WL 2640472 (N.D. Cal. 5/9/2016) ($230 to $440 per hour) (relying on *Henry v. Bank of Am. Corp.*, No. C 09-0628 RS, 2010 WL 3324890, at *3 (N.D. Cal. Aug. 23, 2010) (rates of $225 per hour for the associate and $515 per hour for the partner); *Minichino*, 2012 WL 6554401, at *5 (rate for nine and fourteen years of experience reasonably billing rates ranging from $450-555); *Braden v. BH Fin. Servs., Inc.*, No. C 13-02287 CRB, 2014 WL 892897, at *6-7 (N.D. Cal. Mar. 4, 2014) ($610 per hour for partners, and $310 per hour for managing attorney with over eight years of experience); .*Fallay v. San Francisco City and County*, 2016 WL 879632, at 6 (N.D. Cal. 3/8/16) ($205 for an attorney "with over thirty years of experience, [who] has tried approximately 25 cases to verdict, [and] has been retained as an expert on insurance matters, and has been selected as a Super Lawyer in recent years"); *Ryan v. Editions Ltd. West, Inc.,* 2016 WL 233093, at 6 (N.D. Cal. 1/19/16) ($350 per hour).

finance in Johannesburg, has no bearing on the reasonableness of fees in this case, which is governed by reasonable rates in this community for similar work.

The relevant community for purposes of determining the prevailing market rate is generally the "forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.,* 523 F.3d 973, 979 (9th Cir.2008).  *See Center for Biological Diversity v. County of San Bernardino*, 185 Cal.App.4th 866, 901 (2010) ("Generally, the reasonable hourly rate used for the lodestar calculation is that prevailing in the community for similar work" (internal quotations omitted)).  Not only does that rule out fees due to Covington's international practice, it also excludes cases relied upon by defendants from other forums.[6]

Accordingly, if any fees are awarded, they should be based on the reasonable community rates reflected in the Pierce Declaration, which range from  $450-650 for partners, $300-425 for associates, and $180 for paralegals. See Pierce Decl., ⁋⁋ 41, 46.

**B.      Defendants' Claimed Hours Are Totally Unreasonable.**

*1.    Defendants Are Only Entitled to Recover Fees and Expenses Related to the Anti-SLAPP Motion, Not the Entire Case.*

Defendants seek fees and expenses for the entire case.  But a defendant may not "transfer to the opposing parties the cost of every minute counsel expended on the case," including billings "which would have been incurred whether or not [defendant] filed the motion to strike")." *Christian Research Inst. v. Alnor,* 165 Cal. App. 4th 1315, 1325 (2008).  Fees are recoverable only if "directly related to defendants' special motion to strike."  *Mireskandari,* at 4 (quoting *Jackson v. Yarbray*, 179 Cal.App.4th 75, 92 (2009)); *see also*, *League of United Latin American Citizens, Inc. v. Eureste*, No. 13-CV-04725-JSC, 2014 WL 5473560, *1 (N.D. Cal. Oct. 28, 2014) (" 'The defendant may recover fees and costs only for the motion to strike, not the entire litigation,' "

---

[6] Even if the court were to go beyond rates charged in this community, there are numerous cases from other forums demonstrating that the rates charged by defense counsel are out-of-line with the prevailing rates in the community.  For instance, Mr. Burke represented that a reasonable hourly rate for him in 2013 was $465, see *Smith v. Payne*, at 3.  Burke's firm, Davis Wright and Tremaine, alleged that reasonable hourly rates for a defamation case ranged "from $270 per hour for a second-year associate to $495 per hour for a partner with 30 years of experience."  *Maloney v. T3Media, Inc.*, 2015 WL 3879634 (C.D. Cal., May 27, 2015).

NELSON, MULLINS, RILEY & SCARBOROUGH, LLP

citing *Alnor*, 165 Cal.App.4th at 1320). The application must establish "a proper basis for determining how much time was spent on particular claims" in the anti-SLAPP motion. *See Hensley*, at 437. *See also Blackburn v. ABC Legal Services, Inc.*, No. 11-CV-01298 JSW (NC), 2012 WL 1067632, *4 (N.D. Cal. Feb. 24, 2012) (emphasis added). Courts have an "independent duty" to determine whether the hours and fees are reasonable. See, e.g., *Contreras v. City of Los Angeles*, 2013 U.S. Dist. LEXIS 49412 *3 (C.D. Cal. March 28, 2013). Here, they clearly are not.

