SIMON J. FRANKEL (CA State Bar No. 171552)
Email: sfrankel@cov.com
ALEXA HANSEN (CA State Bar No. 267271)
Email: ahansen@cov.com
COVINGTON & BURLING LLP
415 Mission Street, Suite 5400
San Francisco, CA 94105
Telephone: (415) 591-6000
Facsimile: (415) 955-6552

THOMAS R. BURKE (CA State Bar No. 141930)
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, CA 94111
Telephone: (415) 276-6500
Facsimile: (415) 276-6599
Email: thomasburke@dwt.com

AMBIKA KUMAR DORAN (*pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1201 Third Avenue, Suite 2200
Seattle, WA 98101
Telephone: (206) 757-8030
Facsimile: (206) 757-7030
Email: ambikadoran@dwt.com

BRENDAN CHARNEY (CA State Bar No. 293378)
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, Suite 2400
Los Angeles, CA 90017
Telephone: (213) 633-6800
Facsimile: (213) 633-6899
Email: brendancharney@dwt.com

Attorneys for Defendants
THE CENTER FOR INVESTIGATIVE REPORTING
(d/b/a "REVEAL"), MATT SMITH, and AMY WALTERS

IN THE UNITED STATES DISTRICT COURT

THE NORTHERN DISTRICT OF CALIFORNIA

PLANET AID, INC. and LISBETH THOMSEN,

Plaintiffs,

v.

THE CENTER FOR INVESTIGATIVE REPORTING (d/b/a "REVEAL"), MATT SMITH, and AMY WALTERS,

Defendants.

Case No. 17-cv-03695-MMC

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS PURSUANT TO CALIFORNIA CODE OF CIVIL PROCEDURE SECTION 425.16(c)**

Date: July 30, 2021
Time: 9:00 a.m.
Judge: Hon. Maxine M. Chesney
Courtroom: 7, 19th floor

# TABLE OF CONTENTS

Page

I. INTRODUCTION ....................................................................................................1

II. DEFENDANTS' FEES MOTION SHOULD BE GRANTED NOW................................2

III. DEFENDANTS ARE ENTITLED TO ATTORNEYS' FEES AND COSTS. ..................3

A. The Canon of Constitutional Avoidance Does Not Apply Here.............................3

B. Fees for Anti-SLAPP Discovery Are Recoverable.................................................4

C. Fees for Pro Bono Work Are Recoverable. ...........................................................4

IV. DEFENDANTS' FEE REQUEST IS REASONABLE.....................................................5

A. Defendants' Fee Request Is Distinguishable from Prior Cases. .............................5

B. Counsel's Total Hours Are Commensurate With the Needs of This Case. .............6

C. Counsel's Hourly Rates Are Reasonable...............................................................13

V. DEFENDANTS' COSTS ARE REASONABLE. ...........................................................14

VI. DEFENDANTS ARE ENTITLED TO "FEES ON FEES."............................................14

VII. CONCLUSION.............................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Berryhill*,
No. 17-cv-03384-SI, 2019 WL 343422 (N.D. Cal. Jan. 28, 2019)....................7

*Banas v. Volcano Corp.*,
47 F. Supp. 3d 957, 969-70 (N.D. Cal. 2014)....................9, 10, 14

*Braden v. BH Fin. Servs., Inc.*,
No. 13-cv-2287, 2014 WL 892897 (N.D. Cal. Mar. 4, 2014)....................4

*Campbell v. Nat'l Passenger R.R. Corp.*,
718 F. Supp. 2d 1093 (N.D. Cal. 2010)....................12

*Ferriss v. All. Publ'g, Inc.*,
No. 15-cv-05675-EMC, 2016 WL 7116110 (N.D. Cal. Dec. 6, 2016)....................13

*Fitzgerald v. City of Los Angeles*,
No. CV 03-01876DDP(RZX), 2009 WL 960825 (C.D. Cal. Apr. 7, 2009)....................12

*Gilead Sciences, Inc. v. Merck & Co., Inc.*,
No. 13-cv-04057-BLF, 2017 WL 3007071 (N.D. Cal. July 14, 2017)....................12

*Henry v. Bank of Am.*,
No. 09-cv-628, 2010 WL 3324890 (N.D. Cal. Aug. 23, 2010)....................4

*Hernandez v. Grullense*,
No. 12-cv-03257-WHO, 2014 WL 1724356 (N.D. Cal. Apr. 30, 2014)....................10

*Jackson v. Yarbray*,
179 Cal. App. 4th 75 (2009)....................4

*Ketchum v. Moses*,
24 Cal. 4th 1122 (2001)....................3, 5, 14

*Kries v. City of San Diego*,
No. 18-cv-0229-GPC-BGS, 2021 WL 120830 (S.D. Cal. Jan. 13, 2021)....................12

*Le v. Sunlan Corp.*,
No. 13-cv-707, 2014 WL 296032 (N.D. Cal. Jan. 27, 2014)....................4

*Lightbourne v. Printroom Inc.*,
No. SACV13876JLSRNBX, 2015 WL 12732457 (C.D. Cal. Dec. 10, 2015)....................14

*Lota v. Home Depot U.S.A., Inc.*,
No. 11-cv-05777-YGR, 2013 WL 6870006 (N.D. Cal. Dec. 31, 2013)....................10, 13

*Macias v. Hartwell*,
55 Cal. App. 4th 669 (1997) ....................4

*Maloney v. T3 Media, Inc.*,
No. CV 14-05048-AB, 2015 WL 3879634 (C.D. Cal. May 27, 2015)....................6

*Moore v. Liu*,
69 Cal. App. 4th 745 (1999) ....................2, 3

*Moran v. Oso Valley Greenbelt Assn.*,
117 Cal. App. 4th 1029 (2004) ....................5

*Natural Res. Def. Council v. Locke*,
771 F. Supp. 2d 1203 (N.D. Cal. 2011) ....................12

