Samuel Rosenthal (pro hac vice)
sam.rosenthal@nelsonmullins.com
Nelson Mullins Riley & Scarborough LLP
101 Constitution Ave., N.W.
Washington, D.C. 20001
Telephone: +1 202-689-2915
Facsimile  +1 202-712-2860

Phil Busman (pro hac vice)
Phil.busman@nelsonmullins.com
Nelson Mullins Riley & Scarborough LLP
101 Constitution Ave., N.W.
Washington, D.C. 20001
Telephone: +1 202-689-2988

Cory E. Manning (State Bar # 213120)
cory.manning@nelsonmullins.com
Nelson Mullins Riley & Scarborough LLP
1320 Main St., 17th Floor
Columbia, SC 29201
Telephone: +1 803-255-5524
Facsimile  +1 803-256-7500

Crispin L. Collins (State Bar # 311755)
crispin.collins@nelsonmullins.com
Nelson Mullins Riley & Scarborough LLP
19191 S. Vermont Ave., Suite 301
Torrance, CA 90502
Telephone: +1 424-221-7407
Facsimile  +1 424-221-7499

Attorneys for Plaintiffs
Planet Aid Inc. and Lisbeth Thomsen

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PLANET AID INC.; and LISBETH THOMSEN,<br><br>Plaintiffs,<br><br>v.<br><br>REVEAL, CENTER FOR INVESTIGATIVE REPORTING; MATT SMITH; and AMY WALTERS,<br><br>Defendants. | Case No. 17-cv-03695-JSC<br><br>**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' ATTORNEY FEE APPLICATION FOR FEES ON FEES**<br><br>Judge: Hon. Maxine Chesney<br><br>**DATE:** August 27, 2021<br>**TIME:**<br>**LOCATION:** San Francisco Courthouse<br>Courtroom 7- 19th Floor<br>450 Golden Gate Ave.<br>San Francisco, CA 94102 |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................. ii

INTRODUCTION ................................................................................................................... 1

ARGUMENT ........................................................................................................................... 2

    I.    THE FEES ON FEES REQUEST OFFERS ADDITIONAL REASONS WHY THE COURT SHOULD DEFER RULING UNTIL AFTER THERE IS GREATER CLARITY ON WHETHER THE ANTI-SLAPP STATUTE EVEN APPLIES IN FEDERAL COURT ................................................................... 2

    II.   EACH OF THE REASONS FOR DENYING THE ORIGINAL FEE APPLICATION ALSO APPLY TO THE FEES ON FEES REQUEST ................................................................................................... 3

    III.  DEFENDANTS' REQUEST FOR FEES ON FEES IS EXCESSIVE ............................................................................................. 4

        A.   FEES ON FEES ARE OUT OF LINE WITH EVERY SINGLE CASE IN THIS DISTRICT ................................. 5

        B.   THE HOURLY FEES CLAIMED BY DEFENSE COUNSEL ARE EVEN HIGHER THAN THOSE DEEMED EXCESSIVE BASED ON THE LODESTAR STANDARD ............................................................................... 6

        C.   PLAINTIFFS SHOULD NOT BE CHARGED FEES FOR A REVIEW WHICH SHOULD HAVE OCCURRED AS PART OF NORMAL OFFICE OVERHEAD, AND WHICH FAILED EVEN TO DETERMINE WHICH CHARGES WERE RECOVERABLE ............................................................................... 8

        D.   DEFENSE COUNSEL'S BILLING PRACTICES REQUIRE A REDUCTION IN FEES ON FEES ................ 10

        E.   COSTS SHOULD BE DISALLOWED .............................. 11

CONCLUSION ..................................................................................................... 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Blum v. Stenson*,
   465 U.S. 8866 (1984) .................................................................................................. 7, 8

*City of Montebello v. Vasquez*
   1 Cal.5th 409 (2016) ......................................................................................................... 3

*CoreCivic v. Candide*,
   No. C-20-03792-WHA, 2021 WL 1267259 (N.D. Cal., 04/06/2021) ..................... 1, 5, 8