First, all fees and expenses should be denied relating to the extensive litigation over jurisdiction and venue both in Maryland and in this Court. See Glynn Decl., ¶¶ 31-32. Almost half the time this case was pending was spent dealing with a ruling on the motion to transfer venue from Maryland to this Court. Until the court ruled on retransfer. the case to Maryland, it was unclear whether an anti-SLAPP motion would be allowed at all in the case since Maryland law differs substantially from California as to anti-SLAPP motions. Further, the FAC was not filed until March, 2018, substantially narrowing the issues to be addressed in the anti-SLAPP motion.

Here, activities which were unrelated to the anti-SLAPP motion are not recoverable,, see Glynn Decl., ¶¶ 31-34, including those relating to jurisdiction and settlement discussions. *See Open Source v. Perens*, No. No. 17-cv-04002-LB,.2018 WL 2762637, at *7 (N.D. Cal., 6/9/18). In total, as reflected by Mr. Glynn, $122,073 should be deducted to cover fees and expenses unrelated to the anti-SLAPP Motion, see Glynn Decl., ¶ 32, which he concludes likely understates considerably the correct amount due to vague and blocked-billed entries. *See id.,* ¶¶ 37-38.

**2.  Time Claimed For anti-SLAPP Discovery Is Grossly Excessive.**

Defendants claim that they are entitled to $1,071,984.18 for document and audiovisual review and production. See Glynn Decl., ¶ 34. This allegedly reflects 2,1377.44 hours of attorney and paralegal time. *Id.* Defendants insist that discovery was extensive, but that is both their fault and not directly related to the anti-SLAPP motion. Instead of producing discovery limited to what had been requested by plaintiffs, defendants went out of their way to engage in a data dump designed to create the proverbial haystack where they could then hide the needle.  As reflected in the Glenn and Molner Declarations and shown below, the amount sought for discovery is excessive.

14

### a. Fees and Costs Should be Denied for Discovery Unrelated to the USDA Program and the First Two Publications.

The anti-SLAPP motion was filed on July 2, 2018.  Dkt. No. 107.  Plaintiffs quickly agreed to requests by defendants to narrow any original requests only to documents "essential" to the response to the motion to strike, and told defendants that production should be limited to documents relating to the USDA program.  Rosenthal Decl., Ex. B at 75-76.  Defendant counsel acknowledged that message, and responded:

> If we want to just narrow this down to USDA related documents, this would be a much shorter process, far less discovery, and a very tiny SLAPP motion.

Id. at 76.  Defendants, on the other hand, continued producing material which had nothing to do with the USDA program, as well as hundreds of hours of material relating to interviews of individuals who similarly had no such involvement.  Rosenthal Decl., ¶¶ 56-57.

It is completely disingenuous to allege that following that colloquy, plaintiffs refused to do anything to avoid incurring additional expense.  In fact, as discovery was concluding, defense counsel wrote to Magistrate Judge Corley, advising that plaintiffs had made "granular" requests, not an open-ended request for massive discovery.   Nor should there have been any confusion about the issues in the case; Judge Chesney had little difficulty understanding that the case was about the alleged misuse of the USDA's funds, and explicitly so held.  See ECF 309, at 4:16-19.

Equally unavailing is the effort to claim that plaintiffs were unwilling to limit the number of defamatory statements at issue, again forcing defendants to produce thousands of pages of material and recordings.  Each of the three times plaintiffs offered to narrow the issues, both to reflect that the case was about the USDA program, and even to limit the number of defamatory statements, defendants refused.   See Rosenthal Decl., ¶¶ 24-30.

### b. Fees and costs associated with document review and production, including translation services, are unreasonable.

The majority of the fees sought for discovery relates to review and production of documents. As discussed above, Defendants produced a mere 13,573 documents—not 90,000 as they claim—and a third of those were photographs. Rosenthal Decl., ¶ 48; Molner Decl., ¶ 10, 12.

15

NELSON, MULLINS, RILEY & SCARBOROUGH, LLP

Typical of their "document dump" production was 500 photos of Kandani Ngwira making funny faces.  See Rosenthal Decl., Ex. T.