*Oberfelder v. Bertoli,*
67 F. App'x 408 (9th Cir. 2003) ....................10

*Oberfelder v. City of Petaluma*,
No. C-98-1470, 2002 WL 472308 (N.D. Cal. Jan. 29, 2002)....................10

*Open Source Security, Inc. v. Perens*,
No. 17-cv-04002-LB, 2018 WL 2762637 (N.D. Cal. June 9, 2018) ....................6

*Peak Health Center v. Dorfman*,
No. 19-cv-04145-VKD, 2020 WL 3254337 (N.D. Cal. June 1, 2020)....................13

*Planned Parenthood Federation of America, Inc. v. Center for Medical Progress*,
890 F.3d 828 (9th Cir. 2018) ....................2, 6

*Premier Med. Mgmt. Sys., Inc. v. Cal. Ins. Guar. Ass'n*,
163 Cal. App. 4th 550 (2008) ....................6, 7

*Resolute Forest Prod., Inc. v. Greenpeace Int'l*,
No. 17-cv-02824-JST, 2019 WL 8377690 (N.D. Cal. Sept. 24, 2019) ....................13

*Resolute Forest v. Greenpeace Int'l*,
302 F. Supp. 3d 1005 (N.D. Cal. 2017) ....................6

*Rosenaur v. Scherer*,
88 Cal. App. 4th 260 (2001) ....................5

*Smith v. Payne*,
No. C 12–01732 DMR, 2013 WL 1615850 (N.D. Cal. Apr. 15, 2013) ....................2, 3

*Tuchscher Development Enterprises, Inc. v. San Diego Unified Port Dist.*,
106 Cal. App. 4th 1219 (2003) ....................4

*United States v. Palomar-Santiago*,
141 S. Ct. 1615 (2021)....................3

*Vargas v. City of Salinas*,
200 Cal. App. 4th 1331 (2011) ....................6

*Whitewater W. Indus., Ltd. v. Alleshouse*,
No. 17CV00501DMSNLS, 2021 WL 2156181 (S.D. Cal. May 27, 2021) ....................14

*Wynn v. Chanos*,
No. 14-cv-04329-WHO, 2015 WL 3832561 (N.D. Cal. June 19, 2015) ....................14

**Statutes**

California Code of Civil Procedure § 425.16 ....................1, 2, 3, 4, 6, 11, 14

**Other Authorities**

First Amendment ....................2

Federal Rule of Civil Procedure 37 ....................11

Federal Rule of Civil Procedure 54 ....................2

Local Rule 54-5(a) ....................2

# I. INTRODUCTION

Plaintiffs who harass and intimidate journalists with meritless lawsuits must pay the price. California Code of Civil Procedure ("C.C.P.") § 425.16 (the "anti-SLAPP statute") provides in no uncertain terms that "a prevailing defendant . . . ***shall be entitled*** to recover his or her attorney's fees and costs." C.C.P. § 425.16(c)(1) (emphasis added). Plaintiffs were well aware of the potential consequences of Defendants' Special Motion to Strike Plaintiffs' Complaint (the "anti-SLAPP Motion"), ECF No. 107, and yet instead of mitigating costs, they ran up defense costs for years by refusing to narrow the scope of their sprawling complaint, demanding extensive fact discovery, and prolonging the process with spurious discovery disputes. Despite Plaintiffs' tactics, Defendants prevailed on their anti-SLAPP Motion and are now ***statutorily entitled*** to their attorneys' fees and costs.[1]

In Defendants' Motion for Attorneys' Fees and Costs (the "Fees Motion"), ECF No. 316, Defendants sought reimbursement of $3,775,503.31 in fees and $156,226.44 in costs incurred in connection with the anti-SLAPP Motion and related discovery. *See* ECF No. 316 at 2. Defendants hereby adjust these figures slightly, and respectfully request an additional $305,541.41 in fees and costs incurred in connection with the Fees Motion and this Reply, and the anticipated costs to prepare for and participate in oral argument, for a grand total of $4,149,897.91. *See* Supplemental Declaration of Thomas R. Burke ("Burke Supp. Decl.") ¶ 7; Supplemental Declaration of Simon Frankel ("Frankel Supp. Decl.") ¶¶ 2, 6. Please see the chart below for Defendants' final request for fees and costs:

| | **Original Request** | **Adjusted Request** | **Final Request (including Fees Motion)** |
|---|---|---|---|
| Covington | $2,210,082.70 | $2,190,650.45 | $2,401,689.16 |
| Davis Wright | $1,721,647.05 | $1,653,706.05 | $1,748,208.75 |
| **Total** | **$3,931,729.75** | **$3,844,356.50** | **$4,149,897.91** |

[1] Contrary to Plaintiffs' repeated mischaracterizations that this Court found the challenged statements false, *see* ECF No. 321 at 1, 8, 10, this Court determined only that Plaintiffs had met their evidentiary burden to support a prima facie claim of falsity, *see* ECF No. 309 at 5-15. This Court did not weigh the credibility of Plaintiffs' evidence or consider the probative strength of competing evidence. *See* ECF No. 309 at 4.

Although Defendants' Fees Motion presents a large sum, this number is reasonable and commensurate with the needs of this unusual case given (1) the extraordinary scope of discovery that Plaintiffs sought; (2) the complexities of this particular investigation and story (requiring translations, reviewing audiovisual elements, and protecting confidential sources); (3) the summary-judgment-like procedural posture, *see* ECF No. 309 at 44; *Planned Parenthood Federation of America, Inc. v. Center for Medical Progress*, 890 F.3d 828, 833 (9th Cir. 2018) (where a defendant's anti-SLAPP motion challenges the factual sufficiency of the plaintiff's claim, "then the motion must be treated as though it were a motion for summary judgment and discovery must be permitted" (cleaned up)); and (4) Defendants' First Amendment rights at stake. Indeed, Plaintiffs' counsel themselves appears to have incurred over $2.7 million in fees in this case between 2018 and 2020, *see* Declaration of Annie Y. Shi ("Shi Decl.") ¶¶ 6-7, even though they did not bear the burden of discovery.