*Gates v. Rowland*,
   39 F.3d 1439 (9th Cir. 1994) ............................................................................................ 4

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ................................................................................................ 4, 5, 7

*La Liberte v. Reid*,
   966 F.3d 79 (2d Cir. 2020) ............................................................................................... 2

*Lockary v. Kayfetz*,
   974 F.2d 1166 (9th Cir. 1992) .......................................................................................... 2

*Missouri v. Jenkins*,
   491 U.S. 274 (1989) ....................................................................................................... 10

*Nadarahjah v. Holder*,
   569, 906 (9th Cir. 2009) ................................................................................................. 11

*Pledger v. Lynch*,
   No. 18-2213, 2021 WL 3072861 (4th Cir. 7/21/21) ........................................................ 2

*Resolute Forest Products, Inc. Greenpeace International*, 2020 WL
   8877818 (N.D. Cal. April 22, 2020) .............................................................................. 10

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
   559 U.S. 393 (2010) ................................................................................................ 1, 2, 3

*Williams v. Chino Valley Independent Fire Dist.*,
   *61* Cal.4th 973 (2015) ...................................................................................................... 3

**Statutes**

28 U.S.C. § 1920 ..................................................................................................................... 2

NELSON MULLINS RILEY & SCARBOROUGH, LLP

**Court Rules**

Fed. R. Civ. P. 11 ................................................................................................................. 2, 3

Fed. R. Civ. P. 37 .................................................................................................................... 2

Local Rule 54 .......................................................................................................................... 2

**Other Authorities**

Valeo Report. ECF 324 at 18 .................................................................................................. 7

NELSON MULLINS RILEY & SCARBOROUGH, LLP

## INTRODUCTION

Defendants' previous fee application sought almost $4 million in attorneys' fees. They now seek an additional $305,541 for filing their fee application (the "Fees on Fees Request"). We have addressed herein solely those newly submitted materials presented for the first time in Defendants reply directed to fees on fees.

Some of the issues and errors arising in connection with the original fee application simply reemerge in connection with the Fees on Fees Request. For example, the most sensible approach to the Fees on Fees Request is to follow the Court's approach in *CoreCivic,* and await guidance from the Ninth Circuit on the gatekeeping issue of whether the Motion to Strike is even appropriately heard in federal court. See *CoreCivic v. Candide,* No. C-20-03792-WHA, 2021 WL 1267259 (N.D. Cal., 04/06/2021). While asking that the issue of fees be decided now, contrary to that approach, see ECF 324 at 2-3, Defendants have not even tried to argue that the holding in *CoreCivic* is inappropriate. Nor have they tried to dispute that the decision in *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.,* 559 U.S. 393, 398-99 (2010), renders it inappropriate to assess any fees under the California anti-SLAPP statute. The Fees on Fees Request makes the *CoreCivic* holding even more appropriate since it requires the Court to spend considerable time and energy analyzing an additional 521.50 hours claimed by Defendants solely in connection with the Fees on Fees Request without knowing how the Ninth Circuit will rule on the applicability of the anti-SLAPP statute in federal court.

If the Court nevertheless wades into what Judge Alsup called the "bonebreaking" exercise of resolving fee disputes, it is apparent that Fees on Fees should be scaled back substantially or denied altogether. Notwithstanding that their earlier $4 million request was based on fees shown by Mr. Pierce to exceed those deemed reasonable, as shown in our memorandum in opposition to the initial application, defendants have now upped the ante by seeking hourly rates which are even higher than those sought previously, and contain many of the same flawed billing practices denounced by expert Clem Glynn.

///

///

Plaintiffs' Memorandum in Opposition to
Defendants' Attorney Fee
Application for Fees on Fees
17-CV-03695-JSC

**ARGUMENT**

**I.   THE FEES ON FEES REQUEST OFFERS ADDITIONAL REASONS WHY THE COURT SHOULD DEFER RULING UNTIL AFTER THERE IS GREATER CLARITY ON WHETHER THE ANTI-SLAPP STATUTE EVEN APPLIES IN FEDERAL COURT.**

Plaintiffs previously briefed the reasons why the fee issue should be reserved until after the Ninth Circuit can rule on whether the decisions in *Shady Grove Orthopedic Assocs.,* and *La Liberte v. Reid,* 966 F.3d 79, 85 (2d Cir. 2020) (holding that the California statute is inapplicable in federal court), allows the filing of an anti-SLAPP motion in federal court.