Much of defendants' documentary production was irrelevant, and should not even have been reviewed for production.  These included a large number of government reports relating to programs unrelated to the USDA Programs at issue in this case, and having nothing to do with any of the plaintiffs.  See, e.g., *Id.*, Ex. M and accompany text. Such reports included, to cite a few examples, a governmental plan for Namibia, Tuberculosis in Mozambique, Integrated Social Marketing in Zambia, and soybean production in Afghanistan.  *Id.*  A large number of documents relate to the case in Denmark against Amdi Mogens Petersen, much in Danish.  See id., ⁋ N and accompanying text.  Based on the representation by plaintiffs on the record, *see supra,* there was therefore no need for defendants to produce any of those documents, which would have reduced the number of documents to be produced to exactly what defense counsel acknowledged:   a "very tiny" number.

Defendants' request for review of audio recordings, and translation services generally, should also be denied outright, or reduced substantially.  See Rosenthal Decl., ⁋ 40.  The bulk of the translation services related to documents from Denmark, which related to the case against Amdi Mogens Petersen.  See i*d.*  Those documents were not only irrelevant to the anti-SLAPP motion, but were not sought by plaintiffs in discovery.  *See supra.*  There was no obligation to translate and produce any of them.  The same is true of translations from Malawi, other than those relied upon in the anti-SLAPP motion, which could have been obtained by local counsel.

### c.  Fees for production of audiovisual material should be reduced or disallowed.

As far as audio recordings, the amount claimed for what should have been largely clerical tasks obtaining transcripts and translations is approximately $80,000!  Glynn Decl., Ex. 15.  There were a total of two recordings which were translated and produced. Rosenthal Decl., ⁋⁋ 39-41.  Moreover, in light of the fact that one of the three law firms was in Malawi, there was no need to incur an excessive amount of time by lawyers in San Francisco arranging for translations and reviewing those three recordings to determine whether they were accurate.  Because the Malawi firm has not provided any breakdown of their fees, the Court can presume that attorneys in Malawi

16

actually performed those services, which were then included in their invoices. Accordingly, the entire amount charged for arranging or dealing with translation services should be denied.

Finally, defendants claim a substantial portion of the entire amount charged for discovery required that needed to review 80 audio recordings based on the factually inaccurate claim that they needed to *listen* to all such tapes to determine whether they contained confidential sources. See ECF 316-1 (Frankel Decl., ¶ 5). Any such review would have been done by clients familiar with voices of sources on the tapes. Moreover, the review was not done listening to tapes, but by the far more expedient process of reviewing transcripts, Glynn Decl., ¶ 43, many of which were obtained prior to the filing of the lawsuit. Rosenthal Decl., ¶64. Also, 37.5 hours of those recordings did not pertain to the USDA program, and were not sought by defendants in discovery. Rosenthal Decl., ¶ 57.

### d. *Defendants' Charges Relating to Deposition Preparation and Attendance Should be Either Eliminated or Reduced Substantially.*

Defendants claim that approximately $539,558 was necessitated by the six depositions taken in this case, none of which required defendants to prepare to cross-examine witnesses since they were defending all six. Glynn Decl., ¶¶ 50-51. Three depositions lasted considerably less than a full day, *see* Rosenthal Decl., ¶ 67, and two were characterized by defendants as so marginal that they belatedly tried to withdraw their declarations. See ECF 286 at 8.

Some of those charges – such as time recorded purportedly for attending a deposition – were inflated by thousands of dollars. See Glynn Decl., ¶¶ 49-50 (comparing time spent in attendance at depositions in defense counsel's own building with deposition transcripts reflecting the actual duration of each deposition). Given this conflict between defendants' time records and indisputable evidence casting doubt on those entries, it is difficult to accept any of the defendants' entries. Moreover, even if the time had actually been spent, the charges are not recoverable. As reflected in the Glynn declaration, defendants had multiple attorneys present even though they were only defending all six depositions, and none of these other attorneys participated. See Glynn Decl., ¶ ¶50-52. Fees are recoverable only for one attorney defending a deposition. *See, e.g.*, *Ramos v. Lamm*, 713 F.2d 546, 554 n.4 (10th Cir. 1983). "[J]ust as there can be too many cooks in a kitchen, there can be too many lawyers on a case." *Guckenberger v. Boston Univ.*, 8 F.Supp.2d

17

91, 101 (D. Mass. 1998); See also, *Thayer v. Wells Fargo Bank,* 92 Cal.App.4th 819, 843 (2001) (fee award reversed where numerous attorneys passively appeared on behalf of a single client).