Further, Defendants' counsel's hourly rates are reasonable given their experience, skill, and reputation, and are comparable to the prevailing market rate. *Even if* this Court were to accept the prevailing rates offered by Plaintiffs' purported expert, Defendants would still be owed at least $2.5 million in fees. *See* ECF No. 321.4 (Pierce Decl.) ¶ 50.

Fundamentally, the purpose of California's anti-SLAPP statute is "clearly to give relief, including financial relief in the form of attorney's fees and costs, to persons who have been victimized by meritless, retaliatory SLAPP lawsuits because of their 'participation in matters of public significance.'" *Moore v. Liu*, 69 Cal. App. 4th 745, 750 (1999) (citing C.C.P. § 425.16(a)). That purpose is fulfilled here by awarding Defendants their attorneys' fees and costs in full.

## II. DEFENDANTS' FEES MOTION SHOULD BE GRANTED NOW.

This Court need not wait for Plaintiffs' appeal to grant Defendants' Fees Motion. Plaintiffs' reliance on the California Rules of Court is unavailing. *See* ECF No. 321 at 6. The Federal Rules of Civil Procedure and the Northern District of California Local Rules, which govern this case, require a claim for attorneys' fees to be filed no later than fourteen days after entry of judgment. *See* Fed. R. Civ. P. 54(d)(2)(B)(i); L.R. 54-5(a); *see also* ECF Nos. 311, 313 (Defendants moved for, and the Court granted, an enlargement of time to file the Fees Motion). "In the Ninth Circuit, an appeal from a ruling on the merits does not foreclose an award of attorneys' fees by the district court." *Smith v. Payne*, No. C

12-01732 DMR, 2013 WL 1615850, at *2 (N.D. Cal. Apr. 15, 2013). In *Smith*, the court denied plaintiffs' request to stay prevailing defendants' motion for attorneys' fees until after their appeal of the anti-SLAPP motion, reasoning that granting the fees motion "promote[d] judicial economy by allowing any appeal of the fee award to be consolidated with [plaintiffs'] merits appeal." *See id*. Here, it is likewise in the interest of judicial economy for this Court to rule on Defendants' Fees Motion now, so that any potential appeal of the fee award can be combined with Plaintiffs' appeal on the merits.

## III. DEFENDANTS ARE ENTITLED TO ATTORNEYS' FEES AND COSTS.

Plaintiffs' plea that this Court deny Defendants' Fees Motion outright is untenable. None of the cases Plaintiffs cite to support their argument denied a prevailing party their attorneys' fees altogether. *See* ECF No. 321 at 6-8. This is because fee shifting under California's anti-SLAPP statute is ***mandatory***. *See* C.C.P. § 425.16(c)(1); *Ketchum v. Moses*, 24 Cal. 4th 1122, 1131 (2001).

### A. The Canon of Constitutional Avoidance Does Not Apply Here.

The anti-SLAPP statute's mandatory fees provision is plain and Plaintiffs do not contend otherwise. Where, as here, there is no statutory ambiguity, the canon of constitutional avoidance does not apply. *See United States v. Palomar-Santiago*, 141 S. Ct. 1615, 1622 (2021).

Yet Plaintiffs argue that awarding fees in this case is somehow "antithetical to legislative intent behind the anti-SLAPP statute" because it would "chill" other plaintiffs from bringing similar suits. *See* ECF No. 321 at 10. Plaintiffs have it backwards. The explicit intent of the statute is to combat the "disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech." C.C.P. § 425.16(a); *see also Moore*, 69 Cal. App. 4th at 750. For *five* years, Plaintiffs chilled Defendants' speech with aggressive litigation tactics, overwhelming discovery demands, and financial burden. *See* ECF No. 316-5 at Ex. A ("Since early 2017, we have been quiet about the case as litigation has proceeded through the court system . . . . The cost of that silence is the hobbling of the public's ability to hold . . . Planet Aid accountable."). This lawsuit threatened the very existence of the Center for Investigative Reporting (CIR), which would not have been able to rightfully defend itself without pro bono counsel. *See* ECF No. 316-5 (Scharfenberg Decl.) ¶ 4. (Plaintiffs offered no response whatsoever to Ms. Scharfenberg's declaration.) It is absurd that Plaintiffs would now claim that *their* constitutional rights are threatened.

Plaintiffs fully availed themselves of the judicial system and lost. They now owe the fees they alone forced Defendants to incur. This is precisely how the anti-SLAPP statute works.

**B. Fees for Anti-SLAPP Discovery Are Recoverable.**

Within the context of their constitutional avoidance argument, Plaintiffs also attempt to argue that fees should be denied for discovery under the Federal Rules. *See* ECF No. 321 at 9-10. But there is no conflict between California state and federal courts as to whether fees for discovery related to an anti-SLAPP motion are recoverable. The Northern District of California has repeatedly held that "work that is inextricably intertwined with an anti-SLAPP motion is also compensable." *Braden v. BH Fin. Servs., Inc.*, No. 13-cv-2287, 2014 WL 892897, at *5 (N.D. Cal. Mar. 4, 2014); *see also Le v. Sunlan Corp.*, No. 13-cv-707, 2014 WL 296032, at *4-5 (N.D. Cal. Jan. 27, 2014) (granting attorneys' fees for discovery that was "inextricably intertwined" with an anti-SLAPP motion); *Henry v. Bank of Am.*, No. 09-cv-628, 2010 WL 3324890, at *3-4 (N.D. Cal. Aug. 23, 2010) (granting attorneys' fees for "discovery initiated by the opposing party . . . directly related to the motion to strike"). Likewise, California state courts also allow recovery for fees incurred in connection with anti-SLAPP discovery. *See e.g.*, *Jackson v. Yarbray*, 179 Cal. App. 4th 75, 92 (2009) ("The fees awarded should include services for all proceedings, including discovery initiated by the opposing party pursuant to section 425.16, subdivision (g), directly related to the special motion to strike."); *Tuchscher Development Enterprises, Inc. v. San Diego Unified Port Dist.*, 106 Cal. App. 4th 1219, 1248 (2003) (affirming award of attorneys' fees including those incurred opposing plaintiff's discovery requests). Defendants are entitled to fees for the full extent of the two-plus years of discovery aggressively sought by Plaintiffs.