We want to bring to the Court's attention a recent case handed down after our initial brief was filed, and which is applicable both to the original fee application as well the Fees on Fees Request. In *Pledger v. Lynch*, No. 18-2213, 2021 WL 3072861 (4th Cir. 7/21/21), the Fourth Circuit held, based on *Shady Grove,* that state statutory provisions cannot apply in federal court to the extent that they answer the same question posed by federal rules or statutory provisions. *Id.*, at *5. As applied to the present dispute, federal provisions, among others, rules 11 and 37, 28 U.S.C. §1920 or Local Rule 54, answer the same question posed by defendants' application, namely whether they are entitled to attorneys' fees and costs.

In fact, the Fees on Fees Request brings into sharp focus why the state anti-SLAPP statute should not even apply in federal court, particularly to a fee application. As stated above, pursuant to *Shady Grove*, a state statute cannot apply in federal court if it answers the same question as a federal provision or rule. Here, the fee provisions in the anti-SLAPP statute address the same issue as, among other rules, Fed.R.Civ.P. 11, which determines whether a successful party is entitled to attorneys' fees. That federal rule has been construed, specifically, to not allow "fees on fees." *Lockary v. Kayfetz*, 974 F.2d 1166, 1178 (9th Cir. 1992)(holding that the "district court erred in including the defendants' attorneys' fees for preparing their motion for sanctions in the sanctions it imposed.").

///

There is no rational basis for construing the attorney-fee provision of the anti-SLAPP statute in a way which has been directly rejected by the Ninth Circuit when considering Fed.R.Civ.P. 11.

## II. EACH OF THE REASONS FOR DENYING THE ORIGINAL FEE APPLICATION ALSO APPLY TO THE FEES ON FEES REQUEST.

Plaintiffs offered several reasons why the original fee application should be denied, including that it seeks fees which far exceed the statutory purpose of reimbursing a defendant for fees actually paid by them, the rule of "constitutional avoidance" warrants denying the application, and Defendants have failed to sustain their burden of showing the reasonableness of hourly rates and time expended on particular tasks. Each of those grounds are equally applicable to the Fees on Fees Request and are incorporated herein.

It is worth responding specifically, however, to Defendants' demand that Plaintiffs "pay the price" for having filed this lawsuit by paying $300,000 in fees. *See* ECF 324 at 6. This comment suggests that in addition to seeking an outrageous recovery for their own financial gain, Defendants are out to make a statement to anyone who dares to exercise their First Amendment rights to seek redress in federal court. Courts have already warned that fee shifting provisions, including in the anti-SLAPP arena, have the capacity to chill the exercise of First Amendment rights of those seeking to petition courts for the redress of grievances. See, e.g., *City of Montebello v. Vasquez* 1 Cal.5th 409 (2016) (concurring opinion) (anti-SLAPP case) ("We have recognized that a fee-shifting statute that awards attorney fees to prevailing defendants carries the risk of chilling meritorious lawsuits."); *Williams v. Chino Valley Independent Fire Dist., 61* Cal.4th 973 (2015)(finding that "even ordinary litigation costs can be substantial, and the possibility of their assessment could significantly chill the vindication of employees' civil rights"). Telling those who wish to file a lawsuit that they may have to "pay the price" for exercising their constitutional right to seek redress in court is no more appropriate when said to someone exercising their First Amendment rights than it would be for those seeking to exercise any other constitutional right.