The amount of time spent preparing for depositions is staggering.   Defense counsel contend that they spent 548.18 hours for one firm and 67.94 for another, at a cost of over $400,000. See Glynn Decl., ¶ 49.   Those costs should be disallowed entirely or reduced substantially.

### e.  *Fees and Costs Should be Denied for Discovery Disputes.*

Defendants claim that they spent 170.45 hours in connection with discovery disputes, which generated $70,829 in fees.   See Glynn Decl., ¶¶ 56-57.   Other entries are too vague to determine whether they relate to discovery disputes.  See *id*.

Any award of fees for such disputes would contravene Fed.R.Civ.P. 11 and 37, which control any award of fees in federal cases.  In fact, defendants' position would result in fees being awarded to them for discovery disputes as to which plaintiffs prevailed, in whole or in part.

Under Rule 37(a)(5)(A), "[i]f [a] motion [seeking discovery] is granted—or if the disclosure or requested discovery is provided after the motion was filed—the court must" award fees to the prevailing party, unless one of the limited exceptions applies.  It is ludicrous for defendants to now argue that notwithstanding the express command of Rule 37, which should have resulted in an award of fees to plaintiffs on certain motions, the Court is required by the state anti-SLAPP statute to award fees to defendants for their unsuccessful arguments. The same is true of their application seeking fees for services rendered in an unsuccessful effort to obtain discovery from plaintiffs.  Under Rule 37, plaintiff should have been entitled to fees for services rendered opposing meritless requests for discovery.  Instead, defendants are claiming that they are entitled to fees in their unsuccessful efforts.

### 3.  The Number of Hours Expended Drafting the anti-SLAPP Motion is Grossly Excessive.

Defendants seek over $812,354 for time spent preparing the motion and reply, not counting vague entries which would increase those numbers.  See Glynn Decl. ¶ 58.  In *CoreCivic*, the same counsel present here, Davis Wright and Thomas Burke, argued that they were entitled to fees of approximately 400 hours for preparing the anti-SLAPP motion in that case.   Judge Alsop

NELSON, MULLINS, RILEY & SCARBOROUGH, LLP

disagreed, and held, based on a long-line of authority, that "a reasonable time expenditure for an anti-SLAPP motion [is] . . . between 40 and 75 hours, not 407.9 hours [sought by Davis Wright and Burke in *CoreCivic*].[7]   Defendants request in this case dwarfs that found excessive in *CoreCivic* cases cited in *CoreCivic* awarding fees of between 40 and 75 hours.

There is nothing about the motion here which distinguishes the holding in *CoreCivic* or the other cases cited above.   The same counsel is involved in both cases.   Even before *CoreCivic*, courts recognized that where, as here, defense counsel  "are old hats at anti-SLAPP motions and experts in defamation [law]," there are less  hours of work to be reasonably incurred.  *Maughan v. Google Tech., Inc.*, 143 Cal. App. 4th 1242, 1251-52 (2006).[8]   Based on defendants' own fee application, they inflated the time needed to draft the anti-SLAPP motion by having associates perform tasks, such as reviewing general First Amendment law or researching generally anti-SLAPP motions, which  was not needed by "old hats" like Mr. Burke and Ms. Doran.   And while