**C. Fees for Pro Bono Work Are Recoverable.**

Plaintiffs also contend that Defendants should not recover fees that were not actually paid to counsel. *See* ECF No. 321 at 10. *First*, Defendants' counsel was paid prior to late 2018, when CIR nearly exhausted its insurance coverage and counsel agreed to work pro bono. *See* ECF No. 316-5 (Scharfenberg Decl.) ¶ 4; ECF No. 317 (Burke Decl.) ¶¶ 5, 7. There is no plausible dispute that Defendants can recover that amount. *See Macias v. Hartwell*, 55 Cal. App. 4th 669, 675-76 (1997) ("Appellant cites no authority, and we have found none, that a defendant who successfully brings an anti-SLAPP motion is barred from recovering fees if the fees were paid by a third party. Based on her

construction of the law, respondent would not be entitled to attorney's fees if the defense costs were paid by his homeowner's insurance carrier, the union's insurance carrier, or a relative. No court has so held.").

*Second*, Plaintiffs are simply wrong—and cite no authority to support their position—that pro bono work is not compensated with market-rate fee awards. Courts have repeatedly held to the contrary. *See Moran v. Oso Valley Greenbelt Assn.*, 117 Cal. App. 4th 1029, 1036 (2004) ("Modern jurisprudence does not require a litigant seeking an attorney fee award to have actually incurred the fees."); *Rosenaur v. Scherer*, 88 Cal. App. 4th 260, 285 (2001) ("Denial of fees to outside counsel who offer their services on a partial pro bono basis would discourage such representation—in conflict with the statute's purpose of not allowing participation in matters of public significance to 'be chilled through abuse of the judicial process.'"); *Ketchum*, 24 Cal. 4th at 1131-32 (indigent defendant who had been represented pro bono on a successful anti-SLAPP motion was entitled to recover attorneys' fees, though he paid none). Defendants are entitled to recover fees regardless of their counsel's fee arrangement.

## IV. DEFENDANTS' FEE REQUEST IS REASONABLE.

As an initial matter, although Plaintiffs balk at Defendants' fee request, Plaintiffs' counsel appears to have charged comparable fees. Planet Aid's tax records show that it paid $2.7 million to Plaintiffs' counsel's law firm, Nelson Mullins Riley & Scarborough ("Nelson Mullins"), from 2018 to 2020. *See* Shi Decl. ⁋ 6. According to public records, Nelson Mullins did not represent Planet Aid in any other litigation matter during this time. *See id.* ⁋ 7. Thus, it is likely that **Plaintiffs' counsel racked up $2.7 million in fees in this case *even though they did not bear the burden of discovery*.** Beyond this notable benchmark, Plaintiffs' reasonableness arguments are meritless.

### A. Defendants' Fee Request Is Distinguishable from Prior Cases.

Plaintiffs' attempt to benchmark Defendants' fees to those in other cases. *See* ECF No. 321 at 8. This effort is unpersuasive because none of those cases involved the extensive and burdensome discovery that Plaintiffs pursued here. Plaintiffs cite unavailingly to state court cases, where California

law, unlike the Federal Rules, imposes an automatic stay on discovery.[2] *See* C.C.P. § 425.16(g). Plaintiffs also cite to District Court cases that predate *Planned Parenthood* and/or did not involve any discovery.[3] The main case that Plaintiffs cite that involved discovery, *Makaeff v. Trump University*, entailed only *one* deposition limited to two hours and to the issue of actual malice, and the production of a few hundreds of pages of documents. *See* No. 10-cv-0940 GPC, 2015 WL 1579000, at *22-23 (S.D. Cal. Apr. 9, 2015). In comparison, this case required *six* anti-SLAPP-related depositions, and the complex review and production of nearly 90,000 pages of documents as well as 80 hours of audiovisual material.[4] *See* ECF No. 316 at 17. Other cases are simply not comparable to this one in terms of the scope, complexity, and burden of discovery. *See* ECF No. 316-6 (Olson Decl.) ⁋ 7 ("In the more than 38 years that I've practiced, I do not believe I have encountered an anti-SLAPP motion that involved the scale and the complexity of the factual issues that were apparently involved in this libel case and the accompanying discovery process that took place over two years.").

Plaintiffs observe that anti-SLAPP cases in state courts are often "resolved quickly and relatively inexpensively" because they prohibit discovery (absent a court order), whereas federal courts now permit discovery for factual issues. *See* ECF No. 321 at 9-10 (quoting *Sandlin v. McLaughlin*, 50 Cal. App. 5th 805, 818 (2020)); *see also Planned Parenthood*, 890 F.3d at 833. Rather than a reason to deny fees, that is a compelling reason to ignore Plaintiffs' citations to low fee awards in state cases or federal cases that predate *Planned Parenthood* and/or did not involve discovery.

**B. Counsel's Total Hours Are Commensurate With the Needs of This Case.**

Plaintiffs criticize Defendants' counsel's total hours as "excessive," *see* ECF No. 321 at 13-14, but courts "generally defer to the 'winning lawyer's professional judgment as to how much time he was

---

[2] *See Vargas v. City of Salinas*, 200 Cal. App. 4th 1331 (2011); *Premier Med. Mgmt. Sys., Inc. v. Cal. Ins. Guar. Ass'n*, 163 Cal. App. 4th 550 (2008).

[3] *See Open Source Security, Inc. v. Perens*, No. 17-cv-04002-LB, 2018 WL 2762637 (N.D. Cal. June 9, 2018); *Resolute Forest v. Greenpeace Int'l*, 302 F. Supp. 3d 1005 (N.D. Cal. 2017); *Maloney v. T3 Media, Inc.*, No. CV 14-05048-AB, 2015 WL 3879634 (C.D. Cal. May 27, 2015).