### III. DEFENDANTS' REQUEST FOR FEES ON FEES IS EXCESSIVE

Defendants seek over $300,000 for filing their fee application and reply. Just as in any fee request, "the fee applicant bears the burden of documenting the appropriate hours expended," as well as the reasonableness of hourly rates. *Gates v. Rowland,* 39 F.3d 1439, 1449 (9th Cir. 1994)(quoting *Gates v. Deukmejian,* 987 F.2d 1392, 1397-98 (9th Cir. 1992). *See also Hensley v. Eckerhart,* 461 U.S. 424, 437 (1983). That requirement certainly applies where, as here, defendants are seeking over $300,000 simply for compiling and filing a fee application.

Putting together the fee application was hardly so complex, detailed or difficult that it required over 500 hours of attorney time (168.8 hours by Davis Wright and 352.7 hours by Covington). Neither firm even included the most basic evidence, such as a breakdown of the activity, how much time was spent on each task, and what hourly rates were charged for performing that task – information one usually would expect to see in a fee application. See ECF 321-6 (Glynn Decl.), ¶11. Evidently no time was spent on the Reply in order to respond to Plaintiffs' extensive breakdown and attempt to explain how much time was spent on each task, instead offering a critique here and there, barely mentioning the methodology or results by plaintiffs' experts. Whether or not that response is sufficient to win the day on the fee application, it hardly justified charges of over $300,000 in order to prepare that response.

No expert was retained, which might have explained some additional cost had defendants gone down that route. As far as the Fees on Fees, no discovery was required. That eliminates relying on the thin excuse given previously for seeking approximately $4 million in fees for litigating the anti-SLAPP motion. No declarations offering any detailed review of dense factual material was offered. And as stated above, neither of the two defense declarations offer even a compilation of the most basic information: what hourly rates were charged by each attorney for compiling the Fees on Fees Request, and how much time was expended by each attorney or paralegal on each task.

///

///

While we discuss below specific reasons why the Fees on Fees Request should be denied completely or at least reduced dramatically, it is obvious that the Request on its face is excessive.  Emblematic of defendants' excessive billing practices, Mr. Frankel asks the Court to award him $2550 in fees for "travel" to attend a hearing on fees.  See ECF 324-2.  That hearing has yet to occur, and in all likelihood, will never require any travel since the court has not been holding live in-person hearings due the COVID pandemic.  See ECF 324-2 *July entry (Frankel)*2.5 hours) ("Prepare for, travel to and from, Fees Hearing").  He also includes 6 hours for two associates to prepare for that hearing.  See *id.* Arghavani (3.0 hours); Shi (3.0 hours).

As shown below, Mr. Frankel's time entry (on top of an already $4 million request) was not the result of an isolated act of exuberance. It reflects a pattern throughout the fee requests by both firms of seeking unreasonable amounts.

### A.  FEES ON FEES ARE OUT OF LINE WITH EVERY SINGLE CASE IN THIS DISTRICT

Defendants Fees on Fees Request nowhere takes issue with the point made in our opening brief, that it is appropriate to consider how an application compares with awards in other cases – an approach which defense counsel have themselves urged.  See ECF 321 at 14.  That comparison is telling and demonstrates the utterly excessive nature of the Fees on Fees Request.  Here, the amount sought for Fees on Fees of over $300,000 would constitute the third-highest award found in this District — not just for Fees on Fees, but for the entire case related to the anti-SLAPP motion. See ECF 321-2, Ex. A.  That is plainly excessive on its face.  Defendants have not cited – and we are unable to find – any case which comes even close to justifying the fees on fees now sought here.

It is worth comparing the Fees on Fees Request with the Court's ruling in *CoreCivic,* which found that "a reasonable time expenditure for an anti-SLAPP motion [is] . . . between 40 and 75 hours, not 407.9 hours" sought by Davis Wright in that case. ECF 321 at 26. Here, Defendants are seeking 521.5 hours just for their Fees on Fees Request!

///

### B. THE HOURLY FEES CLAIMED BY DEFENSE COUNSEL ARE EVEN HIGHER THAN THOSE DEEMED EXCESSIVE BASED ON THE LODESTAR STANDARD.