---

[7] *See  Crowe v. Gogenini, No.  No. 2:11–cv–3438  2014 WL 130488, at \*5 (E.D. Cal. Jan 13, 2014)* , 2014 WL 130488, at \*5 (135.4 hours excessive; reduced to 75 hours); *Moreau v. Daily Indep.*, No. 12-cv-1862, 2013 WL 796621, at \*3 (E.D. Cal. Mar. 4, 2013) (164.6 hours excessive; reduced to 40 hours); *League of United Latin Am. Citizens Inc. v. Eureste*, No. 13-cv-4725, 2014 WL 5473560, at \*2 (N.D. Cal. Oct. 28, 2014) (32.5 hours reasonable); *Plevin v. City & Cty. of S.F.*, No. 11-cv-2359, 2013 WL 2153660, at \*8 (N.D. Cal. May 16, 2013) (71.5 hours reasonable); *Minichino v. First Cal. Realty*, No. 11-cv-5185, 2012 WL 6554401, at \*5 (N.D. Cal. Dec.14, 2012) (27.4 hours reasonable); *Smith v. Payne*, No. 12-cv-1732, 2013 WL 1615850, at \*3 (N.D. Cal. Apr.15, 2013) (78.5 hours reasonable); *Hyan v. Liberty Surplus Ins. Corp.*, No. 14-cv-2004, 2020 WL 5092448, at \*4 (C.D. Cal. Jan. 15, 2020) (55 hours reasonable); *Bekele v. Ford*, No. 11-cv-1640, 2011 WL 4344189, at \*4 (N.D. Cal. Sept. 15, 2011) (25 hours reasonable); *Blackburn v. ABC Legal Servs., Inc.*, No. 11-cv-1298, 2012 WL 1067632, at \*6 (N.D. Cal. Feb. 24, 2012), *adopted*, 2012 WL 1067551 (N.D. Cal. Mar. 28, 2012) (37 hours reasonable); *Maughan v. Google Technology, Inc.*, 143 Cal. App. 4th 1242, 1249-51 (2006) (rejecting request for fees for *"over 200 hours of work"* as *"excessive,"* especially considering the defendant's counsel's familiarity with defamation law, and finding instead that "reasonable time spent on the anti-SLAPP motion and [fee motion] is ... approximately *50 hours* or one attorney work week."); *Lee-Tzu Lin v. Dignity Health-Methodist Hospital of Sacramento*, No. 14-cv-666, 2014 WL 5698448, at \*5, 7 (E.D. Cal. Nov. 4, 2014) (involving complex legal issues, and holding that the request for fees for *over 211 hours was excessive,* reducing the total to 72 hours).  In  *AT&T Mobility*, 2018 WL 1567819, at \*3, the court reduced 92.3 hours sought by defendants to 74.8 hours, which were found to be "on the high end").

[8] Burke writes that he has for "nearly 30 years ... represented clients in **hundreds** of anti-SLAPP litigation matters in California," and that he has "one of the strongest media and First Amendment practices in the country," and teaches media law." ECF 316-4 at 18.

19

we put no credence in Mr. Frankel's claims that members of his team had "substantial experience in this substantive area of law" see Frankel Decl., 316-1, ¶ 27, Mr. Burke and Ms. Doran more than made up for Covington's deficiencies.

Nor are defense counsel's enormous fees justified by the need for declarations.  Defendants themselves belatedly tried to avoid discovery by complaining that two of their own declarations (Salladay and Sullivan) were so inconsequential that they should be withdrawn.   See ECF 286. Much of the material contained in declarations submitted by defendants had so little to do with the allegations in the case that neither defendants nor the Court mentioned them. See, e.g., Dkt. 126, ¶¶ 2-30 (Goteka's allegations regarding his history in game management, work performed in Zimbabwe, other employment positions and efforts to find a missing dog for Amdi Petersen).

Defendants charge an exorbitant amount for preparing six declarations (Ngwira, Goteka, Zebiah, Munthali, Chitosi and Longwe).  See Glynn Decl., ¶¶ 59-60 (including $64,300 for just one and $54,212 for another).  Yet declarations by the above six individuals, as well for Messrs. Mtimbuka and Molande, were all prepared by either by Mr. Theu of the Ritz law firm or Mr. Nkhata, according to billing records and declaration submitted by Nkhata, see ECF 123, and Theu, see ECF 124.  See Glynn Decl., ¶¶ 61-63.  Not only did defendants charge time by Nkhata and Theu for such services, but defendants then added tens of thousands of dollars in fees for preparing those same declarations or dealing with Nkhata and Theu, and then added on top of all that, additional charges for preparing declarations by Messrs. Nkhata and Theu, confirming that those two were the ones who had done the work on the declarations.  See Glynn Decl., ¶ 62 (charging 18.5 hours costing $8,439 for preparing Nkhata's six paragraph declaration attesting to his work preparing the Longwe declaration).   See *Ketchum,* at 1132 (" '[P]adding' in the form of inefficient or duplicative efforts is not subject to compensation.").