[4] Defendants' Fees Motion initially referred to "90,000 pages of documents." *See* ECF No. 316 at 2. Other references to "90,000 documents" were in error. *See id.* at 4; ECF No. 316-1 (Frankel Decl.) ⁋ 5; ECF No. 317 (Burke Decl.) ⁋ 9. Defendants produced nearly 90,000 *pages* of documents, not 90,000 documents. *See* Burke Supp. Decl. ⁋ 1; Frankel Supp. Decl. ⁋ 9.

required to spend on the case,'" *see Allen v. Berryhill*, No. 17-cv-03384-SI, 2019 WL 343422, at *4 (N.D. Cal. Jan. 28, 2019) (cleaned up). And Defendants were forced to devote an extraordinary amount of time to this case since 2016. Defendants, however, seek fees only for work performed in connection with the anti-SLAPP Motion and related discovery sought by Plaintiffs. *See* ECF No. 316 at 14. Defendants' counsel painstakingly reviewed *thousands* of time entries and costs to omit any non-SLAPP fees, including those for jurisdictional challenges and settlement negotiations, but to the extent a small number of non-SLAPP fees were inadvertently included, Defendants hereby withdraw them, deducting $87,373.25 from the total fee request. *See* Burke Supp. Decl. ⁋ 7; Frankel Supp. Decl. ⁋ 6. Further, in an exercise of billing discretion, Defendants' counsel have already excluded over a thousand hours of time, or more than $770,000 in fees, contributed by other attorneys and staff across both law firms. *See* ECF No. 316 at 3, 14. As to other issues argued by Plaintiffs:

**Anti-SLAPP Motion.** Plaintiffs' purported expert estimates that Defendants' counsel billed approximately $812,000 for the anti-SLAPP Motion itself. *See* ECF No. 322 (Glynn Decl.) ⁋ 58, Ex. 16. This is plainly wrong. In this figure, Plaintiffs' expert inexplicably includes time entries from late 2018 to as recent as March 23, 2021, *see id.*, even though the anti-SLAPP Motion was filed on July 2, 2018, *see* ECF No. 107. Plaintiffs' expert also includes time entries by Covington attorneys, *see id.*, who were not involved in this matter until after the anti-SLAPP Motion was filed, *see, e.g.*, ECF Nos. 171, 172. The actual figures for the anti-SLAPP Motion are approximately $153,000 and 300 hours, which is reasonable given the breadth of the motion and the supporting declarations and exhibits.[5] *See* ECF No. 317 (Burke Decl.) ⁋ 5; Burke Supp. Decl. ⁋ 8; *see also Premier Med. Mgmt. Sys., Inc.*, 163 Cal. App. 4th at 560-63 (finding that 345 hours spent on an anti-SLAPP motion was not unreasonable).

**Scope of Discovery.** At no point did Plaintiffs amend their complaint, stipulate to, or otherwise formalize their position that their claims related only to the USDA or to CIR's two main publications.

---

[5] Malawian counsel's fees and total hours for interviewing witnesses, gathering exhibits, translating documents, and preparing declarations are reasonable. *See* ECF No. 316 at 3, 11 n.4. Plaintiffs assert that Malawian counsel's fees are duplicative of DWT's fees, *see* ECF No 321 at 20, but in reality, counsel worked together to draft these comprehensive declarations that served to provide the factual basis for Defendants' statements, *see, e.g.*, ECF No. 116 (Longwe Decl.), ECF No. 117 (Zebiah Decl.).

*See* ECF No. 237 at 3-5; ECF No. 316-1 (Frankel Decl.) ⁋ 7; ECF No. 317 (Burke Decl.) ⁋ 8. Plaintiffs point to the November 9, 2018 discovery hearing where supposedly "discovery issues were narrowed substantially." *See* ECF No. 321 at 2. At this hearing, however, Judge Corley only suggested that Plaintiffs narrow their complaint, but stated that she was "not going to get involved." *See* Frankel Supp. Decl. Ex. C (Nov. 9, 2018 Hr'g Tr. at 78:7–25).[6] After the hearing, the parties continued to negotiate limiting the scope of the case, and thereby the scope of discovery, for a year. In the end, Plaintiffs would not eliminate all non-USDA references from the complaint and, after discovery had commenced, demanded that Defendants forgo already-incurred fees on any eliminated statements—fees to which Defendants are statutorily entitled. *See* ECF No. 316-1 (Frankel Decl.) ⁋ 7. Without agreement on a second amended complaint, Defendants were forced to fulfill their discovery obligations consistent with Plaintiffs' sprawling operative complaint, *see* ECF No. 78, which contained dozens of challenged statements in more than 20 publications, *see* ECF No. 317 (Burke Decl.) ⁋ 5. Discovery was therefore incredibly onerous on Defendants. *See id.* ⁋ 8; ECF No. 316-1 (Frankel Decl.) ⁋ 5.

**Productions.** Plaintiffs attack the relevance of much of Defendants' productions, *see* ECF No. 321-1 (Rosenthal Decl.) ⁋⁋ 32-62, yet *they propounded the discovery requests*. As one example, Plaintiffs requested "all journals, notes, *recordings, and photographs* . . . in connection with visits to Malawi, Denmark, Mexico," *see* ECF No. 146 at 6 (emphasis added), but now complain that the photographs and recordings were irrelevant, *see* ECF No. 321-1 (Rosenthal Decl.) ⁋⁋ 55-56. As another example, Plaintiffs requested "[a]ll documents containing statements or information obtained or acquired by Defendants during their investigation . . . *whether or not 'relied upon' by Defendants in their Publications*," *see* Frankel Supp. Decl. Ex. D at 2-3 (emphasis added), but now label the thousands of pages of documentary evidence Defendants gathered a "data dump," *see* ECF No. 321 at 14; *see also* ECF No. 321-1 (Rosenthal Decl.) ⁋⁋ 38-47. Having insisted that this discovery was "essential" to their