Defendants acknowledge that if the rates found to be reasonable in this District and surrounding community are applied, as determined by plaintiffs' expert (Mr. Pierce) that alone would result in a reduction of almost $1.5 million in fees on the original application, even if no other errors or adjustments were deemed appropriate. See ECF 324 at 19.

As if that were not enough, Defendants have now increased their hourly rates for the Fees on Fees Request, seeking fees that are even higher than those determined by Mr. Pierce previously to be reasonable. With absolutely no evidence that any court has accepted the new rates sought for Fees on Fees, defendants simply offer conclusory assertions that these rates are reasonable. The following chart compares the new rates sought for preparing the fee application with those deemed reasonable by Mr. Pierce, as reflected in his declaration submitted in opposition to the original request. It also sets forth the amount which should be disallowed based on defense counsel's excessive rates:

| Attorney | Rate Found to Be Reasonable | Rate Charged in Fees on Fees Request | Hours in Fees on Fees Request | Overcharge based on Loadstar |
|---|---|---|---|---|
| Thomas Burke | $650 | $845 | 69.7 | $13,591.50 |
| Simon Frankel | $625 | $1020 | 34.6 | $13,667.00 |
| Ambika Kumar | $500 | $725 | .8 | $180.00 |
| Alexa Hanson | $450 | $975 | 16.5 | $8,662.50 |
| Brendon Charney | $415 | $570 | 45.5 | $7,052.50 |
| Annie Shi | $300 | $635 | 104.9 | $35,141.50 |
| Miriam Arghavani | $300 | $595 | 150.3 | $44,338.50 |
| William Jarboe | $180 | $460 | 184.7 | $51,716.00 |
| Sarah Burns | $335 | $475 | 59.40 | $8,316.00 |

| Noel Nurrenbern | $180 | $380 | 10.10 | $2,020.00 |
|---|---|---|---|---|
| Excessive charges which should be disallowed based on unreasonably high hourly rates | | | | $184,685.50 |

Curiously, Defendants make no attempt to justify their rate increases in their latest filing over what they sought previously, and refer to rates awarded in two other cases See ECF 324 at 18. While claiming that the two cases they cite demonstrate the reasonableness of their rates, they actually involved rates which were hundreds of dollars per hour less than those sought by Defendants. Nor are those two cases a substitute for the exhaustive review of hourly rates by Mr. Pierce, offered in support of Plaintiffs' opposition to the original fee request, which included hourly rate reviews which are unassailable, and for that reason are not even mentioned by Defendants in seeking fees on fees.  See ECF 321-4.  Nor do Defendants show how their Fees on Fees are commensurate with any of the other long list of cases cited by Mr. Pierce, setting reasonable rates for precisely this type of litigation in precisely this District. *Id.*

Defendants also try to justify their fees on fees by resorting yet again to the Valeo Report. ECF 324 at 18.  Defendants claim that the Report is appropriately considered because some courts have found that it has limited utility, even though other courts have rejected it completely.  See ECF 321 at 18.  But simply looking at the methodology reflected in that report is sufficient to show why it has no utility here, and has been rejected elsewhere. First, the Valeo report does not even purport to address the appropriate standard, namely whether the "requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson,* 465 U.S. 886, 89596 (1984). Second, it compares the Covington rates only with firms having the highest grossing revenues. In short, Covington was compared with a select number of firms with the highest rates, which naturally translates into higher revenues. That result-oriented analysis may be appropriate for some

analyses, but it has nothing to do with the proper lodestar analysis here, as determined in *Blum* and a host of other cases.

### C. PLAINTIFFS SHOULD NOT BE CHARGED FEES FOR A REVIEW WHICH SHOULD HAVE OCCURRED AS PART OF NORMAL OFFICE OVERHEAD, AND WHICH FAILED EVEN TO DETERMINE WHICH CHARGES WERE RECOVERABLE

Defendants now seek to be reimbursed for approximately ninety hours reviewing time records in order to submit their original fee request. This includes 74.8 hours claimed by Davis Wright for reviewing billing records and compiling them for the motion, *see* ECF 324-1 (Exhibit A to Burke Decl.).  While Covington's time records appear to reflect approximately 12.5 hours reviewing time records, see 324-2, Ex. A, that number fails to take into account that numerous entries are simply too vague to discern what task was being performed.  See *infra.*  The total amount of time – approximately 90 hours -- is grossly excessive for several reasons.