It would also be grossly unfair to require plaintiffs to pay any of the costs associated with declarations by witnesses who avoided discovery.   As reflected in prior filings, defendants urged these witnesses to refrain from complying with formal or informal discovery requests by telling these witnesses that they may be contacted by plaintiffs' counsel, but did not need to talk with them.  See ECF ECF 166, 167, 189.  Defendants also obstructed efforts to contact these witnesses

20

by failing to provide information required in initial disclosures, which obligated them to provide contact information for all individuals with relevant knowledge supporting the defense. *See id*. Given the fact that letters rogatory could not be issued with addresses for service of process due to defendants' refusal to provide adequate information in their initial disclosures, *id.*, it is no surprise that the Government of Malawi may not have been able to serve these witnesses.

### 4.   Defendants' Fees For Oral Argument That Never Happened Are Excessive.

Defendants even request over $80,000 in fees, preparing for oral argument on the anti-SLAPP motion.  See Glynn Decl., ¶ 65. But there was no argument on the anti-SLAPP motion. It was cancelled days before the scheduled hearing. Nor do Defendants' explain why they needed so much preparation for a motion they supposedly spent thousands of hours working on already.   As recognized in the Glynn declaration, that amount is grossly inflated, and should be eliminated entirely or reduced to $5200.  *Id.*., ¶ 66.

### 5.   Fees and Expenses Should Also Be Denied Where It Is Impossible for the Court to Determine Whether the Hours or Expenses are Reasonable.

A party seeking an award of fees must sustain its burden of providing "substantial evidence to support the fee award." *Kearney v. Foley & Lardner,* 553 F. Supp. 2d 1178, 1185 (S.D. Cal. 2008).  *Fallay v. San Francisco City & Cty.,* 2016 WL 879632, at *5 (N.D. Cal. Mar. 8, 2016) (where fee records are "too vague to support determination of which time is recoverable," the court may "exercise its discretion in assigning a reasonable percentage to the entries, or simply cast them aside").  "[I]nflated, noncredible, often vaguely documented hours claimed by counsel preclude[s] turning [a] contingent fee arrangement with counsel into a windfall."  *Alnor*, 165 Cal.App.4th at 1329.  A fee request that appears unreasonably inflated is a special circumstance permitting the trial court to reduce the award or deny one altogether. *Ketchum, at* 1137.  See also *Open Source*, (allowing across-the-board percentage cuts).  If the time entries are insufficient to allow the court to determine whether counsel was inefficient or duplicated efforts by others, recovery should be denied. *Ketchum*, *supra*, 24 Cal.4th at 1132.

In that regard, the entire set of entries by the Ritz law firm is vague, fails to reveal how many lawyers were involved in a task, and offers large hourly blocks of time which overstates

NELSON, MULLINS, RILEY & SCARBOROUGH, LLP

cost.  All entries note that they prepared the same declarations that Davis Wright and Covington apparently charged for preparing.  *See supra* at 20.   Only by reading the Nkhata and Theu declarations is it possible to see that the Davis Wright and Covington charges are duplicative and unnecessary since Ritz prepared those declarations. In any event, the Ritz fees are dealt with as part of the charges preparing the anti-SLAPP motion.  *See supra.*

> ### a.        *Block-billed entries should be denied or reduced substantially***.**

As reflected in the Glynn declaration, there is extensive use of block billing,  See Glynn Decl., ¶¶ 69-70.  All such entries deprive the Court of the information needed to determine the reasonableness of the fees sought in this case.  See, e.g., *Open Source Sec., Inc. v. Perens,* 2018 WL 2762637, at *4 (N.D. Cal. June 9, 2018).   Fees and expenses should be denied "where counsel's billing records contain insufficiently descriptive entries, show evidence of block billing, or show billing in large time increments").  Courts have therefore reduced block billed entries by 20-30%.   The Ninth Circuit  held in *Welch v. Metropolitan Life Insurance Co.*,  480 F.3d 942, (9th Cir. 2007):

> "Block Billing: If one amount of time is shown for working on more than one discrete task, this is called 'block billing' or 'lumping' time. This is almost never allowed by federal courts. The practice hides accountability and may increase time by 10% to 30%.