[6] Plaintiffs also misleadingly refer to Defendants' counsel's statement that "this would be a much shorter process, far less discovery, and a very tiny SLAPP motion," Frankel Supp. Decl. Ex. C (Nov. 9, 2018 Hr'g Tr. at 76:6–12), which might have been true *if* Plaintiffs had agreed to narrow the case. But Plaintiffs never did.

opposition to the anti-SLAPP Motion, *see* ECF No. 316 at 16, Plaintiffs cannot now claim that fees responding to such discovery are unreasonable or somehow Defendants' "fault," *see* ECF No. 321 at 14. That Plaintiffs now contest the volume or relevance of the discovery only exposes their tactic of forcing CIR to expend inordinate time and resources in this case as punishment for its reporting.[7]

**Document and Audiovisual Review.** As explained in Defendants' Fees Motion, the review process in this case was exceptionally time-intensive because reviewers had to redact any identifying information of confidential sources and listen to the audiovisual recordings to do so. *See* ECF No. 316 at 17. Plaintiffs' expert argues that Defendants billed excessively for the review, but he merely offers "industry standard" eDiscovery costs, *see* ECF No. 323 (Molner Decl.) ⁋⁋ 11-13, 15-16, without consideration for what it takes to identify, vet, sometimes translate, and redact information related to multiple confidential sources, *see* ECF No. 316-1 (Frankel Decl.) ⁋ 5; Declaration of Noel Nurrenbern ("Nurrenbern Decl.") ⁋⁋ 3-4. Plaintiffs also contend that Defendants should have hired an outside vendor that charges lower hourly rates to conduct the review. *See* ECF No. 322 (Glynn Decl.) ⁋ 36. But in fact, Defendants did. *See* Nurrenbern Decl. ⁋ 2. As for audiovisual recordings, Plaintiffs claim that Defendants themselves—not their counsel—should have listened to the tapes. *See* ECF No. 321 at 17. Again, Defendants did. *See* Frankel Supp. Decl. Ex. C (Nov. 9, 2018 Hr'g Tr. at 14:10–12) (review of audio files is "so burdensome we have two reporters and one editor working full time on this").

Plaintiffs also criticize Defendants' document review entries as lacking a number or description of the documents reviewed. *See* ECF No. 322 (Glynn Decl.) ⁋ 37. However, such level of detail is unnecessary. *See Banas v. Volcano Corp.*, 47 F. Supp. 3d 957, 969-70 (N.D. Cal. 2014) ("Plaintiffs have not cited any authority providing that timekeepers are required to identify how many documents they have reviewed in each entry . . . . I cannot conclude that [Defendant's] failure to specify the number of documents reviewed or to use different ways to describe similar tasks warrant reducing the fee award.").

---

[7] To the extent Plaintiffs now claim they did not seek materials not specifically related to the USDA, Defendants reiterate that Plaintiffs' operative complaint was not so limited. Defendants would have been unfairly prejudiced had they not produced the factual basis for all of their allegedly defamatory statements cited in Plaintiffs' pleading, *see* ECF No. 317 (Burke Decl.) ⁋ 5, including evidence connecting Planet Aid to Mogens Amdi Petersen—which Plaintiffs now claim was unnecessary. *See* ECF No. 321-1 (Rosenthal Decl.) ⁋⁋ 39-42.

**Depositions.** Despite Plaintiffs' arguments, *see* ECF No. 322 (Glynn Decl.) ⁋⁋ 50, 52, Defendants may recover fees for more than one attorney's attendance at depositions. *See e.g.*, *Lota v. Home Depot U.S.A., Inc.*, No. 11-cv-05777-YGR, 2013 WL 6870006 at *10 (N.D. Cal. Dec. 31, 2013) ("It is not uncommon for multiple attorneys working on a matter to appear at depositions, participate in deposition preparation, attend client meetings, attend mediations or settlement conferences, or participate on telephone calls relating to the litigation"); *Oberfelder v. City of Petaluma*, No. C-98-1470, 2002 WL 472308 at *7 (N.D. Cal. Jan. 29, 2002), *aff'd sub nom. Oberfelder v. Bertoli*, 67 F. App'x 408 (9th Cir. 2003) ("[T]he attendance of more than two attorneys is not per se duplicative. . . . The deposition testimony of key witnesses are the building blocks of trial strategy. Counsel attending a deposition can better assess the quality of a witness more effectively than reading from a transcript"). In this case, only associates attended depositions for Defendants, *see* Shi Decl. Ex. A, which was cost-effective because of their lower rates.[8] Moreover, Plaintiffs themselves often had two attorneys present at the depositions. *See* Shi Decl. ⁋ 2, Ex. A; *see Oberfelder*, 2002 WL 472308 at *7 (in determining whether it was reasonable for one party to have two attorneys at a deposition, noting that "[i]n fact, two attorneys for [the other party] also appeared at depositions").

Plaintiffs also carp about the fact that Defendants' counsel billed more than the actual deposition record time. *See* ECF No. 322 (Glynn Decl.) ⁋⁋ 50-51. This is not surprising and entirely appropriate; the actual day of the depositions often involved travel, preparation, and pre- and post-deposition witness meetings.[9] *See* Shi Decl. ⁋ 3.

---

[8] Defendants strategically delegated tasks, such as document review and deposition preparation, to junior attorneys in an exercise of billing discretion. *See Banas*, 47 F. Supp. 3d at 966 ("Along with Cooley's high hourly rates comes an expectation that it will complete tasks efficiently and that its more senior attorneys will limit their involvement to tasks requiring their level of expertise."); *Hernandez v. Grullense*, No. 12-cv-03257-WHO, 2014 WL 1724356, at *11 (N.D. Cal. Apr. 30, 2014) ("The trade-off for the higher billing rate that greater experience and specialized knowledge justifies is that more senior attorneys are expected to delegate routine tasks to others with lower billing rates.").

[9] The same is generally true for Defendants' counsel's billing entries on the days of court hearings. *See* ECF No. 322 (Glynn Decl.) ⁋ 28. Counsel billed more than the actual hearing time because those days often involved travel, preparation, pre- and post-hearing meetings, and related case work.