First, it is apparent that Defendants never engaged in the normal task of reviewing time sheets in order to remove or reduce unnecessary, wasteful or redundant time entries. It is understandable that defense counsel never performed such a task because they were not billing a client, but proceeding on a *pro bono* basis. Nevertheless, it is grossly unfair for defendants to now claim, as they do, that are entitled to be compensated for the time to "review three years of time entries to determine which were compensable." ECF 342-2 at 2. Even accepting that some limited amount of time would be appropriate to determine which entries related to the anti-SLAPP motion, that is a far less time-consuming exercise than the review normally occurring at the time that clients would have been billed. That is a normal part of office-overhead and would not be billable.  Nor can they justify having to review time records to redact attorney-client or work product privilege material, since all but a few of the entries fail to reflect whether the review was for that purpose or constituted part of its general review of time sheets.

It is therefore impossible to tell how much of Defendants' time was spent on what should have been a normal review of billing records. As the Court recognized in *CoreCivic*

- 8 -

relying on internal billing records may mask completely actual, appropriate charges. In that case the Court held that internal billing records offered by Davis Wright were inflated way beyond what the client was charged. Here, there is even more reason to question reliance on internal billing records. Defense counsel's billing records reflect that a portion of the time for which recovery is sought was spent editing the billing records. See, e.g., ECF 324-2 at 6 (entry for 4/23/21, "Review and edit time entries for the motion for attorneys' fees"); 4/26/21 (same). Clearly, the records submitted to the Court are not even contemporaneous time records, it is impossible to tell how the records were edited, or how that impacted the actual time spent on a task.

Second, time allocated to reviewing time sheets far exceeds what was reasonable, particularly since it appears that neither firm has engaged in the detailed review claimed. Mr. Burke acknowledged that errors were made reviewing their original data, including documents reviewed in connection with discovery and the number of hours and charges for non-recoverable activities such as settlement discussions. *See* ECF 324-1, ¶ 7. He then yet again includes such fees in his request for fees on fees. See 4/7/21 (Burke)(entry for, among other things, "conference with S. Frankel re status of settlement discussions").

It is also difficult to accept hundreds of thousands of dollars in fees for conducting a detailed review of billing records when – even after Mr. Burke admitted that it was a mistake to include billing records relating to settlement discussions – he has provided the Court with "corrected records" which continue to charge for such time. The "corrected records" in Exhibit B to this declaration contain 31 time entries reflecting, for instance, "settlement discussions" or "settlement negotiations" including the following examples: ECF 324-1: 3/22/19 (Burke) ("Participate in conference with Magistrate Judge Kim and counsel for all parties to discuss a further potential settlement conference"); 4/16/18 (Burke) (charges related to early settlement discussions); 5/3/19 (Burke) (discussing, inter alia, "strategy for upcoming settlement conference with the court"); 5/7/18 (Burke) (charges relating to scheduling raised by settlement conferences); 6/5/18 (Burke) ("identifying documentation CIR can easily provide to plaintiffs ahead of settlement

conference"). 6/5/18 (Charney) (same); 6/12/18 (Burke) ("telephone conference with Ms. Walters regarding settlement conference process"); 6/12/18 (Charney) ("call with T. Burke to discuss strategy and next steps for settlement conference"); 6/28/18 (Burke) (conferences with clients regarding settlement discussions).

Nor should Plaintiffs be charged over $300,000 in fees on fees if the Court determines that the original fee request is excessive in any respect. See, e.g., *Resolute Forest Products, Inc. Greenpeace International,* 2020 WL 8877818, at 4 (N.D. Cal. April 22, 2020) (citing *Ford Motor Credit Co., LLC v. Gilbert,* No. 6:15-cv-01610-JR, 2017 WL 2766168, at *4 (D. Or. June 26,2017). Defendants have no right to seek fees based on unreasonably high rates, or for irrelevant or unreasonable charges. There is nothing in the anti-SLAPP statute which even remotely suggests that a party should be compensated for requesting non-reimbursable charges or expenses.