*Welch* has been applied repeatedly in this District.  See, e.g., *Apple, Inc. v. Samsung Elec. Co., Ltd.*, 2012 U.S. Dist. LEXIS 160668 *24 25, *30 (N.D. Cal. Nov. 7, 2012) (finding block billing precludes an evaluation of the reasonableness of the hours, and "inflates hours by between 10% and 30%); *Hajro v. United States Citizenship and Immigration Services*, 900 F. Supp. 2d 1034, 1053 (N.D. Cal. 2012) (block-billed entries reduced); *Ctr. for Food Safety v. Vilsack*, 2011 U.S. Dist. LEXIS 144428 *25-26 (N.D. Cal. Oct. 12, 2011); *Ryan v. Editions Ltd. West, Inc.*, 2012 U.S. Dist. LEXIS 179641 *16 (N.D. Cal. Dec. 18, 2012) (same).

Based on the Glynn Declaration, it is appropriate to reduce the block billed entries by at least 30%.   Glynn Decl., ¶ 70.

NELSON, MULLINS, RILEY & SCARBOROUGH, LLP

### b.   *Vague Entries Should be Disallowed Completely or Reduced Substantially.*

Vague entries are as pernicious as block-billing since, depending on the entry, the court may have no way to assess what was done.  Accordingly, courts disallow entries which are too vague to allow the court to perform its review function.   See *H.J., Inc. v. Flygt Corp.*, 925 F.2d 257, 260 (8th Cir. 1991) (entries such as "legal research" or "trial prep" or "meet with clients" inadequate); *In re Donovan*, 877 F.2d at 982, 995 (D.C. Cir. 1989) (excluding time for "legal issues" and "conference re: all aspects" or "call re status"). *See also DeSimone V. Industrial Bio-Test Laboratories*, 83 F.R.D. 615, 622 (S.D.N.Y. 1979).  See also *Welch, supra*.

The California Mandatory Fee Arbitration Advisory Opinion 03-01 specifically identify a lack of billing detail as being a form of bill "padding" warranting a reduction in submitted legal fees.   Inappropriate descriptions include: "'research issues', 'attention to file', 'discovery' 'prepare for trial' and similar statements are not specific enough to let the reader know what was done. *Id.*  As reflected in the Glynn Declaration, billing records are replete with vague descriptions, see Glynn Decl., ¶ 66 (all entries stating "assist" on tasks), ¶ 71.

### c.   *Redactions also impair the Court's ability to assess the reasonableness of fees.*

Redactions similarly prevent the Court from assessing what work was done, and therefore the reasonableness of the fees.  Glynn Decl., ¶ 69.   Awards are reduced to eliminate charges based on redacted entries.  See, e.g.,  *APL Co. PTE, LTD v. UK Aerosols, LTD et.al.*, 2010 U.S. Dist. LEXIS 91853, September 3, 2010 (N.D. California 2010); *Tomlinson v. Combined Underwriters Life Ins. Co.*, 2009 U.S. Dist. LEXIS 66495 at *3 (N.D. Okla. July 29, 2009) ("redactions deprive the court of the ability to determine whether the time spent on a particular task was reasonable.").

### 6.  Legal Fees for Clerical and Administrative Tasks Are Not Recoverable.

"[A]ttorney or even legal assistant skills . . . not required for the job," cannot be recovered. *Role Models America, Inc. v. Brownlee,* 353 F.3d 962, 973 (D.C. 2004).  Court uniformly exclude administrative and clerical tasks.  See, e.g., *Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009) (filing fees, obtaining transcripts and other document organization is clerical in nature and not billable at paralegal rates); See *Taleff v. Southwest Airlines Co.*, 2013 U.S. App. LEXIS 7296 *8 (9th Cir. Mar. 21, 2013) ("Filing is clerical work"); *Nadarajah v. Holder*, 569 F.3d 906, 921

23

NELSON, MULLINS, RILEY & SCARBOROUGH, LLP

(9th Cir. 2009) (disallowing mailing, obtaining transcripts, researching filing procedures, and collecting documents as examples of clerical work); *Santiago v. Equable Ascent Fin.*, 2013 U.S. Dist. LEXIS 97762 *8-9 (N.D. Cal. July 12, 2013) (clerical work is " part of normal overhead costs and . .  not included in recoverable hours."); Var *Prison Legal News v. Schwarzenegger*, 561 F. Supp. 2d 1095, 1102 (N.D. Cal. 2008) (disallowing indexing, filing, calendaring and gathering and copying documents cannot be billed at paralegal or attorney rates); *Firestone v. Parkview Health Systems, Inc.*, 374 F. Supp. 2d 658, 666 (N.D. In. 2005) (disallowing organizing file folders, document preparation, copying documents, scheduling matters, mailing letters).