**Deposition Preparation.** Similarly, Plaintiffs complain that Defendants' counsel spent too many hours preparing witnesses for their depositions. *See* ECF No. 322 (Glynn Decl.) ⁋ 49, Ex. 9. Plaintiffs neglect to credit their sprawling complaint, overbroad discovery requests, and "kitchen sink" tactics that forced Defendants to prepare witnesses for an unusually wide range of topics. Accordingly, deposition preparation involved extensive document review, numerous witness meetings, and mock deposition sessions. *See* Shi Decl. ⁋ 4.

**Errata.** Defendants' counsel spent a reasonable amount of time carefully reviewing the deposition transcripts for errata, communicating with witnesses regarding clarifications, and preparing the errata sheets. *See id.*

**Discovery Disputes.** Defendants are entitled to fees relating to discovery disputes regardless of which party "won" the dispute because Plaintiffs controlled the extent of discovery. Plaintiffs provide no case law to support their proposition that Federal Rule of Civil Procedure 37 overrules any fee-shifting statutes, including the anti-SLAPP statute. *See* ECF No. 321 at 18.

**Oral Argument.** Plaintiffs claim that Defendants' fees for an "oral argument that never happened" are excessive. *See* ECF No. 321 at 21. The oral argument on the anti-SLAPP Motion, which was the culmination of years of litigation, was taken off calendar the week of the hearing. *See* ECF No. 308. Given the importance of this dispositive motion, it was entirely appropriate for Defendants' counsel to begin preparing well in advance of the hearing date in order to maximize their chances of success. *See* Burke Supp. Decl. ⁋ 9.

**Block Billing.** Plaintiffs critique a number of Defendants' time entries as block billed or vague. *See* ECF No. 321 at 22. To start, many of the time entries noted are not block billed because they provide times for each separate task.[10] Even if some time entries are block billed, block billing is not objectionable per se, and courts grant fees for block billing where entries are "detailed enough for the Court to assess the reasonableness of the hours" or where multiple entries are part of the same task. *See*

---

[10] For example, "Review And Provide Detailed Response To Mr. Smith's Questions And Suggestions Regarding Logistics Regarding Malawi Witnesses (.60) (Time Reduced); Review And Analysis Of Factual Issues Raised By Key Malawi Fact Witnesses And What Essential Information To Include In Their Draft Declarations (1.60) (Time Reduced)." *See* ECF No. 322 (Glynn Decl.) Ex. 24 at 746.

*Campbell v. Nat'l Passenger R.R. Corp.*, 718 F. Supp. 2d 1093, 1103 (N.D. Cal. 2010); *see also Fitzgerald v. City of Los Angeles*, No. CV 03-01876DDP(RZX), 2009 WL 960825, at *8 (C.D. Cal. Apr. 7, 2009) (finding block billing acceptable where "[m]any of [the] entries identified as block-billing are actually different parts of the same task"). In addition, the "Ninth Circuit has emphasized that block billing 'does not justify an across-the-board reduction or rejection of all hours' in a fee application. Rather, any reduction must be tailored to 'those hours that were actually billed in block format.'" *Natural Res. Def. Council v. Locke*, 771 F. Supp. 2d 1203, 1214 (N.D. Cal. 2011) (internal citations omitted). In this case, Defendants' time entries are detailed enough that this Court can assess the reasonableness of the hours at issue.[11]

**Administrative Tasks.** Plaintiffs argue that Defendants should not recover fees for clerical or administrative tasks. *See* ECF No. 321 at 23-24. To start, many of Defendants' time entries that Plaintiffs take issue with, *see* ECF No. 321-7 (Glynn Decl.) Ex. 22, are not clerical or administrative, but involve substantive legal work, such as corresponding with clients regarding legal research and developments.[12] In any event, courts recognize that "work performed by litigation support staff that directly support the substantive litigation (as opposed to routine clerical work) is compensable as part of an attorneys' fee award." *Gilead Sciences, Inc. v. Merck & Co., Inc.*, No. 13-cv-04057-BLF, 2017 WL 3007071, at *15 (N.D. Cal. July 14, 2017) (cleaned up); *see also Kries v. City of San Diego*, No. 18-cv-0229-GPC-BGS, 2021 WL 120830, at *27 n.17 (S.D. Cal. Jan. 13, 2021) (refusing to categorize "Finalize and file Initial Disclosures, ENE statement, Discovery Plan" as clerical, "as the entry suggests review of these documents necessitated some legal work"). A number of the entries Plaintiffs label as

---

[11] For example, 1.60 hours for "Meeting With Client And T. Burke Re Background, Status, And Strategy; Conference With E. Forrest Re Same." *See* ECF No. 322 (Glynn Decl.) Ex. 24 at 748. This entry describes the same general task and is acceptably billed.

[12] For example, "Finished reviewing discovery letter; research and reading about anti-SLAPP suits," *see* ECF No. 321-7 (Glynn Decl.) Ex. 22 at 675, "Review plaintiffs' privilege letter; circulate email re same," *id.*, "Finish review of certain documents; Circulate privilege log to client and co-counsel," *id.* at 678, and "Revise letter brief on unpublished editorial privilege; circulate same to team," *id.*, all describe substantive legal work.

"clerical" involved work by paralegals that *directly supported the substantive litigation* and helped the attorneys properly move discovery forward.[13]

**C. Counsel's Hourly Rates Are Reasonable.**

Contrary to Plaintiffs' claim that Defendants "offered no basis" for their counsel's hourly rates, *see* ECF No. 321 at 11, Defendants provided affidavits from attorneys involved in this matter and/or familiar with standard rates in this region, a third-party audit and affidavit conducted by Valeo Partners (a company whose expertise in attorneys' fees has been recognized by courts), and citations to numerous California cases approving comparable hourly rates. *See* ECF No. 316 at 9-13. Rather than repeat that body of evidence here, Defendants address only the specific issues raised by Plaintiffs.