### D. DEFENSE COUNSEL'S BILLING PRACTICES REQUIRE A REDUCTION IN FEES ON FEES

Many of the billing entries contain the same flawed practices which Plaintiffs' Expert identified previously. For instance, Mr. Glynn previously noted that it was unduly vague to describe a task as being to "assist with" or "follow-up" on some project or activity, see, e.g., ECF 321-6, at 32. Defendants engage in the same billing practice in connection with the Fees on Fees Request. See, e.g., ECF 324-2 (3/24/21)(Hansen); ("follow-up on fees motion."); 3/20/21 (Hansen)("follow-up on fees motion"); 3/30/21 (Hansen)(follow up on fees re fees briefing); 5/5/21 (Hansen) ("follow up on fees motion"); 6/28/21 (Shi)("attend to email correspondence); 3/29/21 (Jarboe) ("assist on projects. . . "); 4/27/21 (same); 5/3/21 (Jarboe) (same); 5/4/21 (Jarboe); 5/5/21 (Jarboe) (same); 5/6/21 (Jarboe)(same); 7/6/21 (Jarboe)(same); 7/7/21 (Jarboe)(same); 7/12/21 (Jarboe) (same).

Such vague entries fail to say whether the biller was engaged in a task which would be deemed "clerical or administrative" in nature, and therefore incapable of justifying a fee request. See *Missouri v. Jenkins*, 491 U.S. 274, 288, n.10 (1989)(denying recovery for "purely clerical or secretarial tasks"); *Nadarahjah v. Holder*, 569, 906 (9th Cir.

2009)(denying recovery for secretarial tasks).  The Court should not simply assume that the biller was involved in researching, drafting, reviewing or performing some other which would allow the Court to assess the reasonableness of the amount of time expended.  Many of the entities say nothing that would allow the Court to perform its function of undertaking an independent review of the reasonableness of the fees.

### E. COSTS SHOULD BE DISALLOWED.

Defendants' requests for costs contain the same deficiencies as the original request in that it seeks costs which are not recoverable in a federal proceeding, and second, contains entries which are so vague that it is impossible to tell whether defendants are seeking reimbursement for activities which are clerical in nature and therefore non-recoverable.  See ECF 321, ¶¶ 66, 71.  In response to plaintiffs' opposition to the initial motion, defendants have not even tried to offer any case or other citation demonstrating that any of the costs (other than electronic litigation support) are recoverable.  This includes, with one exception, all of the costs now claimed by Covington in its latest fee request., see ECF 324-2, Ex. B.  Defendants should be held to have waived any claim that such costs are recoverable.

The sole exception relates to "litigation support services" by Davis Wright rendered to Covington.  *Id.*  In addition to the numerous charges sought in connection with the earlier request, Covington now seeks an additional $1800 for such services supposedly rendered by Davis Wright.  See entries for 3/30/21; 5/11/21; 6/3/21 and 7/9/21.  These descriptions, i.e., "litigation support services" are unduly vague, and therefore render it impossible for the Court to determine whether they relate to clerical tasks which are not-recoverable.  That conclusion is particularly appropriate since defendants have already billed for an outside vendor to provide electronic data management and support.

All amounts assessed for costs should be denied.

///

///

///

///

## CONCLUSION

Defendants' attorney fee request for fees on fees should be denied or reduced substantially. Based on the prior decisions awarding fees, attached as Exhibit A to the Rosenthal Declaration in opposition to the original request, if the Court awards fees at all, it would be appropriate to award approximately $35,000 for preparing the Fees on Fees Request.

Respectfully submitted,
NELSON, MULLINS, SCARBOROUGH & RILEY

*/s/ Samuel Rosenthal (pro hac vice)*
Attorneys for Plaintiffs Planet Aid, Inc.
and Lisbeth Thomsen