Accordingly, $35,340.92 in fees for clerical and administrative tasks should be disallowed, *see* Glynn Decl., ¶67, including tasks disguised as "costs" discussed below.

## C.   REQUESTS FOR COSTS SHOULD BE DENIED OR REDUCED.

In addition to administrative and clerical entries for attorneys and paralegals discussed above, an additional $96,496.88 is sought by Davis Wright for document production and Discovery.  *See* Burke Declaration, see ECF 316-4 at 198-225.  Covington does not even try to segregate charges in its $55,001.20 sought as costs. *See* ECF 316-1, at 77.  It is impossible to tell whether "litigation support," for instance, duplicates the two firms' charges, or fees by attorneys or paralegals given the vague entries. See Molner Decl., ¶19.

Nor are defendants entitled to costs which are not recoverable under 28 U.S.C. § 1920, or L.R. 54, see Glynn Decl., ¶ 72.  Such non-recoverable costs include the majority of eDiscovery costs, including hosting fees, collecting and preserving electronically stored information, processing and indexing, keyword searching for responsive and privileged documents, or de-deduplification. *Se*e, e.g., *Interim Healthcare, Inc. v. Health Care@Home, LLC ,*2019 WL 6791465 (S.D. Fla. November 27, 2019)  ("uploading documents to the e-discovery software program. . . " non-recoverable); *Medifast, Inc. v. Minkow*, 2015 WL 13827934, at *  (S.D. Cal., 3/24/15) (converting electronic data non-recoverable).  See *Race Tires America, Inc. v. Hoosier Racing Tire Corp.*, 674 F.3d 158, at *167-70 (3d Cir. 2012) ("gathering, preserving, processing, searching, culling, and extracting ESI" are not recoverable);  *Phillips and Jordan, Inc. v. McCarthy Improvement Co*., 2021 WL 364644 (D. S.C., 2/3/21) (denying costs for "actions such

24

as 'flattening,' 'indexing,' data extraction, hosting, Bates Stamping ... 'Active Hosting,' 'Processing for Review,' 'User Access,' and 'Data Filtering' ").

No explanation exists showing why particular eDiscovery costs were necessary or reasonable. *See Lighthouse v. Printroom, Inc.*, 2015 WL 12732-457, at *10 (C.D. Cal., 12/10/15) (eDiscovery costs denied without justifying particular costs). Even an expert in eDiscovery cannot figure out from the vague entries what task was performed or whether the charge was reasonable. See Molner Decl., ⁋ 19.  Defendants should not expect that the Court could do so.

## D.  DEFENDANTS' SHOULD BE DENIED FEES ON FEES.

Defendants intend to seek "fees on fees" in their reply for preparing their application, depriving plaintiffs of an opportunity to comment on those fees and the court of the ability to assess the overall size of the fee application.  Defendants should be held, therefore, to have waived their right to seek any "fees on fees" for their initial application.  Furthermore, should the court reduce or reject their initial application, defendants should not receive fees for submitting an excessive application. See *Resolute Forest,* 2020 WL 8877818, at *4 (citing *Ford Motor Credit Co., LLC v. Gilbert*, No. 6:15-cv-01610-JR, 2017 WL 2766168, at *4 (D. Or. June 26,2017).

In the same vein, it is particularly appropriate here to follow the rule prohibiting a party from using their reply to present new arguments and evidence.  See *Leo v. Cary*, 158 Fed.Appx. 60 (9th Cir. 2005) (refusing to consider new arguments and evidence in the reply brief); (refusing to consider evidence presented in support of its reply brief)  It would be grossly unfair to allow defendants to try to use their reply to present new material in an effort to cure their failure to satisfy their burden and then claim fees on fees for such improper tactics.

### CONCLUSION

For the reasons stated above, Defendants' attorney fee application should be deferred or, if reached on its merits, denied either entirely or in substantial part as excessive.

Respectfully submitted,
NELSON, MULLINS, SCARBOROUGH & RILEY

*/s/ Samuel Rosenthal (pro hac vice)*
Attorneys for Plaintiffs Planet Aid, Inc. and
Lisbeth Thomson

25