*First*, in addition to the cases cited by Defendants in their Fees Motion, *see* ECF No. 316 at 13, cases cited by Plaintiffs also approve hourly rates similar to Defendants' counsel's rates, *see* ECF No. 321 at 12, 20; *see also Resolute Forest Prod., Inc. v. Greenpeace Int'l*, No. 17-cv-02824-JST, 2019 WL 8377690, at *7 (N.D. Cal. Sept. 24, 2019) (granting hourly rates up to $775); *Peak Health Center v. Dorfman*, No. 19-cv-04145-VKD, 2020 WL 3254337, at *5 (N.D. Cal. June 1, 2020) (awarding paralegal rate of $200 and attorney rates of $475, $540, and $725).

*Second,* Plaintiffs' critique of Valeo reports is unfounded. Plaintiffs' characterization that the Valeo database has been "severely criticized and rejected in other cases" is misleading based on Plaintiffs' own case citations. In both *Kranson v. Federal Express Corporation* and *Lota by Lota v. Home Depot USA, Inc.*, Judge Gonzalez Rogers stated that while the materials cited, including Valeo reports, provided "some basis of comparison of reasonable rates for attorneys," the materials "did not provide information that allows the Court to determine whether the work performed was similar in nature." *Kranson*, 2013 WL 6503308, *8 n.12 (N.D. Cal. Dec. 11, 2013); *Lota by Lota*, 2013 WL 6870006, *16 n.26 (N.D. Cal. Dec. 13, 2013). Further, several other cases in the Northern District support using the Valeo database to calculate attorneys' fees. *See Ferriss v. All. Publ'g, Inc.*, No. 15-cv-

[13] For example, "Respond to questions from litigation support regarding new files to add to database," ECF No. 321-7 (Glynn Decl.) Ex. 22 at 668, "Revise Goteka declaration security settings," *id.*, and "Send confidential source names to litigation support to highlight in database," *id.* at 671, are all discovery-related tasks directly support the substantive litigation.

05675-EMC, 2016 WL 7116110, at *23 (N.D. Cal. Dec. 6, 2016) (explaining in detail the basis for the information in the Valeo database and noting its relevance to the court's analysis); *Banas*, 47 F. Supp. 3d at 965 (using the Valeo database to hold that fees are reasonable); *Wynn v. Chanos*, No. 14-cv-04329-WHO, 2015 WL 3832561, at *3 (N.D. Cal. June 19, 2015) (finding the Valeo database "relevant, but not dispositive").

*Third*, Defendants' counsel declined to seek a fee enhancement for the contingent nature of their work, even though they could have. *See* ECF No. 316 at 9-10; *see also* ECF No. 316-6 (Olson Decl.) ¶ 7 ("In my opinion, although they are not seeking it, defense counsel here have earned a fee enhancement or 'multiplier' to compensate them for the risk of non-payment.").

*Finally*, **under Plaintiffs' own expert's calculations, even at reduced hourly rates, Defendants are owed over $2.5 million in attorneys' fees.** *See* ECF No. 321-4 (Pierce Decl.) ¶ 50.

## V. DEFENDANTS' COSTS ARE REASONABLE.

Defendants are entitled to their reasonable costs, which involved expenses for document retrieval and storage, photocopying, research, transcripts, and travel. *See* ECF No. 316 at 18. Although Plaintiffs argue these costs are not explained, *see* ECF No. 321 at 24, Defendants have submitted records which detail the dates and amounts of each item of costs incurred and paid by Defendants. *See* ECF No. 316-1 (Frankel Decl.) Ex. C; ECF No. 317 (Burke Decl.) Ex. G.

Further, in interpreting California fee-shifting statues, courts have held that "electronic discovery costs are allowable if they are deemed 'reasonably necessary to the litigation.'" *See Lightbourne v. Printroom Inc.*, No. SACV13876JLSRNBX, 2015 WL 12732457, at *9 (C.D. Cal. Dec. 10, 2015); *see also Whitewater W. Indus., Ltd. v. Alleshouse*, No. 17CV00501DMSNLS, 2021 WL 2156181, at *2 (S.D. Cal. May 27, 2021). Defendants' eDiscovery costs were necessary to this litigation because Defendants needed an electronic document record system to review, manage, and redact the thousands of pages sought by Plaintiffs and produced by Defendants. Thus, Defendants should recover these costs.

## VI. DEFENDANTS ARE ENTITLED TO "FEES ON FEES."

It is well-established that an "award of fees may include not only the fees incurred with respect to the underlying claim, but also the fees incurred in enforcing the right to mandatory fees under Code of Civil Procedure section 425.16." *Ketchum*, 24 Cal. 4th at 1141. With this Reply, Defendants provide

supporting documentation showing the time and resources spent preparing their Fees Motion, up to and including this Reply. *See* Burke Supp. Decl. Ex. A; Frankel Supp. Decl. Exs. A, B. As such, Defendants are entitled to recover an additional $305,541.41 in attorneys' fees and costs. These fees and costs reflect the time required to research, draft, and revise the Fees Motion and this Reply, gather the supporting declarations, and review years' worth of time entries for relevance, privilege, and confidential sources. *See* Burke Supp. Decl. ⁋ 3; Frankel Supp. Decl. ⁋ 3.

## VII. CONCLUSION

Although Plaintiffs were well aware of the potential consequences of Defendants' anti-SLAPP Motion, they now attempt to evade the fees that *they alone forced Defendants to incur*. Defendants, as the prevailing party on an anti-SLAPP motion, are now statutorily entitled to mandatory fees and costs. For the foregoing reasons, Defendants respectfully request that this Court award them their reasonable attorneys' fees and costs in the amount of $4,149,897.91.

DATED: July 12, 2021

Respectfully submitted,

COVINGTON & BURLING LLP
SIMON J. FRANKEL
ALEXA HANSEN

By: */s/ Simon J. Frankel*
Simon J. Frankel

Attorney for Defendants
THE CENTER FOR INVESTIGATIVE REPORTING (d/b/a "REVEAL"), MATT SMITH, and AMY WALTERS